**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

CABI DOWNTOWN LLC,[1]

                                Case No. 09-27168-BKC-LMI

                                Chapter 11

      Debtor.

_____/

**EMERGENCY APPLICATION BY DEBTOR FOR INTERIM AND FINAL**
**ORDERS AUTHORIZING THE RETENTION AND EMPLOYMENT OF**
**KPMG LLP AS REVERSE SALES AND USE TAX CONSULTANTS**
**TO THE DEBTOR *NUNC PRO TUNC* TO THE PETITION DATE**
**<u>AND APPROVAL OF CONTINGENCY FEE ARRANGEMENT</u>**

**(Emergency Hearing Requested)[2]**

**BASIS FOR EMERGENCY RELIEF**

The above-captioned debtor and debtor-in-possession request and an emergency hearing in this matter as soon as possible, to prevent direct, immediate and substantial harm to the Debtor's estate that would occur if the Debtor is not authorized to retain KPMG as its reverse sales use and tax consultants. Certain tax returns must be prepared and filed on or before September 1, 2009 which may result in a significant tax refund to the estate. The Debtor respectfully requests that the Court waive the provisions of Rule 9075-1(B) of the Local Rules for the United States Bankruptcy Court for the Southern District of Florida, which require an affirmative statement that a bona fide effort was made to resolve the issues raised in this motion, as the relief requested herein is urgent in nature and does not lend itself to advance resolution.

Cabi Downtown, LLC, debtor and debtor-in-possession (the "<u>Debtor</u>"), submits this

application (the "<u>Application</u>") for entry of an order, pursuant to sections 327, 328 and 1107 of

the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330, as amended (the "<u>Bankruptcy</u>

<u>Code</u>"), Rules 2014, 2016 and 6003 of the Federal Rules of Bankruptcy Procedure (the

"<u>Bankruptcy Rules</u>") and Local Rule 2016-1, respectfully requesting (i) the entry of an interim

---

[1]     The Debtor's current mailing address is 19950 W. Country Club Dr., Suite 900, Aventura, FL 33180. The last four digits of the Debtor's tax identification number are [0838].

[2]     Additional support for expedited relief may be found in Rule 9013-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of Florida granting expedited hearings within two days of filing certain motions in chapter 11 cases, and pursuant to Rule 6003 of the Federal Rules of Bankruptcy Procedure allowing for interim relief to avoid immediate and irreparable harm.

order, substantially in the form annexed hereto as **Exhibit "A"**, and entry of a final order substantially in the form annexed hereto as **Exhibit "B"**, on or after September 8, 2009, authorizing the Debtor to retain and employ KPMG LLP ("KPMG"), *nunc pro tunc* to August 18, 2009 (the "Petition Date") as reverse sales and use tax consultants to the Debtor, (ii) approving the terms and conditions under which KPMG will be retained and compensated, including approval of the contingency fee arrangement described in the Engagement Letter attached hereto as **Exhibit "C"** as modified by **Exhibit "D"** with respect to the Tax Matters (as defined herein) pursuant to § 328 of the Bankruptcy Code, and (iii) modifying the fee application and information requirements contained in Local Rule 2016-1 incorporating the Guidelines for Fee Applications for Professionals in the Southern District of Florida in Bankruptcy Cases (the "Guidelines") with respect to KPMG's engagement.  In support of this Application, the Debtor relies upon the *Declaration of W. Hartley Powell in Support of Emergency Application by Debtor for Interim and Final Orders Authorizing the Retention and Employment of KPMG LLP as Reverse Sakes and Use Tax Consultants to the Debtors Nunc Pro Tunc to the Petition Sate and Approval of Contingency Fee Arrangement* (the "Powell Declaration") attached hereto as **Exhibit "E"**.  In further support of this Application, the Debtor respectfully represents as follows:

### JURISDICTION AND VENUE

1.       This Court has jurisdiction to consider the Application pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.       Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.       The principal statutory predicates for the relief requested herein are Bankruptcy Code §§ 327 and 328, Bankruptcy Rules 2014, 2016 and 6003, and Local Rule 2016-1.  Additional authority for the relief requested herein may exist under § 105, 363 and 1107 of the Bankruptcy Code.

## BACKGROUND

**A.    General Background**

4.    On the Petition Date, the Debtor filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code.

5.    Since the Petition Date, the Debtor has been operating its business as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.    As of the date hereof, no creditors' committee has been appointed or designated in this case.  In addition, no request for the appointment of a trustee or examiner has been made.

7.    The Debtor is a limited liability company organized and existing under the laws of the State of Florida.

8.    The controlling member of the Debtor is CABI Holdings, Inc.  The managers of the Debtor are Elias Amkie Levy, Elias Cababie Daniel, Abraham Cababie Daniel, Rafael Harari Tussie, and Jaime Dayan Tawil.

**B.    Everglades on the Bay**

9.    The Debtor is the developer and owner of the luxury residential condominium development known as Everglades on the Bay ("Everglades") in downtown Miami.  Located at 244 Biscayne Boulevard, Everglades contains 849 residential condominium units (the "Condominium Units") in two towers.  Condominium Units range in size from 563 square feet to 4482 square feet and are configured as flats, loft studios, one-bedroom, two-bedroom, three-bedroom, and penthouse units.  The Condominium Units feature a variety of exotic and high-end finishes as well as expansive views of the downtown Miami skyline and Biscayne Bay.

10.    Everglades also contains approximately 60,000 square feet of commercial retail space (the "Retail Space"), which is intended to be developed into a mix of restaurants, upscale retail/service boutiques, and office suites.  Rental spaces within the Retail Space range from

1,000 to 20,000 square feet and front Biscayne Boulevard, Northeast 2nd Street, or Northeast 3rd Street.

11.     Designed as a center of upscale urban living, Everglades includes a 15,000 square foot spa with sauna and steam room, a fitness center, three swimming pools (including a lagoon pool with a bar overlooking the bay), a billiard room, a private residence lounge, and other similar upscale amenities.  The building also offers 24-hour valet service, computerized security-controlled elevators, and a fully-equipped multi-function business center.

12.     As of the date hereof, the Debtor has closed on the sale of 86 units in Everglades. In addition, the Debtor continues to actively market the remaining Condominium Units.  The Debtor intends to establish a procedure for the consummation of future sales that maximizes the return to the estate while protecting the interests of all creditors.

**C.     Reasons for Filing**

13.     The Debtor filed Chapter 11 because of (a) the declining real estate market, (b) its inability to reduce condominium prices in response to these changing market conditions, and (c) its inability, due to circumstances beyond the Debtor's control, to renew, repay, or refinance its secured mortgage debt owed to Bank of America, which matured in March 2009.  In the past year, potential purchasers of condominiums at Everglades have sought significant purchase price reductions.  Because the Debtor's lenders have refused to grant the Debtor relief from minimum lien release price covenants in the operative construction loan agreement, the Debtor has been stymied from generating significantly more closings at realistic market levels.  Consequently, many of the purchasers that paid 20% pre-construction deposits have cancelled their purchases rather than pay the prices demanded by the lenders.  Had the Debtor been able to reduce purchase prices as market conditions deteriorating, the Debtor believes that it would have been able to repay all or a substantial portion of the construction loan and averted Chapter 11.

**D.     Reverse Sales and Use Tax Returns**

14.     Based on prepetition work, KPMG has advised the Debtor that it may be eligible for reverse sales tax refunds from the Florida Department of Revenue in an amount between $3.6 million and $4.7 million.  However, the deadline to request such refund is September 1, 2009, and the Debtor has been advised by KPMG that there is no provision in the statute to extend the refund date beyond September 1, 2009.  Because the return is based on a property tax assessment that is published in August 2009, much of KPMG's work related to the proposed retention must occur postpetition.

## RELIEF REQUESTED

15.     By this Application, the Debtor requests, pursuant to §§ 327 and 328(a) of the Bankruptcy Code, and Bankruptcy Rule 2014 and 6003, that this Court enter interim and final orders, substantially in the forms attached hereto as Exhibits "A" and "B": (i) authorizing the employment and retention of KPMG as reverse sales and use tax consultants *nunc pro tunc* to the Petition Date, (ii) approving the terms and conditions under which KPMG will be retained and compensated pursuant to the Engagement Letter as amended[3], and (iii) modifying the fee application and information requirements contained in Local Rule 2016-1 incorporating the Guidelines for Fee Applications for Professionals in the Southern District of Florida with respect to KPMG's engagement regarding sales and use tax matters.

