**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**
www.flsb.uscourts.gov

In re:

CABI DOWNTOWN, LLC,   Case No. 09-27168-BKC-LMI
                      Chapter 11

        Debtor.
_____/

**MOTION OF BANK OF AMERICA, N.A., AS ADMINISTRATIVE
AGENT, PURSUANT TO 11 U.S.C. §§ 1112(b), 362(d), 361 AND 363,
FOR AN ORDER DISMISSING THE BANKRUPTCY CASE,
OR, IN THE ALTERNATIVE, GRANTING RELIEF
<u>FROM THE AUTOMATIC STAY AND ADEQUATE PROTECTION</u>**

Bank of America, N.A. as administrative agent ("<u>Administrative Agent</u>") for itself and the other prepetition secured lenders ("<u>Lenders</u>") under that certain Construction Loan Agreement (defined below), by and through undersigned counsel, moves the Court for (i) dismissal of this chapter 11 case (the "<u>Chapter 11 Case</u>") filed by Cabi Downtown, LLC ("<u>Cabi Downtown</u>" or "<u>Debtor</u>"), or, in the alternative, (ii) relief from the automatic stay to allow the Administrative Agent to prosecute its foreclosure action against the Debtor and for adequate protection while prosecuting that action. In support of its motion ("<u>Motion</u>"), the Administrative Agent states as follows:

**<u>JURISDICTION AND VENUE</u>**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 1112(b), 361, 362(d) and 363 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").

**SUMMARY OF MOTION**

2.      This case presents a classic situation of a debtor seeking the protections of chapter 11, despite having no prospect for reorganization, simply to delay a foreclosing secured lender.  The Debtor is a single purpose entity whose assets are fully encumbered by the liens of its undersecured lenders.  The Debtor's schedules reflect that it has few unsecured liabilities (other than contingent liabilities and alleged claims of insiders).  It has few employees and no clear incentive to pursue this chapter 11 case, other than to avoid foreclosure.  Given the statement by the Debtor's counsel at the August 27, 2009 hearing that the Debtor "fully expect[s] to file a plan within the next 90 days," one would think that by Day 27 of this single asset real estate case, the Debtor would have made an effort to address fundamental questions raised by its principal creditor or provide some assurance that the Debtor has a bona fide reorganization strategy.  To the contrary, the Debtor has been slow to respond to basic information requests and has yet to even grant the Administrative Agent a meeting since the Petition Date.  The Debtor's complete silence as to how it plans to formulate and fund a viable chapter 11 plan is unsurprising given the virtual impossibility of achieving that goal.  The Court should not permit the Debtor to waste time and money on a chapter 11 process when reorganization is unrealistic.

3.      While the Debtor remains in chapter 11, the Lenders are being unfairly and substantially prejudiced.  It is unclear whether the Debtor's short-term proposed budget, which contemplates use of all available cash collateral plus debtor in possession financing, is sufficient to preserve the value of the Lenders' collateral.  The Debtor clearly has no equity in that collateral and has no unencumbered assets to offer the Lenders as adequate protection.  Even if the Administrative Agent's pending foreclosure

action was not subject to the automatic stay, the backlog of foreclosure actions before the Circuit Court would likely result in a delay of 6 months or longer to foreclose on the collateral. The Lenders should not be subjected to additional months of delay when the Debtor has no realistic hope of reorganizing and the Lenders' collateral remains at risk.

4. Given these circumstances, the Administrative Agent seeks dismissal of the Debtor's bankruptcy case pursuant to 11 U.S.C. § 1112(b). In the alternative, the Administrative Agent requests that this Court lift the automatic stay pursuant 11 U.S.C. § 362(d)(1) or (d)(2) to allow the Administrative Agent to prosecute its foreclosure action and foreclose on its collateral. In addition, the Administrative Agent respectfully submits that, if the Debtor remains in chapter 11, the Court should grant the Lenders adequate protection in the form of requiring the Debtor (i) to provide on a timely basis all information concerning the collateral as may be reasonably requested by the Administrative Agent from time to time, and (ii) to provide assurances that the Debtor is taking all appropriate measures to preserve and maintain the collateral.

