**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

CABI DOWNTOWN LLC,[1]

Case No. 09-27168-BKC-LMI

Chapter 11

    Debtor.

_____/

**NOTICE OF FILING "REDLINE" COPIES OF AMENDED PLAN**
**AND DISCLOSURE STATEMENT**

CABI Downtown, LLC, debtor and debtor-in-possession (the "Debtor"), by and through

its undersigned counsel, hereby gives notice of filing the attached "redline" copies of the

amendments and revisions to the Debtor's *Second Amended Plan of Reorganization Under*

*Chapter 11* [D.E. 599] and *Disclosure Statement Relating to the Second Amended Plan of*

*Reorganization Under Chapter 11* [D.E. 600], as incorporated in the Debtor's *Third Amended*

*Plan of Reorganization Under Chapter 11* and *Disclosure Statement Relating to the Third*

*Amended Plan of Reorganization Under Chapter 11*.

_____
[1]        The Debtor's current mailing address is 19950 W. Country Club Dr., Suite 900, Aventura, FL 33180.  The
last four digits of the Debtor's tax identification number are [0838].

MIAMI 2188627.1 7865532451

Dated: May 27, 2010

**I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualification to practice in this Court set forth in Local Rule 2090-1(A).**

BILZIN SUMBERG BAENA PRICE & AXELROD LLP
*Counsel for the Debtor*
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131
Telephone:    (305) 374-7580
Facsimile:    (305) 375-7593

By:    /s/ Jeffrey I. Snyder
      Mindy A. Mora
      Florida Bar No. 678910
      mmora@bilzin.com
      Jefrrey I. Snyder
      Florida Bar No. 21281
      jsnyder@bilzin.com
      Tara V. Trevorrow
      Florida Bar No. 30959
      ttrevorrow@bilzin.com

and

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
*Counsel for the Debtor*
1633 Broadway
New York, New York 10019
Telephone:    (212) 506-1700
Facsimile:    (212) 506-1800
Andrew K. Glenn *(pro hac vice)*
New York Bar No. 2767374
aglenn@kasowitz.com
Jeffrey R. Gleit *(pro hac vice)*
New York Bar No. 3928371
jgleit@kasowitz.com

**<u>EXHIBIT A</u>**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

-------------------------------------------------------X

In re:                                    CHAPTER 11
                                          Case No.  09-27168-BKC-LMI

CABI DOWNTOWN, LLC,

            Debtor.

-------------------------------------------------------X

### ~~SECOND~~THIRD AMENDED PLAN OF ~~REORGANIZATION~~LIQUIDATION
### UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

| | |
|---|---|
| **BILZIN SUMBERG BAENA PRICE & AXELROD LLP** | **KASOWITZ, BENSON, TORRES & FRIEDMAN LLP** |
| Mindy A. Mora | Andrew K. Glenn |
| Tara V. Trevorrow | Jeffrey R. Gleit |
| 200 South Biscayne Boulevard, Suite 2500 | Michelle J. Vladimirsky |
| Miami, ~~FL~~Florida 33131 | 1633 Broadway |
| | New York, New York  10019 |

**Counsel for the Debtor**

Dated:  ~~April 21,~~May 27, 2010

TABLE OF CONTENTS

Page

ARTICLE I —DEFINITIONS AND INTERPRETATION.......................................1

   **A.**   **Definitions**.........................................................................1

   **B.**   **Interpretation; Application of Definitions and Rules of
Construction**...................................................................13

ARTICLE II —PROVISIONS FOR PAYMENT OF ADMINISTRATIVE
EXPENSES AND PRIORITY TAX CLAIMS .......................................13

    2.1   *Administrative Expenses*.....................................13

    2.2   *Professional Fee Claims* ....................................14

    2.3   *United States Trustee Fees* ...............................14

    2.4   *Repayment of DIP Loan*. ...................................14

    2.5   *Priority Tax Claims*............................................14

ARTICLE III —CLASSIFICATION OF CLAIMS AND EQUITY
INTERESTS, IMPAIRMENT AND VOTING .................................~~14~~15

ARTICLE IV —PROVISIONS FOR TREATMENT OF CLAIMS AND
EQUITY INTERESTS ...........................................................15

    4.1   *Priority Non-Tax Claims (Class 1)*.......................15

    4.2   *Secured Tax Claim of Miami-Dade County Tax
Collector (Class 2)*............................................~~15~~16

    4.3   *Other Secured Claims (Class 3)*. ......................~~15~~16

    4.4   *Secured Construction Loan Claims (Class 4)*. ...................16

    4.5   *Yates Secured Claim (Class 5a)* .......................~~16~~17

    4.6   *Secured Customer Deposit Claims (~~Class 5b)~~16Applicable to Unit Purchasers w*

    4.7   *General Unsecured Claims (Class 6a)*. ...........~~17~~18

    4.8   *Yates Unsecured or Equitably Subordinated Claim
(Class 6b)* ........................................................18

    4.9   *Old Equity Interests (Class 7)*...........................~~17~~18

i

TABLE OF CONTENTS
(continued)

Page

4.9<u>4.10</u> ..................................................*Nonconsensual Confirmation*.    ~~17~~<u>19</u>

ARTICLE V —MEANS OF IMPLEMENTATION ........................................... ~~17~~<u>19</u>

5.1      *Plan Contributions / New Membership Units.* ..................... 17

5.1      *Sale to Holders of Secured Construction Loan Claims* ........ 19

5.2      *The New Senior Notes* ........................................................ 18

5.3      *Cancellation of Existing Securities and Agreements.* ...... ~~18~~ 19

5.4      *Legal Form and Governance.* ............................................ 18

5.5      *Exemption from Securities Laws.* ....................................... 19

5.3      *Vesting of Property of the Estate* ...................................... 19

5.4      *Prosecution of Debtor's Claims Against Third Parties* ........ 20

5.5      *Liquidation of Estate Property* .......................................... 20

5.6      *Dissolution of Liquidating Debtor* ..................................... 20

5.7      *Funding of Plan Administrator* .......................................... 20

5.8      *Exemption from Transfer Taxes* ...................................... ~~19~~<u>20</u>

~~5.7~~<u>5.9</u> *Expedited Tax Determination.* ......................................... ~~20~~<u>21</u>

5.10      *Cabi Developers LLC as Post-Effective Date Manager
of the Property* ................................................................. 21

ARTICLE VI —PROVISIONS GOVERNING DISTRIBUTIONS ..................... ~~20~~<u>21</u>

6.1      *Date of Distributions* ...................................................... ~~20~~<u>21</u>

6.2      *Distributions Concerning Disputed Unsecured Claims.* . ~~20~~ 22

6.3      *Disbursing Agent.* ............................................................. 21

6.3      *Distributions Made Under Plan.* ....................................... 22

6.4      *Rights and Powers of Disbursing Agent.* .............................. 21

6.5      *Delivery of Distributions.* ................................................. ~~21~~<u>22</u>

TABLE OF CONTENTS
(continued)

Page

6.66.5 *Manner of Payment*........................................2223

6.76.6 *Setoffs and Recoupment*...............................2223

6.86.7 *Allocation of Plan Distributions Between Principal and Interest*.............................................2223

6.96.8 *De Minimis Distributions and Donation of Remaining General Unsecured Claim Cash Distribution Less Than $25.00*..................................................2225.00 24

6.10 *Withholding and Reporting Requirements*...........................23

ARTICLE VII —PROCEDURES FOR TREATING DISPUTED CLAIMS UNDER PLAN OF REORGANIZATION.....................................23LIQUIDATION ..........................................................................................................24

7.1 *Objections*........................................................2324

7.2 *No Distributions Pending Allowance*.................2324

7.3 *Distributions After Allowance*............................24

7.4 *Withholding and Reporting Requirements* 25

ARTICLE VIII —EXECUTORY CONTRACTS AND UNEXPIRED LEASES.. 2425

8.1 *Treatment*........................................................24 25

8.2 *Preconstruction Agreements*.25 *and Prepetition DP Program Agreements*

8.3 *Cure Payments*..................................................2526

8.4 *Rejection Damages Claims*................................25 27

ARTICLE IX —PLAN ADMINISTRATOR...............................................27

9.1 *Purpose of the Plan Administrator* ......................27

9.2 *Resignation, Removal or Replacement of the Plan Administrator* ....................................................27

9.3 *Authority* ...........................................................28

9.4 *Investments of Cash* ..........................................29

iii

TABLE OF CONTENTS
(continued)

Page

9.5     *Distributions.* ................................................................ 30

9.6     *Accounting and Reporting* ........................................... 30

9.7     *Post- Confirmation Expenses and Administrative Reserve* .................................................................... 30

9.8     *Limitation of Liability* ................................................. 31

9.9     *Reliance on Documents.* ............................................... 31

9.10    *Requirement of Undertaking* ....................................... 31

9.11    *Liquidating Debtor* ...................................................... 31

9.12    *Authority of Plan Administrator to act on Behalf of Liquidating Debtor* ...................................................... 32

9.13    *Court Approval* ............................................................ 32

ARTICLE X CONDITIONS PRECEDENT TO CONSUMMATION DATE ...... ~~25~~32

9.1 10.1 ................................... *Conditions Precedent to Confirmation*. ~~25~~32

9.2 10.2 .................................... *Conditions Precedent to Effectiveness*. ~~26~~32

9.3 10.3 .................................................... *Waiver of Conditions*. ~~26~~33

9.4 10.4 ......................................................*Satisfaction of Conditions*. ~~26~~33

ARTICLE ~~X~~ XI EFFECT OF CONFIRMATION ............................................ ~~27~~33

10.1   *Revesting of Assets* ............................................ 27

10.2 11.1 ....................................................*Binding Effect*. ~~27~~33

10.3 11.2 ..............................................*Discharge of Debtor*. ~~27~~33

10.4 11.3 ................................................ *Term of Injunctions or Stays*. ~~28~~ 34

10.5 11.4 ................................................*Indemnification Obligations*. ~~28~~ 35

10.6 11.5 .......................................................*Exculpation*. ~~29~~35

10.7 11.6 ..................................................................... *Releases*. ~~29~~35

TABLE OF CONTENTS
(continued)

Page

10.811.7 ................................................................*Causes of Action*    3036

ARTICLE XI  XII RETENTION OF JURISDICTION .......................................  3037

ARTICLE XII  XIII MISCELLANEOUS PROVISIONS ...................................  3238

12.113.1 .....................................................*Payment of Statutory Fees*.  32 38

12.213.2 .............................................................*Modification of Plan*.  32 39

12.313.3 ...............................................................*Revocation of Plan*.  32 39

12.413.4 .................................................................*Intercompany Claims*.  32 39

12.513.5 .............................................*Dissolution of the Committee*.  3239

12.613.6 .............................................. *Severability of Plan Provisions*.  3339

12.713.7 ...................................................................... *Governing Law*.  3339

12.813.8 .....................................*Compliance with Tax Requirements*.  3340

12.913.9 .........................................................*Computation of Time*.  3340

12.1013.10 ................................................................................. *Notices*.  3440

12.1113.11 .................*Filing or Execution of Additional Documents*.  3441

v

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

---------------------------------------------------------X

In re:                                                          CHAPTER 11
                                                                Case No.  09-27168-BKC-LMI

CABI DOWNTOWN, LLC,


                    Debtor.
---------------------------------------------------------X


**~~SECOND~~THIRD AMENDED PLAN OF ~~REORGANIZATION~~LIQUIDATION**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**


      Cabi Downtown, LLC ("Cabi" or the "Debtor"), as the debtor and debtor in possession hereby proposes the following ~~second~~third amended chapter 11 plan of ~~reorganization~~liquidation, pursuant to section 1121(a) of the Bankruptcy Code:


## ARTICLE I

## DEFINITIONS AND INTERPRETATION

**A.**    **Definitions**.

      The following terms used herein shall have the respective meanings defined below:

      1.1 *Administrative Expense* means any right to payment constituting a cost or expense of administration of the Case that is Allowed under sections 503(b), 507(a)(1), and 507(b) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Debtor's Estate, (b) any actual and necessary costs and expenses of operating the Debtor's business, (c) any indebtedness or obligations incurred or assumed by the Debtor during the Case, (d) any compensation for professional services rendered and reimbursement of expenses incurred, to the extent Allowed by Final Order under section 330 or 503 of the Bankruptcy Code, (e) all fees and charges assessed against the Estate under section 1930 of title 28 of the United States Code, and (f) cure payments for executory contracts and unexpired leases that are assumed under section 365 of the Bankruptcy Code, and (g) all payments made to Holdings, as DIP Lender.

      1.2 *Affiliate* (i) with respect to the Debtor, has the meaning set forth in section 101(2) of the Bankruptcy Code, and (ii) with respect to a any Person

(including, without limitation, the Debtor) means another Person who controls, is controlled by, or is under common control with, such Person.

1.3 **Allowed** means (i) with reference to any Claim, (a) any Claim against the Debtor, which has been listed by the Debtor in its Schedules (as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1007) as liquidated in amount and not disputed or contingent and for which no proof of Claim has been filed, (b) any Claim as to which the liability of the Debtor and the amount thereof are determined by a Final Order, or (c) any Claim against the Debtor allowed pursuant to this Plan, and (ii) with reference to any Claim or Administrative Expense, (a) any Claim or Administrative Expense that is the subject of a timely filed proof of Claim or request for an Administrative Expense as to which no objection to allowance or request for estimation has been interposed on or before the applicable period of limitation fixed by Section 7.1 of this Plan or otherwise ordered by the Bankruptcy Court, or as to which any objection or request for estimation has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, (b) any Claim or Administrative Expense expressly allowed under this Plan, or (c) any Claim or Administrative Expense allowed under section 502, 503, or 1111 of the Bankruptcy Code. Unless otherwise specified in this Plan or ordered by the Bankruptcy Court, "Allowed Claim" or "Allowed Administrative Expense" shall not include interest on such Claim or Administrative Expense from and after the Petition Date.

1.4 **Applicable Rate** means the lesser of (i) five percent (5%), or (ii) the rate equal to the weekly average one-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System for the calendar week preceding the Effective Date and identified at http://www.federalreserve.gov/releases/h15/current/.

1.5 **Assumed Corporate Indemnities** shall have the meaning set forth in **Section 10.511.4** hereof.

1.6 **Assumed and Assigned Preconstruction Agreements** mean all Preconstruction Agreements that are not rejected assumed and assigned to the Transferee in accordance with 11 U.S.C. § 365.

1.7 **Bankruptcy Code** means title 11, United States Code, as amended from time to time, as applicable to the Case.

1.8 **Bankruptcy Court** means the United States Bankruptcy Court for the Southern District of Florida, Miami Division.

2

1.9 **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075, title 28, United States Code, as amended from time to time, as applicable to the Case, and any Local Rules of the Bankruptcy Court.

1.10 **Business Day** means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.11 ~~**Carry Cost Reserve** means a reserve to be funded on the Effective Date by Newco to pay approximately three (3) months of deficits of the Debtors' operating costs, excluding any interest payable on the New Senior Notes.~~

1.11 ~~1.12~~ **Case** means the case commenced by the Debtor in the Bankruptcy Court on the Petition Date under chapter 11 of the Bankruptcy Code.

1.12 ~~1.13~~ **Cash** means legal tender of the United States of America.

1.13 ~~1.14~~ **Cash Collateral and Postpetition Financing Order** means the *Interim Order Pursuant to 11 U.S.C. §§ 105(a), 361, 363 and 364 and Bankruptcy Rule 4001 (I) Authorizing the Debtor (A) to Obtain Secured Post-Petition Financing, and (B) to Use Cash Collateral and to Grant Replacement Liens and (II) to Schedule Final Hearing* [Docket No. 77], as amended by the second, third, fourth, fifth, sixth, seventh, amended seventh, second amended seventh, ~~and~~ third amended seventh, fourth amended seventh, and fifth amended seventh interim orders entered on September 20, 2009, October 21, 2009, December 4, 2009, December 7, 2009, January 13, 2010, February 18, 2010, March 2, 2010, March 18, 2010, ~~and~~ April 7, 2010, May 3, 2010, and May 18, 2010 respectively [Docket Nos. 142, 203, 320, 329, 426, 504, 531, 552, ~~and~~ 584, 616, and 657, respectively].

1.14 ~~1.15~~ **Claim** has the meaning set forth in section 101(5) of the Bankruptcy Code.

1.15 **Collateral** means all of the collateral granted under the Mortgage, the Prepetition Credit Agreement and related documents, including all of the Debtor's interest in the Property, the Customer Deposits, cash collateral and all other collateral.

1.16 **Collected Cash** means, collectively, any amounts recovered from the prosecution of Estate Causes of Action or other liquidation of property of the Estate.

1.17 ~~1.16~~ **Committee** means the official committee of unsecured creditors appointed in the Case pursuant to section 1102(a) of the Bankruptcy Code.

3

1.18 ~~1.17~~ ***Confirmation Date*** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

1.19 ~~1.18~~ ***Confirmation Hearing*** means the hearing conducted by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

1.20 ~~1.19~~ ***Confirmation Order*** means the order or orders of the Bankruptcy Court confirming this Plan.

1.21 ~~1.20~~ ***Construction Loan Claims*** means any and all unpaid principal, accrued and unpaid interest, which have not been waived, unpaid fees and attorneys' fees, and any other charges, amounts and costs owing, accrued, accruing or chargeable in respect of the Debtor's obligations pursuant to the Prepetition Credit Agreement or through the Effective Date, including, without limitation, term loans, advances and/or financial accommodations provided to or for the benefit of the Debtor.

1.22 ~~1.21~~ ***Corporate Indemnities*** means any obligation of the Debtor pursuant to the Debtor's ~~or the Reorganized Debtor's, or any of its Affiliate's,~~ pre-Effective Date or post-Effective Date corporate ~~charters (including, without limitation any New Organizational Documents)~~ charter, bylaws, limited liability company organizational documents, limited liability company operating agreements, agreements, contracts or under any statute or common law arising at any time before the Effective Date to indemnify any former, present and future directors, officers, managers, members, agents, employees and/or Representatives of (i) the Debtor ~~or any Affiliates of the Debtor~~, or (ii) any Person serving in such capacity at the Debtor's request.

1.23 ~~1.22~~ ***Cure*** means the payment of Cash by the Debtor, or the distribution of other property (as the parties may agree or the Bankruptcy Court may order), as necessary to (i) cure a default by the Debtor under an executory contract or unexpired lease of the Debtor and (ii) permit the Debtor to assume such executory contract or unexpired lease under section 365 of the Bankruptcy Code.

1.24 ~~1.23~~ ***Customer Deposit Claims*** means Claims arising under Preconstruction Agreements, other than Preconstruction Agreements assumed pursuant to Section 8.2 of this Plan.

1.25 ~~1.24~~ ***Customer Deposits*** means deposits funded before the Petition Date by customers and held by the Escrow Agent in connection with Preconstruction Agreements.

~~1.25~~ ***DP Program Agreements*** means any agreements entered into prior to the Petition Date between the Debtor and customers whereby the

~~Debtor credits all or part of each prospective purchaser's monthly payments towards the purchase price of residential units at the Property, depending upon when the option is exercised.~~

1.26    ***Developers*** means Cabi Developers LLC.

1.27    ~~1.26~~ ***DIP Financing Claim*** means any and all unpaid principal, accrued and unpaid interest, which have not been waived, unpaid fees and attorneys' fees, and any other charges, amounts and costs owing, accrued, accruing or chargeable in respect of the Debtor's obligations pursuant to the Postpetition Financing Agreement through the Effective Date in favor of the DIP Lender, including, without limitation, term loans, advances and/or financial accommodations provided to or for the benefit of the Debtor

~~1.27    *DIP Contribution* means the conversion of the DIP Financing Claim to the Debtors' reorganized equity to be issued to Newco.~~

1.28    ***DIP Lender*** means Holdings in its capacity as lender under the Postpetition Financing Agreement, or its successors or assigns.

1.29    ~~*Disbursing Agent* means any Person in its capacity as a disbursing agent under **Sections 6.3 and 6.4** hereof.~~***DIP Loan*** means the funds advanced pursuant to that Post Petition Financing Agreement, as amended and in effect from time to time, which provided for up to $3,000,000 debtor in possession loan by Holdings.

1.30    ***Disclosure Statement*** means that certain disclosure statement relating to this Plan, including, without limitation, all exhibits and schedules thereto, as the same may be amended, supplemented or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, Rule 3017 of the Bankruptcy Rules and Rule 3017-1 of the Local Rules.

1.31    ***Disclosure Statement Order*** means the order issued by the Bankruptcy Court approving the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code.

1.32    ***Disputed*** means, with reference to any Claim or Administrative Expense, any such Claim or Administrative Expense (a) to the extent neither Allowed nor disallowed under this Plan or a Final Order nor deemed Allowed under section 502, 503, or 1111 of the Bankruptcy Code, or (b) which has been or hereafter is listed by the Debtor on its Schedules as unliquidated, disputed, or contingent, and which has not been resolved by written agreement of the parties or a Final Order, or (c) as to which the Debtor or any other party in interest has interposed a timely objection and/or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection or request

5

for estimation has not been withdrawn or determined by a Final Order, or (d) which arises in connection with an executory contract which, as of the Confirmation Date, has not yet been assumed by the Debtor, and therefore such contract is deemed rejected pursuant to **Section 8.1** of this Plan.

1.33    ~~*Disputed Class 6 Claim Reserve* means the reserve established pursuant to **Section 6.2** of this Plan for Disputed General Unsecured Claims.~~***Distribution*** means the payment or distribution under the Plan of Estate Property or interests in Estate Property to the Holders of Allowed Claims or Interests.

1.34    ***DP Program Agreements*** means any agreements entered into prior to the Petition Date between the Debtor and customers whereby the Debtor credits all or part of each prospective purchaser's monthly payments towards the purchase price of residential units at the Property, depending upon when the option is exercised.

1.35    ~~1.34~~***Effective Date*** means a Business Day selected by the Debtor, and specified in a notice sent by the Debtor to all parties in interest, on which (a) no stay of the Confirmation Order is in effect and (b) the conditions precedent to the effectiveness of this Plan specified in Section ~~9.2~~10.2 of this Plan shall have been satisfied or waived as provided in Section ~~9.3.~~10.3.

1.35    ~~*Equity Contribution* means the contributions to be made by Newco to the transactions and distributions hereunder including the General Unsecured Claim Cash Distribution, the DIP Contribution, the payment of Pre-Effective Date Interest, the Carry Cost Reserve, the Interest Reserve and any other amounts necessary to pay other Allowed Administrative Expenses.~~

1.36    ***Equity Interest*** means the interest in any equity security, limited liability company interest, partnership interest or limited partnership interest, shares of common stock, shares of preferred stock, or other equity or ownership interests whatsoever in the Debtor represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership interest in the Debtor, whether or not transferable, including (a) any option, warrant, call, subscription, or other right, contractual or otherwise, to acquire any such interest and any redemption, conversion, exchange, put, voting participation, dividend rights, liquidation preferences, or any other designations, rights, or preferences whatsoever, relating to any such equity security, and (b) all rights, interests, and Claims against the Debtor or its respective Affiliates or Representatives (including Claims for fraud, misrepresentation, rescission, reimbursement, contribution, or damages) arising under, or in connection with, or in any way related to

(i) all agreements, including stockholder agreements and management agreements, entered into by the Debtor or its respective Affiliates or Representatives in connection with the issuance of such security or any related transactions or (ii) the purchase or sale of such security or any related transactions.

1.37    ***Escrow Agent*** means Siegfried, Rivera, Lerner, De La Torre & Sobel, PA, in its capacity as escrow agent in connection with the Preconstruction Agreements, Mechanic Lien Claims, and the Yates Settlement Order.

1.38    ***Estate*** means the estate of the Debtor as created under section 541 of the Bankruptcy Code.

1.39    ***Estate Causes of Action*** means all claims and causes of action of the Debtor against third parties arising under Chapter 5 of the Bankruptcy Code, or under related federal or state statutes or common law, including fraudulent conveyance laws.

1.40    ***Estate Property*** means all assets or property of the Estate of any nature whatsoever, real or personal, tangible or intangible, including contract rights, accounts and Estate Causes of Action, Cash on hand, previously or now owned by the Debtor, or acquired by the Estate, as defined in Section 541 of the Bankruptcy Code.

1.41    ~~1.40~~ ***Existing Organizational Documents*** means the Debtor's certificate or articles of incorporation, limited liability company certificate of formation, or other charter documents legally forming and/or organizing the Debtor, and all by-laws and limited liability company operating agreements, all as amended and/or restated up to, and in existence as of, the time immediately prior to the Effective Date. Except to the extent amended or restated by applicable New Organizational Documents, such Existing Organizational Documents will remain in full force and effect.

1.42    ~~1.41~~ ***FA Escrow Account*** means the escrow account holding the funds deposited in escrow pursuant to the Funding Agreement.

1.43    ~~1.42~~ ***Face Amount*** means either (i) the full stated amount claimed by the holder of such Claim in any proof of Claim filed by the bar date established by the Bankruptcy Court or otherwise deemed timely filed under applicable law, if the proof of Claim specifies only a liquidated amount; or (ii) if no proof of Claim has been filed by the bar date or has otherwise been deemed timely filed under applicable law or if the proof of Claim specifies an unliquidated amount, the amount of the Claim (a) acknowledged by the Debtor or ~~Reorganized Debtor~~ Plan Administrator in any objection to such Claim or in the Schedules as an undisputed,

7

non-contingent and liquidated Claim, (b) estimated by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code, or (c) proposed by the Debtor or established by the ~~Reorganized Debtor~~Plan Administrator following the Effective Date.

1.44    ~~1.43~~ *Final Order* means an order or judgment of a court of competent jurisdiction, which has been entered on the docket maintained by the clerk of such court, and which has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending or (b) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired; *provided, however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order, shall not cause such order not to be a Final Order.

1.45    ***Final Decree*** means the final decree entered by the Bankruptcy Court after the Effective Date pursuant to Section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022.

1.46    ~~1.44~~ *Funding Agreement* means the Funding Agreement by and between Cabi and Yates, dated as of November 14, 2008.

1.47    ~~1.45~~ *General Unsecured Claim* means any Claim that arose or accrued prior to the Petition Date that is not an Administrative Expense, Priority Tax Claim, Priority Non-Tax Claim, or Secured Claim, but including, without limitation, Claims arising from the rejection of an unexpired lease or executory contract pursuant to this Plan or other Final Order of the Bankruptcy Court, and the Yates Secured Claim, the Yates Unsecured or Equitably Subordinated Claim if the Debtor is unsuccessful in subordinating such claim, and Secured Customer Deposit Claims to the extent such claims are not Secured Claims.

1.48    ~~1.46~~ *General Unsecured Claim Cash Distribution* means Cash in the amount of $500,000.

1.49    ~~1.47~~ *Guarantees* means those certain guarantees of the obligations owing under the Prepetition Credit Agreement executed by Abraham

8

Cababie Daniel, Elias Cababie Daniel, individually and as Executor of the Estate of Jacobo Cababie Daniel, and Grupo Gicsa, S.A. de C.V.

1.50    ***Guarantors*** mean the obligors under the Guarantees.

1.51    1.48 ***Holder*** means a Person that holds a beneficial interest in a Claim or Equity Interest against the Debtor.

1.52    1.49 ***Holdings*** means CABI Holdings, Inc.

1.53    1.50 ***Indemnified Person*** means any directors, officers, members, managers, agents, Representatives or employees of the Debtor or any of its Affiliates who were directors, officers, members, managers, agents, Representatives or employees of the Debtor or any of its Affiliates before, on or after the Petition Date, and any director, officer, member, manager, agent, Representative or employee of the Reorganized Liquidating Debtor or any of its Affiliates after the Effective Date.

1.54    1.51 ***Intercompany Claim*** means any claim or other right to payment between the Debtor and an Affiliate of the Debtor

1.52    ***Interest Reserve*** means a reserve to be funded on the Effective Date by Newco in the amount sufficient to pay three (3) months of the Debtors' interest expense on the New Senior Notes.

1.55    1.53 ***Lien*** has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.56    1.54 ***Local Rules*** means Local Rules of the United States Bankruptcy Court for the Southern District of Florida.

1.55    ***Managers*** means the managers of the Reorganized Debtor appointed pursuant to **Section 5.4** of this Plan.

1.57    ***Management Period*** means (i) the date that is nine months from the Effective Date, (ii) thirty calendar days after the date on which Developers provides the Transferee with a termination notice, (iii) April 30, 2011 or (iv) the date, if any, on which all or substantially all of the Property is transferred to a third party pursuant to a sale.

1.58    ***Management Services Agreement*** means the agreement between Developers and Transferee, which form shall be included in the Plan Supplement.

1.59    1.56 ***Mortgage*** means the Amended and Restated Mortgage, Assignment of Rents, Security Agreement and Fixture Filing, dated November 18, 2005.

1.57 ~~*Newco* means Cabi Uptown, LLC.~~

1.58 ~~*New Membership Units* means the LLC membership units of Reorganized Debtor to be issued pursuant hereto, substantially in the form set forth in the Plan Supplement.~~

1.59 ~~*New Organizational Documents* means any amended and/or restated organizational documents of the Reorganized Debtor in the forms set forth in the Plan Supplement.~~

1.60 ~~*New Senior Loan Agreements* means the New Senior Notes and those loan, security, pledge, guarantees, and related agreements setting forth the terms of the restructured Prepetition Credit Agreement Obligations.~~ **_Obligations_ mean the Debtor's obligations arising under the Prepetition Credit Agreement.**

1.61 ~~*New Senior Notes* means those senior secured promissory notes to be issued by the Reorganized Debtor, which notes are to be substantially in the form to be set forth in the Plan Supplement, and which shall provide for, among other things, the  following: (i) an aggregate principal amount equal to the amount of Allowed Secured Construction Loan Claims; (ii) a maturity of five (5) years from the Effective Date; (iii) an interest rate of LIBOR plus 250 basis points ; (iv) cash interest payable monthly in arrears at a rate up to 2.5% per annum with remainder paid in kind; (v) no prepayment penalty for payment of principal prior to maturity; (vi) secured pursuant to the Mortgage by a first priority security interest in all of the Reorganized Debtor's assets; and (vii) a carrying costs and interest guaranty provided by Newco.  A term sheet detailing additional terms with respect to the New Senior Notes is attached hereto as Exhibit "A".~~

1.61 ~~1.62~~ *Old Equity Interests* means all the Equity Interests in the Debtor existing immediately prior to the Effective Date.

1.62 ~~1.63~~ *Other Secured Claim* means Secured Claims, but not including Secured Construction Loan Claims, Secured Customer Deposit Claims, and the Yates Secured Claim.

1.63 ~~1.64~~ *Person* means an individual or a partnership, corporation, limited liability company, cooperative, trust, unincorporated organization, association, joint venture, government or agency or political subdivision thereof, or any other form of legal entity.

1.64 ~~1.65~~ *Petition Date* means August 18, 2009, the date on which the Debtor commenced its Case.

1.65 ~~1.66~~ *Plan* means this Third Amended Plan of ~~Reorganization~~Liquidation, including, without limitation, the Plan

Supplement, the exhibits and schedules hereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.67    *Plan Investors* means the investors of the Equity Contribution, consisting of: (i) Jaime Dayan Tawil, contributing 50% towards the Equity Contribution, (ii) Portovision, S.A. de C.V., contributing 14.4% towards the Equity Contribution, (iii) HS Biscayne Lane, LLC, contributing 4.8% towards the Equity Contribution, (iv) Aracfam U.S. Holdings, LLC, contributing 3% towards the Equity Contribution, (v) Maria Hamui Hamui, contributing 1% towards the Equity Contribution, (vi) Guillermo Huber, contributing 1% towards the Equity Contribution, (vii) My Dream Business Jet S.A de C.V., contributing 4.8% towards the Equity Contribution, and (viii) Grupo Gicsa, S.A. de C.V., contributing 21% towards the Equity Contribution.

1.66    *Plan Administrator* means the Person designated by the Debtor to serve in such capacity, by written notice filed with the Bankruptcy Court not less than five (5) Business Days prior to the Confirmation Hearing.  Such notice also contain a description of the compensation to which the Plan Administrator shall be entitled.

1.67    1.68 *Plan Supplement* means the supplement to this Plan, containing certain documents relevant to the implementation of this Plan, including, but not limited to the lists of the initial Managers of the Reorganized Debtor with biographical information, the lists of the initial officers of the Reorganized Debtor with biographical information, and forms of the New Membership Units, New Organizational Documents, and the New Senior NotesManagement Services Agreement.  The Plan Supplement and the documents contained therein shall be filed with the Bankruptcy Court no later than ten (10) Business Days before the deadline for voting to accept or reject this Plan, provided that the documents included therein may thereafter be amended and supplemented prior to execution.

1.68    *Post Confirmation Administrative Reserve* shall have the meaning provided for such term in Section 2.1 of the Plan.

1.69    *Postpetition Financing Agreement* means that certain Secured Super-Priority Debtor In Possession Credit Agreement between the Debtor and the DIP Lender, as amended and in effect from time to time, which provided for a $2,000,0003,000,000 debtor in possession loan, and as authorized by the Bankruptcy Court pursuant to the Cash Collateral and Postpetition Financing Order.

11

1.70    ***Preconstruction Agreements*** mean agreements entered into prior the Petition Date between the Debtor and customers whereby the Debtor pre-sold certain residential units at the Property.

1.71    ***Pre-Effective Date Interest*** means interest payable under the Prepetition Credit Agreement at the non-default rate from the Petition Date through the Effective Date.

1.72    ***Prepetition Agent*** means Bank of America, N.A., or any successor thereto, as administrative agent under the Prepetition Credit Agreement.

1.73    ***Prepetition Credit Agreement*** means that certain Construction Loan Agreement dated as of November 18, 2005 (as subsequently amended), and in effect among the Debtor, the Prepetition Agent, the Prepetition Credit Agreement Lenders, and certain guarantors and all other agreements, instruments, or documents executed by the Debtor in relation thereto, as the same may have been further amended or modified from time to time prior to the Petition Date.

1.74    ***Prepetition Lenders*** means the lenders under the Prepetition Credit Agreement.

1.75    ***Prepetition DP Program Agreements*** means any agreements entered into prior to the Petition Date between the Debtor and customers whereby the Debtor credits all or part of each prospective purchaser's monthly payments towards the purchase price of residential units at the Property, depending upon when the option is exercised.

1.76    1.74 ***Priority Non-Tax Claim*** means any unsecured Claim entitled to priority in payment as specified in section 507(a)(3)-(7) or (a)(10) of the Bankruptcy Code.

1.77    1.75 ***Priority Tax Claim*** means any unsecured Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.78    1.76 ***Property*** means the Debtor's real estate development known as Everglades on the Bay located at 244 Biscayne Boulevard, Miami, Florida 33131.

1.79    1.77 ***Ratable Proportion*** means, with reference to any distribution on account of any Allowed Claim in any class or classes, as applicable, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of Allowed Claims (plus Disputed Claims until disallowed) in the same class or classes, as applicable.

12

1.80 1.78 *Releasee* means each of (a) ~~the officers, directors managers, and members of the Debtor holding office as of the Effective Date of the Plan or at any time subsequent to the Effective Date of the Plan, consisting of Elias Amkie Levy, Elias Cababie Daniel, Abraham Cababie Daniel, Rafael Harari Tussie, Jaime Dayan Tawil, Sandy G. Piqué, and Cara Jenna Yablon (b)~~ Holdings, as the DIP Lender, ~~(c) Newco, as the provider of the Equity Contribution, (d) the Committee, and (e) the Plan Investors~~and (b) the Guarantors.

~~1.79   *Reorganized Debtor* means the Debtor, on and after the Effective Date.~~

1.81 1.80 *Representatives* means, with respect to any particular Person, such Person's  present, former or future officers, directors, employees, consultants, members, managers, partners, principals, agents, advisors (including any attorneys, financial advisors, investment bankers, and other professionals retained by such Persons), Affiliates, funds under management, and representatives.