## BASIS FOR RELIEF

16.     The Debtor seeks to retain KPMG as reverse sales and use tax consultants because of its experience in filing reverse sales and use tax returns.  KPMG has provided services to the Debtor since January 2008.

17.     The Debtor believes that KPMG is uniquely suited to represent the Debtor in the tax matters described herein.  The Debtor believes that the employment of KPMG is essential to

---

[3] KPMG has agreed to amend the Engagement Letter as set forth on Exhibit "D".

5

provide reverse sales and use tax services to the Debtor and enable the Debtor to prepare and file the appropriate paperwork within the short timeframe required by the statute.  As a result of its knowledge and experience and the potential asset from the tax refunds the Debtor is eligible to receive, it is unquestionable that the postpetition employment of KPMG as the Debtor's sales and use tax consultants is in the best interests of the Debtor.

18.    In addition to seeking to retain KPMG as sales and use tax consultants, by separate Application filed in these bankruptcy cases, the Debtor has filed applications to employ, among others, (i) Kasowitz Benson Torres & Friedman LLP as the Debtor's general bankruptcy counsel, (ii) Bilzin Sumberg Baena Price & Axelrod LLP, as the Debtor's local bankruptcy counsel, and (iii) AlgonGroup, as financial advisors to the Debtor.

### SERVICES TO BE RENDERED

19.    The Debtor anticipates that KPMG may render the following services in connection with this case:

**Sales and Use Tax Services**

- Review and analysis of sales and use tax transactions for potential sales and use tax refunds;

- Provide the Debtor with a report that quantifies the amount of identified sales and use tax refund opportunities;

- Discuss with the Debtor and agree upon which items will be included in a "claim for refund" to be filed with state taxing authorities;

- Prepare one or more "claim for refund" package(s) for the Debtor's review and approval;

- Coordinate processing of the "claim for refund" packages with the state taxing authority;

- Assist the Debtor in responding to questions related to the refund claims from the state taxing authority; and

- Represent the Debtor before the state taxing authority during the review of the Debtor's claims for refund pursuant to the state taxing authority's established formal or informal procedures. KPMG's representation will

include any necessary administrative appeals unless such appeals are required to be handled by an attorney; KPMG does not engage in the practice of law.

20.     Subject to this Court's approval of the Application, KPMG is willing to serve as the Debtor's reverse sales and use tax consultants and to perform the services described above (collectively, the "Tax Matters").

## PROFESSIONAL COMPENSATION

21.     Prior to the Petition Date, the Debtor entered into the Engagement Letter in which KPMG agreed to assist the Debtor in connection with a refund claim for Florida sales and use taxes.  As set forth in the engagement letter, KPMG will be reimbursed on a contingent basis in the amount of 15% of the refund received by the Debtor.  KPMG will not earn any compensation for its work unless and until a "benefit" is received by the Debtor.  The above fee arrangement encompasses any services rendered in connection with representing the Debtor before state taxing authorities during the review of the Debtor's claims for refund pursuant to the state taxing authority's established formal or informal procedures, including any necessary administrative appeals unless such appeals are required to be handled by an attorney.

## BASIS FOR RELIEF

## Retention is Warranted Under §§ 327 and 328 of the Bankruptcy Code

22.     The Debtor seeks approval of KPMG's retention and employment in connection with the Tax Matters pursuant to §§ 327 and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016.

23.     The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 amended § 328(a) of the Bankruptcy Code to permit compensation on *"a fixed or percentage fee basis, or on a contingency basis."* 11 U.S.C. § 328(a) (emphasis added).  The amendment to § 328(a) clearly establishes that Debtor's ability to retain a professional on a contingency basis with bankruptcy court approval, such as the fees requested by KPMG.

24.    Accordingly, section 328 specifically permits the compensation of professionals on flexible terms that reflect the nature of their services and market conditions, including a contingency fee basis. Bankruptcy courts in this district and others have authorized KPMG to be retained for other debtors in a similar capacity and have approved a contingency fee arrangement pursuant to section 328. *See, e.g., In re TOUSA, Inc.,* Case No. 08-10928-BKC-JKO [D.E. #801]

25.    Subject to this Court's approval and in accordance with § 327 and 328(a) of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Orders of this Court, the Debtor proposes to compensate KPMG for professional services rendered in connection with the reverse sales and use tax services on a contingent basis at 15% of the refund received from the Florida Department of Revenue as set forth in the Engagement Letter. The Debtor respectfully submits that such compensation is reasonable and comparable to the compensation KPMG receives for similar services outside of bankruptcy.

**Modification of the Guidelines is Warranted**

26.    Bankruptcy Rule 2016 and Local Rule 2016-1 require retained professionals to submit applications for payment of compensation in chapter 11 cases in accordance with the Guidelines. Pursuant to Local Rule 2016-1(B)(1), the Guidelines apply in all chapter 11 cases and require retained professionals to submit detailed time entries that set forth, among other things: (i) a detailed description of each activity performed, (ii) the amount of time spent on the activity (in tenth of an hour increments), (iii) the subject matter of the activity, and (iv) the parties involved with the activity at issue. However, the Guidelines allow a retained professional to request a variance from these Guidelines, for cause.

27.    The Debtor respectfully requests that the requirements of the Guidelines be tailored to the nature of KPMG's engagement in connection with the Tax Matters and its compensation structure. KPMG has requested, pursuant to § 328(a) of the Bankruptcy Code, payment of its fees on a contingency basis, which, as set forth above, is customary in the Tax

Matters.  As such, the submission of detailed information regarding time entries on an tenth of an hour basis pursuant to the Guidelines, are burdensome and unnecessary in light of the contingent fee arrangement.  Accordingly, KPMG requests a waiver of any timekeeping requirements that are required under the Guidelines.

## <u>DISINTERESTEDNESS OF PROFESSIONAL</u>

28.    To the best of the Debtor's knowledge and based upon the Powell Declaration, KPMG is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.

29.    To the best of the Debtor's knowledge and based upon Powell Declaration, KPMG does not hold or represent an interest adverse to the estate that would impair KPMG's ability to objectively perform professional services for the Debtor, in accordance with section 327 and 328 of the Bankruptcy Code.

30.    To the best of the Debtor's knowledge and based upon the Powell Declaration, (1) KPMG's connections with the creditors, any other party in interest, or their respective attorneys are disclosed in the Powell Declaration; and (2) the KPMG partners and professionals working on this matter are not relatives of the United States Trustee of the Southern District of Florida or of any known employee in the office thereof, or any United States Bankruptcy Judge of the Southern District of Florida.

31.    KPMG has not provided, and will not provide, professional services to any of the creditors, other parties-in-interest, or their attorneys with regard to any matter related to this Chapter 11 case.

32.    KPMG will not seek reimbursement for expenses incurred in providing professional services.

33.    KPMG intends to apply to the Court for the allowance of compensation for professional services.  KPMG has agreed to accept as compensation such sums as may be

allowed by the Court. KPMG understands that interim and final fee awards are subject to approval by this Court.

34.     KPMG has not received an advance payment prior to the Petition Date.

35.     As of the Petition Date, the Debtor did not owe any payments to KPMG for professional services rendered.

<u>**INTERIM RETENTION IS NECESSARY**</u>

36.     The Debtor further seeks the retention of KPMG on an interim basis to avoid the imposition of irreparable harm that will inure to the Debtor's estate absent the relief sought hereby.

37.     Pursuant to Bankruptcy Rule 6003, a court may grant relief regarding an application pursuant to Bankruptcy Rule 2014 to retain a professional within 20 days after the filing of the petition to the extent the relief is necessary to avoid immediate and irreparable harm. FED. R. BANKR. P. 6003.

38.     Bankruptcy Rule 6003, however, does not expressly forbid courts from entering interim orders approving professional retentions during the first 20 days of a chapter 11 case. In accordance with Bankruptcy Rule 6003, this Court has entered the form of interim relief sought in this Application. *See, e.g., In re Fontainebleau Las Vegas Holdings, LLC*, Case No. 09-21481-BKC-AJC (Bankr. S.D. Fla. June 16, 2009) [D.E. # 88] (approving retention of legal counsel on an interim basis on similar terms within the first 20 days of a chapter 11 case); *In re TOUSA, Inc.*, Case No. 08-10928 (Bankr. S.D. Fla. Jan. 31, 2008) [D.E. #115] (same); *In re First NLC Fin. Servs., LLC*, 382 B.R. 547, 549-50 (Bankr. S.D. Fla. 2008) (same).