## BACKGROUND

### I.  The Debtor, the Construction Loan and the Project

5. The Debtor, a Florida limited liability company, is a single purpose entity that owns a high rise condominium project in downtown Miami known as Everglades on the Bay (such real and personal property is referred to herein collectively as the "Project").[1] The Project, which was near completion before the Debtor's general contractor abandoned the site, was developed with approximately $241 million in loans advanced by the Lenders pursuant to a Construction Loan Agreement (the "Construction Loan Agreement") dated as of November 18, 2005, as amended, by and among Cabi

---

[1] The address and legal description of the Project are set forth in Exhibit A hereto.

3

Downtown, Abraham Cababie Daniel, Elias Cababie Daniel, Jacobo Cababie Daniel, and Grupo Gicsa, S.A. de C.V. (formerly known as Cabi Control, S.A. de C.V.), and the Administrative Agent.[2] The Project and the proceeds therefrom are pledged to the Lenders as collateral for the Borrower's obligations under the Construction Loan Agreement.[3]

6. The Project consists of two residential condominium towers, which also includes retail space and a health spa. The Project is largely vacant. There are approximately 849 residential condominium units in the Project, of which approximately 86 units have been conveyed to third party purchasers. Prior to the Petition Date, the Debtor leased more than 100 of the residential units, without obtaining the prior written consent of the Lenders (as required under the Loan Documents). Though the Debtor has suggested in a motion filed with this Court that some or all of the leases were executed pursuant to a "deferred purchase" program, the details of that program have not been disclosed to the Administrative Agent.

7. As of the Petition Date, the Debtor's aggregate outstanding obligations to the Lenders were in the principal amount of approximately $209,000,598, plus accrued

---

[2] The Construction Loan Agreement, several promissory notes which were executed in connection with the Construction Loan Agreement, the Mortgage (as defined below) and all other documents executed and/or delivered from time to time in connection with, or otherwise evidencing, securing or related to the Loan, each as may have been amended or modified from time to time, are collectively referred to as the "Loan Documents." Copies of the key Loan Documents are annexed to the Affidavit of G. Alex Haw submitted herewith.

[3] The Lenders' liens and security interests in the Project are evidenced by, among other things: (i) the Second Amendment and Restatement of Mortgage, Assignment of Leases, Security Agreement and Fixture Filing With Future Advance, dated as of November 18, 2005 from the Debtor to the Administrative Agent, recorded in Official Records Book 24022, Page 4009, as modified by the First Modification and the Second Modification (as so modified, the "Mortgage"), which encumbers the real and personal property located in Miami-Dade County, Florida, that is the underlying property for the Project; and (ii) a UCC-1 Financing Statement, filed on December 21, 2005, naming Cabi Downtown, as Debtor, and the Administrative Agent, as Secured Party, with the Florida Secured Transaction Registry under File No. 200501446395 ("Financing Statement").

4

interest, fees, expenses and other costs reimbursable under the Construction Loan Agreement (collectively, the "Indebtedness").[4] A January 15, 2009 appraisal valued the Project at approximately $205,000,000. That valuation assumed, among other things, a sell-out of all residential units in both towers, at a time when 793 units were available for sale. Since that appraisal was completed, the Debtor has closed sales on 30 units and, as noted above, has leased out at least 100 units. The Administrative Agent is in the process of obtaining a current appraisal for the Project but believes based on these factors and others that the current value of the Project is materially less than $205 million, and in any event less than the Indebtedness.

## II.  The Debtor's Defaults, the Foreclosure Action and Petition

### A.  The Debtor's Defaults Under the Construction Loan Agreement

8.  The Debtor failed to comply with the terms of the Loan Documents and is in default due to, among other things, its failure to pay the Loan in full on its maturity date of March 18, 2009 (collectively, the "Defaults").