1.82 1.81 *Schedules* means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms, as such schedules and statements have been or may be supplemented or amended through the Confirmation Date pursuant to Bankruptcy Rule 1007.

1.83 1.82 *Secured Claim* means a Claim secured by a Lien on the Debtor's property, which is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law, but solely to the extent deemed secured by section 506(a) and (b) of the Bankruptcy Code, or a Claim that is subject to setoff under section 553 of the Bankruptcy Code.

1.84 1.83 *Secured Construction Loan Claims* means all Secured Claims arising under or in connection with the Prepetition Credit Agreement including, without limitation, all principal, interests, costs, fees and charges arising thereunder, solely to the extent of the value of the collateral securing such Secured Claims.

1.85 1.84 *Secured Customer Deposit Claims* means those certain Customer Deposit Claims that are found in whole or in part by Final Order or by agreement with the Debtor or the ~~Reorganized~~Liquidating Debtor to be Secured Claims.

1.86 ***Statutory Deposit Refund*** means Customer Deposits required to be disbursed pursuant to the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1703(d)(3)(A).

1.87    1.85 *Secured Tax Claim of Miami-Dade County Tax Collector* means that certain ad valorem tax claim of the Miami-Dade County Tax Collector for 2009 real and personal property taxes.  At the time of the filing of the claim, the amount owed was estimated at approximately $7 million, but said amount has been reduced as each individual unit has closed and taxes on that unit satisfied.

1.86    *Statutory Deposit Refund* means Customer Deposits required to be disbursed pursuant to the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1703(d)(3)(A).

1.88    1.87 *Tax Code* means the Internal Revenue Code of 1986, as amended.

1.89    *Transferee* means the designee of the Prepetition Lenders who shall issue a credit bid with respect to the Property and the Collateral.

1.90    *Unclaimed Distribution* means distributions to holders of Allowed Claims that are returned as undeliverable.

1.91    *Unclaimed Distributions Reserve* means the reserve created with the Unclaimed Distributions that are returned as undeliverable, which may be claimed after the Effective Date.

1.92    1.88 *U.S. Trustee* means the United States Trustee appointed under section 581, title 28, United States Code to serve in the Southern District of Florida.

1.93    1.89 *Yates* means W.G. Yates & Sons Construction Company.

1.94    *Yates Adversary Proceeding* means that certain adversary proceeding captioned Cabi Downtown, LLC v. W.G. Yates and Sons Construction, Adversary Proceeding No. 09-02184.

1.95    1.90 *Yates Escrow Funds* means segregated funds held in escrow by the Escrow Agent for the benefit of the Holder of the Yates Secured Claim, pursuant to the Yates Settlement Order.

1.96    1.91 *Yates Secured Claim* means obligations arising prior to the Petition Date relating to goods or services rendered by Yates on behalf of or for the benefit of the Debtor, to the extent such obligations are entitled to Liens securing repayment under applicable law.

1.97    1.92 *Yates Settlement Order* means the *Agreed Order Granting, in Part, and Denying, in Part, Plaintiff's Emergency Motion for Injunctive Relief* [D.E. 10, Adversary Proceeding No. 09-02522-BKC-LMI].

14

1.98    *Yates Unsecured or Equitably Subordinated Claim* means that portion of the Yates Claims which the Debtor is seeking to subordinate in the Yates Adversary Proceeeding.

B.    **Interpretation; Application of Definitions and Rules of Construction.**

Unless otherwise specified, all section, article, schedule or exhibit references in this Plan are to the respective section in, article of, or schedule or exhibit to, this Plan or the Plan Supplement, as the same may be amended, waived or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained in this Plan. A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of this Plan. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

## ARTICLE II

## PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS

2.1 *Administrative Expenses.*

(a)    Except to the extent that a Holder of an Allowed Administrative Expense agrees to a less favorable treatment, and except as provided in ~~this~~ Section 2.1 of ~~this~~the Plan, as soon as reasonably practicable on or after the Effective Date, the ~~Reorganized Debtor~~Plan Administrator shall pay Cash in an amount equal to such Allowed Administrative Expense to each Holder of an Allowed Administrative Expense; *provided*, *however*, that Allowed Administrative Expenses representing liabilities incurred in the ordinary course of business by the Debtor, shall be assumed and paid by the ~~Reorganized Debtor~~Plan Administrator in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

On the Effective Date, the Plan Administrator, shall, without the need for Bankruptcy Court approval: (a) pay from the Post-Confirmation Administrative Reserve all Allowed Administrative Expense Claims, and (b) create a reserve or reserves to pay any Disputed Administrative Expense Claims and estimated post-Confirmation expenses of the Plan Administrator (collectively, the "Post-Confirmation Administrative Reserve"). The Post-Confirmation Administrative Reserve shall be funded from the Estate's Cash.

The Post-Confirmation Administrative Reserve shall contain funds sufficient to pay Holders of Disputed Administrative Expense Claims the maximum Distribution to which they are entitled under the Plan. The Post-Confirmation

Administrative Reserve shall be maintained by the Plan Administrator in an interest-bearing account pending Distributions.  Any funds remaining in the Post-Confirmation Administrative Reserve after payment in full of all Disputed Allowed Administrative Expense Claims and Post-Confirmation expenses of the Plan Administrator shall be distributed to the Holders of General Unsecured Claims.

### 2.2 *Professional Fee Claims*.

(b)    All Persons seeking awards by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code shall (i) file, on or before the deadline specified in Local Rule 2016-1(c)(1), their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred and (ii) be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court (A) upon the later of (1) the Effective Date and (2) the date on which the order that deemed such Administrative Expense Allowed becomes a Final Order or (B) upon such other terms as may be mutually agreed upon by such Holder and the Reorganized Debtor.  The Reorganized DebtorPlan Administrator.  The Plan Administrator is authorized to pay compensation for professional services rendered and reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

### 2.3 *United States Trustee Fees*

All fees payable under section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date.  All such fees that arise after the Effective Date but before the closing of the Reorganization Case shall be paid by the Plan Administrator. The Plan Administrator will pay fees under section 1930 of title 28 of the United States Code after the Effective Date until a final decree is entered, the Case is Closed, dismissed or converted, and shall file monthly operating reports, until a final decree is entered, the Case is Closed, dismissed or converted.

### 2.4 *Repayment of DIP Loan*.

The Transferee shall be obligated to pay to Holdings in full and final satisfaction of the DIP Financing Claim, the sum of $2.336 million on or before December 31, 2010, which obligation shall be evidenced by a non-interest bearing promissory note executed by the Transferee in favor of Holdings.

### 2.5 2.2 *Priority Tax Claims*.

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive, commencing on as soon as reasonably practicable on or after the Effective Date, and continuing over a period not exceeding five (5) years after the Petition Date, Cash payments in an aggregate amount equal to such Allowed Priority

16

Tax Claim, together with simple interest at the Applicable Rate, subject to the sole option of the Debtor or ~~Reorganized Debtor~~Plan Administrator to prepay the entire amount of the Allowed Priority Tax Claim at any time without penalty.  All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND
## EQUITY INTERESTS, IMPAIRMENT AND VOTING

The categories of Claims and Equity Interests, other than Administrative Expenses and Priority Tax Claims, are classified for all purposes, including voting, confirmation, and distribution pursuant to this Plan, as follows:

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1 | Priority Non-Tax Claims | Unimpaired | No |
| Class 2 | Secured Tax Claim of Miami-Dade County Tax Collector | Impaired | Yes |
| Class 3 | Other Secured Claims | Unimpaired | No |
| Class 4 | Secured Construction Loan Claims | Impaired | Yes |
| Class 5a | Yates Secured Claim | Unimpaired | No |
| Class 5b | Secured Customer Deposit Claims | Impaired | Yes |
| Class 6a | General Unsecured Claims | Impaired | Yes |
| Class 6b | Yates Unsecured or Equitably Subordinated Claim | Impaired | Yes |
| Class 7 | Old Equity Interests | Impaired | No (Deemed to Reject) |

## ARTICLE IV

## PROVISIONS FOR TREATMENT OF CLAIMS AND EQUITY INTERESTS

Claims and Equity Interests shall receive the treatment set forth below.

4.1 *Priority Non-Tax Claims (Class 1)*.

With respect to any Allowed Priority Non-Tax Claims not paid pursuant to prior Bankruptcy Court order, as soon as reasonably practicable on or after the Effective Date or the date that is ten (10) days after the date such claim is Allowed, and except to the extent that a Holder of an Allowed Priority Non-Tax Claim agrees to less favorable treatment, each Allowed Priority Non-Tax Claim shall be paid in full in

cash in accordance with the priorities set forth in section 507 of the Bankruptcy Code. All Allowed Priority Non-Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business.

4.2 *Secured Tax Claim of Miami-Dade County Tax Collector (Class 2).*

As soon as reasonably practicable on or after the Effective Date, the Miami-Dade County Tax Collector shall receive, at the sole option of ~~the Debtor~~Plan Administrator: (a) payment in full in Cash in the amount of the remaining 2009 taxes owed on the disbursement date, which shall include statutory interest in the event that the 2009 taxes are delinquent at the time of payment, provided, however, that so long as either any Value Adjustment Board petitions or any action in the Circuit Court challenging the assessments of the Miami-Dade County Property Appraiser with respect to the taxed real or personal property are pending, such payment shall be limited to the amount of the good faith payment estimated to be due and owing by the Debtor, which amount has already been paid to the Miami Dade Tax Collector, (b) reinstatement of the Secured Tax Claim, which will entitle the Tax Collector to (i) sell tax certificates, to the extent that there are no Value Adjustment Board petitions or any action in the Circuit Court challenging the assessments of the Miami-Dade County Property Appraiser with respect to the taxed real or personal property pending or unless the Debtor agrees to the sale of certificates, and (ii) otherwise proceed pursuant to Florida law, or (c) satisfaction by the surrender of any of the collateral securing the Secured Tax Claim. All postpetition taxes on unsold units owed from 2010 forward shall be paid in the ordinary course prior to delinquency. All taxes remaining due and owing after the final resolution of administrative or judicial challenges to the Property Appraiser's assessments shall be paid within thirty days of the final resolution, and such payment shall include statutory interest, if any, due as of the delinquency date.

4.3 *Other Secured Claims (Class 3).*

As soon as reasonably practicable on or after the Effective Date, except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, each Holder of an Allowed Other Secured Claim shall receive, at the sole option of the ~~Debtor~~Plan Administrator, payment in full in Cash in the amount of the Allowed Other Secured Claim, (b) reinstatement of the Allowed Other Secured Claim, (c) satisfaction by the surrender of the collateral securing such Allowed Other Secured Claim, or (d) a treatment that otherwise renders the Allowed Other Secured Claim unimpaired pursuant to section 1124 of the Bankruptcy Code.

4.4 *Secured Construction Loan Claims (Class 4).*

~~As soon as reasonably practicable on or after the Effective Date, each Holder of an Allowed Secured Construction Loan Claim shall be entitled to its Ratable Proportion of the New Senior Notes.~~

On the Effective Date of the Plan, the Debtor will sell to the Holders of Secured Construction Loan Claims, in consideration for a credit bid by the Transferee,

18

and shall transfer by special warranty deed or bill of sale, as appropriate, and free and clear of all other liens, claims, encumbrances and other interests, on an "as is" basis, all of the Debtor's Collateral securing the Debtor's Obligations, other than those assets of the Debtor, if any, that are designated by the Prepetition Agent as Excluded Assets. Concurrently with the transfer of the Collateral, the Debtor shall transfer control of all of the HOA's and condominium associations at the Property to the Transferee.

In exchange for the transfer of the Debtor's Collateral, the Holders of Secured Construction Loan Claims will not assert any claim against the General Unsecured Claims Cash Distribution.

### 4.5 *Yates Secured Claim (Class 5a).*

As~~On or as~~ soon as reasonably practicable on or after the Effective Date, (a) the Holder of ~~an~~the Allowed Yates Secured Claim shall receive, to the extent of the Allowed amount of its Secured Claim, the amount of $1.8 million held and defined as the Yates Escrow Funds, pursuant to the Yates Settlement Order, and (b) if the Allowed Yates Secured Claim exceeds $1.8 million, then the Holder of an Allowed Yates Claim shall receive, to the extent of the Allowed amount of its Secured Claim, funds payable from the FA Escrow Account established pursuant to and defined in the Funding Agreement~~.~~; provided, however, to the extent the Yates Secured Claim is equitably subordinated by the Court, then such Claim shall be treated as a Claim under Class 6b of the Plan. Any objections filed by the Debtor to the Yates' ~~proofs of claim,~~Claims shall have no bearing on Yates' receiving, on the Effective Date, the amount of $1.8 million held and defined as the Yates Escrow Funds, pursuant to the Yates Settlement Order.

### 4.6 *Secured Customer Deposit Claims (Applicable to Unit Purchasers who deposited 20% or 30% down payments, regardless of whether deposit was used in construction) (Class 5b).*

Each Holder of an Allowed Secured Customer Deposit Claim may elect between Option A, as a full and final settlement of its Claim, and Option B, as follows:

Option A: As soon as reasonably practicable on or after the Effective Date, each Holder of an Allowed Secured Customer Deposit Claim shall receive (a) if such Holder made a Customer Deposit of 20% of the purchase price of the applicable unit, 7.5% of the purchase price for such unit as set forth in the applicable sale agreement or (b) if such Holder made a Customer Deposit of 30% of the purchase price of the applicable unit, 17.5% of the purchase price for such unit as set forth in the applicable sale agreement, which in either the case of (a) or (b) herein, shall be due in a lump sum payable as soon as reasonably practicable after the Effective Date. Such ~~payment~~payments described for distribution to Holders who elect Option A, are being held in a separate escrow account for such Holders and shall be in full and final satisfaction of such Holder's Claim. Concurrently with such payment, the Debtor will receive the balance of the funds in escrow from the deposit

made by such Holder, plus all interest accrued on such Holder's deposit. Any pending litigation against the Debtor, whether in state court or bankruptcy court, commenced by such Holder, will be dismissed with prejudice. Each Holder of an Allowed Secured Customer Deposit Claim shall have the right to apply the amount received under this Section 4.6 of the Plan towards the purchase of a new condominium unit at a price mutually acceptable to such Holder, the Debtor and the Prepetition Agent.

Option B: A Purchaser who elects in writing ~~not~~to reject Option A and to proceed with Option A shall not receive any distribution on the Effective Date, but may retain all rights to contest the Debtor's objection to such Purchaser's proof of claim, whether pursuant to an adversary proceeding or a claim objection. The Customer Deposits, of the Holders who elect Option B, will remain in escrow until the issues are resolved by final order and all appellate remedies are exhausted.

If the Holder of an Allowed Secured Customer Deposit Claim fails to reject Option A and fails to make a written election ~~not~~ to proceed with Option ~~A~~B, such Holder shall be deemed to have consented to the treatment of such Holder's Claim set forth in Option A.

4.7 *General Unsecured Claims (Class 6a).*

On or as soon as reasonably practicable after the Effective Date, or the date that is ten (10) days after the date such claim is Allowed (whichever is later), each Holder of an Allowed General Unsecured Claim except an Allowed Intercompany Claim, shall receive its Ratable Proportion of the General Unsecured Claim Cash Distribution.

4.8 *Yates Unsecured or Equitably Subordinated Claim (Class 6b).*

To the extent that the Debtor or Plan Administrator is successful in subordinating any of Yates' Claims, Yates as holder of the Yates Claims shall not be entitled to, nor shall it receive or retain, any property or interest in property on account of such Yates Claims, other than the distribution provided for under Class 5a of the Plan and the Yates Subordinated Claim will be discharged, cancelled, and expunged. To the extent that the Debtor or Plan Administrator is unsuccessful in equitably subordinating the Yates Claims, Yates shall be entitled to (a) a distribution on its Secured Claim as provided in Class 5a; and (b) the same percentage distribution afforded to Holders of Class 6a General Unsecured Claims on its Allowed Unsecured Claim

4.9 ~~4.8~~ *Old Equity Interests (Class 7).*

On the Effective Date, the Old Equity Interests ~~shall~~will be cancelled and the ~~Holders~~holders of the Old Equity Interests ~~shall~~will not be entitled to, and ~~shall~~will not receive or retain, any property or interest in property on account of such

Old Equity Interests.  On the Effective Date, all obligations of the Debtor to Holders of Old Equity Interests shall be completely discharged.

4.10    ~~4.9~~ *Nonconsensual Confirmation*.

If any impaired class of Claims entitled to vote shall not accept this Plan by the requisite majority provided in section 1126(c) of the Bankruptcy Code, the Debtor reserves the right to amend this Plan, undertake to have the Bankruptcy Court confirm this Plan under section 1129(b) of the Bankruptcy Code or both.  With respect ~~to the impaired class of~~ Old Equity Interests (Class 7) that is deemed to reject this Plan, the Debtor shall request that the Bankruptcy Court confirm this Plan pursuant to section 1129(b) of the Bankruptcy Code.

## ARTICLE V

## MEANS OF IMPLEMENTATION

5.1  ~~*Plan Contributions / New Membership Units*~~*Sale to Holders of Secured Construction Loan Claims*.

~~This Plan will be funded by Newco through the Equity Contribution. In exchange for the Equity Contributions, on the Effective Date, the Reorganized Debtor is authorized to issue 100% of its New Membership Units to Newco, without the need for any further corporate action and without any further action by Holders of Claims or Equity Interests.~~

~~5.2    *The New Senior Notes*.~~

~~On the Effective Date, the Reorganized Debtor is authorized to execute and deliver the New Senior Notes and enter into the New Senior Loan Agreements and incur the indebtedness and obligations thereunder, and perform such obligations, without the need for any further corporate action and without any further action by Holders of Claims or Equity Interests.~~

On the Effective Date of the Plan, the Debtor will be authorized pursuant to the Plan and the Confirmation Order to sell to the Holders of Secured Construction Loan Claims, in consideration for a credit bid by the Transferee, and shall transfer by special warranty deed or bill of sale, as appropriate, and free and clear of all other liens, claims, encumbrances and other interests, on an "as is" basis, all of the Debtor's Collateral securing the Debtor's Obligations, other than those assets of the Debtor, if any, that are designated by the Prepetition Agent as Excluded Assets. Concurrently with the transfer of the Collateral, the Debtor shall transfer control of all of the HOA's and condominium associations at the Property to the Transferee.  An agreement between the Prepetition Lenders, the Prepetition Agent and the Debtor, outlining, in greater detail, the terms of the sale, will be filed with the Plan Supplement.

The Debtor, the Prepetition Lenders and the Prepetition Agent will use commercially reasonable efforts to cause the sale to occur as soon as possible.  The Debtor will move for confirmation of the Plan premised upon the consummation of the sale.

### 5.2 5.3 Cancellation of Existing Securities and Agreements.

On the Effective Date, the Postpetition Financing Agreement, the Prepetition Credit Agreement, all agreements, documents and instruments relating to the Old Equity Interests, and all Old Equity Interests shall be cancelled; *provided, however,* that the Prepetition Credit Agreement shall continue in effect solely to the extent necessary to allow the Reorganized Debtor and the Prepetition Agent to make distributions of the New Senior Notes pursuant to this Plan on account of Allowed Secured Construction Loan Claims*; provided, further, however*, that the Mortgage shall continue in effect and shall secure the New Senior Notes issued pursuant to the Plan.

### 5.3 *Vesting of Property of the Estate.*

Except to the extent otherwise provided herein, upon the occurrence of the Effective Date, any and all Estate Property pursuant to Section 541 of the Bankruptcy Code, including, without limitation, all Estate Causes of Action, shall remain with the Liquidating Debtor, free and clear of all liens, claims, and interests, except as expressly provided in the Plan, but shall be held, maintained and administered solely by the Plan Administrator.

### 5.4 *Legal Form and Governance.**Prosecution of Debtor's Claims Against Third Parties.*

(a)    New Organizational Documents.  The Debtor as may be specified in the Plan Supplement shall be deemed to have adopted its respective New Organizational Documents effective as of the Effective Date.  On the Effective Date, or as soon thereafter as practicable, the Debtor shall file the applicable New Organizational Documents as required or deemed appropriate, with the appropriate Persons in the applicable jurisdiction of incorporation or organization.  The New Organizational Documents shall provide for the New Membership Units, among other things as deemed necessary, advisable or appropriate by the Managers of the Debtor. Except to the extent amended or restated by applicable New Organizational Documents, the Debtor's Existing Organizational Documents will remain in full force and effect after the Effective Date.

(b)    Managers of the Reorganized Debtor.  On the Effective Date, the operation of the Reorganized Debtor shall become the general responsibility of its Managers, subject to, and in accordance with, its New Organizational Documents or Existing Organizational Documents.  The initial Managers of the Reorganized Debtor will be: Elias Cababie Daniel, Elias Amkie Levy, Abraham Cababie Daniel, Rafael Harari Tussie, and Jaime Dayan Tawil, each of whom were also managers of the

22

Debtor. Biographical information for each of the Managers shall be set forth in the Plan Supplement. The Debtor reserves the right, at any time prior to the entry of the Confirmation Order, to amend or supplement the names of those who will be Managers of the Reorganized Debtor.

(c) Officers of the Reorganized Debtor. The initial officers of the Reorganized Debtor will be: Elias Cababie Daniel, President; Elias Amkie Levy, Senior Vice President of Operations; Rafael Harari Tussie, Senior Vice President of Development; and Sandy G. Piqué, Chief Financial Officer. Each of those listed who will be officers of the Reorganized Debtor, were also officers of the Debtor. Biographical information for each of the officers, shall be set forth in the Plan Supplement. The Debtor reserves the right, at any time prior to the entry of the Confirmation Order, to amend or supplement the names of those who will be officers of the Reorganized Debtor.

(d) Due Authorization. On the Effective Date, the adoption of the New Organizational Documents shall be authorized and approved in all respects, to be effective as of the Effective Date, in each case without further action under applicable law, regulation, order, or rule, including without limitation, any action by the directors, Managers, members, partners or stockholders of the Debtor or the directors, Managers, members, partners or stockholders of the Reorganized Debtor. On the Effective Date, the cancellation and termination of all old Equity Interests, the authorization and issuance of the New Membership Units, and all other matters provided in this Plan involving the legal structure or governance of the Reorganized Debtor shall be deemed to have occurred, been authorized, and be in effect from and after the Effective Date, in each case without further action under applicable law, regulation, order, or rule, including, without limitation, any action by the directors, Managers, members, partners or stockholders of the Debtor or the Reorganized Debtor.

Except to the extent otherwise provided herein, the Plan Administrator shall be substituted as the plaintiff in the Estate Causes of Action, if any, to the extent not settled or resolved prior to the Confirmation Date or in accordance with this Plan. The net Cash proceeds recovered through any such actions will constitute Collected Cash. In the event that any Estate Cause of Action is dismissed or abandoned, the Plan Administrator may negotiate with the Committee as to the Committee's authority to prosecute any such actions, with fees to be paid to the Committee in a reasonable amount, mutually acceptable to the Debtor and the Committee.

5.5 *Exemption from Securities Laws*Liquidation of Estate Property.

The issuance of the New Senior Notes and the New Membership Units (to the extent such interests constitute "securities") pursuant to this Plan shall be exempt from any securities laws registration requirements to the fullest extent permitted by section 1145 of the Bankruptcy Code.

23

The Plan Administrator shall liquidate all Estate Property as quickly as practicable in a commercially reasonable manner and reduce such property to Collected Cash; provided, however, if the Plan Administrator determines that an asset is burdensome or of inconsequential value, said asset may be abandoned pursuant to court order.

### 5.6 *Dissolution of Liquidating Debtor.*

In connection with the closing of the Case, the Liquidating Debtor shall be authorized (but not directed) to dissolve in accordance with applicable state law, and the Plan Administrator shall be authorized to dissolve the Liquidating Debtor in accordance with applicable state law.

### 5.7 *Funding of Plan Administrator.*

To the extent necessary, the Prepetition Lenders will provide sufficient funds to the Plan Administrator to effectuate the Plan, including funding, if necessary, for the prosecution of Debtor's claims against third parties, if any, liquidation of Estate Property, and prosecuting Claims objections.

### 5.8 5.6 *Exemption from Transfer Taxes*.

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under or in connection with this Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or otherexecution, delivery or recording of an instrument of transfer under, in furtherance of, or in connection with this Plan, including, without limitation, the New Senior Notes, the New Membership Units, any merger agreements, or agreements of consolidation, deeds, bills of sale, or assignments executed in connection with any of the the Plan, or the transfer or sale of any real, personal or other Property of Estate by the Plan Administrator, including but not limited to all transactions contemplated under this Plan shall not be subject toby or effected in connection with the transfer of the Property to the Transferee, shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee; provided, however, section 1146(a) of the Bankruptcy Code will not exempt the Liquidating Debtor from paying any stamp, real estate transfer, mortgage recording, or other similar tax. for any Condominium Unit sales made in the ordinary course of business. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, mortgage recording tax, intangible tax or similar tax.

### 5.9 5.7 *Expedited Tax Determination*.

The Debtor and the Reorganized DebtorPlan Administrator are authorized to request an expedited determination of taxes under section 505(b) of the

Bankruptcy Code for any or all returns filed for, or on behalf of, the Debtor for any and all taxable periods (or portions thereof) ending before or after the Petition Date through, and including, the Effective Date.

5.10    *Cabi Developers LLC as Post-Effective Date Manager of the Property.*

Following the Effective Date, Developers shall serve as the on site manager of the Property during the Management Period, subject to renewal upon the mutual consent of the Transferee and Developers.  During the term of the Management Period, the only management fee or other consideration due to Developers for such management services shall be as provided in the Management Services Agreement.

During the Management Period, the Transferee shall have the right to direct Developers in all aspects of the management of the Property, including the sales, leasing and construction efforts.  Without limiting the foregoing, the Prepetition Agent shall have the right to replace the property management company (i.e., KW Property Management) and the sales and leasing brokerage company (i.e., RETI) for the Property, in accordance with the termination provisions of the applicable agreements with such companies.

Developers and the Transferee shall cooperate in the smooth and orderly transition of the management of the Property at the conclusion of the Management Period.

The Liquidating Debtor shall use best efforts to transfer to the Transferee all available books, records, items and information pertaining to the operation and management of the Property, all as shall be more particularly described in the interim management agreement by and between Developers and the Transferee.

## ARTICLE VI

## PROVISIONS GOVERNING DISTRIBUTIONS

6.1 *Date of Distributions*.

Unless otherwise provided herein, any distributions and deliveries to be made hereunder shall be made on the Effective Date or as soon as practicable thereafter and deemed made on the Effective Date.  In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

6.2 *Distributions Concerning Disputed Unsecured Claims.*

(a)    Disputed Class 6 Claims Reserve.  From and after the Effective Date, all Cash to be distributed on account of any Disputed General Unsecured

Claims, when and if such Disputed General Unsecured Claims become Allowed, (a) will ~~be~~remain with the Liquidating Debtor, free and clear of all liens, claims, and interests, except as expressly provided in this Plan, but shall be held, maintained and administered solely by ~~and in the name of the Disbursing Agent~~the Plan Administrator, in the Disputed Class 6 Claims Reserve, and will be held in trust pending distribution by the ~~Disbursing Agent~~Plan Administrator for the benefit of the Holders of such Claims and, to the extent that all Disputed General Unsecured Claims are not Allowed in full, for the benefit of Holders of Allowed General Unsecured Claims in accordance with Section ~~7.3~~4.7 of this Plan, (b) will be accounted for separately and (c) will not constitute property of the ~~Reorganized~~Liquidating Debtor except as provided in Section ~~7.3~~4.7 of this Plan.  The ~~Disbursing Agent~~Plan Administrator will invest any Cash in a manner consistent with ~~Reorganized Debtor~~Plan Administrator's investment and deposit guidelines.

(b)    Reserved Amount.  The amount of Cash to be placed in the Disputed Class 6 Claim Reserve shall be calculated as if each Disputed General Unsecured Claim were an Allowed Claim in its Face Amount, such that the Reserved amount shall include the aggregate Ratable Proportion of Cash that such Disputed General Unsecured Claims would receive if they were Allowed in their Face Amount.

(c)    Recourse.  Each Holder of a Disputed General Unsecured Claim will have recourse only to the undistributed Cash held in the Disputed Class 6 Claim Reserve for satisfaction of the distributions to which Holders of Disputed General Unsecured Claims are entitled under this Plan, and not to the ~~Reorganized~~Liquidating Debtor, its property or any assets previously distributed on account of any Allowed Claim.

### 6.3 ~~Disbursing Agent.~~Distributions Made Under Plan.

All distributions under this Plan shall be made by the ~~Debtor as Disbursing Agent or such other entity designated by the Debtor as a Disbursing Agent~~Plan Administrator on the Effective Date, which ~~Disbursing Agent~~Plan Administrator shall not be required to give any bond or surety or other security for the performance of its duties.

### ~~6.4    Rights and Powers of Disbursing Agent.~~

~~(a)    Powers of the Disbursing Agent.  The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under this Plan, (ii) make all distributions contemplated hereby, (iii) employ professionals to represent it with respect to its responsibilities, and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.~~

~~(b)    Expenses Incurred on or After the Effective Date.  Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including, without limitation, taxes) and any reasonable compensation and expense reimbursement claims (including, without limitation, reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtor.~~

6.4 ~~6.5~~ *Delivery of Distributions.*

(a)    Last Known Address.  Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtor or its agents, as applicable, unless the Debtor or ~~Reorganized Debtor~~Plan Administrator has been notified in writing of a change of address, including, without limitation, by the filing of a proof of Claim or interest by such holder that contains an address for such holder different from the address reflected for such holder on the Schedules.  In the event that any distribution to any holder is returned as undeliverable, the ~~Disbursing Agent~~Plan Administrator shall use commercially reasonable efforts to determine the current address of such holder, but no distribution to such holder shall be made unless and until the ~~Disbursing Agent~~Plan Administrator has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest; provided that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of the later of one year from the Effective Date or 6 months after such Claim is Allowed.  After such date, all unclaimed property or interest in property shall ~~revert to Reorganized Debtor~~be paid over by the Plan Administrator to the Court, in accordance with Local Rule of Bankruptcy Procedure 3011-1(B), and the Claim of any other holder to such property or interest in property shall be discharged and forever barred.

(b)    Distributions for Allowed Secured Construction Loan Claims. Distributions required under this Plan to Holders of Allowed Secured Construction Loan Claims in Class 2̶4 shall be made to the Prepetition Agent, which, in turn, shall make the distributions to the Holders of Allowed Secured Construction Loan Claims in accordance with the Prepetition Credit Agreement.

6.5 ~~6.6~~ *Manner of Payment.*

At the option of the ~~Disbursing Agent~~Plan Administrator, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements.~~All distributions of Cash, New Senior Notes, or the New Membership Units to the creditors of the Debtor under this Plan shall be made by, or on behalf of, the Debtor.~~  Cash payments made pursuant to this Plan in the form of checks issued by the Liquidating Debtor or Plan Administrator shall be null and void if not cashed within 120 days of the date of the

issuance thereof.  Requests for reissuance of any check shall be made directly to the Plan Administrator.

### 6.6 6.7 *Setoffs and Recoupment.*

The ~~Debtor~~Plan Administrator may, but shall not be required to, set off against, or recoup from, any Claim and the payments to be made pursuant to this Plan in respect of such Claim, any claims of any nature whatsoever that the Debtor may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or ~~Reorganized~~the Liquidating Debtor of any such claim it may have against such claimant.

### 6.7 6.8 *Allocation of Plan Distributions Between Principal and Interest.*

Except as otherwise provided herein, to the extent that any Allowed Claim entitled to a distribution under this Plan consists of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest (but solely to the extent that interest is an allowable portion of such Allowed Claim pursuant to this Plan or otherwise).

### 6.8 6.9 *De Minimis Distributions and Donation of Remaining General Unsecured Claim Cash Distribution Less Than $25.00.*

No distribution of less than Twenty-Five Dollars ($25.00) shall be made to any Holder of an Allowed Claim.  Such undistributed amount will be retained by the ~~Disbursing Agent~~Plan Administrator to be distributed pro rata at the time of final distributions to Holders of Claims in accordance with the Plan.  If the undisbursed amount of ~~the General Unsecured Claim~~ Cash ~~Distribution~~ is at anytime less than Twenty-Five Dollars ($25.00), the ~~Disbursing Agent~~Plan Administrator shall be authorized to donate such amount in the name of the Creditors without further Bankruptcy Court approval to an organization selected by the ~~Disbursing Agent~~Plan Administrator and officially recognized by the Internal Revenue Service as a charitable organization, as a contribution which would be deductible for federal income tax purposes.

### 6.10 *Withholding and Reporting Requirements.*

In connection with the Plan and all distributions hereunder, the Disbursing Agent shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.  The Disbursing Agent shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.  Notwithstanding any other provision of the Plan, (a) each holder of an Allowed Claim that is to receive a distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment

28

of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution, and (b) no distribution shall be made to or on behalf of such holder pursuant to the Plan unless and until such holder has made arrangements satisfactory to the Disbursing Agent for the payment and satisfaction of such withholding tax obligations. Any property to be distributed pursuant to the Plan shall, pending the implementation of such arrangements, be treated as an undeliverable distribution pursuant to Section 6.5(a) of the Plan.

## ARTICLE VII

## PROCEDURES FOR TREATING DISPUTED
## CLAIMS UNDER PLAN OF REORGANIZATIONLIQUIDATION

7.1 *Objections.*

Except as otherwise provided herein, as of the Effective Date, objections to, and requests for estimation of, Claims may be interposed and prosecuted only by the Reorganized DebtorPlan Administrator. Such objections and requests for estimation shall be served on the respective claimant and filed with the Bankruptcy Court on or before the latest of (a) the deadline established under Local Rule 3007-1(B)(1), (b) sixty (60) days after a proof of Claim has been filed with the Bankruptcy Court, (c) sixty (60) days after an application for allowance of an Administrative Expense has been filed with the Bankruptcy Court in the Case, or (d) with respect to certain Claims identified prior to the Confirmation Date by the Debtor, such other date as may be fixed by the Bankruptcy Court.

7.2 *No Distributions Pending Allowance.*

Notwithstanding any other provision hereof, if any portion of a Claim is Disputed, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes Allowed. In lieu of distributions under this Plan to Holders of Disputed General Unsecured Claims, the Disputed Class 6 ClaimClaims Reserve will be established on the Effective Date to hold property for the benefit of these Claim Holders. The ReorganizedLiquidating Debtor will fund the Disputed Class 6 ClaimClaims Reserve with Cash, as described in Section 6.2 hereof.

7.3 *Distributions After Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of this Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing AgentPlan Administrator shall provide to the holder of such Claim the distributionDistribution (if any) to which such holder is entitled under this Plan. Any amounts that remain in any the Disputed Class 6 ClaimClaims Reserve

29

following resolution and payment of all Disputed General Unsecured Claims shall be distributed to the Holders of Allowed General Unsecured Claims in their respective Ratable Proportions, subject to Section 6.94.7 of the Plan.

### 7.4 *Withholding and Reporting Requirements.*

In connection with the Plan and all distributions hereunder, the Plan Administrator shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.  The Plan Administrator shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.  Notwithstanding any other provision of the Plan, (a) each holder of an Allowed Claim that is to receive a distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution, and (b) no distribution shall be made to or on behalf of such holder pursuant to the Plan unless and until such holder has made arrangements satisfactory to the Plan Administrator for the payment and satisfaction of such withholding tax obligations.  Any property to be distributed pursuant to the Plan shall, pending the implementation of such arrangements, be treated as an undeliverable distribution pursuant to Section 6.4 of the Plan.

## ARTICLE VIII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 8.1 *Treatment.*

Except as otherwise provided herein, including in Section 8.2 (Preconstruction Agreements and Prepetition DP Program Agreements) and Section 10.5 (11.4 Indemnification Obligations), in the Confirmation Order or in any contract, instrument, release, indenture, or other agreement, or document entered into in connection with this Plan, as of the Effective Date the Liquidating Debtor shall be deemed to have rejected each pre-petition executory contract and unexpired lease to which it is a party, unless such contract or lease (a) was previously assumed or rejected by the Debtor, (b) previously expired or terminated pursuant to its own terms, (c) is the subject of a motion to assume filed on or before the Confirmation Date, or (d) is set forth in the Plan Supplement, as an executory contract or unexpired lease to be assumed and/or assumed and assigned to Transferee.  The Confirmation Order shall constitute an order of the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving the contract and lease assumptions or rejections described above, as of the Effective Date.