39.     Interim relief is clearly justified and appropriate in the context of this Application. Not only is the relief sought justified, it is necessary. Failure to retain KPMG would hamper the Debtor's ability to file the necessary documents with the Florida Department of Revenue within the required deadline and thus jeopardize the Debtor's ability for a refund. Therefore, the Debtor

submits it has satisfied the requirements of Bankruptcy Rule 6003 to support immediate entry of an interim order authorizing the Debtor to retain and employ KPMG on an interim basis, and to compensate KPMG for the services performed. This interim form of relief ensures the availability of KPMG's full resources to the Debtor during this critical period, while preserving the ability of all parties in interest, including the U.S. Trustee, to object to this application on a final basis. The form of proposed interim order attached as Exhibit "A" preserves any objections of all creditors and parties-in-interest to the final hearing on this Application.

## NOTICE

40.     The Debtor will provide notice of this motion to all parties on the Master Service List as defined in Local Rule 2002-1(H) and all parties known to be directly affected by the relief requested herein. In light of the nature of the relief requested, the Debtor respectfully submits that no further notice is necessary.

WHEREFORE, the Debtor respectfully requests entry of interim order immediately and a final order on or after September 8, 2009, substantially in the forms attached hereto as Exhibit "A" and "B" (i) authorizing the employment and retention of KPMG as reverse sales and use tax consultants to the Debtor in respect of the Tax Matters *nunc pro tunc* to the Petition Date, (ii) approving the Engagement Letter as modified by Exhibit "D" and the terms and conditions contained therein under which KPMG will be retained and compensated pursuant to section 328, (iii) modifying the fee application and information requirements contained in Local Rule 2016-1 that incorporate the Guidelines as described herein with respect to KPMG's engagement on the Tax Matters, and (iv) granting such other and further relief as the Court deems just and proper.

Dated: August 25, 2009

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional

qualifications to practice in this court set forth in Local Rule 2090-1(A).

Respectfully submitted,

BILZIN SUMBERG BAENA PRICE & AXELROD LLP
*Proposed Counsel for the Debtor*
200 South Biscayne Boulevard
Suite 2500
Miami, Florida 33131
Telephone: (305) 374-7580
Facsimile: (305) 374-7593


By:____/s Mindy A. Mora____
        Mindy A. Mora
        Florida Bar No. 678910
        Jason Z. Jones
        Florida Bar No. 186554

            - and -

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
*Proposed Counsel for the Debtor*
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800
Andrew K. Glenn
N.Y. Bar No. 2767374
*(pro hac vice pending)*
Jeffrey R. Gleit
N.Y. Bar No. 3928371
*(pro hac vice pending)*

# Exhibit "A"

# Proposed Interim Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
<u>www.flsb.uscourts.gov</u>

In re:

Case No. 09-27168-BKC-LMI

CABI DOWNTOWN LLC,[1]

Chapter 11

      Debtor.

_____/

**[PROPOSED] INTERIM ORDER AUTHORIZING THE RETENTION AND**
**EMPLOYMENT OF KPMG LLP AS REVERSE SALES AND USE TAX**
**CONSULTANTS TO THE DEBTOR** *NUNC PRO TUNC* **TO THE PETITION DATE**
<u>**AND APPROVAL OF CONTINGENCY FEE ARRANGEMENT**</u>

THIS MATTER came before the Court on August ___, 2009 at ____ __.m., upon the

*Emergency Application By Debtor For Interim And Final  Orders Authorizing The Retention*

*And Employment of  KPMG LLP As Reverse Sales and Use Tax Consultants  to The Debtor*

Nunc Pro Tunc *To The Petition Date And Approval Of Contingency Fee Arrangement* [D.E. #__]

(the "<u>Application</u>") of the above captioned Debtor pursuant to sections 327, 328 and 1107 of the

United States Bankruptcy Code, 11 U.S.C. §§ 101-1330, as amended (the "<u>Bankruptcy Code</u>"),

---

[1]      The Debtor's current mailing address is 19950 W. Country Club Dr., Suite 900, Aventura, FL 33180.  The last four digits of the Debtor's tax identification number are [0838].

1

Rules 2014, 2016 and 6003 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and Local Rule 2016-1, requesting (i) the entry of an interim and final orders authorizing the Debtor to retain and employ KPMG LLP ("<u>KPMG</u>"), *nunc pro tunc* to August 18, 2009 (the "<u>Petition Date</u>") as reverse sales and use tax consultants to the Debtor, (ii) approving the terms and conditions under which KPMG will be retained and compensated, including approval of the contingency fee arrangement described in the Engagement Letter attached as Exhibit "C" to the Application as modified by Exhibit "D" to the Application with respect to the Tax Matters pursuant to § 328 of the Bankruptcy Code, and (iii) modifying the fee application and information requirements contained in Local Rule 2016-1 incorporating the Guidelines for Fee Applications for Professionals in the Southern District of Florida in Bankruptcy Cases (the "<u>Guidelines</u>") with respect to KPMG's engagement; upon consideration of the Application and the *Declaration of W. Hartley Powell in Support of Emergency Application by Debtor for Interim and Final Orders Authorizing the Retention and Employment of KPMG LLP as Reverse Sakes and Use Tax Consultants to the Debtors Nunc Pro Tunc to the Petition Sate and Approval of Contingency Fee Arrangement* (the "<u>Powell Declaration</u>"); and having heard the arguments of counsel, having found that KPMG does not represent an interest adverse to the Debtor or its estate on the matters for which they are being employed, and that KPMG disclosed any connections with parties as required by Bankruptcy Rule 2014; and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409;due and proper notice of the Application having been provided and no objections to the Application having been filed, it appearing that no other or further notice need be provided; having found and concluded that KPMG's employment is necessary and would be in the best interests of the Debtor's estates and after due deliberation and sufficient cause appearing therefore, it is

**ORDERED** that:

1.      The Application is **GRANTED** on an interim basis, *nunc pro tunc* to the Petition Date.

2.      In accordance with sections 327(a) of the Bankruptcy Code, the Debtor is authorized to employ and retain KPMG as reverse sales and use tax consultants on an interim basis *nunc pro tunc* to the Petition Date.

3.      The contingency fee arrangement as set forth in the Engagement Letter is approved on an interim basis pursuant section 328 of the Bankruptcy Code.

4.      KPMG shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtor's chapter 11 case in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, guidelines established by the Office of the United States Trustee for the Southern District of Florida and any other applicable Orders of this Court provided, however, that KPMG is not required to provide any timekeeping records that would be required under the Guidelines for Fee Applications for Professionals in the Southern District of Florida in Bankruptcy Cases.

5.      A final hearing on the Application is scheduled for _____, 2009 at _____m., prevailing Eastern Time, before this Court (the "Final Application Hearing").  Any party in interest objecting to the relief sought in the Application shall serve and file written objections, which objections shall be served upon (a) general bankruptcy counsel to the Debtor, Kasowitz Benson Torres & Friedman, LLP, Andrew K. Glenn, Esq., 1633 Broadway, New York, New York 10019; (b) local bankruptcy counsel to the Debtor, Bilzin Sumberg Baena Price & Axelrod LLP, 200 S. Biscayne Blvd., Suite 2500, Miami, FL 33131, Attn: Mindy A. Mora, Esq.; (c) the Office of the United States Trustee for the Southern District of Florida, 51 SW First Ave., Room 1204, Miami, FL 33130; (d) the entities listed on the Master Service List filed pursuant to Local Bankruptcy Rule 2002-1(H), and (e) counsel to an Official Committee of Unsecured Creditors, if one has been appointed, (collectively, the "Notice Parties") and shall be filed with

the Clerk of the United States Bankruptcy Court, Southern District of Florida, to allow actual receipt by the foregoing no later than _____ at _____, prevailing Eastern Time.

6.      In the event the Application is not granted on a final basis, KPMG shall be authorized to submit a fee application with this Court for compensation for services rendered in the period between the Petition Date and the Final Application Hearing.  Any party in interest may object to the fee application; *provided, however,* that such party shall file such objection with this Court and timely serve a copy of the objection upon the Notice Parties in accordance with the Local Rules of this Court.

7.      The requirements for emergency motions set forth in Local Rule 9075-1 and for entry of the relief requested earlier than the period set forth in Bankruptcy Rule 6003 are satisfied by the contents of the Application.