9.  By reason of the Defaults, the Administrative Agent sent: (i) a default notice to the Debtor on March 24, 2009; (ii) a demand notice to certain guarantors on July 2, 2009; and (iii) a demand notice to the Debtor and the guarantors, on July 23, 2009. Despite the Administrative Agent's demands, the Debtor did not cure the Defaults.[5]

### B.  The Administrative Agent's Foreclosure Action

10.  On August 18, 2009, the Administrative Agent filed an action to foreclose on the Project in the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-

---

[4] An Indebtedness Worksheet pursuant this Court's Guidelines for Relief from the Automatic Stay is annexed hereto as Exhibit B.

[5] Pursuant to sections 4.2 and 5.1 of the Construction Loan Agreement, the Administrative Agent is authorized to appear in this Court on behalf of the Lenders and to pursue enforcement remedies.

Dade County, Florida, General Jurisdiction Division. The proceeding is captioned *Bank of America, N.A. v. Abraham Cababie Daniel, et al.* Case No. 09-56772 CA (24) (the "<u>Foreclosure Action</u>"). Simultaneously therewith, the Administrative Agent filed a motion seeking appointment of a receiver for the Project or, in the alternative, for an order sequestering the collected rents generated by the Project.[6]

11. Prior to filing its Foreclosure Action, the Administrative Agent repeatedly requested information from the Debtor to confirm that the property was being properly maintained. Most of those information requests were ignored.

### C. The Debtor's Bankruptcy Filing

12. On August 18, 2009, one hour after the Administrative Agent filed the Foreclosure Action, the Debtor filed its petition for relief under chapter 11 of the Bankruptcy Code in this Court (the "<u>Petition</u>," Doc. No. 1). The Petition acknowledges that the nature of the Debtor's business is "Single Asset Real Estate as defined in 11 U.S.C. §101 (51B)."

13. On September 11, 2009, the Debtor filed its schedules of assets and liabilities ("<u>Schedules</u>," Doc. No. 93). The Schedules state that the Debtor's secured liabilities include (i) $208,845,897.54 of indebtedness to the Lenders, (ii) approximately $6.7 million of indebtedness to contractors and subcontractors holding mechanic's liens, and (iii) additional claims against "Security Deposits" and "Unit Purchase Deposits." *See* Schedule D. The Schedules further disclose unsecured nonpriority claims of $67,023,415.87, consisting of (i) $57,045,750.50 in "intercompany" debt allegedly owed to the Debtor's parent company and other affiliates, (ii)$4,199,528.37 in trade debt, some

---

[6] Copies of the Administrative Agent's Amended Complaint (excluding exhibits) and Verified Motion for Appointment of Receiver, or in the Alternative, to Sequester Rents, are annexed hereto as Exhibits C and D, respectively.

of which is disputed, and (iii) $5,778,137 in contingent claims for "Unit Purchase Deposits."  *See* Schedule F.

### III.  Maintenance of the Project

14.  Prior to the Petition Date, the Debtor encountered significant problems in the construction, maintenance and marketing of the Project, and also failed to inform the Administrative Agent and obtain its consent with respect to significant matters. Examples of issues the Administrative Agent believes the Debtor has not addressed and likely cannot address absent a substantial infusion of capital include the following:

*A. Failure to Pay Contractors:*

- The general contractor, W.G. Yates & Sons Construction Company, and other contractors, abandoned the project in December 2008 after the Debtor failed to pay a substantial amount (upon information and belief, nearly $15 million) for services performed.  The contractors have not returned to complete the items necessary to obtain the final certificate of occupancy, and, due to the extended period of halted work, a complete life safety re-inspection may be necessary in order to obtain a final certificate of occupancy for the Project.

- Debtor failed to obtain consultant certifications which are required for the final certificate of occupancy.

- Payment disputes exist between the Debtor and the Project's architect.

*B. Items of Deferred Maintenance:*

- Elevator repair work in one of the towers has not yet been completed.