Each executory contract and unexpired lease that is assumed and relates to the use, ability to acquire, or occupancy of real property shall include (a) all

modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease and (b) all executory contracts or unexpired leases appurtenant to the premises, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other interests in real estate or rights *in rem* related to such premises, unless any of the foregoing agreements has been rejected pursuant to an order of the Bankruptcy Court.

Attached to the Disclosure Statement as Exhibit 5 is a list of Executory Contracts that the Debtor will assume, assume and assign or reject. The Debtor reserves the right, at any time prior to the entry of the Confirmation Order, to amend or supplement the list of Executory Contracts that the Debtor will assume or reject.

Attached to the Disclosure Statement as Exhibit 6 is a list of Executory Contracts that the Debtor will assume or reject. The Debtor reserves the right, at any time prior to the entry of the Confirmation Order, to amend or supplement the list of Executory Contracts that the Debtor will assume.

8.2 *Preconstruction Agreements and Prepetition DP Program Agreements.*

Except and to the extent previously assumed pursuant to an order of the Bankruptcy Court entered on or before the Confirmation Date, all Preconstruction Agreements and Prepetition DP Program Agreements deemed executory contracts assumable by the Debtor pursuant to section 365(a) of the Bankruptcy Code, shall be deemed assumed and assigned to Transferee pursuant to the Confirmation Order. Attached as Exhibit 7 to the Disclosure Statement as Exhibit 6 is a list of Preconstruction Agreements that the Debtor will assume. Attached as Exhibit 8 is a list of and assign to Transferee. Attached to the Disclosure Statement as Exhibit 7 is a list of Prepetition DP Program Agreements that the Debtor will assume. The Debtor reserves the right, at any time prior to the entry of the Confirmation Order, to amend or supplement the list of Preconstruction Agreements and assign to Transferee. The Debtor reserves the right, at any time prior to the entry of the Confirmation Order, to amend or supplement the list of Preconstruction Agreements and Prepetition DP Program Agreements that the Debtor will assume and assign to Transferee.

8.3 *Cure Payments*.

Any monetary amounts by which any executory contract or unexpired lease to be assumed hereunder is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Debtor. If there is a dispute regarding (i) the nature or amount of any Cure, (ii) the ability of the Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (iii) any other matter pertaining to assumption, Cure shall occur following the entry of a Final Order

resolving the dispute and approving the assumption or assumption and assignment, as the case may be.

        8.4 *Rejection Damages Claims*.

**Proofs of all Claims arising out of the rejection of executory contracts and unexpired leases pursuant to this Plan shall be filed with the Bankruptcy Court, with proper supporting documentation detailing the calculation of such claim, and served upon the ~~Debtor~~Plan Administrator and its counsel not later than thirty (30) days after the earlier of (a) the date on which notice of the occurrence of the Effective Date has been served and (b) the date of entry of an order of the Bankruptcy Court approving such rejection.  Any Claims not filed within such time shall be forever barred from assertion against the Liquidating Debtor, its Estate, ~~the Reorganized Debtor,~~ and their respective properties and interests.**

## ARTICLE IX

## PLAN ADMINISTRATOR

    9.1       ***Purpose of the Plan Administrator.***

The Plan Administrator will liquidate all the property of the Estate for the benefit of the holders of Allowed Claims against the Estate, and for payment of all Allowed Claims in accordance with the provisions of this Plan.  The Plan Administrator will be selected by the Liquidating Debtor, will not be supervised by the United States Trustee, and will not be bonded in favor of the United States.  However, the Plan Administrator will be bonded in favor of the Estate and/or the Liquidating Debtor in an agreed upon amount.

    9.2       ***Resignation, Removal or Replacement of the Plan Administrator.***

Resignation of Plan Administrator.  The Plan Administrator may resign at any time upon thirty (30) days' prior written notice to the Office of the United States Trustee, and filed with the Bankruptcy Court.

Removal of Plan Administrator.  The Office of the U.S. Trustee, by motion filed with the Bankruptcy Court, or the Bankruptcy Court, on its own Order to Show Cause, may seek to remove the Plan Administrator for cause, at any time including, without limitation, the violation of any provision of the Plan, or in the event that the Plan Administrator becomes incapable of acting as Plan Administrator as a result of physical or mental disability and such physical or mental disability continues for a period in excess of thirty (30) days (except in the case of death, in which instance, procedures for replacement will begin immediately).

Replacement of Plan Administrator.  The resignation or removal of the Plan Administrator will not be effective, unless otherwise ordered by the Bankruptcy

Court, until a successor Plan Administrator has been selected by the Liquidating Debtor, and the successor accepts such appointment.  The Office of the United States Trustee shall have the right to object to the designated successor Plan Administrator and such objection shall be decided by the Bankruptcy Court.

> 9.3    ***Authority.***

The Plan Administrator shall have the power and authority to perform the following acts, in addition to any powers granted by law or conferred to him by any other provision of this Plan:

> a.    perfect and secure the Estate's right, title and interest to the property comprising the Estate Property;
>
> b.    recover, and to the extent possible, reduce to Cash, all of the Estate Property, including the sale of Estate Property free and clear of liens, with liens to attach to the proceeds, and distribute the net proceeds of the Estate Property, as described herein in accordance with this Plan;
>
> c.    perform the Estate's obligations, including the dissolution of the Debtor following the entry of the Final Decree, and enforce the Estate's rights, with respect to this Plan;
>
> d.    release, convey or assign any right, title or interest in the Estate Property;
>
> e.    execute releases, waivers, settlements and any other documents on behalf of the Debtor in connection with consummation of this Plan;
>
> f.    deposit Estate Cash, draw checks and make disbursements thereof;
>
> g.    employ and retain, and discharge and dismiss, attorneys, accountants, and such other agents as the Plan Administrator may deem necessary or appropriate to assist in fulfilling the purposes of this Plan, and to pay reasonable charges, commissions and compensation to all of the foregoing.
>
> h.    perform the obligations of the Debtor on the Effective Date of this Plan pursuant to any post-petition settlement agreement to which the Debtor was a party, and which has been approved by Final Order;
>
> i.    exercise any and all powers granted to the Plan Administrator by any agreements, including, without limitation, by common law or any statute which serves to increase the extent of the powers granted to the Plan Administrator hereunder;
>
> j.    take such other action as the Plan Administrator may determine to be necessary or desirable to carry out the purpose of this Plan, including,

33

without limitation, addressing tax issues, filing amended and initial tax returns, completing or performing any necessary valuation process, and enforcing all provisions of this Plan;

k.  commence or prosecute, for his/her own account or in the name of the Debtor, any lawsuit or other legal or equitable action, in any court of competent jurisdiction, that is necessary to carry out the terms and conditions of this Plan, including, without limitation, filing and prosecuting objections to Claims and Estate Causes of Action;

l.  settle, compromise or adjust pursuant to the standards of Bankruptcy Rule 9019 (which shall be deemed to apply to all Post-Confirmation settlements) any disputes or controversies in favor of, or against, the Estate;

m.  except to the extent provided herein, have instituted and prosecuted all Claims and Estate Causes of Action that can be brought by a trustee or a debtor under the Bankruptcy Code, and pursuant to the Plan, prosecute or defend all appeals on behalf of the Debtor or the Estate, including, without limitation, objections to Claims pursuant to 7.1 hereof;

n.  in general, without in any manner limiting any of the foregoing, deal with the Estate Property or any part or parts thereof in all other ways as would be lawful for any person owning the same to deal therewith, whether similar to, or different from, the ways above specified at any time or times hereafter; and

o.  manage the affairs of and exercise all authority on behalf of the Liquidating Debtor until such time as the Case is closed.

9.4  *Investments of Cash.*

Except as otherwise provided in this Plan, all Estate Cash, shall be invested by the Plan Administrator with sole and absolute discretion in only (a) direct obligations of, or obligations guaranteed by, the United States of America; (b) obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof; (c) AAA rated tax-free securities issued by municipalities or state governments or agencies; or (d) such other obligations or instruments as may from time to time be approved for such investments by the Bankruptcy Court; provided, however, that the Plan Administrator may, to the extent deemed necessary by the Plan Administrator with sole and absolute discretion to implement the provisions of this Plan, deposit moneys in demand deposits (including money market funds) at any bank, trust company or other financial institution which has, at the time of such deposit a capital stock and surplus aggregating at least $100,000,000. The investment powers of the Plan Administrator, other than those reasonably necessary to maintain the value of

34

the Estate Property, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings or financial institutions, or other temporary, liquid investments, such as U.S. Treasury Bills. Such investments shall mature in such amounts and at such times as may be deemed necessary by the Plan Administrator, with sole and absolute discretion, to provide funds when needed to make Distributions and payments from the Estate Property, as the case may be.

### 9.5    *Distributions.*

The Plan Administrator shall be responsible for making Distributions to holders of Allowed Claims, pursuant to this Plan. Under no circumstances shall the Plan Administrator have any power to engage in any trade or business or any other similar activity on behalf of the Liquidating Debtor, except as specifically provided herein or otherwise reasonably necessary and advisable for the orderly liquidation of the Estate Property.

### 9.6    *Accounting and Reporting.*

The Plan Administrator shall maintain the books and records of the Debtor relating to the operation of the Debtor, which shall contain a description of all Estate Property as of the Effective Date, and of the operation of the Estate by the Plan Administrator, and shall provide an accounting of receipts and disbursements, which shall be open to inspection and review by the Bankruptcy Court, the Office of the United States Trustee, and holders of Allowed Claims (upon reasonable notice). The Plan Administrator shall maintain such records until authorized to dispose of same by order of the Court.  The Plan Administrator shall provide quarterly reports and shall file all quarterly reports with the Bankruptcy Court, as well as a final report prior to the Case being closed by the Bankruptcy Court by the Final Decree.

### 9.7    *Post- Confirmation Expenses and Administrative Reserve.*

All costs, expenses and obligations incurred by the Plan Administrator in administering the Estate Property or in any manner connected, incidental or related thereto including, but not limited to, the fees and expenses of professionals retained by the Plan Administrator to assist in carrying out his duties pursuant to this Plan, Post-Confirmation United States Trustee's fees, and fees and expenses of the Plan Administrator and his or her professionals in pursuing ongoing litigation, shall be paid from the Post-Confirmation Administrative Reserve.

No more frequently than once every thirty (30) days, the Plan Administrator's counsel and any other professional retained by the Plan Administrator shall submit his, her or its statement(s) for services rendered and costs incurred to the Plan Administrator for review and approval.  The statements do not need to conform to the U.S. Trustee's guidelines for fee applications, but must contain adequate information to review the reasonableness of the statements. The Plan Administrator shall have twenty (20) days to object to any such statement.  If no objections are

35

provided to the professional in respect of any such statement, then the Plan Administrator shall promptly pay such statement.  The Bankruptcy Court shall retain jurisdiction to adjudicate any dispute with respect to such statements.

### 9.8     *Limitation of Liability.*

No recourse shall ever be had, directly or indirectly, against the Plan Administrator, his employees or professionals, by legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge, note, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Plan Administrator under this Plan or by reason of the creation of any indebtedness by the Plan Administrator under this Plan for any purpose authorized by this Plan.  All such liabilities, covenants, and agreements of the Plan Administrator, and his professionals and employees, whether in writing or otherwise, under this Plan shall be enforceable only against, and be satisfied only out of, the Estate Property, or such part thereof as shall, under the terms of any such agreement, be liable therefor or shall be evidence only of a right of payment out of the income, proceeds and avails of the Estate Property, as the case may be; every undertaking, contract, covenant or agreement entered into in writing by the Plan Administrator shall provide expressly against the personal liability of the Plan Administrator.

The Plan Administrator, his employees and professionals shall not be liable for any act they may do, or omit to do hereunder or acting in good faith and in the exercise of his, her or its best judgment, and the fact that such act or omission was advised, directed or approved by an attorney acting as attorney for the Plan Administrator shall be conclusive evidence of such good faith and best judgment. However, this Section 9.8 shall not apply to any gross negligence or willful misconduct by the Plan Administrator, or his or her professionals or employees.

### 9.9     *Reliance on Documents.*

The Plan Administrator may rely upon, and shall be protected in acting, or refraining from acting, upon any certificates, opinions, statements, instruments or reports believed by him/her to be genuine and to have been signed or presented by the proper Person or Persons.

### 9.10    *Requirement of Undertaking.*

The Plan Administrator may request any court to require, and any court may in its discretion require, in any suit for the enforcement of any right or remedy under this Plan, or in any suit against the Plan Administrator for any action taken or omitted by the Plan Administrator, that the filing party litigant in such suit undertake to pay the costs of such suit, and such court may in its discretion assess reasonable costs, including reasonable attorneys' fees, against any party litigant in such suit, having due regard to the merits and good faith of the claims or defenses made by such party litigant.

36

9.11     *Liquidating Debtor.*

Post-Confirmation, and until the Case is closed by a Final Decree, the affairs of the Liquidating Debtor shall be managed by the Plan Administrator, who shall have the sole right to act on behalf of the Liquidating Debtor. The Plan Administrator shall prepare and file any tax forms for the Estate and/or the Liquidating Debtor.

9.12     *Authority of Plan Administrator to act on Behalf of Liquidating Debtor.*

As of the Effective Date, the Plan Administrator shall have the sole authority to act on behalf of the Liquidating Debtor under the Plan.

9.13     *Court Approval.*

Any compromise proposed by the Plan Administrator shall be subject to approval by the Bankruptcy Court pursuant to Section 363 of the Bankruptcy Code and/or Bankruptcy Rule 9019. With respect to Estate Property, the Plan Administrator shall have full authority to dispose of such Estate Property without seeking an Order of the Bankruptcy Court. The Plan Administrator may, however, in his sole discretion, seek Bankruptcy Court approval of any transaction executed on behalf of the Estate.

## ARTICLE X~~ARTICLE IX~~

## CONDITIONS PRECEDENT TO CONSUMMATION DATE

10.1     ~~9.1~~ *Conditions Precedent to Confirmation*.

The Plan shall not be confirmed unless and until the following conditions have been satisfied or waived in accordance with Article ~~IX~~X of this Plan: (a) The Confirmation Order, in form and substance satisfactory to the Debtor has been entered on the docket maintained by the Clerk of the Bankruptcy Court; and (b) the Plan, all exhibits thereto, and the Confirmation Order are acceptable in form and substance to the Debtor.

10.2     ~~9.2~~ *Conditions Precedent to Effectiveness*.

The Effective Date shall not occur and this Plan shall not become effective unless and until the following conditions are satisfied in full or waived in accordance with Article ~~IX~~X of this Plan:

(a)     The Confirmation Order is a Final Order on or before ~~July 1,~~August 15, 2010.

~~(b)     All amounts to be paid by Newco as the Equity Contribution are indefeasibly paid in full, in Cash, through the delivery of an irrevocable letter of~~

37

~~credit, through the deposit of Cash in escrow with an escrow agent in the United States, or through the delivery of any other financial instrument approved by the Court;~~

(b) ~~(c)~~ All actions and all agreements, instruments, or other documents necessary to implement the terms and provisions of this Plan~~, including those actions identified in Article V of this Plan,~~ are effected or executed and delivered, as applicable, in form and substance satisfactory to the Debtor; and

(c) ~~(d)~~ All authorizations, consents, and regulatory approvals, if any, required by the Debtor in connection with the consummation of this Plan are obtained and not revoked.

10.3 ~~9.3~~ **Waiver of Conditions**.

Each of the conditions precedent in Section ~~9.2~~10.2 hereof may be waived in writing, in whole or in part by the Debtor.  Any such waivers may be ~~effected~~affected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action.

10.4 ~~9.4~~ **Satisfaction of Conditions**.

Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.  If the Debtor determines that one of the conditions precedent set forth in Section ~~9.2~~10.2 hereof cannot be satisfied and the occurrence of such condition is not waived or cannot be waived, then the Debtor shall file a notice of the failure of the Effective Date with the Bankruptcy Court and the Confirmation Order may be vacated by the Bankruptcy Court.  If the Confirmation Order is vacated pursuant to this Section, this Plan shall be null and void in all respects, and nothing contained in this Plan shall constitute a waiver or release of any Claims against the Debtor or the allowance of any Claim as an Allowed Claim.

## ARTICLE XI~~ARTICLE X~~

### EFFECT OF CONFIRMATION

~~10.1     **Revesting of Assets**.~~

~~On the Effective Date, the Debtor, its properties and interests in property, and its operations shall be released from the custody and jurisdiction of the Bankruptcy Court, and all property of the Estate of the Debtor, including any pre-paid expenses and deposits with vendors, shall vest in the Reorganized Debtor.  From and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, subject to the terms and conditions of this Plan.  As provided in~~

~~Section 10.8 hereof, the Reorganized Debtor shall retain Estate Cause of Action, other than those released in Section 10.8 hereof.~~

11.1    ~~10.2~~ *Binding Effect*.

Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtor <u>or the Liquidating Debtor</u> and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under this Plan, whether or not such holder has accepted this Plan, and whether or not such holder is entitled to a distribution under this Plan.

11.2    ~~10.3~~ *Discharge of Debtor*.

Except to the extent otherwise provided herein or in the Confirmation Order, the rights afforded in this Plan and the treatment of all Claims against or Equity Interests in the Debtor hereunder shall be in exchange for and in complete satisfaction, discharge, and release of all debts of, Claims against, and Equity Interests in, the Debtor of any nature whatsoever, known or unknown, including, without limitation, any interest accrued or expenses incurred thereon from and after the Petition Date, or against its Estate, the ~~Reorganized~~<u>Debtor, the Liquidating</u> Debtor, or its properties or interests in property.  Except as otherwise provided herein or in the Confirmation Order, upon the Effective Date, all Claims against and Equity Interests in the Debtor shall be satisfied, discharged and released in full exchange for the consideration, if any, provided hereunder.  Except as otherwise provided herein or in the Confirmation Order, all Persons shall be precluded from asserting against the Debtor or the ~~Reorganized~~<u>Liquidating</u> Debtor or its properties or interests in property including the <u>Property and the Estate</u> Property, any other Claims based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

11.3    ~~10.4~~ *Term of Injunctions or Stays*.

~~(a)~~ *Except as otherwise expressly provided herein or in the Confirmation Order, all Persons who have held, hold or may hold Claims or Equity Interests will be permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on or arising out of any such Claim or Equity Interest against the Debtor or* ~~*Reorganized*~~*<u>Liquidating</u> Debtor, or its Affiliates or Representatives, (ii) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtor or* ~~*Reorganized*~~*<u>Liquidating</u> Debtor, or their respective Affiliates or Representatives, with respect to such Claim or Equity Interest, (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or* ~~*Reorganized*~~*<u>Liquidating</u> Debtor, or their respective Affiliates or Representatives, or against the property or interests in property* ~~*of the Debtor or Reorganized Debtor*~~*, including the Property, <u>of the Debtor or Liquidating Debtor,</u> or their respective Affiliates or Representatives, with respect to such Claim*

39

***or Equity Interest, and (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due to the Debtor or*** ~~Reorganized~~***Liquidating Debtor, or their respective Affiliates or Representatives, or against the property or interests in property of the Debtor or*** ~~Reorganized~~***Liquidating Debtor, or their respective Affiliates or Representatives, with respect to such Claim or Equity Interest.*** ~~For the avoidance of doubt, this Section 10.4(a) shall not constitute a release of the Guarantees; provided,~~ ~~however,~~ *if and*

***Moreover,* to the extent there are obligations arising under the Guarantees remaining on the Effective Date of the Plan, enforcement of such obligations shall be enjoined** ~~so long as the Reorganized Debtor is not in default under the terms of the New Senior Notes.~~ **.**

~~(b)~~ Unless otherwise provided in the Confirmation Order, all injunctions or stays arising under or entered during the Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until and after the Effective Date, provided, however, that no stay or injunction shall remain in full force after the Effective Date for post-confirmation acts.

~~(c)~~ ***In furtherance of the foregoing, on and after Effective Date, any "fifty percent shareholder" (within the meaning of section 382(g)(4)(D) of the Tax Code) shall be enjoined from claiming a worthless stock deduction with respect to any* Old *Equity Interests held by such Person for any taxable year of such shareholder ending prior to the Effective Date.***

### 11.4   ~~10.5~~ Indemnification Obligations.

The Debtor's obligations under the Corporate Indemnities to indemnify any Indemnified Person with respect to Claims arising prior to the Effective Date will be deemed and treated as executory contracts that are assumed by the ~~Reorganized~~Liquidating Debtor pursuant to this Plan and sections 365 and 1123(b) of the Bankruptcy Code as of the Effective Date and the occurrence of the Effective Date shall be the only condition necessary to such assumption and all requirements for Cure and/or adequate assurance of future performance under section 365 for such assumption shall be deemed satisfied (the "Assumed Corporate Indemnities").

### 11.5   ~~10.6~~ Exculpation.

As of the Confirmation Date, the Debtor ~~and its~~, the Liquidating Debtor, the Plan Administrator, and their Affiliates and Representatives shall be deemed to have solicited acceptances of ~~this~~the Plan ~~of Reorganization~~ in good faith and in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules. ***The Debtor, the* ~~Reorganized~~*Liquidating Debtor,* ~~Holdings~~*the Plan Administrator, the* ~~Disbursing~~*Prepetition Agent,* ~~and~~*the* ~~Committee~~*Prepetition Lenders and each of their respective Affiliates and Representatives shall have no liability to any holder of any Claim or Equity Interest or any other Person for any***

***act or omission taken or not taken in good faith in connection with, or arising out of, the Case, the Disclosure Statement, ~~this~~the Plan, the Postpetition Financing Agreement, the Postpetition Financing Order, the solicitation of votes for and the pursuit of confirmation of ~~this Plan, the offer and issuance of any securities under this~~the Plan, the consummation of ~~this~~the Plan, or the administration of ~~this~~the Plan or the property to be distributed under ~~this~~the Plan, except for willful misconduct ~~or,~~ gross negligence, or ordinary malpractice with respect to any professionals retained, as determined by a Final Order and, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under ~~this~~the Plan.***

    11.6   ~~10.7~~**Releases**.

        For good and valuable consideration, including, but not limited to, the distributions to be made under the Plan, ~~and the services of the Committee, the acceptance of the terms hereof by and the conversion of the Claims held by the DIP Lender, and the Plan Contributions,~~ effective as of the Effective Date, each ~~Releasee is hereby released by all of the creditors of the Debtor, all Persons who have held, hold or may hold any Claim or Equity Interest, all other Persons,~~of the Releasees, the Prepetition Agent, and those Prepetition Lenders who execute a mutual release, are hereby released by the Debtor, the Estate, and the ~~Reorganized~~Liquidating Debtor from any and all claims, debts, obligations, rights, suits, damages, actions, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, directly or indirectly arising from or related to the Debtor, existing as of the Effective Date or thereafter arising, in law, at equity, or otherwise, that any of the ~~creditors of the Debtor, any Persons who have held, hold or may hold any Claim or Equity Interest, any other Persons, the~~ Debtor, the Estate or the ~~Reorganized~~Liquidating Debtor would have been legally entitled to assert in its own right (whether individually or collectively) or ~~that any creditors of the Debtor, any Persons who have held, hold or may hold any Claim or Equity Interest, or any other Person~~a creditor or equity holders would have been legally entitled to assert on behalf of the Debtor ~~or,~~ the Estate or the ~~Reorganized~~Liquidating Debtor, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including without limitation, claims, actions, and causes of action arising from actions taken or not taken in good faith, taking place before the Petition Date in connection with ~~the Case, this~~or relating to the Debtor or in connection with, related to, or arising out of the Obligations, the Case, the pursuit of confirmation of the Plan, the consummation thereof, the administration thereof or the property to be distributed under the Plan, the Prepetition Credit Agreement, the Prepetition Pledge Agreement, the Prepetition Security Agreement, the Guarantees, all agreements, documents and instruments relating to the Old Equity Interests, all Old Equity Interests, the Postpetition Financing Agreement, the Postpetition Financing Order, and ~~the restructuring of the Debtor and~~any other transaction contemplated by ~~this~~the Plan; *provided, however*, that nothing herein shall be deemed to release any rights, claims, or interests that any such party may be receiving or retaining pursuant to ~~this~~the Plan on or after the Effective Date. All Persons shall be precluded and permanently enjoined from asserting against the Releasees, the Prepetition Agent, and those Prepetition Lenders who execute a Release

in accordance with the Management Services Agreement, and their respective assets and properties, any and all claims, debts, obligations, rights, suits, damages, actions, causes of action, remedies, and liabilities whatsoever which are released under ~~this~~ Section ~~10.7.~~11.6 of this Plan.  Any Person injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages, from the willful violator. ~~For the avoidance of doubt, this Section 10.7 shall not constitute a release of the Guarantees; provided, however, if and to the extent there are obligations arising under the Guarantees remaining on the Effective Date of the Plan, enforcement of such obligations shall be enjoined so long as the Reorganized Debtor is not in default under the terms of the New Senior Notes.~~

Furthermore, each of the Prepetition Agent and Prepetition Lenders, who receive a mutual release, hereby release each of the Debtor, Holdings, and the Guarantors from all claims and liabilities based in whole or in part on any act, omission, transaction, event or other occurrence (i) taking place before the Petition Date in connection with or relating to the Debtor or (ii) in connection with, related to, or arising out of the Obligations, the Debtor's chapter 11 case, the pursuit of confirmation of the Plan, the consummation thereof, the administration thereof or the property to be distributed under the Plan

11.7    ~~10.8~~ *Causes of Action.*

Effective as of the Effective Date, except to the extent otherwise provided herein, the Plan Administrator shall be substituted as the plaintiff in the Estate Causes of Action, including all preference or other avoidance action claims and actions of the Debtor arising under chapter 5 of the Bankruptcy Code, if any, to the extent not settled or resolved prior to the Confirmation Date or in accordance with this Plan, and shall be retained by the ~~Reorganized~~Liquidating Debtor and Plan Administrator, provided, however, that any such Estate Causes of Action against Holdings, ~~and any~~the Prepetition Agent and those Prepetition Lenders who provide a mutual release, or the Debtor, or any of the Debtor's current officers or directors ~~of the Debtor,~~ or any of its respective Representatives or Affiliates, are released and extinguished.  Attached as Exhibit "3" to the Disclosure Statement is a non-exhaustive list of currently known causes of action that the ~~Reorganized~~Liquidating Debtor has retained.  The ~~Reorganized~~Plan Administrator, on behalf of the Liquidating Debtor reserves its right to bring any and all other Estate Causes of Action not identified on Exhibit 3.

# ARTICLE XII~~ARTICLE XI~~

## RETENTION OF JURISDICTION

The Bankruptcy Court shall have exclusive jurisdiction of all matters, except as expressly noted herein, arising out of, or related to, the Case and this Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)     To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and the allowance of Claims including any Administrative Expenses resulting therefrom;

(b)     To determine any and all adversary proceedings, applications, and contested matters that are pending on the Effective Date;

(c)     To ensure that distributions to Holders of Allowed Administrative Expenses and Allowed Claims are accomplished as provided herein;

(d)     To hear and determine any timely objections to, or requests for estimation of, Administrative Expenses or proofs of claims, including, without limitation, any objections to the classification of any Administrative Expense, Claim or Equity Interest, and to allow or disallow any Disputed Administrative Expense or Disputed Claim, in whole or in part;

(e)     To resolve disputes as to the ownership of any Administrative Expense, Claim or Equity Interest;

(f)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(g)     To issue such orders in aid of execution of this Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(h)     To consider any amendments to or modifications of this Plan, or to cure any defect or omission, or reconcile any inconsistency, in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(i)     To hear and determine all applications of retained professionals under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date;

(j)     To hear and determine disputes or issues arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order, any transactions or payments contemplated hereby, any agreement, instrument, or other document governing or relating to any of the foregoing, or any settlement approved by the Bankruptcy Court;

(k)     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including, without limitation, any request by the Debtor prior to the Effective Date, or request by the ~~Reorganized Debtor~~Plan Administrator after the Effective Date, for an expedited determination of tax under section 505(b) of the Bankruptcy Code);

43

(l)      To hear any other matter not inconsistent with the Bankruptcy Code;

(m)      To hear and determine all disputes involving the existence, scope, and nature of the discharges, releases and injunctions granted under this Plan, the Confirmation Order, or the Bankruptcy Code;

(n)      To issue injunctions and effect any other actions that may be necessary or desirable to restrain interference by any Person with the consummation or implementation of this Plan;

(o)      To enter a ~~final decree~~Final Decree closing the Case; and

(p)      To hear any claim, matter or chose in action, whether or not it has been commenced prior to the Effective Date, that the ~~Debtor or Reorganized Debtor~~Plan Administrator may prosecute, including any Estate Causes of Action which has not been liquidated prior to the Effective Date, including, without limitation, any matter for which the United States District Court for the Southern District of Florida ~~(the "District Court")~~ may also have concurrent jurisdiction, in which case the claim, matter, or chose in action may also be heard by the District Court.

## ARTICLE XIII~~ARTICLE XII~~

## MISCELLANEOUS PROVISIONS

13.1      ~~12.1~~*Payment of Statutory Fees*.

All fees payable under section ~~1930, chapter 123,~~1930 of title ~~28,~~28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date.  All such fees that arise after the Effective Date but before the closing of the Reorganization Case shall be paid by the ~~Reorganized Debtor.  The obligation of the Reorganized Debtor to pay quarterly fees to the Office of the United States Trustee pursuant to~~Plan Administrator.  The Plan Administrator will pay fees under section 1930 of title 28 of the United States Code ~~shall continue until such time as~~after the Effective Date until a final decree is entered, the Case is Closed, dismissed or converted, and shall file monthly operating reports, until a final decree is entered, the Case is Closed, dismissed or converted.

13.2      ~~12.2~~*Modification of Plan*.

The Plan may be modified by the Debtor, in accordance with section 1127 of the Bankruptcy Code.

13.3      ~~12.3~~*Revocation of Plan*.

The Debtor reserves the right at any time prior to the entry of the Confirmation Order, to revoke and withdraw this Plan.

13.4    12.4 *Intercompany Claims*.

Notwithstanding anything to the contrary Except as set forth herein, on the Effective Date, Intercompany Claims will be adjusted and discharged to the extent determined appropriate by the Debtor, with the consent of Holdings, taking into account the economic condition of the Reorganized Debtor discharged and extinguished by this Plan.

13.5    12.5 *Dissolution of the Committee*.

On the Effective Date, the Committee shall be dissolved and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from and in connection with the Case, and the retention or employment of the Committee's attorneys, accountants, and other agents, if any, shall terminate other than for purposes of filing and prosecuting applications for final allowances of compensation for professional services rendered and reimbursement of expenses incurred in connection therewith.

13.6    12.6 *Severability of Plan Provisions*.

In the event that, prior to the Confirmation Date, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable in accordance with its terms.

13.7    12.7 *Governing Law*.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to this Plan or Plan Supplement provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties, and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida without giving effect to the principles of conflict of laws.

13.8    12.8 *Compliance with Tax Requirements*.

In connection with the consummation of this Plan, any party issuing any instrument or making any distribution under this Plan, including any party described in Section 6.2 above, shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all

distributions under this Plan shall be subject to any such withholding or reporting requirements.  Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under this Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution.  Any party issuing any instrument or making any distribution under this Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

Those Claimants whose Claims are classified as Class 5b Secured Customer Deposit Claims, and elect Option A under the Plan, are advised to speak with a tax advisor regarding the tax ramifications, if any, of forfeiting the remainder of their Customer Deposits.

13.9    12.9 *Computation of Time.*

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

13.10    12.10 *Notices*.

All notices, requests, and demands to or upon the Debtor to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> Cabi Downtown, LLC
> 19950 West Country Club Drive
> Suite 900
> Aventura, FL 33180
>
> - and –
>
> Kasowitz, Benson, Torres &
>   Friedman, LLP
> 1633 Broadway
> New York, New York  10019
> Attn:  Andrew K. Glenn, Esq.
>        Jeffrey R. Gleit, Esq.
>        Michelle J. Vladimirsky, Esq.
> Facsimile:  (212) 506-1800
> Bilzin Sumberg Baena Price & Axelrod LLP
> 200 South Biscayne Boulevard
> Suite 2500
> Miami, FL 33131
> Attn:  Mindy Mora, Esq.

46

Tara V. Trevorrow, Esq.
Facsimile: (305) 351-2242

13.11   12.11 ***Filing or Execution of Additional Documents***.

On or before the Effective Date, and without the need for any further order or authority, the Debtor or ~~Reorganized Debtor~~Plan Administrator shall file with the Bankruptcy Court or execute, as appropriate, such agreements and other documents that are in form and substance satisfactory to the Debtor or ~~Reorganized Debtor~~Plan Administrator as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

Dated: ~~April 21,~~May 27, 2010

Respectfully submitted,

Cabi Downtown, LLC

By:_____
   Manager

47

**EXHIBIT B**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

--------------------------------------------------------X

In re:                                                  CHAPTER 11
                                                        Case No. 09-27168-BKC-LMI

CABI DOWNTOWN, LLC,


               Debtor.