8.      Notwithstanding the possible applicability of Bankruptcy Rules 6004, 7062 or 9014, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

9.      The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this order in accordance with the Application.

10.      The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this order.

# # #

Submitted by:
Mindy A. Mora, Esq
Bilzin Sumberg Baena Price & Axelrod, LLP
200 S. Biscayne Blvd., Suite 2500
Miami, FL 33131

Copy furnished to:
*Mindy A. Mora, Esq., who shall serve a copy of this order on all interested parties and file a certificate of service*

# Exhibit "B"

# Proposed Final Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

CABI DOWNTOWN LLC,[1]

Case No. 09-27168-BKC-LMI

Chapter 11

    Debtor.
_____/

**[PROPOSED] FINAL ORDER AUTHORIZING THE RETENTION AND**
**EMPLOYMENT OF KPMG LLP AS REVERSE SALES AND USE TAX**
**CONSULTANTS TO THE DEBTOR *NUNC PRO TUNC* TO THE PETITION DATE**
**AND APPROVAL OF CONTINGENCY FEE ARRANGEMENT**

    THIS MATTER came before the Court on August ___, 2009 at ____  __.m., upon the

*Emergency Application By Debtor For Interim And Final  Orders Authorizing The Retention*

*And Employment of  KPMG LLP As Reverse Sales and Use Tax Consultants  to The Debtor*

Nunc Pro Tunc *To The Petition Date And Approval Of Contingency Fee Arrangement* [D.E. #__]

(the "Application") of the above captioned Debtor pursuant to sections 327, 328 and 1107 of the

2

United States Bankruptcy Code, 11 U.S.C. §§ 101-1330, as amended (the "<u>Bankruptcy Code</u>"), Rules 2014, 2016 and 6003 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and Local Rule 2016-1, requesting (i) the entry of an interim and final orders authorizing the Debtor to retain and employ KPMG LLP ("<u>KPMG</u>"), *nunc pro tunc* to August 18, 2009 (the "<u>Petition Date</u>") as reverse sales and use tax consultants to the Debtor, (ii) approving the terms and conditions under which KPMG will be retained and compensated, including approval of the contingency fee arrangement described in the Engagement Letter attached as Exhibit "C" to the Application as modified by Exhibit "D" to the Application with respect to the Tax Matters pursuant to § 328 of the Bankruptcy Code, and (iii) modifying the fee application and information requirements contained in Local Rule 2016-1 incorporating the Guidelines for Fee Applications for Professionals in the Southern District of Florida in Bankruptcy Cases (the "<u>Guidelines</u>") with respect to KPMG's engagement; upon consideration of the Application and the *Declaration of W. Hartley Powell in Support of Emergency Application by Debtor for Interim and Final Orders Authorizing the Retention and Employment of KPMG LLP as Reverse Sakes and Use Tax Consultants to the Debtors Nunc Pro Tunc to the Petition Sate and Approval of Contingency Fee Arrangement* (the "<u>Powell Declaration</u>"); and having heard the arguments of counsel; having found that KPMG does not represent an interest adverse to the Debtor or its estate on the matters for which they are being employed, and that KPMG disclosed any connections with parties as required by Bankruptcy Rule 2014; and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; the Court having reviewed the Application; due and proper notice of the Application having been provided and no objections to the Application having been filed, it appearing that no other or further notice need be provided; having found and

---

[1]    The Debtor's current mailing address is 19950 W. Country Club Dr., Suite 900, Aventura, FL 33180.  The last four digits of the Debtor's tax identification number are [0838].

concluded that KPMG's employment is necessary and would be in the best interests of the Debtor's estates; and after due deliberation and sufficient cause appearing therefore, it is

**ORDERED** that:

1.      The Application is **GRANTED** *nunc pro tunc* to the Petition Date.

2.      In accordance with sections 327(a) of the Bankruptcy Code, the Debtor is authorized to employ and retain KPMG as reverse sales and use tax consultants *nunc pro tunc* to the Petition Date.

3.      The contingency fee arrangement as set forth in the Engagement Letter is approved under section 328 of the Bankruptcy Code and shall constitute pre-approval under section 328(a) of the Bankruptcy Code of the terms and conditions of the Debtor's employment and retention of KPMG pursuant to the terms of the Engagement Letter as modified and the contingent fee arrangement set forth therein.

4.      KPMG shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtor's chapter 11 case in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, guidelines established by the Office of the United States Trustee for the Southern District of Florida and any other applicable Orders of this Court provided, however, that KPMG is not required to provide any timekeeping records that would be required under the Guidelines for Fee Applications for Professionals in the Southern District of Florida in Bankruptcy Cases.

6.      Notwithstanding the possible applicability of Bankruptcy Rules 6004, 7062 or 9014, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

7.      The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this order in accordance with the Application.

8.      The Court retains jurisdiction with respect to all matters arising from or related to

the implementation of this order.

# # #

Submitted by:
Mindy A. Mora, Esq
Bilzin Sumberg Baena Price & Axelrod, LLP
200 S. Biscayne Blvd., Suite 2500
Miami, FL 33131

Copy furnished to:
*Mindy A. Mora, Esq., who shall serve a copy of this order on all interested parties and file a certificate of service*

**EXHIBIT C**

**Engagement Letter**



KPMG LLP
450 East Las Olas Boulevard
Fort Lauderdale, FL 33301

Telephone    954 524 6000
Fax                954 462 4765
Internet        www.us.kpmg.com

January 9, 2008

**PRIVATE**

Mr. Santiago Pique
Cabi Downtown, LLC
19950 West Country Club Drive, Suite 900
Aventura, Florida 33180

**Re : Reverse Sales and Use Tax Audit Engagement Letter**

Dear Mr. Pique:

KPMG LLP ("KPMG") is pleased to submit this engagement letter summarizing our discussions
regarding KPMG's reverse sales and use tax audit services to be provided for Cabi Downtown, LLC
("Cabi"). This letter confirms the scope of the four-phase approach to KPMG's reverse sales and use tax
audit service, and the related terms of your engagement of KPMG.

**SCOPE OF SERVICES**

During the term of this engagement, KPMG will provide the following services:

* Review and analysis of sales and use tax transactions for potential sales and use tax refunds;
* Provide Cabi with a report that quantifies the amount of identified sales and use tax refund
  opportunities;
* Discuss with Cabi and agree upon which items will be included in a "claim for refund" to be filed
  with state taxing authorities;
* Prepare one or more "claim for refund" package(s) for Cabi's review and approval;
* Coordinate processing of the "claim for refund" packages with the state taxing authority;
* Assist Cabi in responding to questions related to the refund claims from the state taxing authority;
  and
* Represent Cabi before the state taxing authority during the review of Cabi's claims for refund
  pursuant to the state taxing authority's established formal or informal procedures. KPMG's
  representation will include any necessary administrative appeals unless such appeals are required to
  be handled by an attorney. KPMG does not engage in the practice of law.

We do not anticipate that any written tax advice provided under this engagement letter will be a Covered
Opinion as defined in §10.35 of Circular 230 ("Covered Opinion"). Therefore, all the written tax advice
provided under this engagement letter will contain the following legend:

> ANY TAX ADVICE IN THIS COMMUNICATION IS NOT INTENDED OR WRITTEN BY
> KPMG TO BE USED, AND CANNOT BE USED, BY A CLIENT OR ANY OTHER PERSON
> OR ENTITY FOR THE PURPOSE OF (i) AVOIDING PENALTIES THAT MAY BE
> IMPOSED ON ANY TAXPAYER OR (ii) PROMOTING, MARKETING OR
> RECOMMENDING TO ANOTHER PARTY ANY MATTERS ADDRESSED HEREIN.



Page 2
Mr. Santiago Pique
Cabi Downtown, LLC
January 9, 2008

However, if our services will rise to the level of a Covered Opinion, we will issue a separate engagement letter for the issuance of a Covered Opinion.

## TAX RETURN AND TAX CONSULTING SERVICES STANDARDS

KPMG applies elevated standards in preparing tax returns and providing audit defense services. Under these standards, we must be able to determine that any return position on which we advise is at least "more likely than not" to be upheld (i.e., has a greater than 50 percent likelihood of success if challenged by the IRS or a state taxing authority) if the position does not involve a transaction designated by the IRS or a state as a "listed transaction", or a transaction with the principal purpose of avoiding or evading any tax imposed by the Internal Revenue Code or corresponding state tax law (a "principal purpose transaction"). If the advice relates to a "principal purpose transaction", we must arrive at a "should" confidence level (i.e., approximately a 70 percent or greater likelihood of success if challenged by the IRS or a state taxing authority) with respect to the position. In determining whether a position is satisfied, we will not take into account the possibility that a tax return will not be audited, that an issue will not be raised on audit, or that an issue will be settled. We will inform you as soon as possible if, during our analysis, we determine circumstances exist that prevent us from advising you under these standards.