- Several significant plumbing leaks have occurred, and there is water damage in approximately sixty (60) condominium units and six (6) elevators in the north tower, for which the repair work remains incomplete; it is unclear whether the Debtor has received insurance proceeds to address these issues, and, if so, whether those proceeds have been used to complete any repair work.

- Logs indicate that major mechanical systems are in need of additional repair and maintenance work.

- Interior finish and electrical work remains incomplete in several penthouse units, where temporary certificates of occupancy have not been issued.

- Additional bollard work (to protect exposed piping), required for the issuance of a final certificate of occupancy, remains incomplete.

- Miscellaneous electrical work remains incomplete.

- Various mechanical and plumbing work, necessary for the issuance of a final certificate of occupancy, remains incomplete.

- Punch list work remains incomplete at various units and corridor common area locations.

- The maintenance contract for the Project's HVAC's systems have not been finalized.

*C. The Debtor is devoting insufficient staff and resources to the Project.*

- Upon information and belief, prior to the Petition Date, the Debtor reduced its staff to a skeletal crew and placed its Chief Financial Officer on a two day work week.

*D. The Debtor's Failure to Inform the Administrative Agent and Obtain Its Consent with respect to Management and Leasing Matters:*

- Prior to the Petition Date, the Debtor replaced the manager of the Project without prior notice to the Administrative Agent, failed to provide Administrative Agent with a copy of the management agreement, and failed to provide a collateral assignment of the management agreement to Administrative Agent, as required by the Loan Documents.

- The Debtor has entered into leases and/or occupancy agreements for numerous condominium units without the Administrative Agent's prior written consent as required by the Loan Documents, and has failed to provide the Administrative Agent with a copy of such leases and/or occupancy agreements despite the Administrative Agent's multiple requests.

- The Debtor has generally failed to keep the Administrative Agent fully and timely informed as to matters related to the completion, operation, leasing and sales with respect to the Project.

15.   Many of these issues are the subject of information requests that the Administrative Agent submitted to the Debtor before and after the Petition Date,

8

including in the form of an exhibit filed with this Court on August 26. [*See* Doc. No. 45-1]. The Debtor has failed to address the Administrative Agent's questions and has essentially rebuffed requests for a meeting or conference call among principals, citing the need to focus first on preparing Schedules and providing information for the U.S. Trustee. The Administrative Agent believes most if not all of its requests should have been easy for the Debtor to address if it is properly maintaining its books and records.

## RELIEF SOUGHT

16. By this Motion, the Administrative Agent seeks the entry of an order (i) dismissing the Debtor's chapter 11 case pursuant to section 1112(b) of the Bankruptcy Code or, in the alternative, (ii) granting (a) relief from the automatic stay under section 362(d) of the Bankruptcy Code to permit the Administrative Agent to pursue the Foreclosure Action and foreclose on the Project, and (b) adequate protection to the Administrative Agent for the benefit of the Lenders.

## ARGUMENT

### A. Debtor's bad faith filing constitutes cause for dismissal of this Chapter 11 Case pursuant to Bankruptcy Code Section 1112(b)

17. Bankruptcy Code section 1112(b) authorizes a court to dismiss bankruptcy cases for "cause." 11 U.S.C. § 1112(b). Although "cause" is not defined in the Bankruptcy Code, section 1112(b) sets forth a non-exhaustive list of factors that can constitute cause for dismissal. Courts in this Circuit have consistently found that "bad faith" constitutes "cause" for dismissal under section 1112(b). *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir. 1988) (listing factors evidencing bad faith); *see also In re State Street Houses, Inc.*, 356 F.3d 1345 (11th Cir. 2004) (affirming dismissal on "bad faith" grounds of petition filed by single asset real estate chapter 11 debtor with few

creditors, and applying *Phoenix Piccadilly* factors); *In re Midway Inv., Ltd.*, 187 B.R. 382, 388 (Bankr. S.D. Fla. 1995) (noting that *Phoenix Piccadilly* factors are appropriate in single asset cases).