--------------------------------------------------------X


**DISCLOSURE STATEMENT RELATING TO**
**~~SECOND~~THIRD AMENDED PLAN OF ~~REORGANIZATION~~LIQUIDATION**
**UNDER**
**CHAPTER 11 OF THE BANKRUPTCY CODE**

**THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL
BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.  THIS IS
NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN.
ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A
DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY
COURT.**

| **BILZIN SUMBERG BAENA PRICE & AXELROD LLP** | **KASOWITZ, BENSON, TORRES & FRIEDMAN LLP** |
|---|---|
| Mindy A. Mora | Andrew K. Glenn |
| Tara V. Trevorrow | Jeffrey R. Gleit |
| 200 South Biscayne Boulevard, Suite 2500 | Michelle J. Vladimirsky |
| Miami, Florida  33131 | 1633 Broadway |
| | New York, New York  10019 |

**Counsel for the Debtor**

Dated: ~~April 21,~~May 27, 2010

**TABLE OF CONTENTS**                                                                **Page**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................ 1

II. SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS
AND EQUITY INTERESTS UNDER THE PLAN ............................................. 3

    A. Summary of Voting Procedures ............................................... 811

    B. Overview of Chapter 11 Process ............................................. 1013

III. DESCRIPTION OF THE BUSINESS ............................................. 1114

    A. Corporate Structure ............................................................. 1114

    B. Description of Everglades Project ............................................ 1114

    C. Status of Everglades Project ................................................... 1214

    D. Prepetition Indebtedness ...................................................... 1215

        1. Secured Debt ............................................................. 1215

            a. Bank of America .............................................. 1215

            b. The Construction Agreement, Collateral
Documents, and Guaranties ....................................... 1316

        2. Other Creditors ......................................................... 1417

        3. Pre-Petition Litigation ............................................... 1518

        4. Post-Petition Litigation .............................................. 1518

        5. The Yates Action ....................................................... 1619

IV. KEY EVENTS LEADING TO THE COMMENCEMENT OF THE
REORGANIZATION CASES ..................................................... 1821

    A. The Decline in the Real Estate Market ................................... 1821

    B. The Debtor's Business Plan .................................................. 1821

V. THE REORGANIZATION CASE ................................................. 1822

    A. The Post-Petition Sale of Condominium Units ......................... 1822

    B. Debtor in Possession Financing and Use of Cash Collateral ........ 1922

    C. The BOA Motion to Dismiss and Emergency Motion ................. 1923

    D. The Brokerage Agreement .................................................... 2225

    E. The Committee .................................................................. 2326

    F. Bar Date .......................................................................... 2326

    G. Debtor's Settlement With the Prepetition Agent and Prepetition
Lenders ............................................................................ 26

**TABLE OF CONTENTS**
**(continued)**

Page

VI.   THE PLAN OF ~~REORGANIZATION~~ ..................................... ~~23~~LIQUIDATION 27

A.     Introduction .................................................................... ~~23~~27

B.    ~~Plan Funding~~ .................................................................... ~~24~~

~~C.~~    Classification and Treatment of Claims and Equity Interests Under the Plan of ~~Reorganization~~ .................................................... ~~24~~Liquidation 27

    1.    Unclassified ............................................................. ~~26~~29

        a.    Administrative Expenses .......................................... ~~26~~29

        b.    Professional Fee Claims................................................ 30

        c.    Repayment of DIP Loan .......................................... 30

        d.    Payment of Statutory Fees ...................................... 30

        e.    Priority Tax Claims .............................................. ~~27~~30

    2.    Classified ............................................................. ~~27~~31

~~D~~C.   Means of Implementing the Plan........................................... ~~31~~36

    1. Sale to Holders of Secured Construction Loan Claims. ..................... 36

    2.    Cancellation of Existing Securities and Agreements ~~31~~............. 36

    ~~2.~~    ~~New Notes/Issuance of New Indebtedness~~.................................. ~~32~~

    ~~3.~~    ~~Plan Contributions/Issuance of New Membership Units~~ ............ ~~32~~

    ~~4.~~    ~~Legal Form and Governance~~ ......................................... ~~32~~

~~E.~~    ~~Securities Law Matters~~ ................................................... ~~33~~

    ~~1.~~    ~~Exemptions from Registration~~........................................ ~~33~~

    3.    Vesting of Property of the Estate. ...................................... 36

    4.    Prosecution of Debtor's Claims Against Third Parties. .............. 36

    5.    Liquidation of Estate Property. ........................................ 37

    6.    Dissolution of Liquidating Debtor. ................................... 37

    7.    Funding of Plan Administrator. ....................................... 37

    8.    Cabi Developers LLC as Post-Effective Date Manager of the Property........................................................ 37

    ~~2.~~9.    Exemption from Transfer Taxes ........................................ ~~34~~38

    ~~3.~~10.   Expedited Tax Determination........................................... ~~35~~38

~~F~~D.   Plan Provisions Governing Distribution ............................. ~~35~~38

    1.    Date of Distributions .................................................. ~~35~~38

    2.    Distributions Concerning Disputed Unsecured Claims ........... ~~35~~38

# TABLE OF CONTENTS
## (continued)

**Page**

3.    Disbursing Agent .................................................. 36

3.    Distributions Made Under Plan ............................ 39

4.    Rights and Powers of Disbursing Agent ................. 36

    a.    Powers of the Disbursing Agent.................... 36

    b.    Expenses Incurred On or After the Effective Date.......... 36

5.    Delivery of Distributions....................................3639

    a.    Last Known Address ................................. 36

    b.    Distributions for Allowed Secured Construction
    Loan Claims ........................................... 37

6.5.    Manner of Payment ...........................................3740

7.6.    Setoffs and Recoupment.....................................3740

8.7.    Allocation of Plan Distributions Between Principal and
Interest ................................................................3740

9.8.    De Minimis Distributions and Donation of Remaining
General Unsecured Claim Cash Distribution Less Than
$25.00 ................................................................3740

10.    Withholding and Reporting Requirements .............. 38

GE.    Procedures for Treating Disputed Claims ........................3841

1.    Objections 38.....................................................41

2.    Preferential Transfers ....................................... 41

3.    No Distributions Pending Allowance ....................3841

3.4.    Distributions After Allowance 39..........................41

5.    Withholding and Reporting Requirements............. 42

HF.    Provisions Governing Executory Contracts and Unexpired Leases.....3942

1.    Treatment.......................................................3942

2.    Preconstruction Agreements 40 and Prepetition DP
Program Agreements.......................................... 43

3.    Cure Payments ................................................4043

4.    Rejection Damage Claims ..................................4043

G.    The Plan Administrator ........................................... 44

    1.    Purpose of the Plan Administrator........................ 44

    2.    Resignation, Removal or Replacement of the Plan
    Administrator.................................................. 44

    3.    Authority....................................................... 44

**TABLE OF CONTENTS**
**(continued)**

**Page**

4.      Investments of Cash. .................................................................. 46

5.      Distributions. ............................................................................ 46

6.      Accounting and Reporting. ....................................................... 47

7.      Post- Confirmation Expenses and Administrative Reserve. ....... 47

8.      Limitation of Liability. .............................................................. 47

9.      Reliance on Documents. ............................................................ 48

10.     Requirement of Undertaking. .................................................... 48

11.     Liquidating Debtor. ................................................................... 48

12.     Authority of Plan Administrator to act on Behalf of
        Liquidating Debtor. ................................................................... 48

13.     Court Approval. ........................................................................ 48

IH.     Conditions Precedent to Confirmation .............................................. 4049

JI.     Conditions Precedent to Effectiveness .............................................. 4149

KJ.     Effect of Confirmation .................................................................... 4250

        1.      Revesting of Assets .................................................................. 42

        2.      Binding Effect ........................................................................... 4250

        3.2.    Discharge of Debtor .................................................................. 4250

        4.3.    Term of Injunctions or Stays .................................................... 4250

        5.4.    Indemnification Obligations ..................................................... 4351

        6.5.    Exculpation .............................................................................. 4451

        7.6.    Releases ................................................................................... 4452

        8.7.    Causes of Action ...................................................................... 4553

LK.     Retention of Jurisdiction ................................................................. 4653

ML.     Miscellaneous Provisions ................................................................ 4755

        1.      Payment of Statutory Fees ........................................................ 4755

        2.      Modification of Plan ................................................................. 4755

        3.      Revocation of Plan ................................................................... 4855

        4.      Intercompany Claims ................................................................ 4855

        5.      Dissolution of the Committee .................................................... 4856

        6.      Severability of Plan Provisions ................................................. 4856

        7.      Governing Law ........................................................................ 4856

        8.      Compliance with Tax Requirements .......................................... 4956

**TABLE OF CONTENTS**
**(continued)**

**Page**

| | | | |
|---|---|---|---|
| | 9. | Notices | 49 57 |
| VII. | | CERTAIN FACTORS AFFECTING THE DEBTOR | 50 58 |
| | A. | Certain Bankruptcy Law Considerations | 50 58 |
| | | 1. Risk of Non-Confirmation of the Plan of ~~Reorganization~~50 Liquidation 58 | |
| | | 2. Non-Consensual Confirmation | 50 58 |
| | | 3. Risk of Non-Occurrence of the Effective Date | 50 58 |
| | B. | Additional Factors to Be Considered | 51 58 |
| | | 1. The Debtor Has No Duty to Update | 51 58 |
| | | 2. No Representations Outside This Disclosure Statement Are Authorized | 51 59 |
| | | 3. Projections and Other Forward Looking Statements Are Not Assured, and Actual Results Will Vary | 51 59 |
| | | 4. Claims Could Be More Than Projected | 51 59 |
| | | 5. No Legal or Tax Advice is Provided to You by this Disclosure Statement | 52 59 |
| | | 6. No Admission Made | 52 60 |
| | | ~~7. Business Factors and Competitive Conditions~~ | ~~52~~ |
| | | ~~a. General Economic Conditions~~ | ~~52~~ |
| | | ~~b. Business Factors~~ | ~~52~~ |
| | | ~~c. Competitive Conditions~~ | ~~52~~ |
| | | ~~d. Other Factors~~ | ~~53~~ |
| | | ~~8. Access to Financing and Trade Terms~~ | ~~53~~ |
| | | ~~9. Lack of Trading Market~~ | ~~53~~ |
| | | ~~10. Restrictions on Transfer~~ | ~~53~~ |
| | C. | Certain Tax Matters | 53 60 |
| VIII. | | VOTING PROCEDURES AND REQUIREMENTS | 54 60 |
| | A. | Voting Deadline | 54 60 |
| | B. | Holders of Claims Entitled to Vote | 55 61 |
| | C. | Vote Required for Acceptance by a Class | 55 61 |
| | D. | Voting Procedures | 55 62 |
| | | 1. Holder of Class 2 Claim (Secured Tax Claim of Miami-Dade County Tax Collector) | 55 62 |

# TABLE OF CONTENTS
## (continued)

Page

2.      Holders of Class 4 Claims (Secured Construction Loan Claims) ...................................................................... 5662

3.      Holders of Class 5b Claims (Secured Customer Deposit Claims) ...................................................................... 5662

4.      Holders of Class 6a Claims (General Unsecured Claims) ....... 5662

5.      Holders of Class 6b Claim (Yates Unsecured or Equitably Subordinated Claim) ............................................ 62

IX.      CONFIRMATION OF THE PLAN OF REORGANIZATION 56LIQUIDATION 63

     A.      Confirmation Hearing ................................................. 5663

     B.      Requirements for Confirmation of the Plan of Reorganization57Liquidation     63

         1.      Requirements of Section 1129(a) of the Bankruptcy Code...... 5763

             a.      General Requirements ................................................. 5763

             b.      Best Interests Test..................................................... 5865

             c.      Liquidation Analysis................................................. 6066

             d.      Feasibility............................................................... 6067

         2.      Requirements of Section 1129(b) of the Bankruptcy Code...... 6167

             a.      No Unfair Discrimination ........................................... 6167

             b.      Fair and Equitable Test............................................... 6167

             c.      Secured Claims........................................................ 6168

             d.      Unsecured Claims..................................................... 6168

             e.      Equity Interests........................................................ 6168

X.      FINANCIAL INFORMATION ................................................. 6268

XI.      ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN OF REORGANIZATION ...................................... 62LIQUIDATION 69

     A.      Liquidation Under Chapter 7 ........................................... 6269

     B.      Alternative Plan of Reorganization 63 or Liquidation ........................... 69

XII.      CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ....................................................................... 6370

     A.      Consequences to Holders of Class 6a Claims ..................................... 6471

     B.      Information Reporting and Withholding ........................................... 6571

XIII.      CONCLUSION............................................................... 6672

# I.

# INTRODUCTION

Cabi Downtown, LLC ("Cabi" or the "Debtor"), as the debtor and debtor-in-possession, is soliciting acceptances of a ~~second~~third amended chapter 11 plan of ~~reorganization~~liquidation (the "Plan of ~~Reorganization~~Liquidation" or "Plan") attached as Exhibit 1 to this Disclosure Statement.  This solicitation is being conducted at this time to obtain sufficient votes to enable the Plan of ~~Reorganization~~Liquidation to be confirmed by the Bankruptcy Court.  Capitalized terms used in this Disclosure Statement but not defined herein have the meanings ascribed to such terms in the Plan.

Attached as exhibits to this Disclosure Statement are copies of the following documents:

The Plan of ~~Reorganization~~Liquidation (Exhibit 1);

Historical Financial Information (Exhibit 2);

List of Estate Causes of Action (Exhibit 3);

Liquidation Analysis (Exhibit 4);

~~Projections (Exhibit 5);~~

List of Executory Contracts to be Assumed, Assumed and Assigned or Rejected (Exhibit ~~6~~5);

List of Preconstruction Agreements to be Assumed and Assigned (Exhibit ~~7~~6); and

List of Prepetition DP Program Agreements to be Assumed and Assigned (Exhibit ~~8~~7).

WHO IS ENTITLED TO VOTE:  Pursuant to the Disclosure Statement Order, the holders of Allowed Secured Tax Claims of Miami-Dade County Tax Collector (Class 2), Allowed Secured Construction Loan Claims (Class 4), the holders of Allowed Customer Deposit Secured Claims (Class 5b), ~~and~~ the holders of Allowed General Unsecured Claims (Class 6~~)~~,a), and the holder of the Yates Unsecured or Equitably Subordinated Claim (Class 6b) are entitled to vote on the Plan.  A ballot for the acceptance or rejection of the Plan is enclosed with the Disclosure Statement submitted to the holders of claims in these classes that are entitled to vote.  ~~Holders~~The holders of the Old Equity Interests (Class ~~6~~7) are deemed to reject the Plan and are not entitled to vote.

**THE DEBTOR RECOMMENDS THAT CREDITORS ENTITLED TO VOTE CLAIMS IN CLASS 2, CLASS 4, CLASS 5b, ~~AND~~ CLASS 6,6a, AND Class 6b VOTE TO ACCEPT THE PLAN.**  The Debtor's legal advisors are Kasowitz, Benson, Torres & Friedman LLP and Bilzin Sumberg Baena Price & Axelrod LLP.  They can be contacted at:

>Kasowitz, Benson, Torres & Friedman LLP
>1633 Broadway
>New York, New York  10019
>Attn:  Andrew K. Glenn, Esq.
>AGlenn@kasowitz.com
>Jeffrey R. Gleit, Esq.
>JGleit@kasowitz.com
>
>Bilzin Sumberg Baena Price & Axelrod LLP
>200 South Biscayne Boulevard, Suite 2500
>Miami, Florida  33131
>Attn:  Mindy A. Mora
>mmora@bilzin.com
>Tara V. Trevorrow
>ttrevorrow@bilzin.com

The Committee's legal advisor is Meland Russin & Budwick PA and can be contacted at:

>Meland Russin & Budwick PA
>200 S Biscayne Blvd #3000
>Miami, Florida  33131
>Attn:  Michael S. Budwick
>mbudwick@melandrussin.com

The following table summarizes the treatment of Claims and Equity Interests under the Plan.  For a complete explanation, please refer to the discussion in section VI below, entitled "THE PLAN OF ~~REORGANIZATION~~LIQUIDATION" and to the Plan itself.

**IRS CIRCULAR 230 NOTICE:** TO ENSURE COMPLIANCE WITH <u>IRS CIRCULAR 230</u>, HOLDERS OF CLAIMS AND EQUITY INTERESTS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY HOLDERS OF CLAIMS OR EQUITY INTERESTS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON THEM UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING BY THE DEBTOR OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

## II.

## SUMMARY OF CLASSIFICATION AND TREATMENT
## OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN[1]

| Class | Type of Claim or Equity Interest | Treatment | Approximate Allowed Amount[2] | Approximate Percentage Recovery |
|---|---|---|---|---|
| -- | Administrative Expenses | Except to the extent that a holder of an Allowed Administrative Expense agrees to less favorable treatment, the ~~Reorganized Debtors~~Liquidating Debtor shall pay in full in Cash on or as soon as reasonably practicable after the later of the Effective Date, the date allowed or the date due in the ordinary course. | $500,000 | 100% |
| 1 | Priority Non-Tax Claims | Unimpaired; except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to less favorable treatment, such Allowed Claims shall be paid in full in Cash on or as soon as reasonably practicable after the later of the Effective Date, the date allowed or the date due in the ordinary course. | $271,000 | 100% |
| 2 | Secured Tax Claim of Miami-Dade County Tax Collector | Impaired; except to the extent that a holder of an Allowed Secured Tax Claim of Miami-Dade County Tax Collector agrees to less favorable treatment, such Allowed Claims shall be (a) paid in full in Cash in the amount of the remaining 2009 taxes owed on the disbursement date, which shall | $2.63 to $3.92 million | 100% |

---

[1]        This table is only a summary of the classification and treatment of claims and equity interests under the Plan and all conditions thereto.  Reference should be made to the entire Disclosure Statement and the Plan for a complete description of the classification and treatment of claims and equity interests.

[2]        The amounts set forth herein are the Debtor's estimates; the actual amounts will depend upon the final reconciliation and resolution of all Administrative Expenses and Claims.

| Class | Type of Claim or Equity Interest | Treatment | Approximate Allowed Amount[2] | Approximate Percentage Recovery |
|---|---|---|---|---|
| | | include statutory interest, if any, in the event that the 2009 taxes are delinquent at the time of payment, provided, however, that so long as either any Value Adjustment Board petitions or any action in the Circuit Court challenging the assessments of the Miami-Dade County Property Appraiser with respect to the taxed real or personal property are pending, such payment shall be limited to the amount of the good faith payment estimated to be due and owing by the Debtor, which amount has already been paid to the Miami Dade Tax Collector, (b) reinstatement of the Secured Tax Claim, which will entitle the Tax Collector to (i) sell tax certificates, to the extent that there are no Value Adjustment Board petitions or any action in the Circuit Court challenging the assessments of the Miami-Dade County Property Appraiser with respect to the taxed real or personal property pending or the Debtor agrees to the sale of such certificates, and (ii) otherwise proceed pursuant to Florida law, or (c) satisfaction by the surrender of any of the collateral securing the Secured Tax Claim. All postpetition taxes on unsold units owed from 2010 forward shall be paid in the ordinary course prior to delinquency. All taxes remaining due and owing after the final resolution of administrative or judicial challenges to the Property Appraiser's assessments shall be paid within thirty days of | | |

| Class | Type of Claim or Equity Interest | Treatment | Approximate Allowed Amount[2] | Approximate Percentage Recovery |
|---|---|---|---|---|
| | | the final resolution, and such payment shall include statutory interest, if any, due as of the delinquency date. | | |
| 3 | Other Secured Claims | Unimpaired; except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, each Holder of an Allowed Other Secured Claim shall receive, at the sole option of the ~~Debtor~~Plan Administrator, payment in full in Cash in the amount of the Allowed Other Secured Claim, (b) reinstatement of the Allowed Other Secured Claim, (c) satisfaction by the surrender of the collateral securing such Allowed Other Secured Claim, or (d) a treatment that otherwise renders the Allowed Other Secured Claim unimpaired pursuant to section 1124 of the Bankruptcy Code. | $0 | 100% |
| 4 | Secured Construction Loan Claims | Impaired; ~~except~~on the Effective Date, the Debtor will sell to the ~~extent that a holder of an Allowed~~Holders of Secured Construction Loan ~~Claim agrees to a less favorable treatment, each holder of an Allowed~~Claims, in consideration for a credit bid by the Transferee, and shall transfer by special warranty deed or bill of sale, as appropriate, and free and clear of all other liens, claims, encumbrances and other interests, on an "as is" basis, all of the Debtor's Collateral securing the Debtor's Obligations, other than | $207 million[3] | 100% |

---

[3]    $207 million is an approximate amount as of March 31, 2010.

| Class | Type of Claim or Equity Interest | Treatment | Approximate Allowed Amount[2] | Approximate Percentage Recovery |
|---|---|---|---|---|
| | | those assets of the Debtor, if any, that are designated by the Prepetition Agent as Excluded Assets.  Concurrently with the transfer of the Collateral, the Debtor shall transfer control of all of the HOA's and condominium associations at the Property to the Transferee.<br><br>In exchange for the transfer of the Debtor's Collateral, the Holders of Secured Construction Loan ~~Claim will receive its Ratable Proportion of the New Senior Notes~~Claims will not assert any claim against the General Unsecured Claims Cash Distribution. | | |

| Class | Type of Claim or Equity Interest | Treatment | Approximate Allowed Amount[2] | Approximate Percentage Recovery |
|---|---|---|---|---|
| 5a | Yates Secured Claim | Unimpaired; on or as soon as reasonably practicable on or after the Effective Date, (a) the Holder of ~~an~~the Allowed Yates Secured Claim shall receive, to the extent of the Allowed amount of its Secured Claim, the amount of $1.8 million held and defined as the Yates Escrow Funds, pursuant to the Yates Settlement Order, and (b) if the Allowed Yates Secured Claim exceeds $1.8 million, then the Holder of an Allowed Yates Claim shall receive, to the extent of the Allowed amount of its Secured Claim, funds payable from the FA Escrow Account established pursuant to and defined in the Funding Agreement; provided, however, to the extent the Yates Secured Claim is equitably subordinated by the Court, then such Claim shall be treated as a Claim under Class 6b of the Plan. Any objections filed by the Debtor to the Yates' Claims shall have no bearing on Yates' receiving, on the Effective Date, the amount of $1.8 million held and defined as the Yates Escrow Funds, pursuant to the Yates Settlement Order. | Unknown | 100% |
| 5b | Secured Customer Deposit Claims | Impaired; Each Holder of an Allowed Secured Customer Deposit Claim may elect between Option A, as a full and final settlement of its Claim, and Option B, as follows:<br><br>Option A:  As soon as reasonably practicable on or after the Effective Date, each Holder of an | $19.9 million (Such amount represents the approximate aggregate dollar amount that the Debtor asserts Holders of Allowed Secured Customer Deposit Claims are | 100% |

| Class | Type of Claim or Equity Interest | Treatment | Approximate Allowed Amount[2] | Approximate Percentage Recovery |
|---|---|---|---|---|
| | | Allowed Secured Customer Deposit Claim shall receive (a) if such Holder made a Customer Deposit of 20% of the purchase price of the applicable unit, 7.5% of the purchase price for such unit as set forth in the applicable sale agreement or (b) if such Holder made a Customer Deposit of 30% of the purchase price of the applicable unit, 17.5% of the purchase price for such unit as set forth in the applicable sale agreement, which in either the case of (a) or (b) herein, shall be due in a lump sum payable as soon as reasonably practicable after the Effective Date.  Such payment shall be in full and final satisfaction of such Holder's Claim.  Concurrently with such payment, the Debtor will receive the balance of the funds in escrow from the deposit made by such Holder, plus all interest accrued on such Holder's deposit.  Any pending litigation against the Debtor, whether in state court or bankruptcy court, commenced by such Holder, will be dismissed with prejudice.  ~~Each Holder~~Holders of ~~an~~Allowed Secured Customer Deposit ~~Claim shall have the right to~~Claims shall not be entitled to treat the balances of their Claims as general unsecured claims in Class 6, because it is the Debtor's position that Holders of Allowed Secured Customer Deposit Claims are in default under their Condominium Unit purchase agreements. | entitled to as a full and final settlement of their claims.) | |

| Class | Type of Claim or Equity Interest | Treatment | Approximate Allowed Amount[2] | Approximate Percentage Recovery |
|---|---|---|---|---|
| | | Furthermore, as a result of such alleged default, Holders of Allowed Secured Customer Deposit Claims are not entitled to apply their entire Customer Deposit towards the purchase price of a Condominium Unit, but rather may only apply the amount received under this Section 4.6 of the Plan towards the purchase of a new condominium unit at a price mutually acceptable to such Holder, the Debtor and the Prepetition Agent.<br><br>The funds described for distribution to those Holders who elect Option A, are being held in a separate escrow account for such Holders.<br><br>Option B:  A Purchaser who elects in writing not to proceed with Option A shall not receive any distribution on the Effective Date, but may retain all rights to contest the Debtor's objection to such Purchaser's proof of claim, whether pursuant to an adversary proceeding or a claim objection. The Customer Deposits, of the Holders who elect Option B, will remain in escrow until the issues are resolved by final order and all appellate remedies are exhausted.<br><br>If the Holder of an Allowed Secured Customer Deposit Claim fails to make a written election not to proceed with Option A, such Holder shall be deemed to have consented to the treatment of such Holder's Claim set forth in Option | | |

| Class | Type of Claim or Equity Interest | Treatment | Approximate Allowed Amount[2] | Approximate Percentage Recovery |
|---|---|---|---|---|
| | | A. | | |
| 6a | General Unsecured Claims | Impaired; on or as soon as reasonably practicable after the Effective Date, or the date that is ten (10) days after the date such claim is Allowed (whichever is later), each Holder of an Allowed General Unsecured Claim (except an Allowed Intercompany Claim), shall receive its Ratable Proportion of the General Unsecured Claim Cash Distribution. | $~~7.5~~2.4 million | ~~6.7~~20.8% |
| 6b | Yates Unsecured or Equitably Subordinated Claim | Impaired; To the extent that the Debtor or Plan Administrator is successful in subordinating any of Yates' Claims, Yates as holder of the Yates Claims shall not be entitled to, nor shall it receive or retain, any property or interest in property on account of such Yates' Claims, other than the distribution provided for under Class 5a of the Plan and the Yates Subordinated Claim will be discharged, cancelled, and expunged.  To the extent that the Debtor or Plan Administrator is unsuccessful in equitably subordinating the Yates Claims, Yates as the holder of the Yates Claims shall be entitled to (a) a distribution on its Secured Claim as provided in Class 5a; and (b) the same percentage distribution afforded to Holders of Class 6a General Unsecured Claims on its Allowed Unsecured Claim. | N/A | 20.8% |
| 7 | Old Equity Interests | Impaired; Equity Interests cancelled; no distribution. | N/A | 0% |

## A.    Summary of Voting Procedures

If you are entitled to vote to accept or reject the Plan, a ballot is enclosed for voting purposes.  If you hold claims in more than one class and you are entitled to vote claims in more than one class, you will receive separate ballots, which must be used for each separate class of claims.  Please vote and return your ballot(s) in accordance with the instructions set forth herein.

TO BE COUNTED, YOUR VOTE INDICATING ACCEPTANCE OR REJECTION OF THE PLAN MUST BE PROPERLY COMPLETED IN ACCORDANCE WITH THE INSTRUCTIONS ON THE BALLOT, AND MUST BE **ACTUALLY RECEIVED** BY THE DEBTOR'S VOTING AGENT, **NO LATER THAN 4:00 P.M., PREVAILING EASTERN TIME, ON [_____], 2010 (THE "VOTING DEADLINE")**.  PLEASE RETURN YOUR PROPERLY COMPLETED BALLOT TO THE VOTING AGENT AT THE FOLLOWING ADDRESS:

> Bilzin Sumberg Baena Price & Axelrod LLP
> 200 South Biscayne Boulevard
> Suite 2500
> Miami, Florida  33131
> Attn:  Luisa Flores
> Telephone: (305) 350-7205

BALLOTS RECEIVED AFTER THE VOTING DEADLINE WILL **NOT** BE COUNTED.  FAXED COPIES OF BALLOTS WILL **NOT** BE COUNTED.

ANY PROPERLY EXECUTED, TIMELY RECEIVED BALLOT THAT DOES NOT INDICATE EITHER ACCEPTANCE OR REJECTION OF THE PLAN WILL BE COUNTED AS A VOTE TO ACCEPT THE PLAN.  ANY PROPERLY EXECUTED, TIMELY RECEIVED BALLOT THAT INDICATES BOTH ACCEPTANCE AND REJECTION OF THE PLAN WILL BE COUNTED AS A VOTE TO ACCEPT THE PLAN.  **BALLOTS SHOULD NOT BE DELIVERED DIRECTLY TO THE DEBTOR, THE COURT, THE COMMITTEE, THE PREPETITION AGENT, OR ANY OTHER PLAN PROPONENT.**

If you are a holder of a Claim entitled to vote on the Plan and did not receive a ballot, received a damaged ballot, or lost your ballot, or if you have any questions concerning the procedures for voting on the Plan, please contact the Voting Agent, Bilzin Sumberg Baena Price & Axelrod LLP, 200 South Biscayne Boulevard, Suite 2500, Miami, Florida 33131, Attn: Luisa Flores, Telephone: (305) 350-7205, Facsimile: (305) 351-2271.

SUMMARIES OF CERTAIN PROVISIONS OF DOCUMENTS REFERRED TO IN THIS DISCLOSURE STATEMENT DO NOT PURPORT TO BE COMPLETE AND ARE SUBJECT TO, AND ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO, THE FULL TEXT OF THE APPLICABLE DOCUMENT, INCLUDING THE DEFINITIONS OF TERMS CONTAINED IN SUCH DOCUMENT.

      **1).    IF YOU HAVE THE FULL POWER TO VOTE AND DISPOSE OF AN ALLOWED SECURED TAX CLAIM OF MIAMI-DADE COUNTY TAX COLLECTOR (CLASS 2):**

Please complete the information requested on the Ballot, sign, date, and indicate your vote on the Ballot, and return your completed Ballot in the enclosed pre-addressed envelope so that it is actually received by the Voting Agent before the Voting Deadline.

      **2).    IF YOU HAVE THE FULL POWER TO VOTE AND DISPOSE OF ALLOWED SECURED CONSTRUCTION LOAN CLAIMS (CLASS 4):**

Please complete the information requested on the Ballot, sign, date, and indicate your vote on the Ballot, and return your completed Ballot in the enclosed pre-addressed envelope so that it is actually received by the Voting Agent before the Voting Deadline.

      **3).    IF YOU HAVE THE FULL POWER TO VOTE AND DISPOSE OF ALLOWED CUSTOMER DEPOSIT SECURED CLAIMS (CLASS 5b):**

Please complete the information requested on the Ballot, including whether you wish to opt out of Option A, and sign, date, and indicate your vote on the Ballot, and return your completed Ballot in the enclosed pre-addressed envelope so that it is actually received by the Voting Agent before the Voting Deadline.

      **4).    IF YOU HAVE THE FULL POWER TO VOTE AND DISPOSE OF ALLOWED GENERAL UNSECURED CLAIMS (CLASS 6a):**

Please complete the information requested on the Ballot, sign, date, and indicate your vote on the Ballot and return your completed Ballot in the enclosed pre-addressed envelope so that it is actually received by the Voting Agent before the Voting Deadline.

      **5).    IF YOU HAVE THE FULL POWER TO VOTE AND DISPOSE OF A YATES UNSECURED OR EQUITABLY SUBORDINATED CLAIM (CLASS 6b):**

Please complete the information requested on the Ballot, sign, date, and indicate your vote on the Ballot and return your completed Ballot in the enclosed pre-addressed envelope so that it is actually received by the Voting Agent before the Voting Deadline.

Any voter that has delivered a valid ballot may withdraw its vote by delivering a written notice of withdrawal to the Voting Agent before the Voting Deadline.

Any holder that has delivered a valid ballot may change its vote by delivering to the Voting Agent a properly completed subsequent ballot so as to be received before the Voting Deadline.

For detailed voting instructions, see the instructions on your ballot. For a further discussion of voting on the Plan, see section VIII below, entitled "VOTING PROCEDURES AND REQUIREMENTS."

**B.     Overview of Chapter 11 Process**

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Under chapter 11 of the Bankruptcy Code, a debtor is authorized to reorganize or liquidate its business for the benefit of itself and all economic parties in interest. In addition to permitting rehabilitation or liquidation of a debtor, chapter 11 promotes equality of treatment of similarly situated claims and similarly situated equity interests with respect to the distribution of a debtor's assets.

The commencement of a chapter 11 case creates an estate that is comprised of all of the legal and equitable interests of the debtor as of the filing date. The Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor in possession."

The consummation of a plan of reorganization or liquidation is the principal objective of a chapter 11 reorganization case. A plan of reorganization or liquidation sets forth the means for satisfying claims against and interests in a debtor. Confirmation of a plan of reorganization or liquidation by the bankruptcy court makes the plan binding upon a debtor, any issuer of securities under the plan, any person acquiring property under the plan, and any creditor of, or holder of an equity interest in, a debtor. Subject to certain limited exceptions, the confirmation order discharges a debtor from any debt that arose prior to the date of confirmation of the plan and substitutes ~~therefor~~therefore the obligations specified under the confirmed plan.

To solicit acceptances of a proposed plan, however, section 1126 of the Bankruptcy Code requires a debtor and any other plan proponents to conduct such solicitation, pursuant to a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment about the plan. The Debtor is submitting this Disclosure Statement in accordance with the Disclosure Statement Order and the requirements of sections 1125 and 1126 of the Bankruptcy Code.

**III.**

**DESCRIPTION OF THE BUSINESS**

**A.     Corporate Structure**

Cabi Downtown, LLC ("Cabi") is a limited liability company organized and existing under the laws of the State of Florida. The controlling member of the Debtor is CABI Holdings, Inc. The managers of the Debtor are Elias Amkie Levy, Elias Cababie Daniel, Abraham Cababie Daniel, Rafael Harari Tussie, and Jaime Dayan Tawil.

**B.      Description of Everglades Project**

Cabi is the developer and owner of a luxury real estate condominium complex, Everglades on the Bay ("Everglades"), which is located at 244 Biscayne Boulevard, Miami, Florida 33132, consisting of 849 total condominium units (the "Condominium Units") in two towers, together with 60,000 leasable square feet of retail space (the "Retail Space") and a 15,000 square foot health spa (the "Spa").

Condominium Units range in size from 563 square feet to 4482 square feet and are configured as flats, loft studios, one-bedroom, two-bedroom, three-bedroom, and penthouse units.  The Condominium Units feature a variety of exotic and high-end finishes as well as expansive views of the downtown Miami skyline and Biscayne Bay.

The Retail Space is intended to be developed into a mix of restaurants, upscale retail/service boutiques, and office suites.  Rental spaces within the Retail Space range from 1,000 to 20,000 square feet and front Biscayne Boulevard, Northeast 2nd Street, or Northeast 3rd Street.

Designed as a center of upscale urban living, Everglades' Spa contains a foot spa with sauna and steam room, a fitness center, three swimming pools (including a lagoon pool with a bar overlooking the bay), a billiard room, a private residence lounge, and other similar upscale amenities.  The building also offers computerized security controlled elevators and a business center.

**C.      Status of Everglades Project**

As of the Petition Date, the Debtor had closed on the sale of 86 units in Everglades.  Since the Petition Date and through April 16, 2010, the Debtor has closed on the sale of ~~39~~47 additional units.  In addition, the Debtor continues to actively market the remaining Condominium Units.  The Debtor is also is current on all obligations to the condominium association and, pursuant to governing Florida law, will continue to fund any shortfalls on such obligations, until such obligations are discharged under Florida law.  One of the Debtor's current marketing initiatives is a deferred purchase program (the "DP Program"). The Debtor credits all or part of each prospective purchaser's monthly payments towards the purchase price of the Condominium Unit, depending upon when the option is exercised.  As of the Petition Date, the Debtor had entered into deferred purchase agreements (the "DP Program Agreements") for approximately 135 Condominium Units under the DP Program.  Since the Petition Date and through April 16, 2010, the Debtor has entered into DP Program Agreements for approximately 289 Condominium Units under the DP Program.  The Debtor is not able to ascertain, at this time, the number of DP Program Agreements that will result in the purchase of a Condominium Unit.  Furthermore, the Debtor has entered into a lease agreement with CVS and is seeking additional retail tenants.  At this time the Debtor is unable to ascertain who will be future retail tenants.

### D.    Prepetition Indebtedness[4]

### 1.    Secured Debt

### a.    Bank of America

On or about May 19, 2003, Bank of America, N.A. as administrative agent for itself and other lenders ("BOA") made a loan (the "Loan") to the Debtor in the principal amount of $11,200,000.  To secure the loan, the Debtor executed a mortgage (the "Original Mortgage"), dated May 19, 2003, in favor of BOA in the principal amount of $11,200,000, evidenced by a promissory note (the "Original Note") of the same date.

The Debtor subsequently requested and obtained from BOA an additional advance under the Loan in the principal amount of $1,370,000, increasing the total amount of secured indebtedness to $12,570,000.  As evidence of the increased amount of the Loan, the Debtor executed and delivered to BOA an Amended, Renewed and Restated Promissory Note (the "Amended Note"), dated July 7, 2004, in the amount of $12,570,000.  The Amended Note was secured by a First Amendment and Future Advance Agreement to Mortgage, Assignment of Rents and Security Agreement granted by the Debtor in favor of BOA, dated July 7, 2004 (the "Amended Mortgage").

Section 2.1 of the Original Mortgage provided that it would secure future advances made by BOA to the Debtor, up to and including a total unpaid aggregate balance of $300,000,000, plus interest thereon, plus certain other disbursements made by BOA to the Debtor.

In connection with the construction of Everglades, on November 18, 2005, the Debtor requested certain additional advances to be made under the Loan in an aggregate amount not to exceed $243,430,000.  The Debtor executed the Second Amendment and Restatement of Mortgage, Assignment of Rents, Security Agreement and Fixture Filing, With Future Advance, dated November 18, 2005, (the "Second Amended Mortgage") in favor of BOA, thereby increasing the principal balance of the Loan to $256,000,000.