## PROFESSIONAL FEES

To the extent that there is a reasonable expectation that refund opportunities identified by KPMG will be substantively considered by the state taxing authority, KPMG's professional fees for the reverse sales and use tax audit services described in this letter will be equal to 15 percent of any benefits received by Cabi. "Benefits received" includes refunds received plus interest received thereon, credits taken to offset proposed assessments, and reductions in assessments, interest, and penalties resulting from issues identified by KPMG that are substantively considered and ultimately sustained or otherwise allowed by the findings of the state taxing authority. "Benefits received" does not include refunds identified but ultimately not pursued, either after their identification or through the applicable refund process. The above fee arrangement encompasses any services rendered in connection with representing Cabi before state taxing authorities during the review of Cabi's claims for refund pursuant to the state taxing authority's established formal or informal procedures, including any necessary administrative appeals unless such appeals are required to be handled by an attorney. KPMG does not engage in the practice of law.

Cabi agrees, by accepting the terms of this letter, that the fee shall be due and payable to KPMG thirty days after any refund is received, an assessment is reduced, or a credit or other benefit that offsets an assessment or proposed assessment is approved. If the findings of the state taxing authority concerning the issues in Cabi's claim for refund are later revised, our fee will be adjusted accordingly.

If Cabi decides to forego refunds identified in the reverse sales and use tax audit and claims for those refunds are subsequently filed, used as credits to reduce or offset assessments or proposed assessments, or otherwise used to benefit Cabi, Cabi agrees to pay KPMG according to the above fee arrangement.



Page 3
Mr. Santiago Pique
Cabi Downtown, LLC
January 9, 2008

The filing of a refund claim may result in the state taxing authority's decision to commence an examination of a taxpayer's sales and use tax returns for open years to determine whether there may be an underpayment of tax with respect to other issues.

* * * * *

The attached Standard Terms and Conditions for Advisory and Tax Services are made a part of this engagement letter. Please contact me at (954) 462-4703 if you have any questions or need clarification of the services KPMG will provide. If you agree with the scope of our services and the fee arrangement, please acknowledge this by signing the enclosed copy of this letter, faxing the signed letter to me at (954) 462-4765 and returning the signed original to my attention within 30 days. Once Cabi accepts this engagement letter, I will contact you to schedule a mutually agreeable date to start the refund analysis.

Very truly yours,

KPMG LLP

Lori A. Fields
*Manager, Tax*

Enclosure:  Standard Terms and Conditions for Advisory and Tax Services

ACCEPTED:

CABI DOWNTOWN, LLC

_____
Authorized Signature

_____C F O_____
Title

_____1/14/08_____
Date

cc:    W. Hartley Powell – KPMG Charlotte

# KPMG LLP
## Standard Terms and Conditions for Advisory and Tax Services

1. **Services; Client Responsibilities.**

(a) It is understood and agreed that KPMG's services may include advice and recommendations; but all decisions in connection with the implementation of such advice and recommendations shall be the responsibility of, and made by, Client. KPMG will not perform management functions or make management decisions for Client. References herein to Client shall refer to the addressee of the Proposal or Engagement Letter to which these Standard Terms and Conditions are attached (the "Engagement Letter").

(b) In connection with KPMG's provision of services under the Engagement Letter, Client agrees that Client, and not KPMG, shall perform the following functions: (i) make all management decisions and perform all management functions; (ii) designate an individual who possesses suitable skill, knowledge and experience, preferably within senior management, to oversee such services, and to evaluate the adequacy and results of such services; (iii) accept responsibility for the results of such services; and (iv) establish and maintain internal controls over the processes with which such services are concerned, including monitoring on-going activities.

(c) Subsequent to the completion of this engagement, KPMG will not update its advice, recommendations or work product for changes or modification to the law and regulations, or to the judicial and administrative interpretations thereof, or for subsequent events or transactions, unless Client separately engages KPMG to do so in writing after such changes or modifications, interpretations, events or transactions.

2. **Tax on Services.** All fees, charges and other amounts payable to KPMG under the Engagement Letter do not include any sales, use, excise, value added or other applicable taxes, tariffs or duties, payment of which shall be Client's sole responsibility, excluding any applicable taxes based on KPMG's net income or taxes arising from the employment or independent contractor relationship between KPMG and its personnel.

3. **Termination.** Either party may terminate the Engagement Letter at any time by giving written notice to the other party not less than 30 calendar days before the effective date of termination.

4. **Ownership and Use of Deliverables.**

(a) KPMG has created, acquired, owns or otherwise has rights in, and may, in connection with the performance of services under the Engagement Letter, use, provide, modify, create, acquire or otherwise obtain rights in, concepts, ideas, methods, methodologies, procedures, processes, know-how, techniques, models, templates and software (collectively, the "KPMG Property"). KPMG retains all ownership and use rights in the KPMG Property. Client shall acquire no rights or interest in the KPMG Property, except as expressly provided in the next paragraph. KPMG acknowledges that KPMG Property shall not include any of Client's confidential information or tangible or intangible property, and KPMG shall have no ownership rights in such property.

(b) Except for KPMG Property, and upon full and final payment to KPMG under the Engagement Letter, the tangible items specified as deliverables or work product in the Engagement Letter including any intellectual property rights appurtenant thereto (the "Deliverables") will become the property of Client. If any KPMG Property is contained in any of the Deliverables, KPMG hereby grants Client a royalty-free, paid-up, non-exclusive, perpetual license to use such KPMG Property in connection with Client's use of the Deliverables.

(c) Client acknowledges and agrees that any advice, recommendations, information or work product provided to Client by KPMG in connection with this engagement is for the sole use of Client and may not be relied upon by any third party. Client agrees that if it makes such advice, recommendations, information or work product available to any third party other than as expressly permitted by the Engagement Letter the provisions of Paragraph 8(b) shall apply unless Client provides the written notice to the third party in substantially the form of Appendix A hereto (the "Notice"), which Notice shall be acknowledged in writing by such third party and returned to Client. Upon request, Client shall provide KPMG with a copy of the foregoing Notice and acknowledgement and any notice and acknowledgement sent to Client by such third party as contemplated by the Notice. Notwithstanding the foregoing, (i) in the event of a disclosure made by Client that is required by law, that is made to a regulatory authority having jurisdiction over Client or that is made pursuant to Paragraph 17(a) below, no acknowledgement of the Notice shall be required and (ii) no Notice or acknowledgement shall be required with respect to disclosures expressly authorized by the Engagement Letter.

5. **Warranties.** KPMG's services under the Engagement Letter are subject to and will be performed in accordance with American Institute of Certified Public Accountants ("AICPA") and other professional standards applicable to the services provided by KPMG under the Engagement Letter and in accordance with the terms thereof. KPMG disclaims all other warranties, either express or implied.

6. **Limitation on Damages.** Except for each party's indemnification obligations herein, neither Client nor KPMG shall be liable to the other for any actions, damages, claims, liabilities, costs, expenses or losses in any way arising out of or relating to the services performed under the Engagement Letter for an aggregate amount in excess of the fees paid or owing to KPMG under the Engagement Letter. In no event shall either party be liable for consequential, special, indirect, incidental, punitive or exemplary damages, costs, expenses, or losses (including, without limitation, lost profits and opportunity costs).

7. **Infringement.**

(a) KPMG hereby agrees to indemnify, hold harmless and defend Client from and against any and all claims, liabilities, losses, expenses (including reasonable attorneys' fees), fines, penalties, taxes or damages (collectively "Liabilities") asserted by a third party against Client to the extent such Liabilities result from the infringement by the Deliverables (including any KPMG Property contained therein) of such third party's patents issued as of the

# KPMG LLP
## Standard Terms and Conditions for Advisory and Tax Services

date of the Engagement Letter, trade secrets, trademarks or copyrights. The preceding indemnification shall not apply to any infringement arising out of (x) use of the Deliverables other than in accordance with applicable documentation or instructions supplied by KPMG or other than in accordance with Paragraph 4(c); (y) any alteration, modification or revision of the Deliverables not expressly agreed to in writing by KPMG; or (z) the combination of the Deliverables with materials not supplied or approved by KPMG.