18. There is no legitimate doubt the Petition was filed solely to thwart the Administrative Agent's effort to enforce the Lenders' secured claims in the estate's only significant asset or source of revenue. That is not a proper basis for a chapter 11 filing. The purpose of chapter 11 is to enable a financially distressed debtor to reorganize its financial affairs. *See In re Matter of South County Realty, Inc.*, 69 B.R. 611, 615 (Bankr. N.D. Fla. 1987).

19. The Court of Appeals for this Circuit has made clear that there is no particular test for determining bad faith, but that "the courts may consider any factors which evidence 'an intent to abuse the judicial process and the purposes of the reorganization provisions' or in particular, factors which evidence that the petition was filed to delay or frustrate the legitimate efforts of secured creditors to enforce their rights.'" 849 F.2d at 1394 (quoting *In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir. 1984)). The Court of Appeals has noted that the following factors are particularly relevant to bad faith:

- the debtor only has one asset, the property at issue;
- the debtor has few unsecured creditors whose claims are relatively small compared to the claims of the secured creditors;
- the debtor has few employees;
- the property is subject to a foreclosure action as a result of amounts owing on the debt;

- the debtor's financial problems essentially are a dispute between the debtor and the secured creditors which can be resolved in the pending state court action; and

- the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights.

*See, e.g., State Street Houses,* 356 F.3d 1t 1346-47; *Phoenix Piccadilly,* 849 F.2d at 1394-95.

20.    Here, it cannot be disputed that the Debtor's chapter 11 case has <u>all</u> of the common attributes of an unjustified and improper filing, and, like the petitions in *State Street Houses* and *Phoenix Piccadilly*, it should be dismissed:

| **Indicia of a bad faith filing** | **Presence in this Chapter 11 Case** |
|---|---|
| **(1) The debtor only has one asset, the property at issue.** The Debtor owns a single asset, which is personal and real property consisting of the Project. | ✓ |
| **(2) The debtor has few unsecured creditors whose claims are relatively small compared to the claims of the secured creditors.** The Debtor's schedules reflect that its non-insider creditors' claims are dwarfed by the Debtor's overdue obligations to the Lenders. | ✓ |
| **(3) The debtor has few employees.** The Debtor has very few employees which upon information and belief are not sufficient to adequately manage and maintain the Project. | ✓ |
| **(4) The property is subject to a foreclosure action.** The Project is currently the subject of the Foreclosure Action pending in Florida state court. | ✓ |
| **(5) The debtor's financial problems essentially are a dispute between the debtor and the secured creditors which can be resolved in the pending state court action.** The Debtor's financial problems are essentially a dispute between itself and the Administrative Agent, its largest secured creditor, which will be resolved in the Foreclosure Action. | ✓ |
| **(6) The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights.** The timing of the Petition's filing, which occurred only one hour after the commencement of the Foreclosure Action, evidences an | ✓ |

| | |
|---|---|
| intent to frustrate the Administrative Agent's efforts to enforce its rights under the Loan Documents. | |

21.     Dismissal on grounds of bad faith is also appropriate where "there is no realistic possibility of an effective reorganization." *See Albany Partners*, 749 F.2d at 674 (dismissing petition where "consideration of the economic reality" confronting the debtor supported the conclusion that it had no realistic chance of successfully reorganizing). Indeed, courts "view with a jaundiced eye Chapter 11 petitions by debtors with a single asset and with no meaningful body of creditors other than those who hold a mortgage on the single asset." *South County Realty*, 69 B.R. at 615 (citation omitted).

22.     The Debtor is incapable of demonstrating that there is any reasonable likelihood of a successful reorganization in this case. A vast majority of the Project's units are vacant, and there are major delays in completing the management and construction tasks required to finalize the Project. The Debtor has no assets from which it can generate revenue other than the Project, and given current economic conditions, the Debtor cannot generate revenues sufficient to even satisfy basic maintenance costs, let alone debt service to the Lenders or payments to other creditors. The Debtor has not identified any outside source of revenue or capital that can be reused to repay the hundreds of millions of dollars due the Lenders.[7] Accordingly, the chapter 11 case should be dismissed.