The Original Mortgage, the Amended Mortgage, and the Second Amended Mortgage collectively constitute a perfected lien and security interest on all the real and personal property described therein, including, but not limited to, (i) the real property upon which Everglades is located (the "Land"), (ii) any and all structures, buildings, or improvements (the "Improvements") upon the Land, (iii) all fixtures, equipment, systems, furnishings, and other similar tangible property on or affixed to the Land or the Improvements, (iv) the Debtor's interests in the proceeds from the sale of any

---

[4]    The foregoing summary of the Debtor's prepetition indebtedness is provided for information purposes only and shall not constitute an admission, waiver or estoppel concerning the extent, validity and/or priority of any Claims, or otherwise; the Debtor reserves and retains any and all rights and remedies held in that regard.

Condominium Unit, and (v) the rental proceeds arising from the lease of any part of the Everglades development (collectively, the "Mortgaged Property").

As evidence of the Loan, the Debtor executed promissory notes, each dated March 29, 2006, with (a) Bank of America, N.A., in the original principal amount of $50,000,000, (b) Wachovia Bank, National Association, in the original principal amount of $40,000,000, (c) The Bank of Nova Scotia, in the original principal amount of $30,000,000, (d) LaSalle Bank National Association, in the original principal amount of $26,000,000, (e) Comerica Bank, in the original principal amount of $10,000,000, (f) HSBC Realty Credit Corporation, in the original principal amount of $50,000,000, and (g) Norddeutsche Landesbank Luxembourg S.A., in the original principal amount of $50,000,000.

All of the foregoing 2006 promissory notes were modified by that certain Agreement Modifying and Extending Note, Mortgage and Other Loan Documents, dated November 18, 2008, (the "First Modification"), and that certain Second Agreement Modifying and Extending Note, Mortgage and Other Loan Documents, dated February 18, 2009 (the "Second Modification").

### b.    The Construction Agreement, Collateral Documents, and Guaranties

BOA, the Debtor, Abraham Cababie Daniel, Elias Cababie Daniel, Jacobo Cababie Daniel,[5] and Cabi Control, S.A. de C.V. (now known as Grupo GICSA, S.A. de C.V. ("GICSA")) (collectively, the "Construction Loan Parties"), entered into a Construction Loan Agreement (the "Construction Loan Agreement" and the lenders thereunder, the "Construction Loan Lenders"), dated as of November 18, 2005, with a maximum amount to be advanced of $276,000,000 (the "Construction Loan").  The Construction Loan Parties amended the Construction Loan Agreement by executing the following amendments and modifications:

> (a)    Amendment to Construction Loan Agreement dated as of February 6, 2006;

> (b)    Second Amendment to Construction Loan Agreement dated as of January 26, 2008;

> (c)    the First Modification; and

> (d)    the Second Modification.

On November 18, 2005, the Debtor and certain other parties executed the Collateral Assignment of General Construction Contract, Plans and Specifications, Architect's Agreement, Consulting Agreement, Construction Services Agreement,

---

[5]    The executor of the estate of Jacobo Cababie Daniel, now deceased, is Elias Cababie Daniel.

Threshold Building Affidavit, Subcontracts and Permits in favor of BOA. On November 18, 2005, the Debtor executed a Collateral Assignment of Sales Contracts, Deposits and Escrow Obligations, dated November 18, 2005, and a Collateral Assignment of Condominium Development Rights, dated November 18, 2005, both in favor of BOA. On November 18, 2005, the Debtor, Abraham Cababie Daniel, Elias Cababie Daniel, and Jacobo Daniel executed an Environmental Indemnity Agreement, dated November 18, 2005, in favor of BOA. Abraham Cababie Daniel, Elias Cababie Daniel, Jacobo Cababie Daniel, and GICSA executed personal guaranties in favor of BOA relating to the Construction Loan. All of the documents relating to the Construction Loan are referred to collectively as the "Loan Documents".

As of the Petition Date, BOA asserted that it is owed approximately $209,000,598 in respect of the Construction Loan.

**2.    Other Creditors**

In addition to the indebtedness described above, creditors have asserted Claims against the Debtor owes approximately $34,100,000 in unsecured debt. as follows: (i) approximately $57 million in Claims have been asserted with respect to debt owed to affiliates or intercompany claims, which Claims will receive no distribution under the Plan, (ii) approximately $16.3 million in Claims have been asserted by Defaulting Purchasers, and (iii) approximately $5.3 million in Claims have been asserted by trade creditors. Defaulting Purchasers are not entitled to distributions as Class 6 General Unsecured Creditors, as they are receiving distributions pursuant to Class 5b Secured Customer Deposit Claims, and have forfeited the remainder of their Customer Deposits, because they are in default under their purchase agreements. Of the trade creditor claims, the Debtor has objected to certain of those Claims, including the approximately $1.4 million unsecured claim asserted by Yates and the approximately $1.5 million unsecured claim asserted by Nagelbush Mechanical, Inc. Furthermore, the Debtor is seeks to subordinate the Yates unsecured claim pursuant to section 510(c) of the Bankruptcy Code.

Some remaining retainage and other payments are due to contractors and subcontractors, who may have asserted or may be entitled at some point to assert mechanics liens under the Florida Statutes. The The Debtor believes that the amount of retainage owed is no more than $4,170,387.00. However, pursuant to applicable non-bankruptcy law, the Mortgage lien of BOA is superior in priority to the mechanics lien asserted by W.G. Yates & Sons Construction Co. ("Yates") (the Debtor's former general contractor) and any other subcontractors against Everglades.

As of June 30, 2009, the Debtor had received approximately $86,131,929 in deposits from unit purchasers who had not yet closed on the purchase of their respective units, inclusive of interest earned on such deposits, from which $49,072,617.35 had been disbursed pursuant to various settlement agreements, leaving $37,059,311.91 on deposit in escrow with the Debtor's closing agent.

### 3.    Pre-Petition Litigation

Prior to the construction of Everglades, the Debtor entered into contracts with purchasers (each, a "Purchaser") on approximately 787 Condominium Units. As of the Petition Date, approximately 669 of the Purchasers (the "Defaulting Purchasers") have defaulted on their contracts.  Some of the Defaulting Purchasers have sought return of their prepetition deposits.  The Debtor believes that, at most, the Defaulting Purchasers are entitled to the return of the amount provided in the Interstate Land Sales Full Disclosure Act, 15 U.S.C. sec. 1701, et. seq. and the applicable purchase agreements with such Defaulting Purchasers, which entitles a defaulting purchaser, upon rescission or default, to a recovery of solely the portion of such purchaser's deposit which exceeds 15% of the purchase price provided for under the applicable purchase contract, with the Debtor retaining the portion of the deposit equal to 15% of the purchase price as liquidated damages.

Approximately 22 of the Defaulting Purchasers, representing, $4,058,570 of the amount held in escrow, provided 30% deposits on their units.  The remainder of the Defaulting Purchasers provided less than 30% deposits.

As of the Petition Date, the Debtor was a party to approximately 65 cases involving such Purchasers seeking return of deposits based upon alleged defaults by the Debtor (the "Deposit Litigation Cases"), filed in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County Florida (the "State Court").

In addition, there were approximately six (6) lawsuits filed in State Court, seeking payment for services rendered and one lawsuit seeking payment for furniture received.

Finally, BOA filed a foreclosure proceeding in the State Court, Case No. 09-56772 CA 24 (the "Foreclosure Action").  This action was stayed by the commencement of the Case.

### 4.    Post-Petition Litigation

Siegfried Rivera Lerner De La Torre & Sobel, P.A. ("Siegfried"), special counsel to the Debtor, represented the Debtor, pre-petition, in a series of extensive negotiations regarding certain of the Deposit Litigation Cases.

On September 22, 2009, the Debtor filed its *Motion for Entry of an Order (I) Authorizing and Approving Certain Proposed Settlements with Unit Purchasers; (II) Establishing an Omnibus Procedure for Settling Certain Deposit Claims; (III) Authorizing Disbursement of Settlement Funds Held in Escrow; and (IV) Authorizing the Reissuance of a Lost Check* [Docket No. 145] (the "Motion to Compromise"), where it sought, among other things, (1) immediate approval of the settlements with the a number of the Purchasers (the "Pending Settlements"); and (2) authority to establish an omnibus procedure for the settlement of any prepetition deposit claims arising from or related to the Deposit Litigation Cases or asserted by any of the Defaulting Purchasers.

On or about October 16, 2009, the Bankruptcy Court entered an Order granting the Motion to Compromise [Docket No. 195], and granting the Debtor authority to, among other things, enter into Pending Settlements with the settling Purchasers and establishing an omnibus procedure for the future settlement of any of the Deposit Litigation Cases.

On or about October 5, 2009, October 21, 2009, November 19, 2009, March 3, 2010, March 19, 2010, and April 7, 2010, and May 5, 2010 certain of the Purchasers filed lawsuits against Cabi Downtown, LLC, Siegfried, and BOA, in the Bankruptcy Court, Adversary Case Nos. 09-02100, 09-02183, 09-02195, 09-02383, 10-02713, 10-02772, and 10-02823, 10-02963, respectively.  There, the Purchasers sought, among other things, (i) a declaration that the amount of the deposits in excess of 15% of the purchase price of each of the Purchasers' deposit should not be included as an asset of the Debtor's bankruptcy estate, (ii) an order directing the escrow agent to return this portion of the deposits to each Purchaser free and clear of any claim or interest of the Debtor, (iii) a declaration that the Debtor has no claim against the funds held in escrow due to Debtor's failure to provide Purchasers with a disclosure summary in violation of Florida Statutes §720.401(1)(a), (iv) an equitable lien imposed against the Debtor for the amount of Purchasers' deposits used to construct the units and building and for prejudgment interest, and/or (v) that the purchase agreements between Debtor and Purchasers be voided and the return of all deposit monies.

**5.    The Yates Action**

Pre-petition, on January 15, 2009,  Debtor filed an action in the State Court against Yates, the former general contractor for Everglades.  The complaint alleged multiple counts, including fraudulent lien, slander of title, and tortious interference with contract, and sought emergency injunctive and declaratory relief, Case No. 09-3465-CA-03 (the "Yates Action").

The Yates Action arose from a disagreement between Yates and the Debtor as to the amount Yates is owed for prepetition construction work.  Pursuant to the terms of the construction contract, the Debtor believed that Yates was responsible for payment of over $2,300,000 for necessary repairs resulting from water damage caused by bursting pipes. Yates countered that the Debtor should be responsible and demanded that the Debtor recover the costs of correction from the Debtor's property insurance carrier.  Thereafter, Yates filed a construction lien (the "Lien") against the project in the amount of $14,761,564.79, or approximately $9,000,000 greater than the maximum amount that Yates previously acknowledged it might legitimately claim under both the Funding Agreement and its sworn applications for payment.  Yates, however, categorically denies making that statement.  Yates also included in the Lien, claims for (a) unapproved construction costs, (b) unapproved change order requests, and (c) delay costs incurred by Yates and its subcontractors as a result of the water damage.  After suffering damages resulting from Yates filing the Lien, the Debtor responded by filing the Yates Action in the State Court.

As part of a mediation process, ordered by the State Court Judge, the parties exchanged settlement stipulations prior to the filing of the Case. The proposed settlement agreement was neither memorialized in writing nor signed by the parties. On or about October 15, 2009, the Debtor filed a Notice of Removal of the Yates Action to the Bankruptcy Court. The Yates Action is presently before the Court as Adversary Proceeding No. 09-02184.

On November 13, 2009, Yates filed the *Emergency Motion of W.G. Yates & Sons Construction Company Pursuant to Bankruptcy Code §§ 361, 362(d), 363(e), 105(a), and Bankruptcy Rule 4004(a)-1* (the "Stay Relief Motion"). In the Stay Relief Motion, Yates asserted that section 108 of the Bankruptcy Code did not toll operation of Fla. Stat. § 713.22, and that Yates would lose its entire lien if Yates were not allowed to pursue a state court foreclosure action against the Debtor prior to December 28, 2009. At the hearing on the Stay Relief Motion, Yates abandoned this argument and instead contended that it should be permitted to pursue foreclosure actions (the "Foreclosure Actions") against certain Condominium Units sold prior to the Petition Date.

On December 17, 2009, the Debtor filed injunctive pleadings to prevent Yates from pursuing the Foreclosure Actions, thereby commencing Adversary Proceeding No. 09-2522-LMI (the "Injunction Action"). The Injunction Action sought to prevent Yates from commencing Foreclosure Actions against certain Condominium Units sold prior to the Petition Date.

On or about December 21, 2009, the Debtor and Yates agreed on the form of an order to settle the issues raised by the Debtor in the Injunction Action (defined *infra* as the "Yates Settlement Order"). On December 21, 2009, the Parties submitted the Yates Settlement Order for the Bankruptcy Court's approval. On December 22, 2009, the Bankruptcy Court entered the Yates Settlement Order, conditioned upon and subject to the entry of an order approving a motion to compromise (as subsequently approved, the "Yates Settlement"). On December 22, 2009, the Debtor filed an expedited motion to compromise the controversy with Yates and approve the Yates Settlement Order (the "9019 Motion"). On December 30, 3009, the Court granted the 9019 Motion, thereby authorizing and approving the Yates Settlement.

The Yates Settlement provided, among other things, for the resolution of the issues surrounding Yates' proposed commencement of the Foreclosure Actions and acknowledged that the Bankruptcy Court has deemed the Lien transferred, to the extent of $1,800,000, to the Yates Escrow Funds. The Yates Settlement further provided that Yates would be granted relief from the automatic stay arising under section 362 of the Bankruptcy Code solely for the limited purpose of commencing an adversary proceeding against the Debtor, First American Title Insurance Company, Siegfried, and BOA, in order to preserve its Lien against the Yates Escrow Funds (the "Enforcement Proceeding"). On or about December 28, 2009, Yates filed the Enforcement Proceeding, in the Bankruptcy Court, Adversary Case No. 09-02545. Pursuant to the terms of the Yates Settlement Order, Yates immediately abated the Enforcement Proceeding.

# IV.

## KEY EVENTS LEADING TO THE
## COMMENCEMENT OF THE REORGANIZATION CASES

**A.      The Decline in the Real Estate Market**

   The Debtor filed Chapter 11 because of (a) the declining real estate market, (b) its inability to reduce condominium prices in response to these changing market conditions, and (c) its inability, due to circumstances beyond its control, to renew, repay, or refinance its secured mortgage debt owed to the Construction Loan Lenders, which matured in March 2009.  ~~In the past year, potential~~Potential purchasers of condominiums at Everglades have sought significant purchase price reductions due to market conditions.  Because the Construction Loan Lenders have refused to grant the Debtor relief from minimum lien release price covenants in the Construction Loan Agreement, the Debtor asserts that it has been stymied from generating significantly more closings at realistic market levels.  Consequently, many of the purchasers that paid 20% pre-construction deposits have cancelled their purchases rather than pay the prices demanded by the Construction Loan Lenders.  Had the Debtor been able to reduce purchase prices as market conditions deteriorated, the Debtor believes that it would have been able to repay all or a substantial portion of the Construction Loan and averted the filing of the Case.

**B.      The Debtor's ~~Business~~ Plan**

   ~~The Debtor is optimistic about its long term economic prospects.  The Debtor's principal asset consists of the unsold units and retail space in Everglades.  The approximate value of the Debtor's assets was determined to be approximately $205 million pursuant to an appraisal obtained by BOA as of January 15, 2009, at the depth of the real estate market in South Florida.  The Debtor has obtained its own valuation of its assets, including the unsold condominium units and retail space in Everglades.  Going forward, the Debtor proposes to continue to sell the remaining condominium units.  Continued successful execution of the its strategy combined with the restructuring proposed in the Plan will enable the Debtor to thrive in the near and long term for the benefit of all economic parties in interest.~~

On the Effective Date of the Plan, the Debtor will be authorized pursuant to the Plan and the Confirmation Order to sell to the Holders of Secured Construction Loan Claims, in consideration for a credit bid by the Transferee, and shall transfer by special warranty deed or bill of sale, as appropriate, and free and clear of all other liens, claims, encumbrances and other interests, on an "as is" basis, all of the Debtor's Collateral securing the Debtor's Obligations, other than those assets of the Debtor, if any, that are designated by the Prepetition Agent as Excluded Assets.  Concurrently with the transfer of the Collateral, the Debtor shall transfer control of all of the HOA's and condominium associations at the Property to the Transferee.

Following the Effective Date, Developers shall serve as the on site manager of the Property until the date that is nine months from the Effective Date, (ii) thirty calendar days after the date on which Developers provides the Transferee with a termination notice, (iii) April 30, 2011 or (iv) the date, if any, on which all or substantially all of the Property is transferred to a third party pursuant to a sale (the "Management Period"), subject to renewal upon the mutual consent of the Transferee and Developers.

## V.

## THE REORGANIZATION CASE

### A.    The Post-Petition Sale of Condominium Units

On August 27, 2009, the Debtor filed its *Emergency Motion to Approve the Sale of Pending Sale Units Pursuant to 11 U.S.C. Section 363 Free and Clear of All Liens, Claims and Encumbrances, and Establishing Procedures for Future Sales of Condominium Units* [Docket No. 51], seeking authority to close on the sale of six Condominium Units, as well as seeking authority to continue to actively market the remaining Condominium Units.  On September 3, 2009, the Court entered the *Order Authorizing the Sale of Pending Sale Units* [Docket No. 85], thereby immediately approving the sale of six Condominium Units.  On September 14, 2009, the Court entered an *Order Granting the Motion to Establish Procedures for Future Sales of Condominium Units* [Docket No. 109] (the "Sales Procedures Order").

Since the commencement of the Case and through April 16, 2010, the Debtor has sold and closed on ~~thirty-nine (39~~forty-seven (47) Condominium Units in total.  The Debtor continues to actively market and sell Condominium Units in the ordinary course of business, free and clear of all liens, claims and encumbrances pursuant to the Sales Procedure Order.

### B.    Debtor in Possession Financing and Use of Cash Collateral

To enable the continued operation of its business, avoid short-term liquidity concerns, and preserve the going concern value of the estate, the Debtor, together with its attorneys, negotiated the terms and conditions of both a Cash Collateral and Postpetition Financing Agreement.  The Postpetition Financing Agreement is a Secured Super-Priority Debtor In Possession Credit Agreement between the Debtor and the DIP Lender, CABI Holdings, Inc., as amended and in effect from time to time, which provided for ~~a $2,000,000~~up to $3,000,000 debtor in possession loan (the "DIP Loan").

On September 2, 2009, the Bankruptcy Court entered the Interim Order Pursuant to 11 U.S.C. §§ 105(a), 361, 363 and 364 and Bankruptcy Rule 4001 (I) Authorizing the Debtor (A) to Obtain Secured Post-Petition Financing, and (B) to Use Cash Collateral and to Grant Replacement Liens and (II) to Schedule Final Hearing [Docket No. 77], as amended by the second, third, fourth, fifth, sixth, seventh, amended seventh, second

amended seventh, and third amended seventh, fourth amended seventh, and fifth amended sevemth interim orders entered on September 20, 2009, October 21, 2009, December 4, 2009, December 7, 2009, January 13, 2010, February 18, 2010, March 2, 2010, March 18, 2010, and April 7, 20102010, May 3, 2010, and May 18, 2010, respectively [Docket Nos. 142, 203, 320, 329, 426, 504, 531, 552, and 584, 616, and 657, respectively].

As of the date hereof, the principal and accrued but unpaid interest thereon owed to the DIP Lender total approximately $2.4 million.

As of the date of the expiration of the interim cash collateral order, the Debtor shall use cash collateral subject to the lien of the Prepetition Lenders, either from interest accrued on the Customer Deposits, or the sales and use tax refund received by the Debtor, or proceeds from the sale of Condominium Unit sales, in order to fund the Debtor's operating needs and liquidation expenses, in accordance with a cash collateral budget approved by the Prepetition Agent, and shall not borrow any additional funds from the DIP Lender beyond the existing DIP Financing Claim without the consent of the Prepetition Agent. The cash collateral order and budget will provide that the Debtor shall continue to implement its DP Program unless and until directed otherwise in writing by the Prepetition Agent.

## C.    The BOA Motion to Dismiss and Emergency Motion

On or about September 14, 2009, BOA, as administrative agent, for itself and the other prepetition secured lenders under the Construction Loan Agreement, filed a Motion to Dismiss (the "Motion to Dismiss") [Docket No. 104], seeking, among other things, the entry of an order (i) dismissing the Debtor's Chapter 11 Case pursuant to section 1112(b) of the Bankruptcy Code for cause, alleging that the Case was filed in bad faith or (ii) in the alternative, seeking (a) relief from the automatic stay under section 362(d) of the Bankruptcy Code to permit BOA to pursue the Foreclosure Action, and (b) adequate protection to BOA for the benefit of the Construction Loan Lenders.

On October 13, 2009, Yates filed an objection to the Motion to Dismiss (the "Yates Objection") [Docket No. 180]. The Yates Objection sought denial of the Motion to Dismiss and alternative relief in the appointment of a Chapter 11 trustee and application of marshalling principals and appraisal of the Debtor's assets to protect Yates and other lien creditors.

On November 11, 2009, the Creditors' Committee and the Debtor filed responses to the Motion to Dismiss, respectively [Docket Nos. 244 and 245]. Hearings were held on the Motion to Dismiss on December 2, 18, 30, 2009 and January 7, 2010.

On January 29, 2010, on the eve of the hearing on the Motion to Dismiss, BOA filed its *Emergency Motion of Bank of America, N.A., as Administrative Agent, for an Order Prohibiting the Debtor From Entering Into Further Residential Leases* (the "Emergency Motion") [Docket No. 445], which was, among other things, an attack on

the Debtor's DP Program.  The Emergency Motion falsely alleged, among other things, that the Debtor ignored adverse results from background checks on potential residents; gave leases to individuals with unacceptable backgrounds; that lease files for nine units show the tenants for those units were convicted of serious criminal offenses, including grand theft, forgery and sexual crimes; and that the debtor failed to undertake any further investigation into those same residents backgrounds.  BOA also alleged that the Debtor did not comply with its operating guidelines for the DP Program.

On February 3, 2010, the Debtor filed its response in opposition to the Emergency Motion [Docket No. 458], in which it, among other things, denied significant inaccuracies in the Emergency Motion, clarified that it did, in most instances operate pursuant to its operating guidelines and provided important business justifications for any departures from the operating guidelines.  On February 4, 2010, the Court issued its Ruling on the Motion to Dismiss and conducted a hearing (the "Hearing") on the Emergency Motion.

At the Hearing, the Court denied the Emergency Motion, because it was substantively and procedurally deficient.  The Court stated, "[i]f [BOA] had, in fact, consulted with the [D]ebtor [as required by Local Rule 9075], then those allegations in the Ward affidavit and the errors in the disclosure of personal information, in violation, I may add, of the Federal Privacy Act, which is embodied both in the Federal Rules of Civil Procedure and statute, and our local rules, which require that every pleading filed be filed consistent with the Federal Privacy Provisions, this could have all been avoided." *See* February 4, 2010 Hearing Transcript, pgs. 7-8.

Furthermore, the Court held that the Debtor's procedures governing acceptance of residents in connection with the DP Program were a proper exercise of business judgment, stating, "Mr. Pique's explanation of what he has done in going outside those [DP Program] guidelines does not evidence that the debtor has acted with whim, caprice or in bad faith, which are the standards by which a court will interfere with the exercise of a corporation's business judgment."  *Id.* at pg. 30.

Moreover, the Court issued an order to show cause why BOA and its counsel should not be sanctioned the cost of all attorneys appearing at the Hearing for filing the Emergency Motion and accompanying affidavit, because, "this was not a really, truly legitimate emergency." *Id.* at pg. 34.  The Debtor reserves its rights and causes of action against BOA in connection with any damages incurred due to BOA's filing of the frivolous and potentially libelous Emergency Motion.

In addition, the Court denied the Motion to Dismiss, finding, among other things, "the debtors do have a legitimate intent to reorganize, and that, contrary to BOA's assertion, the debtor did not file this case for the sole purpose of frustrating Bank of America's exercise of its rights as a secured creditor . . . ."  *Id.* at pgs. 7-8 and "in light of the potential for reorganization, and the fact that there are so many constituencies involved, that dismissal of this bankruptcy case would be inappropriate, even if Bank of America were, or is, ultimately successful in demonstrating insurmountable challenges to

a plan, which at least at this juncture I find, as I will address below, that Bank of America has not proven." *Id.* at pg. 8.

Furthermore, the Court denied BOA's request for stay relief based on BOA's claim that the Debtor is acting in bad faith, that there's no equity in the property, that the property is not necessary for an effective reorganization, and that BOA is not being adequately protected because it is not getting necessary information, it is not receiving insurance funds, and the property is not being repaired. The Court denied the stay relief, because, among other things, the Case was not filed in bad faith *Id.* at pg. 8, because BOA's collateral is, "fairly stable in value . . . and based on appraisal testimony, the value of the asset is not decreasing and, in fact, it appears to be increasing." *Id.* at pg. 10, and, because BOA's interest in the real estate collateral is adequately protected. *Id.* at pg. 11.

On February 9, 2010, the Court entered Orders denying the Emergency Motion [Docket No. 472] and denying the Motion to Dismiss [Docket No. 470].

On February 5, 2010, the Court entered an Order setting hearing to show cause why BOA and its counsel should not be sanctioned and order to pay the fee of all parties and professionals who incurred expenses in connection with the Emergency Motion (the "Order to Show Cause") [Docket No. 467].

On February 9, 2010, the Court entered Orders denying the Emergency Motion [Docket No. 472] and denying the Motion to Dismiss [Docket No. 470].   Shortly thereafter, the Debtor and BOA entered into discussions regarding a consensual plan of liquidation that eventually culminated in the Plan.

On February 19, 2010, counsel for BOA filed a Response to the Order to Show Cause, requesting that the Court cancel the hearing on the Order to Show Cause, as BOA's counsel took responsibility for the filing of the Emergency Motion and agreed to pay all fees and expenses incurred by parties and professionals in connection with the Emergency Motion.

**D.        The Brokerage Agreement**

Prior to the Petition Date and for some time postpetition the Debtor had employed Marka-tech Associates, Inc. ("Marka-tech") as its real estate broker pursuant to a brokerage agreement (the "Brokerage Agreement") dated June 6, 2007, as amended February 22, 2005, and as further amended on or about March 13, 2009, by and between the Debtor, Marka-tech, and Nicholas Grossi ("Grossi"). Subsequently, in an exercise of its business judgment, the Debtor determined that it would be appropriate to retain a new broker to steer the Debtor's sales efforts in a new direction.

On October 26, 2009, the Debtor filed, contemporaneously, (1) the *Motion for Entry of an Order (i) Authorizing and Approving a Settlement with Marka-Tech Associates, Inc. and (ii) Authorizing Payment of Certain Postpetition Commissions* [Docket No. 214] (the "9019 Motion"), (2) the *Motion to Reject Brokerage Agreement*

*Nunc Pro Tunc to October 26, 2009* [Docket No. 215] (the "Motion to Reject"), (3) the *Expedited Application to Employ Silvia Coltrane and Real Estate Transactions, Inc. as Real Estate Broker* [Docket No. 216] (the "RETI Retention Application"), and (4) the *Motion for Authority to Enter into Sales Consulting Agreement with Nicholas Grossi* [Docket No. 217] (the "Grossi Retention Application").

The 9019 Motion sought authority to remit, or to cause the escrow agent to remit, all postpetition sales commissions owed to Marka-Tech pursuant to the Brokerage Agreement in the ordinary course of the Debtor's business.

The RETI Retention Application sought to retain Real Estate Transactions, Inc. ("RETI"), as the new real estate broker, pursuant to a real estate sales and brokerage agreement (the "RETI Brokerage Agreement"), in order to lead sales of the Condominium Units in a new direction. The RETI Brokerage Agreement contemplated, among other things, that RETI would perform sales and marketing services and locate new prospective purchasers of Condominium Units and/or residents of Condominium Units under the DP Program.

The Grossi Retention Application sought to retain Grossi as a Sales Consultant in order to maximize the potential for future sales and deferred purchase transactions.

On October 30, 2009, the Court entered Orders (1) granting the Grossi Retention Application, (2) authorizing the 9019 Motion, (3) granting the Motion to Reject, and (4) granting the RETI Retention Application [Docket Nos. 233, 238, 239, and 240, respectively].

**E.    The Committee**

Pursuant to section 1102(a) and (b) of the Bankruptcy Code, on September 2, 2009, the U.S. Trustee appointed a three-member Committee to represent the interests of unsecured creditors in the Case.  The Committee is represented by Meland Russin & Budwick PA, 200 S. Biscayne Blvd., #3000, Miami, FL 33131.  The current members of the Committee are:

| Committee Members | |
|---|---|
| Lawrence L. Kibler, President<br>Gryphon Construction LLC<br>3300 Corporate Avenue<br>Suite 110<br>Fort Lauderdale, FL 33331<br>Tel: 954-217-1501<br>Fax: 954-217-0757 | Jennifer Shields, Business Manager<br>Fullerton-Diaz Architects, Inc.<br>366 Altara Avenue<br>Miami, FL 33146<br>Tel: 305-442-4200<br>Fax: 305-444-6962 |
| William H. Holly<br>Holly Sime Realty of Miami, Inc.<br>370 Minorca Avenue<br>Coral Gables, FL 33134<br>Tel: 305-789-9200<br>Fax: 305-728-7558 | |

**F.    Bar Date**

The Court set December 16, 2009 as the deadline to file proofs of claim in this Case.

**G.    Debtor's Settlement With the Prepetition Agent and Prepetition Lenders**

On or about May 27, 2010, the Debtor, Holdings, BOA and the Prepetition Lenders reached agreement on a compromise and settlement in connection with the Chapter 11 Case.  The material terms of the compromise and settlement are set forth herein and in the Plan.

**VI.**

**THE PLAN OF ~~REORGANIZATION~~LIQUIDATION**

**A.    Introduction**

~~The Plan provides for a restructuring of the Debtor's financial obligations.  The Debtor believes that the proposed restructuring will provide the Debtor with the necessary liquidity to compete effectively in today's business environment.~~As stated above, the Plan is the result of negotiations between the Debtor and BOA.  The Plan provides for liquidation of the Debtor's assets for the benefit of all creditors and parties in interest.

The Debtor also believes, and will demonstrate to the Bankruptcy Court, that, under the Plan, creditors will receive substantially more value than they would receive in a liquidation of the Debtor under chapter 7 of the Bankruptcy Code.

The following is a general discussion of the provisions of the Plan.  The Plan is attached as Exhibit 1 to this Disclosure Statement.  In the event of any discrepancies, the terms of the Plan will govern.

**B.    Plan Funding**

The Plan is premised upon the funding of (i) up to $4.5 million on the Effective Date in order to consummate the Plan and (ii) shortfalls, if any, by the Reorganized Debtor (the "Equity Contribution").  The investors of the Equity Contribution are (i) Jaime Dayan Tawil, contributing 50% towards the Equity Contribution, (ii) Portovision, S.A. de C.V., contributing 14.4% towards the Equity Contribution, (iii) HS Biscayne Lane, LLC, contributing 4.8% towards the Equity Contribution, (iv) Aracfam U.S. Holdings, LLC, contributing 3% towards the Equity Contribution, (v) Maria Hamui Hamui, contributing 1% towards the Equity Contribution, (vi) Guillermo Huber, contributing 1% towards the Equity Contribution, (vii) My Dream Business Jet S.A. de C.V., contributing 4.8% towards the Equity Contribution, and (viii) GICSA, contributing 21% towards the Equity Contribution (collectively, the "Plan Investors").  The Plan Investors will make the Equity Contribution via a newly formed limited liability company, Cabi Uptown, LLC ("Newco").  All amounts to be paid by Newco as the Equity Contribution will be indefeasibly paid in full, in Cash, through the delivery of an irrevocable letter of credit, through the deposit of Cash in escrow with an escrow agent in the United States, or through the delivery of any other financial instrument approved by the Court.  In return for the Equity Contribution provided by Newco, on the Effective Date, the Reorganized Debtor is authorized to issue 100% of its New Membership Units to Newco.  HS Biscayne Lane, LLC and Aracfam U.S. Holdings, LLC hold Old Equity Interests that are being canceled under the Plan.  The balance of the Plan Investors provided debt financing to Holdings, the majority holder of Old Equity Interests, which are being canceled under the Plan.

**B.    C. Classification and Treatment of Claims and Equity Interests Under the Plan of Reorganization Liquidation**

One of the key concepts under the Bankruptcy Code is that only claims and equity interests that are "allowed" may receive distributions under a chapter 11 plan.  This term is used throughout the Plan and the descriptions below.  In general, an "allowed" claim or "allowed" equity interest simply means that the Debtor agrees, or in the event of a dispute, that the Bankruptcy Court determines, that the claim or equity interest, and the amount thereof, is in fact a valid obligation of the Debtor.  By operation of sections 1111(a), 501(a) and 502(a) of the Bankruptcy Code, a claim or interest that appears in the schedules filed by the Debtor and is not identified as disputed, contingent, or unliquidated, is deemed "allowed" unless a party in interest objects.  Additionally, section 502(a) of the Bankruptcy Code provides that a timely filed proof of claim or equity interest is deemed "allowed" (regardless of the Debtor's schedules) unless the

debtor or other party in interest objects.  However, section 502(b) of the Bankruptcy Code specifies certain claims that may not be "allowed" in bankruptcy even if a proof of claim is filed.  These include, but are not limited to, claims that are unenforceable under the governing agreement between a debtor and the claimant or applicable non-bankruptcy law, claims for unmatured interest, property tax claims in excess of the debtor's equity in the property, claims for services that exceed their reasonable value, real property lease and employment contract rejection damage claims in excess of specified amounts, late-filed claims, and contingent claims for contribution and reimbursement.

The Bankruptcy Code requires that, for purposes of treatment and voting, a chapter 11 plan divide the different claims against, and equity interests in, a debtor into separate classes based upon their legal nature.  Claims of a substantially similar legal nature are usually classified together, as are equity interests of a substantially similar legal nature.  Because an entity may hold multiple claims and/or equity interests which give rise to different legal rights, the "claims" and "equity interests" themselves, rather than their holders, are classified.

Under a chapter 11 plan, the separate classes of claims and equity interests must be designated either as "impaired" (affected by the plan) or "unimpaired" (unaffected by the plan).  If a class of claims is "impaired," the Bankruptcy Code affords certain rights to the holders of such claims, such as the right to vote on the plan, and the right to receive, under the chapter 11 plan, no less value than the holder would receive if the debtor were liquidated in a case under chapter 7 of the Bankruptcy Code.  Under section 1124 of the Bankruptcy Code, a class of claims or interests is "impaired" unless the plan (i) does not alter the legal, equitable and contractual rights of the holders or (ii)irrespective of the holders' acceleration rights, cures all defaults (other than those arising from the debtor's insolvency, the commencement of the case or nonperformance of a nonmonetary obligation), reinstates the maturity of the claims or interests in the class, compensates the holders for actual damages incurred as a result of their reasonable reliance upon any acceleration rights, and does not otherwise alter their legal, equitable and contractual rights.  Typically, this means that the holder of an unimpaired claim will receive on the later of the consummation date or the date on which amounts owing are actually due and payable, payment in full, in Cash, with postpetition interest to the extent appropriate and provided for under the governing agreement (or if there is no agreement, under applicable nonbankruptcy law), and the remainder of the debtor's obligations, if any, will be performed as they come due in accordance with their terms.  Thus, other than its right to accelerate the debtor's obligations, the holder of an unimpaired claim will be placed in the position it would have been in had the debtor's case not been commenced.  Pursuant to section 1126(f) of the Bankruptcy Code, holders of unimpaired claims or interests are "conclusively presumed" to have accepted the plan.  Accordingly, their votes are not solicited.  Under the Plan, the Holders of Class 1 (Priority Non-Tax Claims), Class 3 (Other Secured Claims) and Class 5a (Yates Secured Claim) are unimpaired and conclusively presumed to accept the Plan.