(b) In case any of the Deliverables (including any KPMG Property contained therein) or any portion thereof is held, or in KPMG's reasonable opinion is likely to be held, to constitute infringement, KPMG may, within a reasonable time, at its option either: (i) secure for Client the right to continue the use of such infringing item; or (ii) replace, at KPMG's sole expense, such item with a substantially equivalent non-infringing item or modify such item so that it becomes non-infringing. In the event KPMG is, in its reasonable discretion, unable to perform either of options described in (i) or (ii) above, Client shall return the Deliverable to KPMG, and KPMG's sole liability shall be to refund to Client the amount paid to KPMG for such item; provided that the foregoing shall not be construed to limit KPMG's indemnification obligation set forth in Paragraph 7(a) above.

(c) The provisions of this Paragraph 7 state KPMG's entire liability and Client's sole and exclusive remedy with respect to any infringement or claim of infringement.

8. **Indemnification.**

(a) Each party agrees to indemnify, hold harmless and defend the other from and against any and all Liabilities for physical injury to, or illness or death of, any person regardless of status, and damage to or destruction of any tangible property, which the other party may sustain or incur, to the extent such Liabilities result from the negligence or willful misconduct of the indemnifying party.

(b) In accordance with Paragraph 4(c) Client agrees to indemnify, defend and hold harmless KPMG from and against any and all Liabilities incurred or suffered by or asserted against KPMG in connection with a third party claim to the extent resulting from such party's use or possession of or reliance upon KPMG's advice, recommendations, information or work product as a result of Client's disclosure of such advice, recommendations, information or work product without adhering to the notice requirements of Paragraph 4(c) above.

(c) The party entitled to indemnification (the "Indemnified Party") shall promptly notify the party obligated to provide such indemnification (the "Indemnifying Party") of any claim for which the Indemnified Party seeks indemnification. The Indemnifying Party shall have the right to conduct the defense or settlement of any such claim at the Indemnifying Party's sole expense, and the Indemnified Party shall cooperate with the Indemnifying Party. The party not conducting the defense shall nonetheless have the right to participate in such defense at its own expense. The Indemnified Party shall have the right to approve the settlement of any claim that imposes any liability or obligation other than the payment of money damages.

9. **Cooperation; Use of Information.**

(a) Client agrees to cooperate with KPMG in the performance of the services under the Engagement Letter and shall provide or arrange to provide KPMG with timely access to and use of the personnel, facilities, equipment, data and information to the extent necessary for KPMG to perform the services under the Engagement Letter. The Engagement Letter may set forth additional obligations of Client in connection with this engagement. Client acknowledges that Client's failure to perform these obligations could adversely affect KPMG's ability to provide the services under the Engagement Letter.

(b) Client acknowledges and agrees that KPMG will, in performing the services under the Engagement Letter, base its conclusions on the facts and assumptions that Client furnishes and that KPMG may use data, material, and other information furnished by or at the request or direction of Client without any independent investigation or verification and that KPMG shall be entitled to rely upon the accuracy and completeness of such data, material and other information. Inaccuracy or incompleteness of such data, material and other information furnished to KPMG could have a material effect on KPMG's conclusions.

10. **Independent Contractor.** It is understood and agreed that each of the parties hereto is an independent contractor and that neither party is or shall be considered an agent, distributor or representative of the other. Neither party shall act or represent itself, directly or by implication, as an agent of the other or in any manner assume or create any obligation on behalf of, or in the name of, the other.

11. **Confidentiality.**

(a) "Confidential Information" means all documents, software, reports, data, records, forms and other materials obtained by one party (the "Receiving Party") from the other party (the "Disclosing Party") or at the request or direction of the Disclosing Party in the course of performing the services under the Engagement Letter: (i) that have been marked as confidential; (ii) whose confidential nature has been made known by the Disclosing Party to the Receiving Party; or (iii) that due to their character and nature, a reasonable person under like circumstances would treat as confidential. Notwithstanding the foregoing, Confidential Information does not include information which: (i) is already known to the Receiving Party at the time of disclosure by the Disclosing Party; (ii) is or becomes publicly known through no wrongful act of the Receiving Party; (iii) is independently developed by the Receiving Party without benefit of the Disclosing Party's Confidential Information; (iv) relates to the tax treatment or tax structure of any transaction, (v) the Receiving Party determines is required to be maintained or disclosed by the Receiving Party under sections 6011, 6111 or 6112 of the Internal Revenue Code ("IRC") or the regulations thereunder or under any similar or analogous provisions of the laws of a state or other jurisdiction or (vi) is received by the Receiving Party from a third party without restriction and without a breach of an obligation of confidentiality.

   Revised 9/10/06

## KPMG LLP
### Standard Terms and Conditions for Advisory and Tax Services

(b) The Receiving Party will deliver to the Disclosing Party all Confidential Information of the Disclosing Party and all copies thereof when the Disclosing Party requests the same, except for one copy thereof that the Receiving Party may retain for its records. The Receiving Party shall not use or disclose to any person, firm or entity any Confidential Information of the Disclosing Party without the Disclosing Party's express, prior written permission; provided, however, that notwithstanding the foregoing, the Receiving Party may disclose Confidential Information to the extent that it is required to be disclosed pursuant to a statutory or regulatory provision or court order or to fulfill professional obligations and standards.

(c) Each party shall be deemed to have met its nondisclosure obligations under this Paragraph 11 as long as it exercises the same level of care to protect the other's information as it exercises to protect its own confidential information but in no event less than reasonable care, except to the extent that applicable law or professional standards impose a higher requirement.

(d) If the Receiving Party receives a subpoena or other validly issued administrative or judicial demand requiring it to disclose the Disclosing Party's Confidential Information, the Receiving Party shall provide prompt written notice to the Disclosing Party of such demand in order to permit it to seek a protective order. So long as the Receiving Party gives notice as provided herein, the Receiving Party shall be entitled to comply with such demand to the extent permitted by law, subject to any protective order or the like that may have been entered in the matter.

12. **Assignment; Use of Member Firms.** Neither party may assign, transfer or delegate any of its rights or obligations without the prior written consent of the other party, such consent not to be unreasonably withheld. Notwithstanding the foregoing, to the extent any of the services under the Engagement Letter will be performed in or relate to a jurisdiction outside of the United States, Client acknowledges and agrees that such services, including any applicable tax advice, may be performed by the member firm of KPMG International practicing in such jurisdiction. Accordingly, Client consents to KPMG's disclosure to a member firm and such member firm's use of data and information, including tax return information, received from or at the request or direction of Client for the purpose of completing the services under the Engagement Letter.

13. **Governing Law; Severability.** The Engagement Letter and these Standard Terms and Conditions shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflict of laws provisions. In the event that any term or provision of the Engagement Letter or these terms shall be held to be invalid, void or unenforceable, then the remainder of the Engagement Letter and these terms shall not be affected, and each such term and provision shall be valid and enforceable to the fullest extent permitted by law.

14. **Alternative Dispute Resolution.**

(a) Any dispute or claim arising out of or relating to the Engagement Letter between the parties or the services provided thereunder shall be submitted first to non-binding mediation (unless either party elects to forego mediation by initiating a written request for

arbitration) and if mediation is not successful within 90 days after the issuance by one of the parties of a request for mediation then to binding arbitration in accordance with the Rules for Non-Administered Arbitration of the International Institute for Conflict Prevention and Resolution ("CPR Arbitration Rules"). By operation of this provision, the parties agree to forego litigation over such disputes in any court of competent jurisdiction.

(b) Mediation, if selected, may take place at a location to be designated by the parties using the Mediation Procedures of the International Institute for Conflict Prevention and Resolution, with the exception of paragraph 2 (Selecting the Mediator).

(c) Arbitration shall take place in New York, New York. The arbitration panel shall have no power to award non-monetary or equitable relief of any sort except as provided in CPR Rule 13 (Interim Measures of Protection). Damages that are inconsistent with any applicable agreement between the parties, that are punitive in nature, or that are not measured by the prevailing party's actual damages shall be unavailable in arbitration or any other forum. In no event, even if any other portion of these provisions is held to be invalid or unenforceable, shall the arbitration panel have power to make an award or impose a remedy that could not be made or imposed by a court deciding the matter in the same jurisdiction.

(d) Either party may seek to enforce any written agreement reached by the parties during mediation, or to confirm and enforce any final award entered in arbitration, in any court of competent jurisdiction.

(e) Notwithstanding the agreement to such procedures, either party may seek equitable relief to enforce its rights in any court of competent jurisdiction.