---

[7] Notably, the Debtor's parent company and debtor-in-possession lender has been in payment default of a $10 million loan owed to Bank of America, N.A. since March 2009, which (at minimum) raises questions about the parent's financial strength.

**B.	The Administrative Agent is entitled to relief from the automatic stay under both Sections 362(d)(1) or (d)(2) based upon (i) the Debtor's bad faith, (ii) lack of adequate protection and (iii) lack of equity combined with the Debtor's clear inability to reorganize**

23.	Alternatively, if this Court does not grant the relief under section 1112(b) of the Bankruptcy Code, several independent grounds exist to justify granting the Administrative Agent relief from the automatic stay to prosecute the Foreclosure Action.

24.	Section 362(d) requires the court to grant relief from the automatic stay "for cause, including the lack of adequate protection," or if the debtor lacks equity in the property and the "property is not necessary to an effective reorganization."  11 U.S.C. § 362(d); *see Acquisition Corp. of America v. Federal Savings & Loan Ins. Corp.*, 96 B.R. 380, 382-83 (S.D. Fla. 1988) (affirming grant of stay relief to allow foreclosure on mortgaged property and finding it was warranted under both conditions); *In re Bryan Road, LLC*, 382 B.R. 844, 854 (Bankr. S.D. Fla. 2008) (noting that grounds of cause under § 362(d)(1) can include lack of adequate protection and in order to promote judicial economy).

**(i)	Stay Relief for Cause is Warranted Based on the Debtor's Bad Faith**

25.	Under section 362(d)(1), bad faith is grounds to lift the automatic stay. *See Acquisition Corp.*, 96 B.R. at 384 (applying test to determine bad faith under section 1112(b) to section 362(d)(1) request for stay relief and lifting stay where bankruptcy petition was filed a day before the debtor would have defaulted on debt to a secured creditor); *Phoenix Piccadilly*, 849 F.2d at 1394 (citing *Natural Land Corp. v. Baker Farms, Inc.*, 825 F.2d 296 (11th Cir. 1987).  A court may lift the stay based on a finding

of bad faith even if it permits the bankruptcy petition to be maintained. *See In re Dixie Broadcasting, Inc.*, 871 F.2d 1023, 1029 (11th Cir. 1989).

26. As shown above, this Court should lift the automatic stay for "cause" pursuant to section 362(d)(1) of the Bankruptcy Code, based on the Debtor's bad faith filing of the Petition, and permit the Foreclosure Action to proceed.

    **(ii)**     **Stay Relief is Warranted for Lack of Adequate Protection**

27. Should the Court not find the Debtor's bad faith alone warrants lifting the automatic stay, relief from the stay should nevertheless be granted for lack of adequate protection of the Lenders' security interest in the Project under section 362(d)(1) of the Bankruptcy Code. The Debtor has not provided the Administrative Agent with adequate protection of the Administrative Agent's interest in the Project in the form of interim cash payments, another type of collateral, or the indubitable equivalent of the Lenders' interest in its collateral.[8]

28. At the same time, the Debtor has continued to possess and control the Project and is managing the Project in such a way that is detrimental to the Lenders' security interest. Indeed, upon information and belief, the Debtor received in July 2009 more than $400,000 in insurance proceeds subject to the Lenders' security interest that were required to be used for specific repairs. The Debtor did not remit those funds to the Administrative Agent, and upon information and belief, had not made the required repairs as of July 28, 2009. It is unknown whether the funds are still being held by the Debtor or have been used in violation of the Loan Agreement.

---

[8] Though the Court granted the Administrative Agent replacement liens pursuant to the Interim DIP and Cash Collateral Order, those replacement liens most likely will not protect the Lenders from diminution in value of their collateral since all of the Debtor's assets are already fully encumbered by the Lenders' liens and security interests.

29. In light of the foregoing, the Administrative Agent is entitled to relief from the automatic stay under section 362(d)(1) for "cause" in order to proceed with the Foreclosure Action.