Under certain circumstances, a class of claims or equity interests may be deemed to reject a plan of reorganization or liquidation.  For example, a class is deemed to reject a plan of reorganization or liquidation under section 1126(g) of the Bankruptcy Code if the holders

of claims or interests in such class do not receive or retain property under the plan on account of their claims or equity interests.  Under this provision of the Bankruptcy Code, the holders of ~~equity interests in Class 7 (~~Old Equity Interests (Class 7) are deemed to reject the Plan because they receive no distribution and retain no property interest under the Plan.  Because Class 7 (Old Equity Interests) are deemed to reject the Plan, the Debtor is required to demonstrate that the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code with respect to such class.  Among these are the requirements that the plan be "fair and equitable" with respect to, and not "discriminate unfairly" against, the claims and equity interests in such class.  For a more detailed description of the requirements for confirmation, see ~~section~~Section IX.B below, entitled "CONFIRMATION OF THE PLAN OF ~~REORGANIZATION~~ LIQUIDATION-- Requirements for Confirmation of the Plan of ~~Reorganization~~Liquidation."

Consistent with these requirements, the Plan divides the Allowed Claims against, and Allowed Equity Interests in the Debtor into the following classes:

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1 | Priority Non-Tax Claims | Unimpaired | No |
| Class 2 | Secured Tax Claim of Miami-Dade County Tax Collector | Impaired | Yes |
| Class 3 | Other Secured Claims | Unimpaired | No |
| Class 4 | Secured Construction Loan Claims | Impaired | Yes |
| Class 5a | Yates Secured Claim | Unimpaired | No |
| Class 5b | Secured Customer Deposit Claims | Impaired | Yes |
| Class 6 | General Unsecured Claims | Impaired | Yes |
| Class 6b | Yates Unsecured or Equitably Subordinated Claim | Impaired | Yes |
| Class 7 | Old Equity Interests | Impaired | No (Deemed to Reject) |

1.    **Unclassified**

a.    **Administrative Expenses**

~~Administrative Expenses are the actual and necessary costs and expenses of the Debtor's Case that are allowed under sections 503(b), 507(a)(1) and 507(b) of the Bankruptcy Code.  Such expenses will include, but are not limited to, amounts owed to vendors providing goods and services to the Debtor during the chapter 11 cases and tax obligations incurred after the Petition Date.  Other Administrative Expenses include the actual, reasonable, and necessary professional fees and expenses of the Debtor's and Committee's advisors incurred during the pendency of the Case.~~

Except to the extent that a Holder of an Allowed Administrative Expense agrees to a less favorable treatment, and except as provided in Section 2.1 of the Plan, as soon as reasonably practicable on or after the Effective Date, the ~~Reorganized Debtor~~Plan Administrator shall pay Cash in an amount equal to such Allowed Administrative Expense to each Holder of an Allowed Administrative Expense; *provided*, *however*, that Allowed Administrative Expenses representing liabilities incurred in the ordinary course of business by the Debtor, shall be assumed and paid by the ~~Reorganized Debtor~~Plan Administrator in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

On the Effective Date, the Plan Administrator, shall, without the need for Bankruptcy Court approval: (a) pay from the Post-Confirmation Administrative Reserve all Allowed Administrative Expense Claims, and (b) create a reserve or reserves to pay any Disputed Administrative Expense Claims and estimated post-Confirmation expenses of the Plan Administrator (collectively, the "Post-Confirmation Administrative Reserve"). The Post-Confirmation Administrative Reserve shall be funded from the Estate's Cash.

The Post-Confirmation Administrative Reserve shall contain funds sufficient to pay Holders of Disputed Administrative Expense Claims the maximum Distribution to which they are entitled under the Plan. The Post-Confirmation Administrative Reserve shall be maintained by the Plan Administrator in an interest-bearing account pending Distributions. Any funds remaining in the Post-Confirmation Administrative Reserve after payment in full of all Disputed Allowed Administrative Expense Claims and Post-Confirmation expenses of the Plan Administrator shall be distributed to the Holders of General Unsecured Claims.

### b.    Professional Fee Claims

All Persons seeking awards by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code shall (i) file, on or before the deadline specified in Local Rule 2016-1(c)(1), their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred and (ii) be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court (A) upon the later of (1) the Effective Date and (2) the date on which the order that deemed such Administrative Expense Allowed becomes a Final Order or (B) upon such other terms as may be mutually agreed upon by such Holder and the ~~Reorganized Debtor~~Plan Administrator. The ~~Reorganized Debtor~~Plan Administrator is authorized to pay compensation for professional services rendered and reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

### c.    Repayment of DIP Loan

The Transferee shall be obligated to pay to Holdings in full and final satisfaction of the DIP Financing Claim, the sum of $2.336 million on or before December 31, 2010, which

obligation shall be evidenced by a non-interest bearing promissory note executed by the Transferee in favor of Holdings.

### d.    Payment of Statutory Fees

All fees payable under section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date.  All such fees that arise after the Effective Date but before the closing of the Reorganization Case shall be paid by the Plan Administrator. The Plan Administrator will pay fees under section 1930 of title 28 of the United States Code after the Effective Date until a final decree is entered, the Case is Closed, dismissed or converted, and shall file monthly operating reports, until a final decree is entered, the Case is Closed, dismissed or converted.

### e.    b. Priority Tax Claims

Priority Tax Claims essentially consist of unsecured claims of federal and state governmental authorities for the kinds of taxes specified in section 507(a)(8) of the Bankruptcy Code, such as certain income taxes, property taxes, excise taxes, and employment and withholding taxes.  These unsecured claims are given a statutory priority in right of payment.  The Debtor estimates that on the Effective Date, the Allowed amounts of such claims will aggregate approximately $0.

With respect to any Priority Tax Claims not paid pursuant to prior Bankruptcy Court order, except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive, commencing on as soon as reasonably practicable on or after the Effective Date, and continuing over a period not exceeding five (5) years after the Petition Date, Cash payments in an aggregate amount equal to such Allowed Priority Tax Claim, together with simple interest at the Applicable Rate, subject to the sole option of the Debtor or Reorganized DebtorPlan Administrator to prepay the entire amount of the Allowed Priority Tax Claim at any time without penalty.  All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due.

### 2.    Classified

The Plan provides for the treatment of each class of claims or interests as outlined below.

### Class 1 – Priority Non-Tax Claims
(*Not Impaired; Not Entitled to Vote.*)

Priority Non-Tax Claims include certain claims that are granted priority in payment under section 507(a) of the Bankruptcy Code, including certain wage, salary and other compensation obligations to employees of the Debtor up to a statutory cap of $10,000 per employee.  The Debtor estimates that on the Effective Date, the allowed amount of such claims will aggregate approximately $271,000.

With respect to any Allowed Priority Non-Tax Claims not paid pursuant to prior Bankruptcy Court order, as soon as reasonably practicable on or after the Effective Date or the date that is ten (10) days after the date such claim is Allowed, and except to the extent that a Holder of an Allowed Priority Non-Tax Claim agrees to less favorable treatment, each Allowed Priority Non-Tax Claim shall be paid in full in cash in accordance with the priorities set forth in section 507 of the Bankruptcy Code.  All Allowed Priority Non-Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business.

**Class 2 – Secured Tax Claim of Miami-Dade County Tax Collector**
(*Impaired; Entitled to Vote.*)

Secured Tax Claim of Miami-Dade County Tax Collector includes certain claims for ad valorem taxes accrued during 2009 that are secured and constitute first priority liens against the Property pursuant to applicable non-bankruptcy law.

As soon as reasonably practicable on or after the Effective Date, the Miami-Dade County Tax Collector shall receive, at the sole option of the ~~Debtor~~Plan Administrator: (a) payment in full in Cash in the amount of the remaining 2009 taxes owed on the disbursement date, which shall include statutory interest in the event that the 2009 taxes are delinquent at the time of payment, provided, however, that so long as either any Value Adjustment Board petitions or any action in the Circuit Court challenging the assessments of the Miami-Dade County Property Appraiser with respect to the taxed real or personal property are pending, such payment shall be limited to the amount of the good faith payment estimated to be due and owing by the Debtor, which amount has already been paid to the Miami Dade Tax Collector, (b) reinstatement of the Secured Tax Claim, which will entitle the Tax Collector to (i) sell tax certificates, to the extent that there are no Value Adjustment Board petitions or any action in the Circuit Court challenging the assessments of the Miami-Dade County Property Appraiser with respect to the taxed real or personal property pending or unless the Debtor agrees to the sale of certificates, and (ii) otherwise proceed pursuant to Florida law, or (c) satisfaction by the surrender of any of the collateral securing the Secured Tax Claim.  All postpetition taxes on unsold units owed from 2010 forward shall be paid in the ordinary course prior to delinquency. All taxes remaining due and owing after the final resolution of administrative or judicial challenges to the Property Appraiser's assessments shall be paid within thirty days of the final resolution, and such payment shall include statutory interest, if any, due as of the delinquency date.

**Class 3 – Other Secured Claims**
(*Not Impaired; Not Entitled to Vote.*)

Class 3 consists of Allowed Other Secured Claims, which are secured Claims other than those classified in Classes 4, 5a, and 5b.  The Debtor estimates that on the Effective Date, the Allowed amount of Other Secured Claims will aggregate approximately $5 million.

As soon as reasonably practicable on or after the Effective Date, except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, each

Holder of an Allowed Other Secured Claim shall receive, at the sole option of the ~~Debtor, (~~Plan Administrator: (a) payment in full in Cash in the amount of the Allowed Other Secured Claim, (b) reinstatement of the Allowed Other Secured Claim, (c) satisfaction by the surrender of the collateral securing such Allowed Other Secured Claim, or (d) a treatment that otherwise renders the Allowed Other Secured Claim unimpaired pursuant to section 1124 of the Bankruptcy Code.

**Class 4 – Secured Construction Loan Claims**
            (*Impaired; Entitled to Vote*.)


Class 4 consists of the Allowed Secured Construction Loan Claims.  ~~The Debtor estimates that on the Effective Date, the Allowed amount of such claim will aggregate approximately $207 million.~~

~~As soon as reasonably practicable on or after the Effective Date, each Holder of an Allowed Secured Construction Loan Claim shall be entitled to its Ratable Proportion of the New Senior Notes.~~ On the Effective Date of the Plan, the Debtor will sell to the Holders of Secured Construction Loan Claims, in consideration for a credit bid by the Transferee, and shall transfer by special warranty deed or bill of sale, as appropriate, and free and clear of all other liens, claims, encumbrances and other interests, on an "as is" basis, all of the Debtor's Collateral securing the Debtor's Obligations, other than those assets of the Debtor, if any, that are designated by the Prepetition Agent as Excluded Assets.  Concurrently with the transfer of the Collateral, the Debtor shall transfer control of all of the HOA's and condominium associations at the Property to the Transferee.


In exchange for the transfer of the Debtor's Collateral, the Holders of Secured Construction Loan Claims will not assert any claim against the General Unsecured Claims Cash Distribution.

**Class 5a – Yates Secured Claim**
            (*Unimpaired; Not Entitled to Vote.*)

Class 5a consists of the Allowed Yates Secured Claim.  The Debtor estimates that on the Effective Date, the Allowed amount of such Claim will be no more than $4.8 million~~. Contemporaneously with the filing of this Disclosure Statement, the Debtor has amended~~, and the Debtor is seeking to equitably subordinate the Yates' Claim to the extent it exceeds $1,800,000.  Yates' has filed numerous pleadings and objections, whereby, Yates alleges that it is entitled to the full amount alleged in its proof of claim, which Yates argues is no less than $14.7 million.  The Debtor is amending its complaint against Yates in Adversary Proceeding No. 09-02184 to include ~~two additional counts.  One count objecting to the amount of Yates' claim, and a second count to determine the extent that Yates' Claim is secured.~~  a number of additional counts, including an objection to claim, breach of contract, and equitable subordination.  The Debtor's position is that Yates' right to payment on ~~his~~its secured Claim is limited to ~~the funds in,~~ at most, the Yates Escrow Funds and the FA Escrow Account, subject to the Debtor's right to set-off and to

object to Yates' Claim., and to equitably subordinate the portion of Yates' Claim in excess of $1,800,000. As of April 30, 2010, the amount of funds held in the FA Escrow Account is $3,060,870.99.

AsOn or as soon as reasonably practicable on or after the Effective Date, (a) the Holder of anthe Allowed Yates Secured Claim shall receive, to the extent of the Allowed amount of its Secured Claim, the amount of $1.8 million held and defined as the Yates Escrow Funds, pursuant to the Yates Settlement Order, and (b) if the Allowed Yates Secured Claim exceeds $1.8 million, then the Holder of an Allowed Yates Claim shall receive, to the extent of the Allowed amount of its Secured Claim, funds payable from the FA Escrow Account established pursuant to and defined in the Funding Agreement.; provided, however, to the extent the Yates Secured Claim is equitably subordinated by the Court, then such Claim shall be treated as a Claim under Class 6b of the Plan. Any objections filed by the Debtor to the Yates' proofs of claim,Claims shall have no bearing on Yates' receiving, on the Effective Date, the amount of $1.8 million held and defined as the Yates Escrow Funds, pursuant to the Yates Settlement Order.

**Class 5b –Secured Customer Deposit Claims**
                  (*Impaired; Entitled to Vote.*)

Class 5b consists of the Allowed Secured Customer Deposit Claims. The Debtor estimates that on the Effective Date, the Allowed amount of such Claims will aggregate approximately $19.9 million.

Each Holder of an Allowed Secured Customer Deposit Claim may elect between Option A, as a full and final settlement of its Claim, and Option B, as follows:

                  Option A: As soon as reasonably practicable on or after the Effective Date, each Holder of an Allowed Secured Customer Deposit Claim shall receive (a) if such Holder made a Customer Deposit of 20% of the purchase price of the applicable unit, 7.5% of the purchase price for such unit as set forth in the applicable sale agreement or (b) if such Holder made a Customer Deposit of 30% of the purchase price of the applicable unit, 17.5% of the purchase price for such unit as set forth in the applicable sale agreement, which in either the case of (a) or (b) herein, shall be due in a lump sum payable as soon as reasonably practicable after the Effective Date. Such paymentpayments described for distribution to Holders who elect Option A, are being held in a separate escrow account for such Holders and shall be in full and final satisfaction of such Holder's Claim. Concurrently with such payment, the Debtor will receive the balance of the funds in escrow from the deposit made by such Holder, plus all interest accrued on such Holder's deposit. Any pending litigation against the Debtor, whether in state court or bankruptcy court, commenced by such Holder, will be dismissed with prejudice. Each HolderHolders of an Allowed Secured Customer Deposit Claim shall have the right toClaims shall not be entitled to treat the balances of their Claims as general unsecured claims in Class 6, because it is the Debtor's position that they are in default under their Condominium Unit purchase agreements.

Furthermore, as a result of such alleged default, Holders of Allowed Secured Customer Deposit Claims are not entitled to apply their entire Customer Deposit towards the purchase price of a Condominium Unit, but rather may only apply the amount received under this Section 4.6 of the Plan towards the purchase of a new condominium unit at a price mutually acceptable to such Holder, the Debtor and the Prepetition Agent.

Option B:  A Purchaser who elects in writing to reject Option A and to proceed with Option B shall not receive any distribution on the Effective Date, but may retain all rights to contest the Debtor's objection to such Purchaser's proof of claim, whether pursuant to an adversary proceeding or a claim objection.  The Customer Deposits, of the Holders who elect Option B, will remain in escrow until the issues are resolved by final order and all appellate remedies are exhausted.

If the Holder of an Allowed Secured Customer Deposit Claim fails to reject Option A and fails to make a written election to proceed with Option B, such Holder shall be deemed to have consented to the treatment of such Holder's Claim set forth in Option A.

**Class 6a – General Unsecured Claims**
(*Impaired; Entitled to Vote.*)

Class 6a consists of Allowed General Unsecured non-priority Claims, which generally include the Claims of trade and other business creditors for goods and services provided to the Debtor prior to the Petition Date, damage Claims arising from the Debtor's rejection of executory contracts and unexpired leases, and claims asserted in litigation in respect of events arising prior to the Petition Date.  The General Unsecured Claims of affiliates shall not be included in Class 6a and shall be released with no distribution.

The Debtor estimates that on the Effective Date, the amount of Allowed Class 6 Claims will aggregate approximately $7.52.4 million.

The Plan provides that on or as soon as reasonably practicable after the Effective Date, or the date that is ten (10) days after the date such claim is Allowed (whichever is later), each Holder of an Allowed General Unsecured Claim except an Allowed Intercompany Claim, shall receive its Ratable Proportion of the General Unsecured ClaimClaims Cash Distribution.

**Class 6b – Yates Unsecured or Equitably Subordinated Claim**
(*Impaired; Entitled to Vote.*)

Class 6b consists of the Yates Unsecured or Equitably Subordinated Claim, which includes the $1.4 million unsecured Claim filed by Yates as well as any other Claim of Yates that is either equitably subordinated by the Court or is otherwise deemed not to be a Yates Secured Claim.  The Debtor seeks to subordinate such Claims pursuant to section 510(c) of the Bankruptcy Code.

To the extent that the Debtor or Plan Administrator is successful in subordinating any of the Yates Claims, Yates as holder of the Yates Claims shall not be entitled to, nor shall it receive or retain, any property or interest in property on account of such Yates Claims,

other than the distribution provided for under Class 5a of the Plan and the Yates Subordinated Claim will be discharged, cancelled, and expunged.  To the extent that the Debtor or Plan Administrator is unsuccessful in equitably subordinating the Yates Claims, Yates as the holder of the Yates' claims shall be entitled to (a) a distribution on its Yates Secured Claim as provided in Class 5a; and (b) the same percentage distribution afforded to Holders of Class 6a General Unsecured Claims on its Allowed Unsecured Claim.

**Class 7 – Old Equity Interests**

> (*Impaired; Deemed to Reject the Plan and Not Entitled to Vote*.)

Class 7 consists of the Old Equity Interests, which include any and all shares of common stock, shares of preferred stock or other equity or ownership interests whatsoever in the Debtor, including all rights relating to any Equity Security, and all rights, interests, and Claims arising under or in connection with any agreements entered into by the Debtor in connection with the issuance, purchase or sale of such security.  On the Effective Date, the Old Equity Interests will be cancelled and the holders of the Old Equity Interests will not be entitled to, and will not receive or retain, any property or interest in property on account of such Old Equity Interests.  On the Effective Date, all obligations of the Debtor to Holders of Old Equity Interests shall be completely discharged.

The following are holders of Old Equity Interests:  Avemar 2318 Corp., holding 16%; Cabi Holdings, LLC, holding 76.2%; HS Biscayne Lane, LLC, holding 4.8%, and Aracfam U.S. Holdings, LLC, holding 3%.

**C.**    ~~**D.**~~**Means of Implementing the Plan**

**1.      Sale to Holders of Secured Construction Loan Claims.**

On the Effective Date of the Plan, the Debtor will be authorized pursuant to the Plan and the Confirmation Order to transfer to the Holders of Secured Construction Loan Claims, in consideration for a credit bid by the Transferee, and shall transfer by special warranty deed or bill of sale, as appropriate, and free and clear of all other liens, claims, encumbrances and other interests, on an "as is" basis, all of the Debtor's Collateral securing the Debtor's Obligations, other than those assets of the Debtor, if any, that are designated by the Prepetition Agent as Excluded Assets.  Concurrently with the transfer of the Collateral, the Debtor shall transfer control of all of the HOA's and condominium associations at the Property to the Transferee.  An agreement between the Prepetition Lenders, the Prepetition Agent and the Debtor, outlining, in greater detail, the terms of the sale, will be filed with the Plan Supplement.

The Debtor, the Prepetition Lenders, and the Prepetition Agent will use commercially reasonable efforts to cause the sale to occur as soon as possible.  The Debtor will move for confirmation of the Plan premised upon the consummation of the sale.

**2. 1. Cancellation of Existing Securities and Agreements.**

On the Effective Date, the Postpetition Financing Agreement, the Prepetition Credit Agreement, all agreements, documents and instruments relating to the Old Equity Interests, and all Old Equity Interests shall be cancelled; *provided, however*, that the Mortgage shall continue in effect and shall secure the New Senior Notes issued pursuant to the Plan. .

**2. New Notes/Issuance of New Indebtedness**

On the Effective Date, the Reorganized Debtor is authorized to execute and deliver the New Senior Notes and enter into the New Senior Loan Agreements and incur the indebtedness and obligations thereunder, and perform such obligations, without the need for any further corporate action and without any further action by Holders of Claims or Equity Interests.

**3. Plan Contributions/Issuance of New Membership Units Vesting of Property of the Estate.**

The Plan is premised upon funding consisting of the Equity Contribution by the Plan Investors via Newco. In return for the Equity Contribution provided by Newco, on the Effective Date, the Reorganized Debtor is authorized to issue 100% of its New Membership Units to Newco, without the need for any further corporate action and without any further action by Holders of Claims or Equity Interests.

Except to the extent otherwise provided herein, upon the occurrence of the Effective Date, any and all Estate Property pursuant to Section 541 of the Bankruptcy Code, including, without limitation, all Estate Causes of Action, shall remain with the Liquidating Debtor, free and clear of all liens, claims, and interests, except as expressly provided in the Plan, but shall be held, maintained and administered solely by the Plan Administrator.

**4. Legal Form and Governance Prosecution of Debtor's Claims Against Third Parties.**

(1) New Organizational Documents. The Debtor as may be specified in the Plan Supplement shall be deemed to have adopted its respective New Organizational Documents effective as of the Effective Date. On the Effective Date, or as soon thereafter as practicable, the Debtor shall file the applicable New Organizational Documents as required or deemed appropriate, with the appropriate Persons in the applicable jurisdiction of incorporation or organization. The New Organizational Documents shall provide for the New Membership Units, among other things as deemed necessary, advisable or appropriate by the Managers of the Debtor. Except to the extent amended or restated by applicable New Organizational Documents, the Debtor's Existing Organizational Documents will remain in full force and effect after the Effective Date.

(2)    Managers of the Reorganized Debtor.  On the Effective Date, the operation of the Reorganized Debtor shall become the general responsibility of its Managers, subject to, and in accordance with, its New Organizational Documents or Existing Organizational Documents.  The initial Managers of the Reorganized Debtor will be: Elias Cababie Daniel, Elias Amkie Levy, Abraham Cababie Daniel, Rafael Harari Tussie, and Jaime Dayan Tawil, each of whom were also managers of the Debtor.  Biographical information for each of the managers shall be set forth in the Plan Supplement.   The Debtor reserves the right, at any time prior to the entry of the Confirmation Order, to amend or supplement the names of those who will be Managers of the Reorganized Debtor.

(3)    Officers of the Reorganized Debtor.  The initial officers of the Reorganized Debtor will be: Elias Cababie Daniel, President; Elias Amkie Levy, Senior Vice President Operations; Rafael Harari Tussie, Senior Vice President of Development; and Sandy G. Piqué, Chief Financial Officer.  Each of those listed who will be officers of the Reorganized Debtor, were also officers of the Debtor.  Biographical information for each of the officers, shall be set forth in the Plan Supplement.  The Debtor reserves the right, at any time prior to the entry of the Confirmation Order, to amend or supplement the names of those who will be officers of the Reorganized Debtor.

(4)    Due Authorization.  On the Effective Date, the adoption of the New Organizational Documents shall be authorized and approved in all respects, to be effective as of the Effective Date, in each case without further action under applicable law, regulation, order, or rule, including without limitation, any action by the directors, Managers, members, partners or stockholders of the Debtor or the directors, Managers, members, partners or stockholders of the Reorganized Debtor.  On the Effective Date, the cancellation and termination of all old Equity Interests, the authorization and issuance of the New Membership Units, and all other matters provided in the Plan involving the legal structure or governance of the Reorganized Debtor shall be deemed to have occurred, been authorized, and be in effect from and after the Effective Date, in each case without further action under applicable law, regulation, order, or rule, including, without limitation, any action by the directors, Managers, members, partners or stockholders of the Debtor or the Reorganized Debtor.

**E.    Securities Law Matters**

**1.    Exemptions from Registration**

In reliance upon section 1145 of the Bankruptcy Code, the offer and issuance of the New Senior Notes and the New Membership Units (to the extent that the New Membership Units and New Senior Notes constitute "securities", they are hereinafter collectively referred to as the "1145 Securities") will be exempt from the registration requirements of the Securities Act of 1933 (the "Securities Act") and equivalent provisions in state securities laws.  Section 1145(a) of the Bankruptcy Code

generally exempts from such registration requirements the issuance of securities if the following conditions are satisfied: (i) the securities are issued or sold under a chapter 11 plan by (A) a debtor, (B) one of its affiliates participating in a joint plan with the debtor, or (C) a successor to a debtor under the plan; and (ii) the securities are issued entirely in exchange for a claim against or interest in the debtor or such affiliate, or are issued principally in such exchange and partly for cash or property. The Debtor believes that the exchange of 1145 Securities for Claims against the Debtor under the circumstances provided in the Plan will satisfy the requirements of section 1145(a) of the Bankruptcy Code.

The 1145 Securities will be "restricted securities" under applicable federal securities laws upon issuance on the Effective Date. The Securities Act of 1933 (as amended, the "Securities Act") and the rules of the Securities and Exchange Commission (the "Commission") provide in substance that the holders may dispose of the 1145 Securities only pursuant to an effective registration statement under the Securities Act or an exemption therefrom. However, the Debtor has no obligation or intention to register any of the 1145 Securities, or to take action so as to permit sales pursuant to the Securities Act (including Rule 144 thereunder). Accordingly, under the Commission's rules, the holders may dispose of the 1145 Securities principally only in "private placements" which are exempt from registration under the Securities Act, in which event the transferee will acquire "restricted securities" subject to the same limitations as in the hands of the holders. As a consequence, the holders must bear the economic risks of 1145 Securities for an indefinite period of time. There is no public market for the 1145 Securities and such a public market may never develop.

Pursuant to the Plan, certificates evidencing 1145 Securities will bear a legend substantially in the form below:

**THE ISSUANCE OF THE SECURITIES EVIDENCED BY THIS CERTIFICATE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR UNDER THE SECURITIES LAWS OF ANY STATE OR OTHER JURISDICTION AND SUCH SECURITIES MAY NOT BE SOLD, OFFERED FOR SALE OR OTHERWISE TRANSFERRED UNLESS SUCH OFFER, SALE OR TRANSFER IS REGISTERED OR QUALIFIED UNDER SAID ACT AND APPLICABLE STATE SECURITIES LAWS OR UNLESS THE COMPANY RECEIVES AN OPINION OF COUNSEL REASONABLY SATISFACTORY TO IT THAT SUCH REGISTRATION OR QUALIFICATION IS NOT REQUIRED.**

The Debtor makes no representations concerning the right of any person to transfer any securities to be distributed pursuant to the Plan.

Except to the extent otherwise provided herein, the Plan Administrator shall be substituted as the plaintiff in the Estate Causes of Action, if any, to the extent not settled

or resolved prior to the Confirmation Date or in accordance with this Plan. The net Cash proceeds recovered through any such actions will constitute Collected Cash.  In the event that any Estate Cause of Action is dismissed or abandoned, the Plan Administrator may negotiate with the Committee as to the Committee's authority to prosecute any such actions, with fees to be paid to the Committee in a reasonable amount, mutually acceptable to the Debtor and the Committee.

**5.      Liquidation of Estate Property.**

The Plan Administrator shall liquidate all Estate Property as quickly as practicable in a commercially reasonable manner and reduce such property to Collected Cash; provided, however, if the Plan Administrator determines that an asset is burdensome or of inconsequential value, said asset may be abandoned pursuant to court order.

**6.      Dissolution of Liquidating Debtor.**

In connection with the closing of the Case, the Liquidating Debtor shall be authorized (but not directed) to dissolve in accordance with applicable state law, and the Plan Administrator shall be authorized to dissolve the Liquidating Debtor in accordance with applicable state law.

**7.      Funding of Plan Administrator.**

To the extent necessary, the Prepetition Lenders will provide sufficient funds to the Plan Administrator to effectuate the Plan, including funding, if necessary, for the prosecution of Debtor's claims against third parties, if any, liquidation of Estate Property, and prosecuting Claims objections.

**8.      Cabi Developers LLC as Post-Effective Date Manager of the Property.**

Following the Effective Date, Developers shall remain on site as a manager of the Property during the Management Period, subject to renewal upon the mutual consent of the Transferee and Developers.  During the term of the Management Period, the only management fee or other consideration due to Developers for such management services shall be as provided in the Management Services Agreement, which form will be filed with the Plan Supplement.

During the Management Period, the Transferee shall have the right to direct Developers in all aspects of the management of the Property, including the sales, leasing and construction efforts.  Without limiting the foregoing, the Prepetition Agent shall have the right to replace the property management company (i.e., KW Property Management) and the sales and leasing brokerage company (i.e., RETI) for the Property, in accordance with the termination provisions of the applicable agreements with such companies.

Developers and the Transferee shall cooperate in the smooth and orderly transition of the management of the Property at the conclusion of the Management Period.

The Liquidating Debtor shall use best efforts to transfer to the Transferee all available books, records, items and information pertaining to the operation and management of the Property, all as shall be more particularly described in the interim management agreement by and between Developers and the Transferee.

### **9.** ~~2.~~ **Exemption from Transfer Taxes**

Pursuant to section 1146(a) of the Bankruptcy Code, the ~~issuance, transfer, or exchange of notes or equity securities under or in connection with the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other~~execution, delivery or recording of an instrument of transfer under~~, in furtherance of, or in connection with the Plan, including, without limitation, the New Senior Notes, the New Membership Units, any merger agreements, or agreements of consolidation, deeds, bills of sale, or assignments executed in connection with any of the~~ the Plan, or the transfer or sale of any real, personal or other Property of Estate by the Plan Administrator, including but not limited to all transactions contemplated ~~under the Plan shall not be subject to~~by or effected in connection with the transfer of the Property to the Transferee, shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee; provided, however, section 1146(a) of the Bankruptcy Code will not exempt the Liquidating Debtor from paying any stamp, real estate transfer, mortgage recording, or other similar tax~~.~~ for any Condominium Unit sales made in the ordinary course of business. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, mortgage recording tax, intangible tax or similar tax.

### **10.** ~~3.~~ **Expedited Tax Determination**

The Debtor and the ~~Reorganized Debtor~~Plan Administrator are authorized to request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for any or all returns filed for, or on behalf of, the Debtor for any and all taxable periods (or portions thereof) ending before or after the Petition Date through, and including, the Effective Date.

### **D.** ~~F.~~ **Plan Provisions Governing Distribution**

### **1.    Date of Distributions**

Unless otherwise provided herein, any distributions and deliveries to be made hereunder shall be made on the Effective Date or as soon as practicable thereafter and deemed made on the Effective Date.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

## 2.    Distributions Concerning Disputed Unsecured Claims

Disputed Class 6 Claims Reserve.  From and after the Effective Date, all Cash to be distributed on account of any Disputed General Unsecured Claims, when and if such Disputed General Unsecured Claims become Allowed, (a) will ~~be~~remain with the Liquidating Debtor, free and clear of all liens, claims, and interests, except as expressly provided in the Plan, but shall be held, maintained and administered solely by ~~and in the name of the Disbursing Agent~~the Plan Administrator, in the Disputed Class 6 Claims Reserve, and will be held in trust pending distribution by the ~~Disbursing Agent~~Plan Administrator for the benefit of the Holders of such Claims and, to the extent that all Disputed General Unsecured Claims are not Allowed in full, for the benefit of Holders of Allowed General Unsecured Claims in accordance with Section ~~7.3~~4.7 of the Plan, (b) will be accounted for separately and (c) will not constitute property of the ~~Reorganized~~Liquidating Debtor except as provided in Section ~~7.3~~4.7 of the Plan.  The ~~Disbursing Agent~~Plan Administrator will invest any Cash in a manner consistent with ~~Reorganized Debtor~~Plan Administrator's investment and deposit guidelines.

Reserved Amount.  The amount of Cash to be placed in the Disputed Class 6 Claim Reserve shall be calculated as if each Disputed General Unsecured Claim were an Allowed Claim in its Face Amount, such that the Reserved amount shall include the aggregate Ratable Proportion of Cash that such Disputed General Unsecured Claims would receive if they were Allowed in their Face Amount.  Since not all objections have been filed, the Debtor is not able to ascertain, at this time, the specific amount of funds that will be in the Disputed Class 6 Claim Reserve.

Recourse.  Each Holder of a Disputed General Unsecured Claim will have recourse only to the undistributed Cash held in the Disputed Class 6 Claim Reserve for satisfaction of the distributions to which Holders of Disputed General Unsecured Claims are entitled under ~~the~~this Plan, and not to the ~~Reorganized~~Liquidating Debtor, its property or any assets previously distributed on account of any Allowed Claim.

## 3.    ~~Disbursing Agent~~Distributions Made Under Plan

All distributions under ~~the~~this Plan shall be made by the ~~Debtor as Disbursing Agent or such other entity designated by the Debtor as a Disbursing Agent~~Plan Administrator on the Effective Date, which ~~Disbursing Agent~~Plan Administrator shall not be required to give any bond or surety or other security for the performance of its duties.

## ~~4.    Rights and Powers of Disbursing Agent~~

### ~~a.    Powers of the Disbursing Agent~~

~~The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (ii) make all distributions contemplated hereby, (iii) employ professionals to represent it with respect to its responsibilities, and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan,~~

~~or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.~~

**b.** ~~Expenses Incurred On or After the Effective Date~~

~~Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including, without limitation, taxes) and any reasonable compensation and expense reimbursement claims (including, without limitation, reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtor.~~

**4.** ~~5.~~**Delivery of Distributions**

**a.** ~~Last Known Address~~

a.      Last Known Address.  Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtor or its agents, as applicable, unless the Debtor or ~~Reorganized Debtor~~Plan Administrator has been notified in writing of a change of address, including, without limitation, by the filing of a proof of Claim or interest by such holder that contains an address for such holder different from the address reflected for such holder on the Schedules.  In the event that any distribution to any holder is returned as undeliverable, the ~~Disbursing Agent~~Plan Administrator shall use commercially reasonable efforts to determine the current address of such holder, but no distribution to such holder shall be made unless and until the ~~Disbursing Agent~~Plan Administrator has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest; provided that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of the later of one year from the Effective Date or 6 months after such Claim is Allowed.  After such date, all unclaimed property or interest in property shall ~~revert to Reorganized Debtor~~be paid over by the Plan Administrator to the Court, in accordance with Local Rule of Bankruptcy Procedure 3011-1(B), and the Claim of any other holder to such property or interest in property shall be discharged and forever barred.

**b.** ~~Distributions for Allowed Secured Construction Loan Claims~~

b.      Distributions for Allowed Secured Construction Loan Claims.  Distributions required under ~~the~~Distributions for Allowed Secured Construction Loan Claims this Plan to Holders of Allowed Secured Construction Loan Claims in Class 4 shall be made to the Prepetition Agent, which, in turn, shall make the distributions to the Holders of Allowed Secured Construction Loan Claims in accordance with the Prepetition Credit Agreement.

**5.** ~~6.~~**Manner of Payment**

At the option of the ~~Disbursing Agent~~Plan Administrator, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements.~~All distributions of Cash, New Senior Notes, or the New~~

~~44~~44

Membership Units to the creditors of the Debtor under the Plan shall be made by, or on behalf of, the Debtor.   Cash payments made pursuant to this Plan in the form of checks issued by the Liquidating Debtor or Plan Administrator shall be null and void if not cashed within 120 days of the date of the issuance thereof.  Requests for reissuance of any check shall be made directly to the Plan Administrator.

### **6.   7. Setoffs and Recoupment**

The Debtor Plan Administrator may, but shall not be required to, set off against, or recoup from, any Claim and the payments to be made pursuant to the this Plan in respect of such Claim, any claims of any nature whatsoever that the Debtor may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or Reorganized the Liquidating Debtor of any such claim it may have against such claimant.

### **7.   8. Allocation of Plan Distributions Between Principal and Interest**

Except as otherwise provided herein, to the extent that any Allowed Claim entitled to a distribution under the Plan consists of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.  (but solely to the extent that interest is an allowable portion of such Allowed Claim pursuant to this Plan or otherwise).