15. **Miscellaneous.**

(a) Except as otherwise set forth in the Engagement Letter, in accepting this engagement, Client acknowledges that completion of this engagement or acceptance of Deliverables resulting from this engagement will not constitute a basis for Client's assessment or evaluation of internal control over financial reporting and disclosure controls and procedures, or its compliance with its principal officer certification requirements under Section 302 of the Sarbanes-Oxley Act of 2002 (the "Act"). The services under the Engagement Letter shall not be construed to support Client's responsibilities under Section 404 of the Act requiring each annual report filed under Section 13(a) or 15(d) of the Securities Exchange Act of 1934 to contain an internal control report from management.

(b) KPMG may communicate with Client by electronic mail or otherwise transmit documents in electronic form during the course of this engagement. Client accepts the inherent risks of these forms of communication (including the security risks of interception of or unauthorized access to such communications, the risks of corruption of such communications and the risks of viruses or other harmful devices) and agrees that it may rely only upon a final hardcopy version of a document or other communication that KPMG transmits to Client unless no such hard copy is transmitted by KPMG to Client.

# KPMG LLP
## Standard Terms and Conditions for Advisory and Tax Services

(c) For engagements where services will be provided by KPMG through offices located in California, Client acknowledges that certain of KPMG's personnel who may be considered "owners" under the California Accountancy Act and implementing regulations (California Business and Professions Code section 5079(a); 16 Cal. Code Regs. sections 51 and 51.1) and who may provide services in connection with this engagement, may not be licensed as certified public accountants under the laws of any of the various states.

(d) Where KPMG is reimbursed for expenses, it is KPMG's policy to bill clients the amount incurred at the time the good or service is purchased. If KPMG subsequently receives a volume rebate or other incentive payment from a vendor relating to such expenses, KPMG does not credit such payment to Client. Instead, KPMG applies such payments to reduce its overhead costs, which costs are taken into account in determining KPMG's standard billing rates and certain transaction charges that may be charged to clients.

(e) Except as permitted by law or the terms of the Engagement Letter, neither party shall acquire hereunder any right to use the name or logo of the other party or any part thereof. Any such use shall require the express written consent of the owner party.

16. **Entire Agreement**. The Engagement Letter and these Standard Terms and Conditions, including the Exhibits and Appendices hereto and thereto, constitute the entire agreement between KPMG and Client with respect to the services under the Engagement Letter and supersede all other oral and written representation, understandings or agreements relating thereto.

17. **Additional Terms for Engagements Involving Tax Services.**

(a) Notwithstanding anything to the contrary set forth herein, no provision in the Engagement Letter or these Standard Terms and Conditions is or is intended to be construed as a condition of confidentiality within the meaning of IRC sections 6011, 6111, 6112 or the regulations thereunder, or under any similar or analogous provisions of the laws of a state or other jurisdiction. In particular, Client (and each employee, representative, or other agent of Client) may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of any transaction within the scope of this engagement and all materials of any kind (including opinions and other tax analyses) that are provided to Client relating to such tax treatment and tax structure. Client also agrees to use commercially reasonable efforts to inform KPMG of any conditions of confidentiality imposed by third party advisors with respect to any transaction on which KPMG advice is requested. Such notification must occur prior to KPMG providing any advice with respect to the transaction.

(b) Treasury regulations under IRC section 6011 require taxpayers to disclose to the IRS their participation in reportable transactions and IRC section 6707A imposes strict penalties for noncompliance. Client agrees to use commercially reasonable efforts to inform KPMG if Client is required to disclose any transaction covered by the Engagement Letter as a reportable transaction to the IRS or to any state or other jurisdiction adopting similar or analogous provisions. IRC section 6111 requires a

material advisor with respect to a reportable transaction to disclose information on the transaction to the IRS by a prescribed date, and IRC section 6112 requires the material advisor to maintain, and make available to the IRS upon request, a list of persons and other information with respect to the transaction. KPMG will use commercially reasonable efforts to inform Client if KPMG provides Client's identifying information to the IRS under IRC section 6111 or 6112, or to any state or other jurisdiction adopting similar or analogous provisions.

(c) Information relating to advice KPMG provides to Client, including communications between KPMG and Client and material KPMG creates in the course of providing advice, may be privileged and protected from disclosure to the IRS or other governmental authority in certain circumstances. As KPMG is not able to assert the privilege on Client's behalf with respect to any communications for which privilege has been waived, Client agrees to notify KPMG of any such waivers, whether resulting from communications with KPMG or third parties in the same or a related matter. Client also understands that privilege may not be available for communications with an audit client and that KPMG personnel providing audit and non-audit services will discuss matters that may affect the audit to the extent required by applicable professional standards. Client agrees that KPMG will not assert on Client's behalf any claim of privilege unless Client specifically instructs KPMG in writing to do so after discussing the specific request and the grounds on which such privilege claim would be made. Notwithstanding the foregoing, Client acknowledges that in no event will KPMG assert any claim of privilege that KPMG concludes, after exercising reasonable judgment, is not valid.

(d) Unless expressly provided for, KPMG's services do not include representing Client in the event of a challenge by the IRS or other tax or revenue authorities.

(e) Client acknowledges that in connection with any tax compliance services provided by KPMG under the Engagement Letter, KPMG may utilize the services of affiliates and third party service providers within and without the United States to organize and input data, operate the software used to generate tax returns for Client or its personnel and perform other related tasks. Client hereby consents to KPMG's use of such affiliates and third party service providers and the disclosure to such affiliates and third party service providers and their use of tax return information, received from Client or its personnel for the purpose of preparing, assisting in preparing, or obtaining or providing services in connection with preparing, any tax return required under the Engagement Letter.

(f) In rendering tax advice, KPMG may consider, for example, the applicable provisions of the Internal Revenue Code of 1986, as amended, and the Employee Retirement Income Security Act of 1973, each as amended, and the relevant state and foreign statutes, the regulations thereunder, income tax treaties, and judicial and administrative interpretations, thereof. These authorities are subject to change, retroactively or prospectively, and any such changes could affect the validity of KPMG's advice.

## APPENDIX A

### [FORM OF NOTICE AND ACKNOWLEDGEMENT]

[Name of Third Party]
Address

The advice, recommendations and information in the document included with this notice were prepared for the sole benefit of [Name of Client], based on the specific facts and circumstances of [Name of Client], and its use is limited to the scope of KPMG's engagement for [Name of Client]. It has been provided to you for informational purposes only and may not be relied upon by you or any other person or organization. You acknowledge and agree that KPMG accepts no responsibility or liability in respect of the advice, recommendations or other information in such document to any person or organization other than [Name of Client]. You shall have no right to disclose the advice, recommendations or other information in such document to anyone else without including a copy of this notice and obtaining a signed acknowledgement of this notice from the party to whom disclosure is made and you provide a copy thereof to [Name of Client]. You acknowledge and agree that you will be responsible for any damages suffered by KPMG as a result of your failure to comply with the terms of this notice.

*Please acknowledge your acceptance of the foregoing by signing and returning to us a copy of this letter.

Very truly yours,

[Name of Client]

By: _____
     Name:
     Title:

**\*Accepted and Agreed to on this ___ day of ____, 20__ by:**

[Name of Third Party

By: _____
     Name:
     Title:

* Remove if a signed acknowledgement is not required by the terms of Paragraph 4(c).

Revised 9/10/06

**EXHIBIT D**

**Amendments to the Engagement Letter**

Paragraphs 6, 7, 8, and 14 shall be deleted

Paragraph 13 shall be amended to so that the engagement is governed in accordance with the laws of the State of Florida.

**EXHIBIT E**

**Powell Declaration**

MIAMI 1926004.4 7865532451

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

CABI DOWNTOWN LLC,[1]

       Debtor.