### (iii) Stay Relief is Warranted Because the Debtor Has No Equity in the Property and it is Not Necessary to an Effective Reorganization

30. Section 362(d)(2) provides for relief from the stay if (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2). With respect to the 362(d)(2) requirement that the property must not be necessary to an effective reorganization, this requires more than showing that there could "conceivably" be an effective reorganization. *Acquisition Corp.*, 96 B.R. at 383. Rather, the debtor must show that the plan is "*in prospect.*" *Id.* (emphasis in original). Furthermore, the fact that the debtor must retain the property in order to survive is insufficient. *Id.; see South County Realty*, 69 B.R. at 614 (lifting stay under 362(d)(2) where debt existed of $227,000 against value of property in the amount of $200,000, and the debtor's only asset was the subject property, which if lost left nothing to reorganize).

31. In this case, the facts show that the Debtor is a single purpose entity that developed the Project with approximately $241 million in loans advanced by the Lenders. The Project and the proceeds therefrom are pledged to the Lenders as collateral for a Construction Loan Agreement that matured by its terms in March 2009 after several extensions. Though the Debtor has backed away from its initial concession that the Lenders are undersecured, the evidence will prove that the outstanding indebtedness under the loan (more than $209 million) exceeds the value of the collateral. As noted

15

above, the Debtor has no prospect of any effective reorganization. It simply does not have the funds necessary to continue to maintain the Project or pay its debt to the Lenders.

32. For these reasons, the Administrative Agent submits relief from stay is also warranted under section 362(d)(2).

**C.     The Administrative Agent is Entitled to Adequate Protection
of the Lenders' Interest in the Project**

33. The Administrative Agent is entitled to adequate protection for the Lenders' interest in the Project in accordance with Bankruptcy Code section 361. *See* 11 U.S.C. §§ 361, 363(e). As explained above, the Debtor has been slow and/or unresponsive to the Administrative Agent's reasonable requests for information since well prior to the Petition Date. As a result, the Lenders are concerned that the value of the Project may be at risk as a result of the Debtor's inattention, insufficient liquidity or both.

34. The Administrative Agent seeks adequate protection in the form of an order directing the Debtor to promptly provide complete and competent responses to the Administrative Agent's outstanding information requests. Given the basic and straightforward nature of the requests, the Administrative Agent submits that this request should be easy for a functioning Debtor to accommodate and is necessary in order for the Administrative Agent to obtain some degree of confidence that the Project is being properly maintained.

35. Notice of this Motion is being provided in accordance with Local Bankruptcy Rule 4001-1.

36. No prior request for the relief requested in this Motion has been made to this or any other Court.

**WHEREFORE**, the Administrative Agent requests that this Court (i) dismiss the Debtor's Chapter 11 Case; or, in the alternative, (ii) lift the automatic stay to permit the Administrative Agent to pursue the Foreclosure Action and require the Debtor to provide the Lenders with adequate protection in the Project.

**I HEREBY CERTIFY** that the undersigned attorney is appearing *pro hac vice* in this matter pursuant to Court Order dated August 27, 2009.

**KAYE SCHOLER LLP**

/s/ *Ana M. Alfonso*_____
Ana M. Alfonso
NY Attorney Registration No. 2915080
Jeffrey A. Fuisz
425 Park Avenue
New York, NY 10022
Telephone: 212-836-8000
Facsimile: 212-836-8689
aalfonso@kayescholer.com
jfuisz@kayescholer.com

**I HEREBY CERTIFY** that the undersigned attorney is appearing *pro hac vice* in this matter pursuant to Court Order dated August 26, 2009.

**SHUTTS & BOWEN LLP**

/s/ *Larry I. Glick*_____
Larry I. Glick
NY Attorney Registration No. 1728385
1500 Miami Center
201 South Biscayne Boulevard
Miami, FL  33131
*lglick@shutts.com*
Telephone:  305-358-6300
Facsimile:  305-347-7831

*Attorneys for Bank of America, N.A., as Administrative Agent for itself and other secured Lenders*

17