### **8.   9. De Minimis Distributions and Donation of Remaining General Unsecured Claim Cash Distribution Less Than $25.00**

No distribution of less than Twenty-Five Dollars ($25.00) shall be made to any Holder of an Allowed Claim.  Such undistributed amount will be retained by the Disbursing Agent Plan Administrator to be distributed pro rata at the time of final distributions to Holders of Claims in accordance with the Plan.  If the undisbursed amount of the General Unsecured Claim Cash Distribution is at anytime less than Twenty-Five Dollars ($25.00), the Disbursing Agent Plan Administrator shall be authorized to donate such amount in the name of the Creditors without further Bankruptcy Court approval to an organization selected by the Disbursing Agent Plan Administrator and officially recognized by the Internal Revenue Service as a charitable organization, as a contribution which would be deductible for federal income tax purposes.

### **10.   Withholding and Reporting Requirements**

In connection with the Plan and all distributions hereunder, the Disbursing Agent shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.  The Disbursing Agent shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.  Notwithstanding any other provision of the Plan, (a) each holder of an

Allowed Claim that is to receive a distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution, and (b) no distribution shall be made to or on behalf of such holder pursuant to the Plan unless and until such holder has made arrangements satisfactory to the Disbursing Agent for the payment and satisfaction of such withholding tax obligations.  Any property to be distributed pursuant to the Plan shall, pending the implementation of such arrangements, be treated as an undeliverable distribution pursuant to Section 6.5(a) of the Plan.

## E. ~~G.~~ Procedures for Treating Disputed Claims

### 1.    Objections.

Except as otherwise provided herein, as of the Effective Date, objections to, and requests for estimation of, Claims may be interposed and prosecuted only by the ~~Reorganized Debtor~~Plan Administrator.  Such objections and requests for estimation shall be served on the respective claimant and filed with the Bankruptcy Court on or before the latest of (a) the deadline established under Local Rule 3007-1(B)(1), (b) sixty (60) days after a proof of Claim has been filed with the Bankruptcy Court, (c) sixty (60) days after an application for allowance of an Administrative Expense has been filed with the Bankruptcy Court in the Case, or (d) with respect to certain Claims identified prior to the Confirmation Date by the Debtor, such other date as may be fixed by the Bankruptcy Court.

### 2.    Preferential Transfers

The Debtor is in the process of investigating whether any pre-petition payments in excess of $5,475 are preferential transfers made with no valid defense on part of the recipient. The Debtor reserves its right to prosecute any actions to recover preferential transfers and will negotiate with the Committee as to the Committee's authority to prosecute any such actions, with fees to be paid to the Committee in a reasonable amount, mutually acceptable to the Debtor and the Committee.

### 3.    ~~2.~~No Distributions Pending Allowance

Notwithstanding any other provision hereof, if any portion of a Claim is Disputed, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes Allowed.  In lieu of distributions under ~~the~~this Plan to Holders of Disputed General Unsecured Claims, the Disputed Class 6 ~~Claim~~Claims Reserve will be established on the Effective Date to hold property for the benefit of these Claim Holders.  The ~~Reorganized~~Liquidating Debtor will fund the Disputed Class 6 ~~Claim~~Claims Reserve with Cash, as described in Section 6.2 of the Plan.

### 4.    ~~3.~~Distributions After Allowance.

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of ~~the~~this Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the ~~Disbursing Agent~~Plan Administrator shall provide to the holder of such Claim the ~~distribution~~Distribution (if any) to which such holder is entitled under ~~the~~this Plan.  Any amounts that remain in ~~any~~ the Disputed Class 6 ~~Claim~~Claims Reserve following resolution and payment of all Disputed General Unsecured Claims shall be distributed to the Holders of Allowed General Unsecured Claims in their respective Ratable Proportions, subject to Section ~~6.9~~4.7 of the Plan.

### **5.**      **Withholding and Reporting Requirements.**

In connection with the Plan and all distributions hereunder, the Plan Administrator shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.  The Plan Administrator shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.  Notwithstanding any other provision of the Plan, (a) each holder of an Allowed Claim that is to receive a distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution, and (b) no distribution shall be made to or on behalf of such holder pursuant to the Plan unless and until such holder has made arrangements satisfactory to the Plan Administrator for the payment and satisfaction of such withholding tax obligations.  Any property to be distributed pursuant to the Plan shall, pending the implementation of such arrangements, be treated as an undeliverable distribution pursuant to Section 6.4 of the Plan.

## **F.**      ~~H.~~**Provisions Governing Executory Contracts and Unexpired Leases**

### **1.**      **Treatment**

Except as otherwise provided ~~in the Plan, including~~herein, and in Section 8.2 of the Plan (Preconstruction Agreements and Prepetition DP Program Agreements) and Section ~~10.5~~11.4 of the Plan (Indemnification Obligations) ~~of the Plan~~, in the Confirmation Order or in any contract, instrument, release, indenture, or other agreement, or document entered into in connection with ~~the~~this Plan, as of the Effective Date the Liquidating Debtor shall be deemed to have rejected each pre-petition executory contract and unexpired lease to which it is a party, unless such contract or lease (a) was previously assumed or rejected by the Debtor, (b) previously expired or terminated pursuant to its own terms, (c) is the subject of a motion to assume filed on or before the Confirmation Date, or (d) is set forth in the Plan Supplement, as an executory contract or unexpired lease to be assumed and/or assumed and assigned.  The Confirmation Order shall constitute an order of the Bankruptcy Court under sections 365 and 1123(b) of the

Bankruptcy Code approving the contract and lease assumptions or rejections described above, as of the Effective Date.

Each executory contract and unexpired lease that is assumed and relates to the use, ability to acquire, or occupancy of real property shall include (a) all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease and (b) all executory contracts or unexpired leases appurtenant to the premises, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other interests in real estate or rights *in rem* related to such premises, unless any of the foregoing agreements has been rejected pursuant to an order of the Bankruptcy Court.

Attached as Exhibit 6̶5 is a list of Executory Contracts that the Debtor will assume, assume and assign or reject.  The Debtor reserves the right, at any time prior to the entry of the Confirmation Order, to amend or supplement the list of Executory Contracts that the Debtor will assume or reject.

**2.      Preconstruction Agreements and Prepetition DP Program Agreements**

Except and to the extent previously assumed pursuant to an order of the Bankruptcy Court entered on or before the Confirmation Date, all Preconstruction Agreements and Prepetition DP Program Agreements deemed executory contracts assumable by the Debtor pursuant to section 365(a) of the Bankruptcy Code, shall be deemed assumed and assigned to Transferee pursuant to the Confirmation Order.  Attached as Exhibit 7̶6 is a list of Preconstruction Agreements that the Debtor will assume and assign to Transferee. Attached as Exhibit 8̶7 is a list of Prepetition DP Program Agreements that the Debtor will assume and assign to Transferee.  The Debtor reserves the right, at any time prior to the entry of the Confirmation Order, to amend or supplement the list of Preconstruction Agreements and Prepetition DP Program Agreements that the Debtor will assume.

**3.      Cure Payments**

Any monetary amounts by which any executory contract or unexpired lease to be assumed hereunder is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Debtor.  If there is a dispute regarding (i) the nature or amount of any Cure, (ii) the ability of the Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (iii) any other matter pertaining to assumption, Cure shall occur following the entry of a Final Order resolving the dispute and approving the assumption or assumption and assignment, as the case may be.

**4.      Rejection Damage Claims**

**Proofs of all Claims arising out of the rejection of executory contracts and unexpired leases pursuant to the Plan shall be filed with the Bankruptcy Court, with**

**proper supporting documentation detailing the calculation of such claim, and served upon the Debtor and its counsel not later than thirty (30) days after the earlier of (a) the date on which notice of the occurrence of the Effective Date has been served and (b) the date of entry of an order of the Bankruptcy Court approving such rejection. Any Claims not filed within such time shall be forever barred from assertion against the Debtor, its Estate, the ~~Reorganized~~Liquidating Debtor, and their respective properties and interests.**

At this time, executory contract rejection Claims are estimated to be no more than $2,202,958.46.

This proposal for treatment of Rejection Damage Claims satisfies the Local Rules for the United States Bankruptcy Court for the Southern District of Florida. See Local Rule 6006-1 (deadline notice to be included in orders rejecting executory contracts).

**G.      The Plan Administrator.**

### 1.      Purpose of the Plan Administrator.

The Plan Administrator will liquidate all the property of the Estate for the benefit of the holders of Allowed Claims against the Estate, and for payment of all Allowed Claims in accordance with the provisions of the Plan.  The Plan Administrator will be selected by the Debtor, will not be supervised by the United States Trustee, and will not be bonded in favor of the United States.  However, the Plan Administrator will be bonded in favor of the Estate and/or the Liquidating Debtor in an agreed upon amount.

### 2.      Resignation, Removal or Replacement of the Plan Administrator.

Resignation of Plan Administrator.  The Plan Administrator may resign at any time upon thirty (30) days' prior written notice to the Office of the United States Trustee, and filed with the Bankruptcy Court.

Removal of Plan Administrator.  The Office of the U.S. Trustee, by motion filed with the Bankruptcy Court, or the Bankruptcy Court, on its own Order to Show Cause, may seek to remove the Plan Administrator for cause, at any time including, without limitation, the violation of any provision of the Plan, or in the event that the Plan Administrator becomes incapable of acting as Plan Administrator as a result of physical or mental disability and such physical or mental disability continues for a period in excess of thirty (30) days (except in the case of death, in which instance, procedures for replacement will begin immediately).

Replacement of Plan Administrator.  The resignation or removal of the Plan Administrator will not be effective, unless otherwise ordered by the Bankruptcy Court, until a successor Plan Administrator has been selected by the Liquidating Debtor, and the successor accepts such appointment.  The Office of the United States Trustee shall have the right to object to the designated successor Plan Administrator and such objection shall be decided by the Bankruptcy Court.

## 3.    Authority.

The Plan Administrator shall have the power and authority to perform the following acts, in addition to any powers granted by law or conferred to him by any other provision of the Plan:

    a.   perfect and secure the Estate's right, title and interest to the property comprising the Estate Property;

    b.   recover, and to the extent possible, reduce to Cash, all of the Estate Property, including the sale of Estate Property free and clear of liens, with liens to attach to the proceeds, and distribute the net proceeds of the Estate Property, as described herein in accordance with the Plan;

    c.   perform the Estate's obligations, including the dissolution of the Debtor following the entry of the Final Decree, and enforce the Estate's rights, with respect to the Plan;

    d.   release, convey or assign any right, title or interest in the Estate Property;

    e.   execute releases, waivers, settlements and any other documents on behalf of the Debtor in connection with consummation of the Plan;

    f.   deposit Estate Cash, draw checks and make disbursements thereof;

    g.   employ and retain, and discharge and dismiss, attorneys, accountants, and such other agents as the Plan Administrator may deem necessary or appropriate to assist in fulfilling the purposes of the Plan, and to pay reasonable charges, commissions and compensation to all of the foregoing;

    h.   perform the obligations of the Debtor on the Effective Date of the Plan pursuant to any post-petition settlement agreement to which the Debtor was a party, and which has been approved by Final Order;

    i.   exercise any and all powers granted to the Plan Administrator by agreements, including, without limitation, by common law or any statute which serves to increase the extent of the powers granted to the Plan Administrator hereunder;

    j.   take such other action as the Plan Administrator may determine to be necessary or desirable to carry out the purpose of the Plan, including, without limitation, addressing tax issues, filing amended and initial tax returns, completing or performing any necessary valuation process, and enforcing all provisions of the Plan;

    k.   commence or prosecute, for his/her own account or in the name of the Debtor, any lawsuit or other legal or equitable action, in any court of

competent jurisdiction, that is necessary to carry out the terms and conditions of the Plan, including, without limitation, filing and prosecuting objections to Claims and Estate Causes of Action;

l.   settle, compromise or adjust pursuant to the standards of Bankruptcy Rule 9019 (which shall be deemed to apply to all post-Confirmation settlements) any disputes or controversies in favor of, or against, the Estate;

m.   except to the extent provided herein, have instituted and prosecuted all Claims and Estate Causes of Action that can be brought by a trustee or a debtor under the Bankruptcy Code, and pursuant to the Plan, prosecute or defend all appeals on behalf of the Debtor or the Estate, including, without limitation, objections to Claims pursuant to 7.1 of the Plan;

n.   in general, without in any manner limiting any of the foregoing, deal with the Estate Property or any part or parts thereof in all other ways as would be lawful for any person owning the same to deal therewith, whether similar to, or different from, the ways above specified at any time or times hereafter; and

o.   manage the affairs of and exercise all authority on behalf of the Liquidating Debtor until such time as the Case is closed.

**4.   Investments of Cash.**

Except as otherwise provided in the Plan, all Estate Cash, shall be invested by the Plan Administrator with sole and absolute discretion in only (a) direct obligations of, or obligations guaranteed by, the United States of America; (b) obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof; (c) AAA rated tax-free securities issued by municipalities or state governments or agencies; or (d) such other obligations or instruments as may from time to time be approved for such investments by the Bankruptcy Court; provided, however, that the Plan Administrator may, to the extent deemed necessary by the Plan Administrator with sole and absolute discretion to implement the provisions of this Plan, deposit moneys in demand deposits (including money market funds) at any bank, trust company or other financial institution which has, at the time of such deposit a capital stock and surplus aggregating at least $100,000,000. The investment powers of the Plan Administrator, other than those reasonably necessary to maintain the value of the Estate Property, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings or financial institutions, or other temporary, liquid investments, such as U.S. Treasury Bills. Such investments shall mature in such amounts and at such times as may be deemed necessary by the Plan Administrator, with sole and absolute discretion, to provide funds when needed to make Distributions and payments from the Estate Property, as the case may be.

### 5.    Distributions.

The Plan Administrator shall be responsible for making Distributions to holders of Allowed Claims, pursuant to the Plan. Under no circumstances shall the Plan Administrator have any power to engage in any trade or business or any other similar activity on behalf of the Liquidating Debtor, except as specifically provided herein or otherwise reasonably necessary and advisable for the orderly liquidation of the Estate Property.

### 6.    Accounting and Reporting.

The Plan Administrator shall maintain the books and records of the Debtor relating to the operation of the Debtor, which shall contain a description of all Estate Property as of the Effective Date, and of the operation of the Estate by the Plan Administrator, and shall provide an accounting of receipts and disbursements, which shall be open to inspection and review by the Bankruptcy Court, the Office of the United States Trustee, and holders of Allowed Claims (upon reasonable notice). The Plan Administrator shall maintain such records until authorized to dispose of same by order of the Court.  The Plan Administrator shall provide quarterly reports and shall file all quarterly reports with the Bankruptcy Court, as well as a final report prior to the Case being closed by the Bankruptcy Court by the Final Decree.

### 7.    Post- Confirmation Expenses and Administrative Reserve.

All costs, expenses and obligations incurred by the Plan Administrator in administering the Estate Property or in any manner connected, incidental or related thereto including, but not limited to, the fees and expenses of professionals retained by the Plan Administrator to assist in carrying out his duties pursuant to this Plan, Post-Confirmation United States Trustee's fees, and fees and expenses of the Plan Administrator and his or her professionals in pursuing ongoing litigation, shall be paid from the Post-Confirmation Administrative Reserve.

No more frequently than once every thirty (30) days, the Plan Administrator's counsel and any other professional retained by the Plan Administrator shall submit his, her or its statement(s) for services rendered and costs incurred to the Plan Administrator for review and approval.  The statements do not need to conform to the U.S. Trustee's guidelines for fee applications, but must contain adequate information to review the reasonableness of the statements. The Plan Administrator shall have twenty (20) days to object to any such statement.  If no objections are provided to the professional in respect of any such statement, then the Plan Administrator shall promptly pay such statement.  The Bankruptcy Court shall retain jurisdiction to adjudicate any dispute with respect to such statements.

### 8.    Limitation of Liability.

No recourse shall ever be had, directly or indirectly, against the Plan Administrator, his employees or professionals, by legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge, note, nor upon any promise,

contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Plan Administrator under this Plan or by reason of the creation of any indebtedness by the Plan Administrator under this Plan for any purpose authorized by this Plan.  All such liabilities, covenants, and agreements of the Plan Administrator, and his professionals and employees, whether in writing or otherwise, under this Plan shall be enforceable only against, and be satisfied only out of, the Estate Property, or such part thereof as shall, under the terms of any such agreement, be liable therefor or shall be evidence only of a right of payment out of the income, proceeds and avails of the Estate Property, as the case may be; every undertaking, contract, covenant or agreement entered into in writing by the Plan Administrator shall provide expressly against the personal liability of the Plan Administrator.

The Plan Administrator, his employees and professionals shall not be liable for any act they may do, or omit to do hereunder or acting in good faith and in the exercise of his, her or its best judgment, and the fact that such act or omission was advised, directed or approved by an attorney acting as attorney for the Plan Administrator shall be conclusive evidence of such good faith and best judgment.  However, Section 9.8 of the Plan shall not apply to any gross negligence or willful misconduct by the Plan Administrator, or his or her professionals or employees.

## 9.     Reliance on Documents.

The Plan Administrator may rely upon, and shall be protected in acting, or refraining from acting, upon any certificates, opinions, statements, instruments or reports believed by him/her to be genuine and to have been signed or presented by the proper Person or Persons.

## 10.    Requirement of Undertaking.

The Plan Administrator may request any court to require, and any court may in its discretion require, in any suit for the enforcement of any right or remedy under this Plan, or in any suit against the Plan Administrator for any action taken or omitted by the Plan Administrator, that the filing party litigant in such suit undertake to pay the costs of such suit, and such court may in its discretion assess reasonable costs, including reasonable attorneys' fees, against any party litigant in such suit, having due regard to the merits and good faith of the claims or defenses made by such party litigant.

## 11.    Liquidating Debtor.

Post-Confirmation, and until the Case is closed by a Final Decree, the affairs of the Liquidating Debtor shall be managed by the Plan Administrator, who shall have the sole right to act on behalf of the Liquidating Debtor. The Plan Administrator shall prepare and file any tax forms for the Estate and/or the Liquidating Debtor.

## 12.    Authority of Plan Administrator to act on Behalf of Liquidating Debtor.

As of the Effective Date, the Plan Administrator shall have the sole authority to act on behalf of the Liquidating Debtor under the Plan.

## 13.    Court Approval.

Any compromise proposed by the Plan Administrator shall be subject to approval by the Bankruptcy Court pursuant to Section 363 of the Bankruptcy Code and/or Bankruptcy Rule 9019.  With respect to Estate Property, the Plan Administrator shall have full authority to dispose of such Estate Property without seeking an Order of the Bankruptcy Court.  The Plan Administrator may, however, in his sole discretion, seek Bankruptcy Court approval of any transaction executed on behalf of the Estate.

**H.    ~~I.~~ Conditions Precedent to Confirmation**

The Plan shall not be confirmed unless and until the following conditions have been satisfied or waived in accordance with Article ~~IX~~X of the Plan:  (a) The Confirmation Order, in form and substance satisfactory to the Debtor has been entered on the docket maintained by the Clerk of the Bankruptcy Court; and (b) the Plan, all exhibits thereto, and the Confirmation Order are acceptable in form and substance to the Debtor.

**I.    ~~J.~~ Conditions Precedent to Effectiveness**

The Effective Date shall not occur and the Plan shall not become effective unless and until the following conditions are satisfied in full or waived in accordance with Article ~~IX~~X of the Plan:

(1)    The Confirmation Order is a Final Order on or before ~~July 1,~~August 15, 2010;

~~(2)    All amounts to be paid by Newco as the Equity Contribution are indefeasibly paid in full, in Cash, through the delivery of an irrevocable letter of credit, through the deposit of Cash in escrow with an escrow agent in the United States, or through the delivery of any other financial instrument approved by the Court;~~

(2)    ~~(3)~~All actions and all agreements, instruments, or other documents necessary to implement the terms and provisions of the Plan, including those actions identified in Article V of the Plan, are effected or executed and delivered, as applicable, in form and substance satisfactory to the Debtor; and

(3)    ~~(4)~~All authorizations, consents, and regulatory approvals, if any, required by the Debtor in connection with the consummation of the Plan are obtained and not revoked.

Waiver of Conditions

Each of the conditions precedent hereof may be waived, in whole or in part by the Debtor.  Any such waivers may be affected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action.

Satisfaction of Conditions

Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.  If the Debtor determines that one of the conditions precedent set forth in Section 9.210.2 of the Plan cannot be satisfied and the occurrence of such condition is not waived or cannot be waived, then the Debtor shall file a notice of the failure of the Effective Date with the Bankruptcy Court and the Confirmation Order may be vacated by the Bankruptcy Court.  If the Confirmation Order is vacated pursuant to this Section, the Plan shall be null and void in all respects, and nothing contained in the Plan shall constitute a waiver or release of any Claims against the Debtor or the allowance of any Claim as an Allowed Claim.

**J. K. Effect of Confirmation**

**1.  Revesting of Assets**

On the Effective Date, the Debtor, its properties and interests in property, and its operations shall be released from the custody and jurisdiction of the Bankruptcy Court, and all property of the Estate of the Debtor, including any pre-paid expenses and deposits with vendors, shall vest in the Reorganized Debtor.  From and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, subject to the terms and conditions of the Plan.  As provided in Section 10.8 hereof, the Reorganized Debtor shall retain Estate Cause of Action, other than those released in Section 10.8 hereof.

**1.  2. Binding Effect**

Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtor or the Liquidating Debtor and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a distribution under the Plan.

**2.  3. Discharge of Debtor**

Except to the extent otherwise provided herein or in the Confirmation Order, the rights afforded in thethis Plan and the treatment of all Claims against or Equity Interests in the Debtor hereunder shall be in exchange for and in complete satisfaction, discharge, and release of all debts of, Claims against, and Equity Interests in, the Debtor of any nature

whatsoever, known or unknown, including, without limitation, any interest accrued or expenses incurred thereon from and after the Petition Date, or against its Estate, the ~~Reorganized~~Debtor, the Liquidating Debtor, or its properties or interests in property. Except as otherwise provided herein or in the Confirmation Order, upon the Effective Date, all Claims against and Equity Interests in the Debtor shall be satisfied, discharged and released in full exchange for the consideration, if any, provided hereunder.  Except as otherwise provided herein or in the Confirmation Order, all Persons shall be precluded from asserting against the Debtor or the ~~Reorganized~~Liquidating Debtor or its properties or interests in property~~,~~ including the Property and the Estate Property, any other Claims based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

**3.**    ~~4.~~ **Term of Injunctions or Stays**

*Except as otherwise expressly provided herein or in the Confirmation Order, all Persons who have held, hold or may hold Claims or Equity Interests will be permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on or arising out of any such Claim or Equity Interest against the Debtor or* ~~*Reorganized*~~*Liquidating Debtor, or its Affiliates or Representatives, (ii) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtor or* ~~*Reorganized*~~*Liquidating Debtor, or their respective Affiliates or Representatives, with respect to such Claim or Equity Interest, (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or* ~~*Reorganized*~~*Liquidating Debtor, or their respective Affiliates or Representatives, or against the property or interests in property, including the Property, of the Debtor or* ~~*Reorganized*~~*Liquidating Debtor, or their respective Affiliates or Representatives, with respect to such Claim or Equity Interest, and (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due to the Debtor or* ~~*Reorganized*~~*Liquidating Debtor, or their respective Affiliates or Representatives, or against the property or interests in property of the Debtor or* ~~*Reorganized*~~*Liquidating Debtor, or their respective Affiliates or Representatives, with respect to such Claim or Equity Interest.* ~~*For the avoidance of doubt, section 10.4(a) of the Plan shall not constitute a release of the Guarantees; provided, however, if and*~~

*Moreover,* to the extent there are obligations arising under the Guarantees remaining on the Effective Date of the Plan, enforcement of such obligations shall be enjoined ~~so long as the Reorganized Debtor is not in default under the terms of the New Senior Notes~~.

Unless otherwise provided in the Confirmation Order, all injunctions or stays arising under or entered during the Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until and after the Effective Date, provided, however, that no stay or injunction shall remain in full force after the Effective Date for post-confirmation acts.

>    *In furtherance of the foregoing, on and after Effective Date, any "fifty percent shareholder" (within the meaning of section 382(g)(4)(D) of the Tax Code) shall be enjoined from claiming a worthless stock deduction with respect to any Old Equity Interests held by such Person for any taxable year of such shareholder ending prior to the Effective Date.*

### 4. ~~5.~~ Indemnification Obligations

The Debtor's obligations under the Corporate Indemnities to indemnify any Indemnified Person with respect to Claims arising prior to the Effective Date will be deemed and treated as executory contracts that are assumed by the ~~Reorganized~~Liquidating Debtor pursuant to ~~the plan~~this Plan and sections 365 and 1123(b) of the Bankruptcy Code as of the Effective Date and the occurrence of the Effective Date shall be the only condition necessary to such assumption and all requirements for Cure and/or adequate assurance of future performance under section 365 for such assumption shall be deemed satisfied (the "Assumed Corporate Indemnities").

### 5. ~~6.~~ Exculpation

>    As of the Confirmation Date, the Debtor ~~and its~~, the Liquidating Debtor, the Plan Administrator, and their Affiliates and Representatives shall be deemed to have solicited acceptances of the ~~plan of Reorganization~~Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules. ***The Debtor, the ~~Reorganized Debtor, Holdings, the Disbursing Agent, and the Committee~~Liquidating Debtor, the Plan Administrator, and each of their respective Affiliates and Representatives shall have no liability to any holder of any Claim or Equity Interest or any other Person for any act or omission taken or not taken in good faith in connection with, or arising out of, the Case, the Disclosure Statement, the ~~plan~~Plan, the Postpetition Financing Agreement, the Postpetition Financing Order, the solicitation of votes for and the pursuit of confirmation of the ~~plan, the offer and issuance of any securities under the plan~~Plan, the consummation of the ~~plan~~Plan, or the administration of the ~~plan~~Plan or the property to be distributed under the ~~plan~~Plan, except for willful misconduct ~~or~~, gross negligence, or ordinary malpractice with respect to any professionals retained, as determined by a Final Order and, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the ~~plan~~Plan.***

### 6. ~~7.~~ Releases

~~For~~Pursuant to Section 11.6 of the Plan of Liquidation, for good and valuable consideration, including, but not limited to, the distributions to be made under the Plan, ~~and the services of the Committee, the acceptance of the terms hereof by and the conversion of the Claims held by the DIP Lender, and the Plan Contributions,~~ effective as of the Effective Date, each ~~Releasee is hereby released by all of the creditors of the Debtor, all Persons who have held, hold or may hold any Claim or Equity Interest, all other Persons, the Debtor, the Estate, and the Reorganized~~of the Releasees, the Prepetition Agent, and those Prepetition Lenders who execute a mutual release are hereby

released by the Debtor the Estate, and the Liquidating Debtor from any and all claims, debts, obligations, rights, suits, damages, actions, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, directly or indirectly arising from or related to the Debtor, existing as of the Effective Date or thereafter arising, in law, at equity, or otherwise, that any of the creditors of the Debtor, any Persons who have held, hold or may hold any Claim or Equity Interest, any other Persons, the Debtor, the Estate or the Reorganized Liquidating Debtor would have been legally entitled to assert in its own right (whether individually or collectively) or that any creditors of the Debtor, any Persons who have held, hold or may hold any Claim or Equity Interest, or any other Person a creditor or equity holders would have been legally entitled to assert on behalf of the Debtor or, the Estate or the Reorganized Liquidating Debtor, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including without limitation, claims, actions, and causes of action arising from actions taken or not taken in good faith, taking place before the Petition Date in connection with the Case, or relating to the Debtor or in connection with, related to, or arising out of the Obligations, the Case, the pursuit of confirmation of the Plan, the consummation thereof, the administration thereof or the property to be distributed under the Plan, the Prepetition Credit Agreement, the Prepetition Pledge Agreement, the Prepetition Security Agreement, the Guarantees, all agreements, documents and instruments relating to the Old Equity Interests, all Old Equity Interests, the Postpetition Financing Agreement, the Postpetition Financing Order, and the restructuring of the Debtor and any other transaction contemplated by the Plan; *provided, however*, that nothing herein shall be deemed to release any rights, claims, or interests that any such party may be receiving or retaining pursuant to the Plan on or after the Effective Date. All Persons shall be precluded and permanently enjoined from asserting against the Releasees, the Prepetition Agent, and those Prepetition Lenders who execute a Release in accordance with the Management Services Agreement, and their respective assets and properties, any and all claims, debts, obligations, rights, suits, damages, actions, causes of action, remedies, and liabilities whatsoever which are released under Section 10.7 11.6 of the Plan. Any Person injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages, from the willful violator. For the avoidance of doubt, Section 10.7 of the Plan shall not constitute a release of the Guarantees; provided, however, if and to the extent there are obligations arising under the Guarantees remaining on the Effective Date of the Plan, enforcement of such obligations shall be enjoined so long as the Reorganized Debtor is not in default under the terms of the New Senior Notes.

Furthermore, each of the Prepetition Agent and Prepetition Lenders, who receive a mutual release, hereby release each of the Debtor, Holdings, and the Guarantors from all claims and liabilities based in whole or in part on any act, omission, transaction, event or other occurrence (i) taking place before the Petition Date in connection with or relating to the Debtor or (ii) in connection with, related to, or arising out of the Obligations, the Debtor's chapter 11 case, the pursuit of confirmation of the Plan, the consummation thereof, the administration thereof or the property to be distributed under the Plan.

~~The Debtor is not aware of any claims or causes of action against any of the Releasees that the Estate has at this time.~~

### **7.** ~~8.~~ **Causes of Action**

Effective as of the Effective Date, except to the extent otherwise provided herein, the Plan Administrator shall be substituted as the plaintiff in the Estate Causes of Action, including all preference or other avoidance action claims and actions of the Debtor arising under chapter 5 of the Bankruptcy Code, if any, to the extent not settled or resolved prior to the Confirmation Date or in accordance with this Plan, and shall be retained by the ~~Reorganized~~Liquidating Debtor and Plan Administrator, provided, however, that any such Estate Causes of Action against Holdings, ~~and any~~the Prepetition Agent and those Prepetition Lenders who provide a mutual release, or the Debtor, or any of the Debtor's current officers or directors ~~of the Debtor,~~ or any of its respective Representatives or Affiliates, are released and extinguished.

Estate Causes of Action against Holdings are being released in exchange for the DIP Loan provided to the Debtor as consideration.  Releases are being provided to current officers and directors in exchange for their assistance in this Case.  The Debtor is not aware of any causes of action against Holdings and any current officers or directors of the Debtor, or any of its respective Representatives or Affiliates.  Attached hereto as Exhibit 3 is a non-exhaustive list of currently known causes of action that the ~~Reorganized~~Liquidating Debtor will retain.  The ~~Reorganized~~Liquidating Debtor reserves its right to bring any and all other Estate Causes of Action not identified on Exhibit 3.

~~Moreover, as~~As part of the construction of Everglades, the Debtor entered into a construction agreement with Yates.  Yates subsequently subcontracted with multiple subcontractors (each, a "Subcontractor") as part of the construction process.  The various Subcontractors have issued, should issue, or are anticipated to issue, upon completion of each Subcontractor's services related to Everglades and/or upon provision of materials to Yates or the Debtor for the construction of Everglades, various warranties with respect to the labor and materials employed in the construction of Everglades.  The Debtor retains all rights and remedies relating to, arising from, or accruing pursuant to all available theories of warranty for such labor and/or materials supplied in the construction of Everglades by any Subcontractor, whether such warranties are express or implied, and regardless of whether such warranties arise by contract or by statute (each, a "Warranty Claim").  Other facts relating to the construction of Everglades and/or potential Warranty Claims arising from such construction are described in various pleadings filed in the Debtor's main chapter 11 case (Case No. 09-27168), each of the Yates Adversary Proceedings (Case Nos. 09-02184, 09-02522, 09-02545), or any of the various Unit Purchaser Adversary Proceedings (Case Nos. 09-021000, 09-02183, 09-02195, 09-02383, 10-02713, 10-02772, 10-02823) and are incorporated herein by reference.

### **K.** ~~L.~~ **Retention of Jurisdiction**

The Bankruptcy Court shall have exclusive jurisdiction of all matters, except as expressly noted herein, arising out of, or related to, the Case and the plan pursuant to, and for the

purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

1. To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and the allowance of Claims including any Administrative Expenses resulting therefrom;

2. To determine any and all adversary proceedings, applications, and contested matters that are pending on the Effective Date;

3. To ensure that distributions to Holders of Allowed Administrative Expenses and Allowed Claims are accomplished as provided herein;

4. To hear and determine any timely objections to, or requests for estimation of, Administrative Expenses or proofs of claims, including, without limitation, any objections to the classification of any Administrative Expense, Claim or Equity Interest, and to allow or disallow any Disputed Administrative Expense or Disputed Claim, in whole or in part;

5. To resolve disputes as to the ownership of any Administrative Expense, Claim or Equity Interest;

6. To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

7. To issue such orders in aid of execution of the plan, to the extent authorized by section 1142 of the Bankruptcy Code;

8. To consider any amendments to or modifications of the plan, or to cure any defect or omission, or reconcile any inconsistency, in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

9. To hear and determine all applications of retained professionals under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date;

10. To hear and determine disputes or issues arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby, any agreement, instrument, or other document governing or relating to any of the foregoing, or any settlement approved by the Bankruptcy Court;

11. To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including, without limitation, any request by the Debtor prior to the Effective Date, or request by the ~~Reorganized~~Liquidating Debtor after the

Effective Date, for an expedited determination of tax under section 505(b) of the Bankruptcy Code);

12. To hear any other matter not inconsistent with the Bankruptcy Code;

13. To hear and determine all disputes involving the existence, scope, and nature of the discharges, releases and injunctions granted under the Plan, the Confirmation Order, or the Bankruptcy Code;

14. To issue injunctions and effect any other actions that may be necessary or desirable to restrain interference by any Person with the consummation or implementation of the Plan;

15. To enter a final decree closing the Case; and

16. To hear any claim, matter or chose in action, whether or not it has been commenced prior to the Effective Date, that the Debtor or ~~Reorganized~~Liquidating Debtor may prosecute, including any Estate Causes of Action which has not been liquidated prior to the Effective Date, including, without limitation, any matter for which the United States District Court for the Southern District of Florida (the "District Court") may also have concurrent jurisdiction, in which case the claim, matter, or chose in action may also be heard by the District Court.

**L.** **~~M.~~ Miscellaneous Provisions**

**1.** **Payment of Statutory Fees**

All fees payable under section ~~1930, chapter 123,~~1930 of title ~~28,~~28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date.  All such fees that arise after the Effective Date but before the closing of the Reorganization Case shall be paid by the ~~Reorganized~~Liquidating Debtor.  The ~~obligation of the Reorganized~~Liquidating Debtor ~~to~~will pay ~~quarterly fees to the Office of the United States Trustee pursuant to~~fees under section 1930 of title 28 of the United States Code ~~shall continue until such time as~~after the Effective Date until a final decree is entered, the Case is Closed, dismissed or converted, and shall file monthly operating reports, until a final decree is entered, the Case is Closed, dismissed or converted.

**2.** **Modification of Plan**

The Plan may be modified by the Debtor, in accordance with section 1127 of the Bankruptcy Code.

**3.** **Revocation of Plan**

The Debtor reserves the right, at any time prior to the entry of the Confirmation Order, to revoke and withdraw the Plan.

4.      **Intercompany Claims**

~~Notwithstanding anything to the contrary~~Except as set forth herein, on the Effective Date, Intercompany Claims will be ~~adjusted and discharged to the extent determined appropriate by the Debtor, with the consent of Holdings, taking into account the economic condition of the Reorganized Debtor~~discharged and extinguished by the Plan.

5.      **Dissolution of the Committee**

On the Effective Date, the Committee shall be dissolved and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from and in connection with the Case, and the retention or employment of the Committee's attorneys, accountants, and other agents, if any, shall terminate other than for purposes of filing and prosecuting applications for final allowances of compensation for professional services rendered and reimbursement of expenses incurred in connection therewith.