_____/

Case No. 09-27168-BKC-LMI

Chapter 11

**DECLARATION OF W. HARTLEY POWELL IN SUPPORT OF EMERGENCY**
**APPLICATION BY DEBTOR FOR INTERIM AND FINAL**
**ORDERS AUTHORIZING THE RETENTION AND EMPLOYMENT OF**
**KPMG LLP AS REVERSE SALES AND USE TAX CONSULTANTS**
**TO THE DEBTOR *NUNC PRO TUNC* TO THE PETITION DATE**
**AND APPROVAL OF CONTINGENCY FEE ARRANGEMENT**

I, W. Hartley Powell, being duly sworn, deposes and says:

      1.     I am a principal of KPMG LLP, a professional services firm ("KPMG").  KPMG

is the United States member firm of KPMG International, a Swiss cooperative.  I submit this

declaration on behalf of KPMG in support of the Emergency Application By Debtor for Interim

and Final Orders Authorizing the Retention and Employment of KPMG LLP as Reverse Sales

and Use Tax Consultants to the Debtor *nunc pro tunc* to the Petition Date, and Approval of a

Contingency Fee Basis (the "Application")[2] pursuant to § 328(a) of the Bankruptcy Code (the

"Bankruptcy Code"), and Rule 2014, 2016 and 6003 of the Federal Rules of Bankruptcy

Procedure (the"Bankruptcy Rules") and Rule 2016-1 of the Local Rules of Bankruptcy Practice

---

     [1]     The Debtor's current mailing address is 19950 W. Country Club Drive, Suite 900, Aventura, Florida 33180.  The last four digits of the Debtor's tax identification number are [0838].

     [2]  Capitalized terms used herein but not otherwise defined shall have those meanings set forth in the Application.

and Procedure of the United States Bankruptcy Court for the Southern District of Florida (the "Local Rules").  I have personal knowledge of the matters set forth herein.[3]

## Qualifications of Professionals

2.    KPMG is a firm of independent public accountants as defined under the Code of Professional Conduct of the American Institute of Certified Public Accountants.

3.    The Debtor has selected KPMG as their reverse sales and use tax consultants because of the firm's diverse experience and extensive knowledge in the fields of accounting, taxation, and operational controls for large sophisticated companies both in chapter 11 as well as outside of chapter 11.

4.    The Debtor has employed KPMG since January 2008.  KPMG is familiar with the books, records, financial information and other data maintained by the Debtor and is qualified to continue to provide tax consulting services to the Debtor.  As such, retaining KPMG is an efficient and cost effective manner in which the Debtor may obtain the requisite services.

## Services to be Rendered

5.    Subject to approval of the Application, pursuant to a separate engagement letter between KPMG and the Debtor (the "Engagement Letter"), which is attached to the Application as Exhibit "C" and as amended by Exhibit "D" to the Application, KPMG will provide reverse sales and use tax services as KPMG and the Debtor shall deem appropriate and feasible in order to advise the Debtor in the course of these cases, including, but not limited to the following:

**Tax Services**
      i.    Review and analysis of sales and use tax transactions for potential sales and use tax refunds;
     ii.    Provide Debtor with a report that quantifies the amount of identified sales and use tax refund opportunities;

---

[3] Certain of the disclosures herein relate to matters within the knowledge of other professionals at KPMG.

     iii.    Discuss with Debtor and agree upon which items will be included in a "claim for refund" to be filed with state taxing authorities;

     iv.    Prepare one or more "claim for refund" package(s) for Debtor's review and approval;

     v.    Coordinate processing of the "claim for refund" packages with the state taxing authority;

     vi.    Assist Debtor in responding to questions related to the refund claims from the state taxing authority; and

     vii.    Represent Debtor before the state taxing authority during the review of Debtor's claims for refund pursuant to the state taxing authority's established formal or informal procedures. KPMG's representation will include any necessary administrative appeals unless such appeals are required to be handled by an attorney; KPMG does not engage in the practice of law.

6.    Subject to this Court's approval of the Application, KPMG is willing to serve as the Debtor's tax consultants and to perform the services described above (collectively, the "Tax Matters").

7.    The deadline for the Debtor to request the sales tax refund is September 1, 2009, and there is no provision in the statute to extend the filing date beyond September 1, 2009.

8.    Although KPMG provided services prepetition in connection with this engagement, the deadline to file the tax return is based on an assessment that was published in August 2009. Accordingly, much of KPMG's work related to the proposed retention will occur postpetition.

9.    KPMG estimates that the Debtor may be eligible to receive between $3.6 million and $4.7 million in sales tax refunds.

### Disinterestedness of Professional

10.    Based upon information supplied by Debtor's counsel, KPMG searched its client database from May 2, 2005 and forward to identify any connection or relationship with the interested parties provided. To the best of my knowledge and based upon the results of the

relationship search described above and disclosed herein, KPMG neither holds nor represents an interest adverse to the Debtor's estate that would impair KPMG's ability to objectively perform professional services for the Debtor.  On an ongoing basis, KPMG will conduct further reviews of its professional contacts as it becomes aware of new parties of interest, as is stated below.

11.      To the best of my knowledge, KPMG is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that, KPMG:

a.      is not a creditor, an equity security holder, or an insider of the Debtor;

b.      is not and was not, within two years before the date of filing of these chapter 11 cases, a director, officer, or employee of the Debtor; and

c.      does not have an interest materially adverse to the interest of the Debtor's estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or for any other reason.

12.      As of the date the Debtor filed for bankruptcy protection, KPMG was not a "creditor" of the Debtor within the meaning of section 101(10) of the Bankruptcy Code.

13.      KPMG has in the past been retained by, and presently provides and likely in the future will provide services for, certain creditors of the Debtor and other parties-in-interest in matters unrelated to such parties' claims against the Debtor or interests in this chapter 11 case. KPMG currently performs, has previously performed or may have performed such services for these interested parties, however, such services, to the extent performed by KPMG, are unrelated to the Debtor or its chapter 11 case.

14.      KPMG has not provided, and will not provide, any professional services to any of the creditors, other parties-in-interest, or their respective attorneys and accountants with regard to any matter related to this chapter 11 case.

4

15.     KPMG is the United States member firm of KPMG International, a Swiss cooperative of member firms, each a separate legal entity, located worldwide.  Only KPMG is being retained in this matter.  KPMG cannot assure that an engagement will not be accepted by a foreign member firm of KPMG International for another party that may bear upon KPMG's engagement by the Debtor.  However, to the extent KPMG is aware of such engagement and believes such engagement may bear upon KPMG's engagement by the Debtor, KPMG will file a supplemental declaration with the Bankruptcy Court.

16.     As part of its practice, KPMG appears in many cases, proceedings, and transactions involving many different law firms, financial consultants, and investment bankers in matters unrelated to these bankruptcy cases.  KPMG has not identified any material relationships or connections with any party-in-interest.  If and when additional information becomes available with respect to any other relationships which may exist between KPMG, foreign member firms of KPMG International, or their partners and professionals and the Debtor, creditors, or any other parties in interest which may affect these cases, supplemental declarations describing such information shall be filed with this Court.

## **Professional Compensation**

17.     As set forth in the engagement letter, KPMG will be reimbursed on a contingent basis in the amount of 15% of the refund received from the Florida Department of Revenue. KPMG will not earn any compensation for its work unless and until a "benefit" is received by the Debtor.  The above fee arrangement encompasses any services rendered in connection with representing the Debtor before state taxing authorities during the review of the Debtor's claims for refund pursuant to the state taxing authority's established formal or informal procedures,

including any necessary administrative appeals unless such appeals are required to be handled by an attorney.

18.     KPMG will not seek reimbursement for expenses incurred.

19.     KPMG requests that the requirements of the Guidelines be tailored to the nature of KPMG's engagement in connection with the Tax Matters and its compensation structure. KPMG has requested, pursuant to § 328(a) of the Bankruptcy Code, payment of its fees on a contingency basis, which, as set forth above, is customary in the Tax Matters.  As such, the submission of detailed information regarding time entries on an tenth of an hour basis pursuant to the Guidelines, are burdensome and unnecessary in light of the contingent fee arrangement. Accordingly, KPMG requests a waiver of any timekeeping requirements that are required under the Guidelines.

20.     KPMG has agreed to modify the Engagement Letter, including the Standard Terms and Conditions attached thereto, during the course of these chapter 11 cases as set forth in Exhibit D attached to the Application.

21.     To the extent the Application is granted, KPMG has agreed to waive amounts owed for professional services rendered prior to the Petition Date.

22.     No commitments have been made or received by KPMG with respect to compensation or payment in connection with these cases other than in accordance with the provisions of the Bankruptcy Code; and there is no agreement or understanding between KPMG and any other entity, other than a member, partner or regular associate of KPMG, for the sharing of compensation received or to be received for services rendered in connection with these proceedings.

23.    This declaration is provided in accordance with section 328 of the Bankruptcy Code, Bankruptcy Rule 2014.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this  25th  day of    August    , 2009.

W. Harley Powell
KPMG  LLP
401 South Tryon Street
Suite 2300
Charlotte, North Carolina 28202