6.      **Severability of Plan Provisions**

In the event that, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable in accordance with its terms.

7.      **Governing Law**

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the Plan or Plan Supplement provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida without giving effect to the principles of conflict of laws.

8.      **Compliance with Tax Requirements**

In connection with the consummation of the Plan, any party issuing any instrument or making any distribution under the Plan, ~~including any party described in Section 6.2 above,~~ shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.  Notwithstanding the above,

each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution.  Any party issuing any instrument or making any distribution under the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

Those Claimants whose Claims are classified as Class 5b Secured Customer Deposit Claims, and choose Option A under the Plan, are advised to speak with a tax advisor regarding the tax ramifications, if any, of forfeiting the remainder of their Customer Deposits.

9.      **Notices**

All notices, requests, and demands to or upon the Debtor to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> Cabi Downtown, LLC
> 19950 West Country Club Drive
> Suite 900
> Aventura, Florida  33180
>
>      - and -
>
> Kasowitz, Benson, Torres & Friedman LLP
> 1633 Broadway
> New York, New York 10019
> Attn:   Andrew K. Glenn, Esq.
>         Jeffrey R. Gleit, Esq.
>         Michelle J. Vladimirsky, Esq.
> Facsimile:  (212) 506-1800
>
> Bilzin Sumberg Baena Price & Axelrod LLP
> 200 South Biscayne Boulevard
> Suite 2500
> Miami, Florida  33131
> Attn:   Mindy A. Mora, Esq.
>         Tara V. Trevorro, Esq.
> Facsimile:  (305) 351-2242

**VII.**

**CERTAIN FACTORS AFFECTING THE DEBTOR**

**A.      Certain Bankruptcy Law Considerations**

      **1.      Risk of Non-Confirmation of the Plan of ~~Reorganization~~Liquidation**

Although the Debtor believes that the Plan will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will reach the same conclusion or that modifications of the Plan will not be required for confirmation or that such modifications would not necessitate resolicitation of votes.  Moreover, the failure of the Debtor to obtain a final and nonappealable Confirmation Order on or before ~~July 1,~~August 15, 2010 may result in further modification of the Plan.

      **2.      Non-Consensual Confirmation**

In the event any impaired class of claims or equity interests does not accept a plan of reorganization, a bankruptcy court may nevertheless confirm such plan at the proponent's request if at least one impaired class has accepted the Plan (with such acceptance being determined without including the vote of any "insider" in such class), and as to each impaired class that has not accepted the Plan, the bankruptcy court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting impaired classes.   Because Class 7 (Old Equity Interests) ~~is~~are deemed to reject the Plan, these requirements must be satisfied with respect to Class 7.  The Debtor believes that the Plan satisfies these requirements~~;~~, however, there can be no guarantee that the Bankruptcy Court will make such a finding.

      **3.      Risk of Non-Occurrence of the Effective Date**

Although the debtor believes that the Effective Date will occur soon after the Confirmation Date, there can be no assurance as to such timing.

**B.      Additional Factors to Be Considered**

      **1.      The Debtor Has No Duty to Update**

The statements contained in this Disclosure Statement are made by the Debtor as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has been no change in the information set forth herein since that date.  The Debtor has no duty to update this Disclosure Statement unless otherwise ordered to do so by the Bankruptcy Court, provided, however, the Debtor will update the Disclosure Statement if there are material changes.

### 2.    No Representations Outside This Disclosure Statement Are Authorized

No representations concerning or related to the Debtor, the Reorganization Case, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement.  Any representations or inducements made to secure your acceptance, or rejection, of the Plan that are other than as contained in, or included with, this Disclosure Statement should not be relied upon by you in arriving at your decision.

### 3.    Projections and Other Forward Looking Statements Are Not Assured, and Actual Results Will Vary

Certain of the information contained in this Disclosure Statement is, by nature, forward looking, and contains estimates and assumptions which might ultimately prove to be incorrect, and contains projections which may be materially different from actual future experiences.  There are uncertainties associated with any projections and estimates, and they should not be considered assurances or guarantees of the amount of funds or the amount of Claims in the various classes that might be allowed.

### 4.    Claims Could Be More Than Projected

The Allowed amount of Claims in each class could be significantly more than projected, which in turn, could cause the value of distributions to be reduced substantially.  If Administrative Expenses, Priority Tax Claims, Priority Non-Tax Claims, Secured Tax Claim of Miami-Dade County Tax Collector, Other Secured Claims, Secured Construction Loan Claims, Yates Secured Claim, Secured Customer Deposit Claims and/or General Unsecured Claims, exceed projections, it may impair the value of the ~~(i) the New Senior Notes to be issued to the holders of the Allowed Class 4 Claims, and (ii) the~~ General Unsecured Claim Cash Distribution to be made to the holders of Allowed Class 6a General Unsecured Claims.

### 5.    No Legal or Tax Advice is Provided to You by this Disclosure Statement

The contents of this Disclosure Statement should <u>not</u> be construed as legal, business or tax advice.  Each creditor or Equity Interest holder should consult his, her, or its own legal counsel and accountant as to legal, tax and other matters concerning his, her, or its Claim or Equity Interest.

This Disclosure Statement is <u>not</u> legal advice to you.  This Disclosure Statement may <u>not</u> be relied upon for any purpose other than to determine how to vote on the Plan or object to confirmation of the Plan.

<u>Those Claimants whose Claims are classified as Class 5b Secured Customer Deposit Claims, and elect Option A under the Plan, are advised to speak with a tax advisor regarding the tax ramifications, if any, of forfeiting the remainder of their Customer Deposits.</u>

### 6.     No Admission Made

Nothing contained herein shall constitute an admission of, or be deemed evidence of, the tax or other legal effects of the Plan on the Debtor or on holders of Claims or Equity Interests.

### 7.     Business Factors and Competitive Conditions

#### a.     General Economic Conditions

The Debtor believes that the general economic conditions of the United States economy will be stable over the next several years.  The stability of economic conditions is subject to many factors outside the Debtor's control, including interest rates, inflation, unemployment rates, consumer spending, war, terrorism and other such factors.  Any one of these or other economic factors could have a significant impact on the operating performance of the Reorganized Debtor.

#### b.     Business Factors

The Debtor believes that it will succeed in implementing and executing its business plan and operational restructuring for benefits of all constituencies.  However, there are risks that the goals of the Debtor's going-forward business plan and operational restructuring strategy will not be achieved.  In such event, the Debtor may be forced to sell all or parts of its assets, develop and implement further restructuring plans not contemplated herein or become subject to further insolvency proceedings.

#### c.     Competitive Conditions

In addition to uncertain economic and business conditions, the Reorganized Debtor will likely face competitive pressures.  The Reorganized Debtor's anticipated operating performance may be impacted by these and other unpredictable activities by competitors.

#### d.     Other Factors

Other factors that holders of Claims should consider are potential regulatory and legal developments that may impact the Reorganized Debtor.  Although these and other such factors are beyond the Debtor's control and cannot be determined in advance, they could have a significant impact on the Reorganized Debtor's operating performance.

### 8.     Access to Financing and Trade Terms

The Debtor's operations are dependent on the availability of working capital financing.  The Debtor's postpetition operations have been financed from operating cash flow and borrowings pursuant to the Postpetition Financing Agreement.  The Debtor believes that substantially all of its needs for funds necessary to consummate the Plan and for post-Effective Date working capital financing will be met by projected operating cash flow and the Equity Contribution.

### 9.    Lack of Trading Market

It is not contemplated that the 1145 Securities will be registered under the Securities Act or the Securities Exchange Act of 1934 as of the Effective Date nor is it contemplated that the 1145 Securities will be listed on a national securities exchange or the NASDAQ market system.  Accordingly, it is not contemplated that there will be any trading market for such 1145 Securities and there can be no assurance that a holder of any of the 1145 Securities will be able to sell such interests in the future or as to the price at which any such sale may occur.

### 10.    Restrictions on Transfer

Holders of 1145 Securities issued under the Plan will be unable freely to transfer or to sell their securities except pursuant to (i) an effective registration of such securities under the Securities Act and under equivalent state securities or "blue sky" laws or (ii) pursuant to an available exemption from registration requirements.

## C.    Certain Tax Matters

For a summary of certain federal income tax consequences of the Plan to holders of claims and equity interests and to the Debtor, see section XII below, entitled "CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN."

## VIII.

## VOTING PROCEDURES AND REQUIREMENTS

## A.    Voting Deadline

IT IS IMPORTANT THAT THE HOLDERS OF CLAIMS IN CLASS 2, (SECURED TAX CLAIM OF MIAMI-DADE COUNTY TAX COLLECTOR), CLASS 4 (SECURED CONSTRUCTION LOAN CLAIMS), CLASS 5b (SECURED CUSTOMER DEPOSIT CLAIMS), AND CLASS 6a (GENERAL UNSECURED CLAIMS), AND CLASS 6b (YATES UNSECURED OR EQUITABLY SUBORDINATED CLAIM) TIMELY EXERCISE THEIR RIGHT TO VOTE TO ACCEPT OR REJECT THE PLAN OF REORGANIZATION.  All known holders entitled to vote on the Plan have been sent a ballot together with this Disclosure Statement.  Such holders should read the ballot carefully and follow the instructions contained therein.  Please use only the ballot that accompanies this Disclosure Statement.

**IN ORDER FOR YOUR VOTE TO BE COUNTED, YOUR VOTE MUST BE RECEIVED BY THE VOTING AGENT AT THE ADDRESS SET FORTH BELOW BEFORE THE VOTING DEADLINE OF 4:00 P.M., EASTERN TIME, ON _____, 2010**.

**IF A BALLOT IS DAMAGED OR LOST, YOU MAY CONTACT THE DEBTOR'S VOTING AGENT AT THE NUMBER SET FORTH BELOW.**

**ANY PROPERLY EXECUTED, TIMELY RECEIVED BALLOT THAT DOES NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN WILL BE COUNTED AS A VOTE TO ACCEPT THE PLAN.**

**ANY PROPERLY EXECUTED, TIMELY RECEIVED BALLOT THAT INDICATES BOTH AN ACCEPTANCE AND A REJECTION OF THE PLAN WILL BE COUNTED AS A VOTE TO ACCEPT THE PLAN.**

**FAXED COPIES OF BALLOTS WILL NOT BE ACCEPTED.**

**IF YOU HAVE ANY QUESTIONS CONCERNING VOTING PROCEDURES, YOU MAY CONTACT THE VOTING AGENT AT:**

> **BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
> 200 South Biscayne Boulevard, Suite 2500
> Miami, FL 33131
> Attn: Luisa Flores
> lflores@bilzin.com

Additional copies of this Disclosure Statement are available upon request made to the Voting Agent, at the address set forth immediately above or may be downloaded immediately at www.cabidowntownllccreditors.com at the tab marked "Pleadings."

**B.    Holders of Claims Entitled to Vote**

Class 2 Secured Tax Claim of Miami-Dade County Tax Collector, Class 4 Secured Construction Loan Claims, Class 5b Customer Deposit Secured Claims ~~and~~, Class 6a General Unsecured Claims, and Class 6bYates Unsecured or Equitably Subordinated Claim are the only classes of Claims under the Plan that are impaired and entitled to vote to accept or reject the Plan.  Each holder of an Allowed Claim in Class 2 Secured Tax Claim of Miami-Dade County Tax Collector, Class 4 Secured Construction Loan Claims, Class 5b Customer Deposit Secured Claims ~~and~~, Class 6a General Unsecured Claims, and Class 6b Yates Unsecured or Equitably Subordinated Claim entitled to vote, may vote to accept or reject the Plan.

**C.    Vote Required for Acceptance by a Class**

Under the Bankruptcy Code, acceptance of a plan of reorganization or liquidation by a class of claims occurs when holders of at least two-thirds in dollar amount and more than one half in number of the allowed claims of that class that cast ballots for acceptance or rejection of the Plan of reorganization or liquidation vote to accept the Plan.  Thus, acceptance of the Class 2 Secured Tax Claim of Miami-Dade County Tax Collector, Class 4 Secured Construction Loan Claims, Class 5b Customer Deposit Secured Claims ~~or~~, Class 6a General Unsecured Claims or Class 6b Yates Unsecured or Equitably Subordinated Claim will occur only if at least two-thirds in dollar amount and a majority in number of the holders of the Claims in the respective class that cast their ballots vote in favor of acceptance.

A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that such acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

**D.      Voting Procedures**

**1.      Holder of Class 2 Claim (Secured Tax Claim of Miami-Dade County Tax Collector)**

The Holder of the Allowed Secured Tax Claim of Miami-Dade County Tax Collector as of the Record Date should complete the enclosed ballot.  To be counted, properly executed ballots must be returned to the Voting Agent so that they are received by the Voting Agent before the Voting Deadline.

**2.      Holders of Class 4 Claims (Secured Construction Loan Claims)**

All holders of Allowed Secured Construction Loan Claims as of the Record Date should complete the enclosed ballot.  To be counted, properly executed ballots must be returned to the Voting Agent so that they are received by the Voting Agent before the Voting Deadline.

**3.      Holders of Class 5b Claims (Secured Customer Deposit Claims)**

All holders of Allowed Secured Customer Deposit Claims as of the Record Date should complete the enclosed ballot.  To be counted, properly executed ballots must be returned to the Voting Agent so that they are received by the Voting Agent before the Voting Deadline.

**4.      Holders of Class 6a Claims (General Unsecured Claims)**

All holders of Allowed General Unsecured Claims as of the Record Date should complete the enclosed ballot.  To be counted, properly executed ballots must be returned to the Voting Agent so that they are received by the Voting Agent before the Voting Deadline.

**5.      Holders of Class 6b Claim (Yates Unsecured or Equitably Subordinated Claim)**

All holders of a Yates Unsecured or Equitably Subordinated Claim as of the Record Date should complete the enclosed ballot.  To be counted, properly executed ballots must be returned to the Voting Agent so that they are received by the Voting Agent before the Voting Deadline.

**IX.**

**CONFIRMATION OF THE PLAN OF ~~REORGANIZATION~~LIQUIDATION**

**A.      Confirmation Hearing**

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after appropriate notice, to hold a hearing on confirmation of a plan of reorganization or liquidation.  As set forth in the Disclosure Statement Order, the Bankruptcy Court has scheduled the confirmation hearing for [_____].  The confirmation hearing may be adjourned from time-to-time by the Bankruptcy Court without further notice except for an announcement of the adjourned date made at the confirmation hearing or any subsequent adjourned confirmation hearing.

Any objection to confirmation of the Plan must be in writing, must conform to the Bankruptcy Rules, must set forth the name of the objector, the nature and amount of claims or interests held or asserted by the objector against the Debtor's estate or property, the basis for the objection and the specific grounds therefore, and must be filed with the Bankruptcy Court, together with proof of service thereof, and served upon (i) Kasowitz, Benson, Torres & Friedman, LLP, 1633 Broadway, New York, New York 10019, Attorneys for the Debtor (Attention: Andrew K. Glenn, Esq. ~~and~~, Jeffrey R. Gleit, Esq., and Michelle J. Vladimirsky, Esq.) and Bilzin Sumberg Baena Price & Axelrod LLP, 200 S. Biscayne Blvd., Suite 2500, Miami, FL 33131, Attorneys for the Debtor (Attention: Mindy A. Mora, Esq. and Tara V. Trevorrow, Esq.), (ii) Meland Russin & Budwick PA, 200 S Biscayne Blvd #3000, Miami, FL 33131, Attorneys for the Committee (Attn: Michael S. Budwick, Esq.), and (iii) the Office of the United States Trustee, Southern District of Florida, 51 S.W. 1st Ave., Suite 1204, Miami, FL 33130 so as to be received no later than 4:00 p.m. (Eastern Time) on [_____]

Objections to confirmation of the Plan of ~~Reorganization~~Liquidation are governed by Bankruptcy Rule 9014.  **UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

**B.      Requirements for Confirmation of the Plan of ~~Reorganization~~Liquidation**

**1.      Requirements of Section 1129(a) of the Bankruptcy Code**

**a.      General Requirements**

At the confirmation hearing, the Bankruptcy Court will determine whether the following confirmation requirements specified in section 1129 of the Bankruptcy Code have been satisfied:

(1)      The Plan complies with the applicable provisions of the Bankruptcy Code.

~~70~~70

(2)　　　The Debtor has complied with the applicable provisions of the Bankruptcy Code.

(3)　　　The Plan has been proposed in good faith and not by any means proscribed by law.

(4)　　　Any payment made or promised by the Debtor or by a Person issuing securities or acquiring property under the Plan for services or for costs and expenses in, or in connection with, the Reorganization Case, or in connection with the Plan and incident to the Reorganization Case, has been disclosed to the Bankruptcy Court, and any such payment made before confirmation of the Plan is reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable.

(5)　　　The Debtor have disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director or officer of the Debtor, an affiliate of the Debtor participating in a Plan with the Debtor, or a successor to the Debtor under the Plan of ~~Reorganization~~Liquidation, and the appointment to, or continuance in, such office of such individual is consistent with the interests of creditors and equity holders and with public policy, and the Debtor has disclosed the identity of any insider that will be employed or retained by the Debtor, and the nature of any compensation for such insider.  With respect to each class of claims or equity interests, each holder of an impaired claim or impaired equity interest either has accepted the Plan or will receive or retain under the Plan on account of such holder's claim or equity interest, property of a value, as of the Effective Date, that is not less than the amount such holder would receive or retain if the Debtor were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.  See discussion of "Best Interests Test" below.

(6)　　　Except to the extent the Plan meets the requirements of section 1129(b) of the Bankruptcy Code (discussed below), each class of claims or equity interests has either accepted the Plan or is not impaired under the Plan.

(7)　　　Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the Plan provides that administrative expenses and priority claims other than priority tax claims will be paid in full on the Effective Date and that priority tax claims will receive on account of such claims deferred Cash payments, over a period not exceeding six years after the date of assessment of such claims, of a value, as of the Effective Date, equal to the allowed amount of such claims.

(8)　　　At least one class of impaired claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a claim in such class.

(9)     Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.  See discussion of "Feasibility" below.

**b.     Best Interests Test**

As described above, the Bankruptcy Code requires that each holder of an impaired claim or equity interest either (a) accepts the Plan or (b) receives or retains under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date.

The first step in meeting this test is to determine the dollar amount that would be generated from the liquidation of the Debtor's assets and properties in the context of a chapter 7 liquidation case.  The gross amount of cash available would be the sum of the proceeds from the disposition of the Debtor's assets and the cash held by the Debtor at the time of the commencement of the chapter 7 case.  The next step, is to reduce that total by the amount of any claims secured by such assets, the costs and expenses of the liquidation, and such additional administrative expenses and priority claims that may result from the termination of the Debtor's business and the use of chapter 7 for the purposes of liquidation.  Any remaining net cash would be allocated to creditors and shareholders in strict priority in accordance with section 726 of the Bankruptcy Code (see discussion below).  Finally, taking into account the time necessary to accomplish the liquidation, the present value of such allocations may be compared to the value of the property that is proposed to be distributed under the Plan on the Effective Date.

The Debtor's costs of liquidation under chapter 7 would include the fees payable to a chapter 7 trustee in bankruptcy, as well as those that might be payable to attorneys and other professionals that such a trustee may engage, plus any unpaid expenses incurred by the Debtor during the chapter 11 case and allowed in the chapter 7 case, such as compensation for attorneys, financial advisors, appraisers, accountants and other professionals, and costs and expenses of members of any statutory committee of unsecured creditors appointed by the United States Trustee pursuant to section 1102 of the Bankruptcy Code and any other committee so appointed.  Moreover, the deficiency claims of the Secured Lenders, would not be waived in a chapter 7 liquidation and additional claims would arise by reason of the breach or rejection of obligations incurred and executory contracts or leases entered into by the Debtor both prior to, and during the pendency of, the chapter 11 case.

The foregoing types of claims, costs, expenses, fees and such other claims that may arise in a liquidation case would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay pre-chapter 11 priority and unsecured claims.  Under the absolute priority rule, no junior creditor would receive any distribution until all senior creditors are paid in full, with interest, and no equity holder receives any distribution until all creditors are paid in full, with interest.  The Debtor

believes that in a chapter 7 case, holders of Old Equity Interests would receive no distributions of property.  Accordingly, the Plan satisfies the rule of absolute priority.

After consideration of the effects that a chapter 7 liquidation would have on the ultimate proceeds available for distribution to creditors in a chapter 11 case, including (i) the increased costs and expenses of a liquidation under chapter 7 arising from fees payable to a trustee in bankruptcy and professional advisors to such trustee, (ii) the erosion in value of assets in a chapter 7 case in the context of the expeditious liquidation required under chapter 7 and the "forced sale" atmosphere that would prevail and (iii) substantial increases in claims which would be satisfied on a priority basis, the Debtor has determined that confirmation of the Plan will provide each creditor and equity holder with a recovery that is not less than it would receive pursuant to a liquidation of the Debtor under chapter 7 of the Bankruptcy Code.

Moreover, the Debtor believes that the value of any distributions from the liquidation proceeds to each class of allowed claims in a chapter 7 case would be the same or less than the value of distributions under the Plan because such distributions in a chapter 7 case may not occur for a substantial period of time.  In this regard, it is possible that distribution of the proceeds of the liquidation could be delayed for a year or more after the completion of such liquidation in order to resolve the claims and prepare for distributions.  In the event litigation were necessary to resolve claims asserted in the chapter 7 case, the delay could be further prolonged and administrative expenses further increased.

**The Debtor's liquidation analysis is an estimate of the proceeds that may be generated as a result of a hypothetical chapter 7 liquidation of the assets of the Debtor.  The analysis is based upon a number of significant assumptions which are described.  The liquidation analysis does not purport to be a valuation of the Debtor's assets and is not necessarily indicative of the values that may be realized in an actual liquidation.**

c.      **Liquidation Analysis**

The Debtor's chapter 7 liquidation analysis and assumptions are set forth in Exhibit 4 to this Disclosure Statement.  The Liquidation Analysis demonstrates that under an orderly liquidation, under chapter 7, the estimated gross liquidation proceeds would be in the range of approximately $99 to $123.5 million.  Pursuant to the attached Liquidation Analysis, the Postpetition Financing Obligations outstanding under the Postpetition Financing Agreement are expected to be approximately $2.4 million and the Prepetition Secured Obligations (defined as the Prepetition Credit Agreement Obligations) are expected to total approximately $207 million (including principal, interest, and other costs).

The Committee disagrees with the Debtor's estimation of amount realized per square foot in a chapter 7 liquidation.  The Debtor believes that the amount realized per square foot is not meaningful to the analysis, as the amount which would be realized from the sale of

the Property would still be insufficient to repay the Prepetition Credit Agreement obligations in full.

Following the payment of between approximately $6.8 and $9.6 million in liquidation costs, approximately $92.2 to $113.9 would remain in assets available for distribution (using the low end and high end of recovery estimates). Even using the high end of the recovery estimates, the secured creditors, those holding Prepetition Credit Agreement Obligations and those holding Postpetition Financing Agreement Obligations, would only receive a recovery of approximately fifty eight percent (58%) of their Claims. Moreover, this analysis demonstrates that there would be no assets left for any recovery to holders of Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, Other Secured Claims, Secured Construction Loan Claims, Yates Secured Claim, Secured Customer Deposit Claims, and General Unsecured Claims.

The Debtor is in the process of investigating whether any pre-petition payments in excess of $5,475 are preferential transfers with no valid defense.

### d. Feasibility

The Bankruptcy Code requires a debtor to demonstrate that confirmation of a plan of reorganization is not likely to be followed by the liquidation or the need for further financial reorganization of a debtor unless so provided by the plan of reorganization. For purposes of determining whether the Plan meets this requirement, the Debtor has analyzed its ability to meet its financial obligations as contemplated thereunder. Based upon its analysis, as a result of the funding to be provided by Newco, the Debtor believes that it will be able to make all payments required to be made pursuant to the Plan and that it will need no furtherBecause this is a liquidating plan, there will be no need for future financial reorganization. The Debtor's projections are set forth in Exhibit 5 to this Disclosure Statement expects that the Liquidating Debtor will make all required payments under the Plan of Liquidation.

### 2. Requirements of Section 1129(b) of the Bankruptcy Code

The Bankruptcy Court may confirm the Plan over the rejection or deemed rejection of the Plan by a class of claims or equity interests if the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such class.

### a. No Unfair Discrimination

This test applies to classes of claims or equity interests that are of equal priority and are receiving different treatment under a plan of reorganization. The test does not require that the treatment be the same or equivalent, but that such treatment be "fair."

### b. Fair and Equitable Test

This test applies to classes of different priority (e.g., unsecured versus secured) and includes the general requirement that no class of claims receive more than 100% of the

allowed amount of the claims in such class.  As to the dissenting class, the test sets different standards, depending on the type of claims or interests in such class.

### c.    Secured Claims

Each holder of an impaired secured claim either (i) retains its liens on the property (or if sold, on the proceeds thereof) to the extent of the allowed amount of its secured claim and receives deferred Cash payments having a value, as of the effective date of the Plan, of at least the allowed amount of such claim or (ii) receives the "indubitable equivalent" of its allowed secured claim.

### d.    Unsecured Claims

Either (i) each holder of an impaired unsecured claim receives or retains under the Plan property of a value equal to the amount of its allowed unsecured claim or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive or retain any property under the Plan of reorganization or liquidation.

### e.    Equity Interests

Either (i) each equity interest holder will receive or retain under the Plan of ~~reorganization~~liquidation property of a value equal to the greater of (a) the fixed liquidation preference or redemption price, if any, of such stock and (b) the value of the stock, or (ii) the holders of interests that are junior to the equity interests of the dissenting class will not receive or retain any property under the Plan of ~~reorganization~~liquidation.

The Debtor believes the Plan will satisfy both the "no unfair discrimination" requirement and the "fair and equitable" requirement notwithstanding that Class ~~6~~7 (Old Equity Interests) ~~is~~are deemed to reject the Plan, because as to Class ~~6,~~7, there ~~is~~are no ~~class~~classes of equal priority receiving more favorable treatment and no class that is junior to such ~~a~~dissenting ~~class~~classes will receive or retain any property on account of the claims or equity interests in such class.

## X.

## FINANCIAL INFORMATION

The consolidated pro forma unaudited balance sheets for each of the two fiscal years ended 2006 and 2007 of the Debtor are contained in Exhibit 2 to this Disclosure Statement, and the full text of which is incorporated herein by reference.  This financial information is provided to permit the holders of claims and equity interests to better understand the Debtor's historical business performance and the impact of the Case on the Debtor's business.

# XI.

# ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN OF ~~REORGANIZATION~~LIQUIDATION

If the Plan is not confirmed and consummated, the alternatives to the Plan include (i) liquidation of the Debtor under chapter 7 of the Bankruptcy Code and (ii) an alternative chapter 11 plan of reorganization or liquidation.

## A.    Liquidation Under Chapter 7

If no plan can be confirmed, the Debtor's chapter 11 cases may be converted to cases under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be appointed to liquidate the assets of the Debtor for distribution in accordance with the priorities established by the Bankruptcy Code.  In a chapter 7 liquidation, the Debtor believes that there would be no distribution to the holders of Administrative Claims, General Unsecured Claims, or the holders of Equity Interests.

A discussion of the effects that a chapter 7 liquidation would have on the recovery of holders of claims and equity interests and the Debtor's liquidation analysis are set forth in section IX.B.1(b) above, entitled "CONFIRMATION OF THE PLAN OF ~~REORGANIZATION~~ LIQUIDATION-- Requirements for Confirmation of the Plan of ~~Reorganization~~ Liquidation-- Requirements of Section 1129(a) of the Bankruptcy Code -- Best Interests Test."  The Debtor believes that liquidation under chapter 7 would result in smaller distributions being made to creditors than those provided for in the Plan – and likely no distributions to any creditors other than the secured creditors – because of (a) the ~~loss of any all going concern value (since the Debtor could not continue to operate), (b) the~~ likelihood that the assets of the Debtor would have to be sold or otherwise disposed of in a less orderly fashion over a shorter period of time, (~~e~~b) additional administrative expenses involved in the appointment of a trustee and (~~d~~c) additional expenses and claims, some of which would be entitled to priority, which would be generated during the liquidation and from the rejection of leases and other executory contracts in connection with a cessation of the Debtor's operations.

## B.    Alternative Plan of Reorganization or Liquidation

If the Plan of ~~Reorganization~~Liquidation is not confirmed, the Committee, the Debtor or any other party in interest could attempt to formulate a different chapter 11 plan of liquidation or reorganization.  Such a plan ~~of reorganization~~ might involve either a reorganization and continuation of the Debtor's business or an orderly liquidation of its assets. With respect to an alternative plan, the Debtor has explored various alternatives in connection with the formulation and development of the Plan.  The Debtor believes that the Plan, as described herein, enables creditors and equity holders to realize the most value under the circumstances.  ~~In a liquidation after Confirmation, the Debtor's assets might be sold in an orderly fashion over a more extended period than in a liquidation under chapter 7, possibly resulting in somewhat greater (but indeterminate) recoveries than would be obtained in chapter 7.  Further, if a trustee were not appointed, because~~

~~such appointment is not required in a chapter 11 case, the expenses for professional fees would most likely be lower than those incurred in a chapter 7 case; though any savings may be reduced by the costs of professionals such as investment bankers if such were utilized. Although preferable to a chapter 7 liquidation, the Debtor believes that any alternative liquidation under chapter 11 is a much less attractive alternative to creditors and equity holders than the Plan because of the greater return provided by the Plan.~~

## XII.

## CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

The following discussion summarizes certain U.S. federal income tax consequences of the implementation of the Plan to the Debtor and to the holders of Class ~~5~~6a Claims. The following summary does not address the U.S. federal income tax consequences to holders whose Claims are unimpaired or otherwise entitled to payment in full in Cash under the Plan (*e.g.*, Administrative Expense Claims, Priority Non-Tax Claims, and Other Secured Claims), or holders of Old Equity Interests that are extinguished without a distribution in exchange therefor.

Those Claimants whose Claims are classified as Class 5b Secured Customer Deposit Claims, and elect Option A under the Plan, are advised to speak with a tax advisor regarding the tax ramifications, if any, of forfeiting the remainder of their Customer Deposits.

The following summary is based on the Internal Revenue Code of 1986, as amended (the "Tax Code"), Treasury Regulations promulgated thereunder, judicial decisions, and published administrative rules and pronouncements of the Internal Revenue Service (the "IRS"), all as in effect on the date hereof. Changes in such rules or new interpretations thereof may have retroactive effect and could significantly affect the U.S. federal income tax consequences described below.

The U.S. federal income tax consequences of the Plan are complex and are subject to significant uncertainties. The Debtor has not requested a ruling from the IRS or an opinion of counsel with respect to any of the tax aspects of the Plan. Thus, no assurance can be given as to the interpretation that the IRS will adopt. In addition, this summary generally does not address foreign, state or local tax consequences of the Plan, nor does it address the U.S. federal income tax consequences of the Plan to special classes of taxpayers (such as foreign taxpayers, broker-dealers, persons not holding their Claims as capital assets, financial institutions, tax-exempt organizations, persons holding Claims who are not the original holders of those Claims or who acquired such Claims at an acquisition premium, and persons who have claimed a bad debt deduction in respect of any Claims).

*Accordingly, the following summary of certain U.S. federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon the individual circumstances pertaining to a holder of a Claim.*

*IRS Circular 230 Notice:  To ensure compliance with IRS Circular 230, holders of Claims and Equity Interests are hereby notified that: (A) any discussion of federal tax issues contained or referred to in this Disclosure Statement is not intended or written to be used, and cannot be used, by holders of Claims or Equity Interests for the purpose of avoiding penalties that may be imposed on them under the Tax Code; (b) such discussion is written in connection with the promotion or marketing by the Debtor of the transactions or matters addressed herein; and (c) holders of Claims and Equity Interests should seek advice based on their particular circumstances from an independent tax advisor.*

## A.    Consequences to Holders of Class 6a Claims

Pursuant to the Plan, the holders of Allowed General Unsecured Claims (Class 6a) will receive a Cash distribution in satisfaction and discharge of their Claims.

The following discussion does not necessarily apply to holders who have Claims in more than one class relating to the same underlying obligation.  Such holders should consult their tax advisors regarding the effect of such dual status obligations on the federal income tax consequences of the Plan to them.

In general, each holder of an Allowed General Unsecured Claim, should recognize gain or loss in an amount equal to the difference between (x) the amount of Cash received by the holder in satisfaction of its Claim (other than any Claim for accrued but unpaid interest) and (y) the holder's adjusted tax basis in its Claim (other than any basis attributable to accrued but unpaid interest).  Pursuant to the Plan, distributions to any holder of an Allowed General Unsecured Claim will be allocated first to the original principal amount of such Claim as determined for federal income tax purposes and then, to the extent the consideration exceeds such amount, to any portion of such Claim representing accrued original issue discount ("OID") or accrued but unpaid interest.  However, there is no assurance that the IRS would respect such allocation for federal income tax purposes.  In general, to the extent that an amount received by a holder of debt is received in satisfaction of accrued interest or OID during its holding period, such amount will be taxable to the holder as interest income (if not previously included in the holder's gross income).  Conversely, a holder will generally recognize a loss to the extent any accrued interest was previously included in its gross income and is not paid in full.  Each holder is urged to consult its tax advisor regarding the allocation of consideration and the deductibility of losses realized in respect of Allowed General Unsecured Claims for federal income tax purposes.

Where gain or loss is recognized by a holder of an Allowed General Unsecured Claim the character of such gain or loss as long-term or short-term capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the tax status of the holder, whether the Claim constitutes a capital asset in the hands of the holder and how long it has been held, whether the Claim was originally issued at a discount or a premium, whether the Claim was acquired at a market discount, and whether and to what extent the holder previously had claimed a bad debt deduction in respect of that Claim.

**B.        Information Reporting and Withholding**

All distributions to holders of Claims under the Plan are subject to any applicable tax withholding, including employment tax withholding.  Under U.S. federal income tax law, interest, dividends, and other reportable payments may, under certain circumstances, be subject to "backup withholding" at the then applicable withholding rate (currently 28%).  Backup withholding generally applies if the holder (a) fails to furnish its social security number or other taxpayer identification number ("TIN"), (b) furnishes an incorrect TIN, (c) fails properly to report interest or dividends, or (d) under certain circumstances, fails to provide a certified statement, signed under penalty of perjury, that the TIN provided is its correct number and that it is a United States person that is not subject to backup withholding.  Backup withholding is not an additional tax but merely an advance payment, which may be refunded to the extent it results in an overpayment of tax and the appropriate information is supplied to the IRS.  Certain persons are exempt from backup withholding, including, in certain circumstances, corporations and financial institutions.

In addition, from an information reporting perspective, Treasury Regulations generally require disclosure by a taxpayer on its federal income tax return of certain types of transactions in which the taxpayer participated, including, among other types of transactions, the following:  (1) certain transactions that result in the taxpayer's claiming a loss in excess of specified thresholds; and (2) certain transactions in which the taxpayer's book-tax differences exceed a specified threshold in any tax year.  Holders are urged to consult their tax advisors regarding these regulations and whether the transactions contemplated by the Plan would be subject to these regulations and require disclosure on the holders' tax returns.

> *The foregoing summary has been provided for informational purposes only.*
> *All holders of Claims receiving a distribution under the Plan are urged to consult their*
> *tax advisors concerning the federal, state, local and foreign tax consequences*
> *applicable under the Plan.*

## XIII.

## CONCLUSION

The Debtor believes that confirmation and implementation of the Plan is in the best interests of all creditors, and urges holders of impaired Claims in Class 2, Class 4, Class 5b, Class 6a, and Class 6b entitled to vote on the Plan to vote to accept the Plan and to evidence such acceptance by returning their ballots so that they will be received no later than _____ 4:00 p.m. (Eastern Time) on the Voting Deadline.

Dated: ~~April 21,~~ May 27, 2010

Respectfully submitted,

Cabi Downtown, LLC

By:_____

                                Manager