**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

-------------------------------------------------------X

In re:                                                        CHAPTER 11
                                                                 Case No.  09-27168-BKC-LMI

CABI DOWNTOWN, LLC,


                          Debtor.
-------------------------------------------------------X

**FIFTH AMENDED PLAN OF LIQUIDATION**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

| **BILZIN SUMBERG BAENA PRICE &** | **KASOWITZ, BENSON, TORRES &** |
| **AXELROD LLP** | **FRIEDMAN LLP** |
| Mindy A. Mora | Andrew K. Glenn |
| Tara V. Trevorrow | Jeffrey R. Gleit |
| 200 South Biscayne Boulevard, Suite 2500 | 1633 Broadway |
| Miami, Florida 33131 | New York, New York  10019 |


**Counsel for the Debtor**

Dated:  August 27, 2010

## TABLE OF CONTENTS

Page

| | | |
|---|---|---|
| ARTICLE I | DEFINITIONS AND INTERPRETATION | 1 |
| A. | **Definitions** | 1 |
| B. | **Interpretation; Application of Definitions and Rules of Construction** | 13 |
| ARTICLE II | PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS | 14 |
| 2.1 | *Administrative Expense Claims* | 14 |
| 2.2 | *Professional Fee Claims* | 14 |
| 2.3 | *United States Trustee Fees* | 15 |
| 2.4 | *Repayment of DIP Loan* | 15 |
| 2.5 | *Priority Tax Claims* | 15 |
| ARTICLE III | CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS, IMPAIRMENT AND VOTING | 15 |
| ARTICLE IV | PROVISIONS FOR TREATMENT OF CLAIMS AND EQUITY INTERESTS | 17 |
| 4.1 | *Priority Non-Tax Claims (Class 1)* | 17 |
| 4.2 | *Secured Tax Claim of Miami-Dade County Tax Collector (Class 2)* | 17 |
| 4.3 | *Secured Security Deposit Claims (Class 3)* | 18 |
| 4.4 | *Secured Construction Loan Claims (Class 4* | 18 |
| 4.5 | *Yates Secured Claim (Class 5a)* | 19 |
| 4.6 | *Customer Deposit Claims (Applicable to Unit Purchasers who deposited down payments and whose funds are still retained in the Customer Deposit Escrow, regardless of whether any portion of the deposit was used in construction) (Class 5b)* | 19 |
| 4.7 | *General Unsecured Claims (Class 6a)* | 20 |
| 4.8 | *Customer Deposit General Unsecured Claims (Class 6b)* | 20 |
| 4.9 | *Equity Interests (Class 7)* | 21 |
| 4.10 | *Nonconsensual Confirmation* | 21 |
| ARTICLE V | MEANS OF IMPLEMENTATION | 21 |
| 5.1 | *The Sale Transaction* | 21 |
| 5.2 | *Cancellation of Existing Securities and Agreements* | 23 |

i

## TABLE OF CONTENTS

(continued)

| | | |
|---|---|---|
| 5.3 | *Vesting of Property of the Estate* | 23 |
| 5.4 | *Abandonment of Estate Causes of Action* | 23 |
| 5.5 | *Dissolution of Liquidating Debtor* | 24 |
| 5.6 | *The Prepetition Lender Contribution* | 24 |
| **5.7** | *Exemption from Transfer Taxes* | 24 |
| **5.8** | *Expedited Tax Determination* | 24 |
| 5.9 | *Cabi Developers LLC as Post-Effective Date Manager of the Property* | 25 |
| ARTICLE VI | PROVISIONS GOVERNING DISTRIBUTIONS | 25 |
| 6.1 | *Date of Distributions* | 25 |
| 6.2 | *Distributions Concerning Disputed Unsecured Claims* | 25 |
| 6.3 | *Distributions Made Under Plan* | 26 |
| 6.4 | *Delivery of Distributions* | 27 |
| 6.5 | *Manner of Payment* | 28 |
| 6.6 | *Setoffs and Recoupment* | 28 |
| 6.7 | *Allocation of Plan Distributions Between Principal and Interest* | 29 |
| 6.8 | *De Minimis Distributions and Donation of Remaining General Unsecured Claim Cash Distribution Less Than $25.00* | 29 |
| ARTICLE VII | PROCEDURES FOR TREATING DISPUTED CLAIMS UNDER PLAN OF LIQUIDATION | 29 |
| 7.1 | *Objections* | 29 |
| 7.2 | *No Distributions Pending Allowance* | 30 |
| 7.3 | *Distributions After Allowance* | 30 |
| 7.4 | *Withholding and Reporting Requirements* | 30 |
| ARTICLE VIII | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 31 |
| 8.1 | *Treatment* | 31 |
| 8.2 | *Preconstruction Agreements, Prepetition DP Program Agreements, and FD Agreement* | 32 |
| 8.3 | *Cure Payments* | 32 |
| 8.4 | *Rejection Damages Claims* | 33 |

## TABLE OF CONTENTS

(continued)

Page

ARTICLE IX    LIQUIDATING DEBTOR ................................................. 33

    9.1   *Limited Authority of the Liquidating Debtor* ........................ 33

    9.2   *Limitation of Liability* ................................................ 33

ARTICLE X    PLAN ADMINISTRATOR ................................................ 34

    10.1   *Purpose of the Plan Administrator* ........................................ 34

    10.2   *Resignation, Removal or Replacement of the Plan Administrator* ....................................................... 34

    10.3   *Authority* ................................................................. 35

    10.4   *Expenses of Plan Administrator* ........................................ 36

    10.5   *Distributions* ............................................................ 37

    10.6   *Accounting and Reporting* ............................................ 37

    10.7   *Limitation of Liability* ................................................ 38

    10.8   *Requirement of Undertaking* ........................................ 38

    10.9   *Reliance on Documents* ............................................ 38

    10.10  *Management of Affairs* ............................................ 38

ARTICLE XI    CONDITIONS PRECEDENT TO CONSUMMATION DATE ................................................................. 39

    11.1   *Conditions Precedent to Confirmation* ................................ 39

    11.2   *Conditions Precedent to Effectiveness* ................................ 39

    *11.3*   *Waiver or Failure of Conditions Precedent* ........................ 40

    11.4   *Satisfaction of Conditions* ............................................ 40

ARTICLE XII    EFFECT OF CONFIRMATION ................................................ 41

    12.1   *Binding Effect* ........................................................ 41

    12.2   *Term of Injunctions or Stays* ........................................ 41

    12.3   *Indemnification Obligations* ........................................ 42

    12.4   *Exculpation* ............................................................ 42

    12.5   *Releases* ................................................................ 43

    12.6   *Causes of Action* ...................................................... 45

ARTICLE XIII    RETENTION OF JURISDICTION ................................... 45

ARTICLE XIV    MISCELLANEOUS PROVISIONS ................................... 47

    14.1   *Payment of Statutory Fees* ........................................ 47

    14.2   *Investments of Cash* ................................................ 47

## TABLE OF CONTENTS

(continued)

14.3  **_Modification of Plan_**................................................................48

14.4  **_Revocation of Plan_**.................................................................48

14.5  **_Intercompany Claims_** ............................................................48

14.6  **_Dissolution of the Committee_** ...............................................48

14.7  **_Severability of Plan Provisions_** .............................................48

14.8  **_Governing Law_** ......................................................................49

14.9  **_Compliance with Tax Requirements_** ......................................49

14.10 **_Computation of Time_** ..............................................................49

14.11 **_Notices_** ...................................................................................49

14.12 **_Filing or Execution of Additional Documents_** .....................51

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

---------------------------------------------------------X

In re:                                                          CHAPTER 11
                                                                Case No.  09-27168-BKC-LMI

CABI DOWNTOWN, LLC,


                 Debtor.
---------------------------------------------------------X

**FIFTH AMENDED PLAN OF LIQUIDATION**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Cabi Downtown, LLC ("Cabi" or the "Debtor"), as the debtor and debtor in possession hereby proposes the following fifth amended chapter 11 plan of liquidation, pursuant to section 1121(a) of the Bankruptcy Code:

**ARTICLE I**

**DEFINITIONS AND INTERPRETATION**

A.      **Definitions**.

The following terms used herein shall have the respective meanings defined below:

1.1      ***Abandoned Assets*** means any Collateral that the Prepetition Agent identifies, if any, on or before the Effective Date that shall not be transferred to the Transferee or the Prepetition Agent pursuant to the Plan or otherwise.

1.2      ***Administrative Expense Claim***  means any alleged right to payment constituting a cost or expense of administration of the Case under sections 503(b), 507(a)(1), and 507(b) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Debtor's Estate, (b) any actual and necessary costs and expenses of operating the Debtor's business, (c) any indebtedness or obligations incurred or assumed by the Debtor during the Case, (d) any compensation for professional services rendered and reimbursement of expenses incurred under section 330, 331, or 503 of the Bankruptcy Code, (e) all fees and charges assessed against the Estate under section 1930 of title 28 of the United States Code, and (f) cure payments for executory contracts and unexpired

leases that are assumed under section 365 of the Bankruptcy Code, and (g) the DIP Financing Claim.

1.3     *Affiliate* (i) with respect to the Debtor, has the meaning set forth in section 101(2) of the Bankruptcy Code, and (ii) with respect to any Person (including, without limitation, the Debtor) means another Person who controls, is controlled by, or is under common control with, such Person.

1.4     *Allowed* means (i) with reference to any Claim, (a) any Claim against the Debtor, which has been listed by the Debtor in its Schedules (as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1007) as liquidated in amount and not disputed or contingent and for which no proof of Claim has been filed, (b) any Claim as to which the liability of the Debtor and the amount thereof are determined by a Final Order, or (c) any Claim against the Debtor allowed pursuant to this Plan, and (ii) with reference to any Claim or Administrative Expense Claim, (a) any Claim or Administrative Expense Claim that is the subject of a timely filed proof of Claim or request for an Administrative Expense Claim as to which no objection to allowance or request for estimation has been interposed on or before the applicable period of limitation fixed by Section 7.1 of this Plan or otherwise ordered by the Bankruptcy Court, or as to which any objection or request for estimation has been determined by a Final Order to the extent such objection is determined in favor of the respective Holder, (b) any Claim or Administrative Expense Claim expressly allowed under this Plan, or (c) any Claim or Administrative Expense allowed under section 502, 503, or 1111 of the Bankruptcy Code.  Unless otherwise specified in this Plan or ordered by the Bankruptcy Court, "Allowed Claim" or "Allowed Administrative Expense Claim" shall not include interest on such Claim or Administrative Expense Claim from and after the Petition Date.

1.5     *Applicable Rate* means the lesser of (i) five percent (5%), or (ii) the rate equal to the weekly average one-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System for the calendar week preceding the Effective Date and identified at http://www.federalreserve.gov/releases/h15/current/.

1.6     *Bankruptcy Code* means title 11, United States Code, as amended from time to time, as applicable to the Case.

1.7     *Bankruptcy Court* means the United States Bankruptcy Court for the Southern District of Florida, Miami Division.

1.8     *Bankruptcy Rules* means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section

2075, title 28, United States Code, as amended from time to time, as applicable to the Case, and any Local Rules of the Bankruptcy Court.

1.9 ***Business Day*** means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.10 ***Case*** means the case commenced by the Debtor in the Bankruptcy Court on the Petition Date under chapter 11 of the Bankruptcy Code.

1.11 ***Cash*** means legal tender of the United States of America.

1.12 ***Cash Collateral and Postpetition Financing Order*** means the *Interim Order Pursuant to 11 U.S.C. §§ 105(a), 361, 363 and 364 and Bankruptcy Rule 4001 (I) Authorizing the Debtor (A) to Obtain Secured Post-Petition Financing, and (B) to Use Cash Collateral and to Grant Replacement Liens and (II) to Schedule Final Hearing* [Docket No. 77], as amended by the second, third, fourth, fifth, sixth, seventh, amended seventh, second amended seventh, third amended seventh, fourth amended seventh, fifth amended seventh and sixth amended seventh interim orders entered on September 20, 2009, October 21, 2009, December 4, 2009, December 7, 2009, January 13, 2010, February 18, 2010, March 2, 2010, March 18, 2010, April 7, 2010, May 3, 2010, May 18, 2010, and June 2, 2010, respectively [Docket Nos. 142, 203, 320, 329, 426, 504, 531, 552, 584, 616, 657, and 691, respectively], as well as the *Final Order Pursuant to 11 U.S.C. §§ 105(a), 361, 363 and 364 and Bankruptcy Rule 4001 (I) Authorizing the Debtor (A) to Obtain Secured Post-Petition Financing, and (B) to Use Cash Collateral and to Grant Replacement Liens and (II) to Scheduling Final Hearing* [D.E. 713].

1.13 ***Claim*** has the meaning set forth in section 101(5) of the Bankruptcy Code.

1.14 ***Claims Objection Deadline*** means the applicable deadline for filing objections to claims for each class as ordered by the Bankruptcy Court.

1.15 ***Class 6b Claims Reserve*** shall have the meaning set forth in Section 6.2(a) of the Plan.

1.16 ***Collateral*** means all property of the Debtor's estate subject to the liens, security interests, and other rights of the Prepetition Agent granted pursuant to the Mortgage, the Prepetition Credit Agreement and related documents, including, but not limited to, the Property, collateral in the form of Cash, all of the Debtor's interest in the Customer Deposits and the DP Program Security Deposits, and all of the Debtor's interest in agreements whereby the Debtor sold units at the Property after the Petition Date, including, without limitation, all deposits tendered

pursuant to such agreements and any interest accrued thereon. For the avoidance of doubt, Collateral does not include the Yates Escrow Funds or the FA Escrow Account.

1.17    ***Committee*** means the official committee of unsecured creditors appointed in the Case pursuant to section 1102(a) of the Bankruptcy Code.

1.18    ***Condominium Unit*** means any one of the approximately 849 residential condominium units on the Property.

1.19    ***Confirmation Date*** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

1.20    ***Confirmation Hearing*** means the hearing conducted by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

1.21    ***Confirmation Order*** means the order or orders of the Bankruptcy Court confirming this Plan.

1.22    ***Construction Loan Claims*** means any and all unpaid principal, accrued and unpaid interest, unpaid fees and attorneys' fees, and any other charges, amounts and costs owing, accrued, accruing or chargeable in respect of the Debtor's obligations pursuant to the Prepetition Credit Agreement through the Effective Date, including, without limitation, term loans, advances and/or financial accommodations provided to or for the benefit of the Debtor.

1.23    ***Corporate Indemnities*** means any obligation of the Debtor pursuant to the Debtor's pre-Effective Date or post-Effective Date corporate charter, bylaws, limited liability company organizational documents, limited liability company operating agreements, agreements, contracts or under any statute or common law arising at any time before the Effective Date to indemnify any former, present and future directors, officers, managers, members, agents, employees and/or Representatives of (i) the Debtor, or (ii) any Person serving in such capacity at the Debtor's request.

1.24    ***Cure*** means the payment of Cash, or the Distribution of other property (as the parties may agree or the Bankruptcy Court may order), as necessary to (i) cure a default by the Debtor under an executory contract or unexpired lease of the Debtor and (ii) permit the Debtor to assume such executory contract or unexpired lease under section 365 of the Bankruptcy Code.

1.25    ***Customer Deposit Claim*** means any Claim arising under a Preconstruction Agreement, other than a Preconstruction Agreement that has been assumed in accordance with Section 8.2 of this Plan.

1.26    ***Customer Deposits*** means deposits funded before the Petition Date by customers and held by the Escrow Agent in connection with Preconstruction Agreements.

1.27    ***Customer Deposit Escrow*** means all Customer Deposits held in escrow by the Escrow Agent as of the Effective Date.

1.28    ***Customer Deposit General Unsecured Claim*** means that portion of a Customer Deposit Claim that exceeds the security in the Customer Deposit Escrow for such Claim, solely to the extent that such Claim is Allowed by settlement or Court order.

1.29    ***Developers*** means Cabi Developers LLC.

1.30    ***DIP Financing Claim*** means any and all unpaid obligations of the Debtor to the DIP Lender pursuant to the Cash Collateral and Postpetition Financing Order.

1.31    ***DIP Lender*** means Holdings in its capacity as lender under the Cash Collateral and Postpetition Financing Order.

1.32    ***DIP Loan*** means the funds advanced pursuant to the Cash Collateral and Post Petition Financing Order, as amended and in effect from time to time, which provided for up to a $3,000,000 debtor in possession loan by Holdings.

1.33    ***Disclosure Statement*** means the Fifth Amended Disclosure Statement, which includes, without limitation, all exhibits and schedules thereto, as the same may be amended, supplemented or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, Rule 3017 of the Bankruptcy Rules and Rule 3017-1 of the Local Rules.

1.34    ***Disputed*** means, with reference to any Claim or Administrative Expense Claim, any such Claim or Administrative Expense Claim (a) to the extent neither Allowed nor disallowed under this Plan or a Final Order nor deemed Allowed under section 502, 503, or 1111 of the Bankruptcy Code, or (b) which has been or hereafter is listed by the Debtor on its Schedules as unliquidated, disputed, or contingent, and which has not been resolved by written agreement of the parties or a Final Order, or (c) as to which the Debtor or any other party in interest has interposed a timely objection and/or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or

determined by a Final Order, or (d) which arises in connection with an executory contract which has not been assumed by the Debtor, and therefore such contract is deemed rejected pursuant to Section 8.1 of this Plan.

1.35   ***Distribution*** means the payment or distribution under the Plan of property of the Estate or interests in property of the Estate to the Holders of Allowed Claims or Interests.

1.36   ***DP Program Agreements*** means the agreements entered into between the Debtor and customers, whether pre- or postpetition, whereby such customers received an option to purchase residential units and the Debtor may be required to credit all or part of such customer's monthly payments toward the purchase price of residential units at the Property, depending upon when each customer's purchase option is exercised.

1.37   ***DP Program Security Deposits*** means the deposits held by the Debtor pursuant to applicable DP Program Agreements.

1.38   ***Effective Date*** means a Business Day selected by the Debtor with the prior written consent of the Prepetition Agent, and specified in a notice sent by the Debtor to all parties in interest, within five Business Days of the date on which (a) no stay of the Confirmation Order is in effect and (b) the conditions precedent to the effectiveness of this Plan specified in Section 11.2 of this Plan shall have been satisfied or waived as provided in Section 11.3.

1.39   ***Effective Date Deadline*** shall have the meaning set forth in Section 11.3.

1.40   ***Equity Interest*** means the interest in any equity security, limited liability company interest, partnership interest or limited partnership interest, shares of common stock, shares of preferred stock, or other equity or ownership interests whatsoever in the Debtor represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership interest in the Debtor, whether or not transferable, including (a) any option, warrant, call, subscription, or other right, contractual or otherwise, to acquire any such interest and any redemption, conversion, exchange, put, voting participation, dividend rights, liquidation preferences, or any other designations, rights, or preferences whatsoever, relating to any such equity security, and (b) all rights, interests, and Claims against the Debtor or its respective Affiliates or Representatives (including Claims for fraud, misrepresentation, rescission, reimbursement, contribution, or damages) arising under, or in connection with, or in any way related to (i) all agreements, including stockholder agreements and management agreements, entered into by the Debtor or its respective Affiliates or

Representatives in connection with the issuance of such security or any related transactions or (ii) the purchase or sale of such security or any related transactions.

1.41    ***Escrow Agent*** means Siegfried, Rivera, Lerner, De La Torre & Sobel, PA, in its capacity as escrow agent in connection with the Preconstruction Agreements, mechanic lien claims, and the FA Escrow Account.

1.42    ***Estate*** means the estate of the Debtor as created under section 541 of the Bankruptcy Code.

1.43    ***Estate Causes of Action*** means all claims and causes of action of the Debtor against third parties arising under Chapter 5 of the Bankruptcy Code, or arising under related federal or state statutes or common law, including fraudulent conveyance laws.  For the avoidance of doubt, Estate Causes of Action includes only those causes of action generally referred to as "preference" or "avoidance" actions and does not include all other pending or prospective litigation involving Cabi or the Debtor.

1.44    ***FA Escrow Account*** means the escrow account holding the funds deposited in escrow pursuant to the Funding Agreement.

1.45    ***Face Amount*** means either (i) the full stated amount claimed by the Holder of such Claim in any proof of Claim filed by the bar date established by the Bankruptcy Court or otherwise deemed timely filed under applicable law, if the proof of Claim specifies only a liquidated amount; or (ii) if no proof of Claim has been filed by the bar date or has otherwise been deemed timely filed under applicable law or if the proof of Claim specifies an unliquidated amount, the amount of the Claim (a) acknowledged by the Debtor, or Plan Administrator in any objection to such Claim or in the Schedules as an undisputed, non-contingent and liquidated Claim, (b) estimated by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code, or (c) proposed by the Debtor or established by the Plan Administrator following the Effective Date, as applicable.

1.46    ***FD Agreement*** means the agreement entered into by and between the Debtor and Fullerton Diaz, as amended or modified.

1.47    ***Final Decree*** means the final decree entered by the Bankruptcy Court after the Effective Date pursuant to Section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022.

1.48    ***Final Order*** means an order or judgment of a court of competent jurisdiction, which has been entered on the docket maintained by the clerk of such court, and which has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for certiorari, or move

for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending or (b) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired; *provided, however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order, shall not cause such order not to be a Final Order.

1.49    ***Fullerton Diaz*** means Fullerton Diaz Architects, Inc.

1.50    ***Funding Agreement*** means the Funding Agreement by and between Cabi and Yates, dated as of November 14, 2008.

1.51    ***General Unsecured Claim*** means any Claim that arose or accrued prior to the Petition Date that is not an Administrative Expense Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Security Deposit Claim, a Secured Construction Loan Claim, a Customer Deposit Claim, a Customer Deposit General Unsecured Claim, the Yates Secured Claim, or the Secured Tax Claim of Miami-Dade County Tax Collector.  General Unsecured Claims shall include, without limitation, Claims arising from the rejection of an unexpired lease or executory contract (other than a  Preconstruction Agreement) pursuant to this Plan or other Final Order of the Bankruptcy Court.

1.52    ***General Unsecured Claim Cash Distribution*** means Cash in the amount of $750,000.

1.53    ***Guarantees*** means those certain guarantees of the obligations owing under the Prepetition Credit Agreement executed by Abraham Cababie Daniel, Elias Cababie Daniel, individually and as Executor of the Estate of Jacobo Cababie Daniel, and Grupo Gicsa, S.A. de C.V.

1.54    ***Guarantors*** mean the obligors under the Guarantees.

1.55    ***HOA*** means any of the homeowners' associations for the Property, or all such associations considered collectively.

1.56    ***Holder*** means a Person that holds a beneficial interest in a Claim or Equity Interest against the Debtor.

1.57    ***Holdings*** means CABI Holdings, Inc.

1.58  ***Holdings Note*** shall mean a non-interest bearing promissory note in the amount of $2,336,000, due and payable on December 31, 2010, to Holdings by the Transferee or another entity designated by the Prepetition Agent with Holdings' consent.

1.59  ***Indemnified Person*** means any directors, officers, members, managers, agents, Representatives or employees of the Debtor or any of its Affiliates who were directors, officers, members, managers, agents, Representatives or employees of the Debtor or any of its Affiliates before, on or after the Petition Date, and any such person after the Effective Date.

1.60  ***Intercompany Claim*** means any claim or other right to payment between the Debtor and an Affiliate of the Debtor.

1.61  ***Lien*** has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.62  ***Liquidating Debtor*** means the Debtor on or after the Effective Date.

1.63  ***Local Rules*** means Local Rules of the United States Bankruptcy Court for the Southern District of Florida.

1.64  ***Management Period*** means the period from the Effective Date through the Management Period Termination Date.

1.65  ***Management Period Termination Date*** means the earliest of (i) April 30, 2011; (ii) the date that is 270 calendar days after the Effective Date; (iii) the closing of a Remaining Residential Units Sale or Building Sale (as defined in the Management Services Agreement); or (iv) any termination of the Management Services Agreement pursuant to Section 9 of such agreement.  The parties to the Management Services Agreement may, at any time and in the sole and absolute discretion of each of them, agree in writing to extend the term of such agreement.

1.66  ***Management Services Agreement*** means the agreement between Developers and Transferee, which form shall be included in the Plan Supplement.

1.67  ***Mortgage*** means the Amended and Restated Mortgage, Assignment of Rents, Security Agreement and Fixture Filing, dated November 18, 2005.

1.68  ***Obligations*** mean the Debtor's obligations arising under the Prepetition Credit Agreement.

1.69  ***Person*** means an individual or a partnership, corporation, limited liability company, cooperative, trust, unincorporated organization,

association, joint venture, government or agency or political subdivision thereof, or any other form of legal entity.

1.70    *Petition Date* means August 18, 2009, the date on which the Debtor commenced its Case.

1.71    *Plan* means this Fifth Amended Plan of Liquidation, including, without limitation, the Plan Supplement, the exhibits and schedules hereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.72    *Plan Administrator* has the meaning set forth in Article X of this Plan.

1.73    *Plan Supplement* means the supplement to this Plan, containing certain documents relevant to the implementation of this Plan, including, but not limited to the Management Services Agreement.  The Plan Supplement and the documents contained therein shall be filed with the Bankruptcy Court no later than ten (10) Business Days before the deadline for voting to accept or reject this Plan, provided that the documents included therein may thereafter be amended and supplemented prior to execution.

1.74    *Post-Confirmation Administrative Reserve* shall have the meaning provided for such term in Section 2.1 of the Plan.

1.75    *Preconstruction Agreements* mean agreements entered into prior to the Petition Date between the Debtor and customers whereby the Debtor pre-sold certain residential units at the Property.

1.76    *Prepetition Agent* means Bank of America, N.A., or any successor thereto, as administrative agent under the Prepetition Credit Agreement.

1.77    *Prepetition Credit Agreement* means that certain Construction Loan Agreement dated as of November 18, 2005 (as subsequently amended), and in effect among the Debtor, the Prepetition Agent, the Prepetition Lenders, and certain guarantors and all other agreements, instruments, or documents executed by the Debtor in relation thereto, as the same may have been further amended or modified from time to time prior to the Petition Date.

1.78    *Prepetition Lenders* means the lenders under the Prepetition Credit Agreement.

1.79    *Prepetition Lender Contribution* means a sum sufficient to pay the funding required under the Plan pursuant to Section 5.6.

1.80   ***Priority Non-Tax Claim*** means any unsecured Claim entitled to priority in payment as specified in section 507(a)(3)-(7) or (a)(10) of the Bankruptcy Code, other than those Claims asserted by Holders of Customer Deposit Claims who elect Option A as described in Section 4.6 of this Plan in full and final satisfaction of any Claim against the Estate, whether such Claim is secured, priority, or unsecured.

1.81   ***Priority Tax Claim*** means any unsecured Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.82   ***Professional Fee Claims*** shall have the meaning set forth in Section 2.2.

1.83   ***Property*** means the Debtor's real estate development known as Everglades on the Bay located at 244 Biscayne Boulevard, Miami, Florida 33131.

1.84   ***Ratable Proportion*** means, with reference to any Distribution on account of any Allowed Claim in any class or classes, as applicable, a Distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of Allowed Claims (plus Disputed Claims until disallowed) in the same class or classes, as applicable.

1.85   ***Releasee*** means (a) Holdings, as the DIP Lender, and (b) the officers, directors, managers, and members of the Debtor (solely in such respective capacities), but does not include any Guarantors of the Debtor (solely in such respective capacities), regardless of whether such person is an officer, director, manager, or member of the Debtor.

1.86   ***Representatives*** means, with respect to any particular Person, such Person's  present, former or future officers, directors, employees, consultants, members, managers, partners, principals, agents, advisors (including any attorneys, financial advisors, investment bankers, and other professionals retained by such Persons), Affiliates, funds under management, and representatives.

1.87   ***Sale Transaction*** shall have the meaning ascribed to such term in Section 4.4 herein.

1.88   ***Schedules*** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms, as such schedules and statements have been or may be supplemented or amended through the Confirmation Date pursuant to Bankruptcy Rule 1007.

1.89    ***Secured Claim*** means a Claim secured by a Lien on the Debtor's property, which is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law, but solely to the extent deemed secured by section 506(a) and (b) of the Bankruptcy Code, or a Claim that is subject to setoff under section 553 of the Bankruptcy Code.

1.90    ***Secured Construction Loan Claims*** means the Construction Loan Claims, solely to the extent of the value of the Collateral.

1.91    ***Secured Customer Deposit Claims*** means the portion of any applicable Customer Deposit Claim that is found prior to the Effective Date to be a Secured Claim, in whole or in part, by Final Order or by agreement with the Debtor pursuant to the *Order (I) Authorizing and Approving Certain Proposed Settlements With Unit Purchasers; (II) Establishing an Omnibus Procedure for Settling Certain Deposit Claims; (III) Authorizing Disbursement of Settlement Funds Held in Escrow; and (IV) Authority to Reissue Lost Check* [D.E. #195], or found to be a Secured Claim, in whole or in part, by the Plan Administrator after the Effective Date.

1.92    ***Secured Security Deposit Claim*** means a Claim arising out of a security deposit paid pursuant to a DP Program Agreement.

1.93    ***Secured Tax Claim of Miami-Dade County Tax Collector*** means that certain ad valorem tax claim of the Miami-Dade County Tax Collector for 2009 real and personal property taxes, which at the time of the filing of the claim was estimated at approximately $7 million, but has since been reduced as each individual unit has closed and taxes on that unit have been satisfied.

1.94    ***Tax Code*** means the Internal Revenue Code of 1986, as amended.

1.95    ***Transfer Documents*** shall have the meaning set forth in Section 4.4.

1.96    ***Transferee*** means the designee of the Prepetition Agent that shall take ownership of the Transferred Property.

1.97    ***Transferred Causes of Action*** means all of the Debtor's claims, rights, defenses, counterclaims, and causes of action against third parties, including, but not limited to, all litigation relating to the Customer Deposit Claims and any other litigation initiated or to be initiated by or on behalf of the Debtor, but excluding any Estate Causes of Action.

1.98    ***Transferred Property*** means the Property, all Warranty Claims, and the Collateral, other than Abandoned Assets.

1.99 ***U.S. Trustee*** means the United States Trustee appointed under section 581, title 28, United States Code to serve in the Southern District of Florida.

1.100 ***Warranty Claim*** shall have the meaning set forth in Section 12.6.

1.101 ***Yates*** means W.G. Yates & Sons Construction Company.

1.102 ***Yates Escrow Funds*** means segregated funds of approximately $1,800,000 held in escrow by the Clerk of the Bankruptcy Court for the benefit of Yates, as the Holder of the Yates Secured Claim, pursuant to the Yates Settlement Order.

1.103 ***Yates Secured Claim*** means a Secured Claim relating to goods or services rendered by Yates on behalf of or for the benefit of the Debtor.

1.104 ***Yates Settlement Agreement*** means the comprehensive settlement agreement entered into by the Debtor and Yates on July 19, 2010.

1.105 ***Yates Settlement Order*** means the *Agreed Order Granting, in Part, and Denying, in Part, Plaintiff's Emergency Motion for Injunctive Relief* [D.E. 13, Adversary Proceeding No. 09-02522-BKC-LMI], entered December 30, 2009.

**B.     Interpretation; Application of Definitions and Rules of Construction.**

Unless otherwise specified, all section, article, schedule or exhibit references in this Plan are to the respective section in, article of, or schedule or exhibit to, this Plan or the Plan Supplement, as the same may be amended, waived or modified from time to time.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained in this Plan.  A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of this Plan.  The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

## ARTICLE II

### PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS

2.1     ***Administrative Expense Claims.***

Except to the extent that a Holder of an Allowed Administrative Expense Claim agrees to a less favorable treatment, as soon as reasonably practicable on or after the Effective Date, the Plan Administrator shall pay Cash in an amount equal to such Allowed Administrative Expense Claim to each Holder of an Allowed

Administrative Expense Claim; *provided*, *however*, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtor prior to the Effective Date shall be assumed and paid by the Plan Administrator or the Transferee, as appropriate, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

On the Effective Date or as promptly thereafter as is practicable, the Plan Administrator shall, without the need for Bankruptcy Court approval: (a) pay from the Post-Confirmation Administrative Reserve all Allowed Administrative Expense Claims, and (b) create a reserve or reserves to pay any Disputed Administrative Expense Claims and estimated post-Effective Date expenses of the Plan Administrator (collectively, the "Post-Confirmation Administrative Reserve"). The Post-Confirmation Administrative Reserve shall be funded from the Prepetition Lender Contribution.

The Post-Confirmation Administrative Reserve shall contain funds sufficient to pay Holders of Disputed Administrative Expense Claims the maximum Distribution to which they are entitled under the Plan. The Post-Confirmation Administrative Reserve shall be maintained by the Plan Administrator in an interest-bearing account pending Distributions. Any funds remaining in the Post-Confirmation Administrative Reserve after payment in full of all Allowed Administrative Expense Claims, Disputed Allowed Administrative Expense Claims that are subsequently Allowed, and Post-Effective Date expenses of the Plan Administrator shall be distributed to the Prepetition Agent.

2.2     ***Professional Fee Claims***.

All Persons seeking awards by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code ("Professional Fee Claims") shall (i) file, on or before the deadline specified in Local Rule 2016-1(c)(1), their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred and (ii) be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court (A) upon the later of (1) the Effective Date and (2) the date on which the order that deemed such Administrative Expense Claim Allowed becomes a Final Order or (B) upon such other terms as may be mutually agreed upon by such Holder and the Plan Administrator. The Plan Administrator is authorized to pay compensation for professional services rendered and reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

2.3    *United States Trustee Fees*

All fees payable under section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date.  The Plan Administrator shall pay fees under section 1930 of title 28 of the United States Code after the Effective Date until a Final Decree is entered, the Case is closed, dismissed or converted, and shall file quarterly operating reports, until a Final Decree is entered, or the Case is closed, dismissed or converted.

2.4    *Repayment of DIP Loan*.

The Transferee, or another entity designated by the Transferee with Holdings' consent, shall be obligated to pay to Holdings in full and final satisfaction of the DIP Financing Claim, the sum of $2.336 million on or before December 31, 2010, which obligation shall be evidenced by the Holdings Note, which note shall be delivered to Holdings on the Effective Date.

2.5    *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive, commencing as soon as reasonably practicable on or after the Effective Date, and continuing over a period not exceeding five (5) years after the Petition Date, Cash payments in an aggregate amount equal to such Allowed Priority Tax Claim, together with simple interest at the Applicable Rate, subject to the sole option of the Plan Administrator to prepay the entire amount of the Allowed Priority Tax Claim at any time without penalty.  All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND
## EQUITY INTERESTS, IMPAIRMENT AND VOTING

The categories of Claims and Equity Interests, other than Administrative Expense Claims and Priority Tax Claims, are classified for all purposes, including voting, confirmation, and Distribution pursuant to this Plan, as follows:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Priority Non-Tax Claims | Unimpaired | No |
| Class 2 | Secured Tax Claim of Miami-Dade County Tax Collector | Unimpaired | No |

| Class 3 | Secured Security Deposit Claims | Unimpaired | No |
|---|---|---|---|
| Class 4 | Secured Construction Loan Claims | Impaired | Yes |
| Class 5a | Yates Secured Claim | Impaired | Yes |
| Class 5b | Customer Deposit Claims | Impaired | Yes |
| Class 6a | General Unsecured Claims | Impaired | Yes |
| Class 6b | Customer Deposit General Unsecured Claims | Impaired | N/A (no such claim will be allowed prior to the Confirmation Date)[1] |
| Class 7 | Equity Interests | Impaired | No (Deemed to Reject) |

# ARTICLE IV

## PROVISIONS FOR TREATMENT OF CLAIMS AND EQUITY INTERESTS

Claims and Equity Interests shall receive the treatment set forth below.

### 4.1 *Priority Non-Tax Claims (Class 1)*.

With respect to any Allowed Priority Non-Tax Claims not paid pursuant to prior Bankruptcy Court order, as soon as reasonably practicable on or after the Effective Date or the date that is ten (10) Business Days after the date such claim is Allowed, and except to the extent that a Holder of an Allowed Priority Non-Tax Claim agrees to less favorable treatment, each Allowed Priority Non-Tax Claim shall be paid in full by the Plan Administrator in Cash. The Debtor does not believe that there will be any Priority Non-Tax Claims because any such Claims would arise out of Customer Deposit Claims and (a) any Holder of a Customer Deposit Claim whose deposit was partially used in construction of the Property is expected to elect Option A under Class 5b which will result in such Holder's Customer Deposit Claim being satisfied in full and no Priority Non-Tax Claim remaining; and (b) any Holder of a Customer Deposit Claim who elects Option B is expected to do so only if such Holder's deposit remains entirely in escrow and therefore such Holder will not have a Priority Non-Tax Claim.

### 4.2 *Secured Tax Claim of Miami-Dade County Tax Collector (Class 2).*

As soon as reasonably practicable on or after the Effective Date, the Miami-Dade County Tax Collector shall receive payment in full in Cash in the amount of the remaining 2009 taxes owed on the disbursement date, which shall include

---

[1]          *See* Section 4.6 herein.

statutory interest in the event that the 2009 taxes are delinquent at the time of payment; provided, however, that so long as either any Value Adjustment Board petitions or any action in the Circuit Court regarding the assessments of the Miami-Dade County Property Appraiser with respect to the taxed real or personal property are pending, such payment shall be limited to the amount of the good faith payment estimated to be due and owing by the Debtor, which amount has already been paid to the Miami-Dade Tax Collector and which in any event shall be applied toward satisfaction of the Allowed Secured Tax Claim; and provided further, that any refund owed to the Debtor shall be paid to the Prepetition Agent. The Miami-Dade County Property Appraiser reserves his right to seek review pursuant to Florida law of Value Adjustment Board reductions of 2009 and subsequent years' assessments of the taxed real or personal property, and the Debtor, the Plan Administrator and the Transferee (as the proposed subsequent owner of unsold units) acknowledge that should the Property Appraiser seek to exercise this right, that the owner of the subject taxed property at the time of the final resolution of the challenge shall be responsible for any taxes owed as a result, and that the payment of said taxes shall be secured by statutory liens attaching to said property pursuant to Florida law. Likewise, individual purchasers of Condominium Units, as well as Lender, shall be on notice that there may be a dispute regarding the 2009 or subsequent year's assessment of the property, and such purchaser shall bear the responsibility of providing for payment of any taxes ultimately owed. Further, all units sold or transferred pursuant to this Plan shall be sold or transferred subject to ad valorem tax liens and any sale proceeds under the jurisdiction of the Bankruptcy Court or in accordance with this Plan shall so specify.

      4.3     ***Secured Security Deposit Claims (Class 3)***.

         Except to the extent that a Holder of an Allowed Secured Security Deposit Claim agrees to less favorable treatment, each Holder of an Allowed Secured Security Deposit Claim shall receive a Distribution in Cash from the Transferee in the Allowed Amount of such Secured Security Deposit Claim in the ordinary course of business, subject to the terms of the applicable DP Program Agreement.

      4.4     ***Secured Construction Loan Claims (Class 4)***.

         The Secured Construction Loan Claims shall be Allowed in the aggregate amount of $196.7 million, less any payments received after July 12, 2010 but prior to the Effective Date, and shall not be subject to offset, defense, counterclaim, reduction, or credit of any kind whatsoever.[2]

         On the Effective Date of the Plan, in consideration for a credit bid by the Prepetition Agent on behalf of Holders of Secured Construction Loan Claims, the Debtor shall sell and transfer to the Transferee, by special warranty deed or bill of sale, as appropriate, and other customary assignment and transfer documents (collectively, the "Transfer Documents") and free and clear of all other liens, claims, encumbrances and other interests, on an "as is" basis, all of the Transferred Property

---

     [2]       $196.7 million is an approximate amount as of July 12, 2010.

(the "Sale Transaction").  Concurrently with the transfer of the Transferred Property, the Debtor shall transfer control of all of the HOAs and condominium associations at the Property to the Transferee.  The Prepetition Agent shall receive all other Collateral, except the Abandoned Assets and Collateral that shall be transferred to the Plan Administrator pursuant to the terms of the Plan.

In exchange for the transfer of the Transferred Property and the Collateral, the Holders of Construction Loan Claims will not assert any claim in Class 6a or 6b.

The Debtor shall provide all information and records necessary or reasonably requested by the Prepetition Agent to transition control of the HOAs.  The Transferee shall have the right to submit a condominium filing to the Division of Condominiums, Timeshares, and Mobile Homes.  The conveyance to the Transferee shall not be deemed to trigger a turnover of control of the HOAs or an obligation to make any capital contribution to or for the benefit of the HOAs.

4.5     *Yates Secured Claim (Class 5a).*

On the Closing Date as defined in the Yates Settlement Agreement, Yates, as the Holder of the Allowed Yates Secured Claim, shall receive (a) the amount of $1.8 million held and defined as the Yates Escrow Funds, pursuant to the Yates Settlement Order and (b) the Distribution provided in the Yates Settlement Agreement, dated July 19, 2010, which settlement agreement must be approved by court order issued under Bankruptcy Rule 9019 on or before the Confirmation Date. Entry of such order is a condition precedent to entry of the Confirmation Order and a condition precedent to the Effective Date of the Plan.

4.6     ***Customer Deposit Claims (Applicable to purchasers of Condominium Units who deposited down payments and whose funds are still retained in the Customer Deposit Escrow, regardless of whether any portion of the deposit was used in construction) (Class 5b).***

Each Holder of a Customer Deposit Claim may elect between Option A, as a full and final settlement of its Claim, whether such Claim is deemed secured, priority, or unsecured, <u>or</u> Option B, as follows:

Option A:  As soon as reasonably practicable on or after the Effective Date, each Holder of an Allowed Customer Deposit Claim who elects Option A shall receive the amount of the deposit for such unit in excess of 12.5% of the purchase price as set forth in the applicable sale agreement, less any amount of such deposit previously refunded by the Debtor to such Holder, which shall be paid in a lump sum on or as soon as reasonably practicable after the Effective Date.  By way of example, if a Holder deposited 20% of the purchase price for a unit, none of which has been refunded prior to the Effective Date, then such Holder would receive an amount equal to 7.5% of the applicable purchase price.  Such payments described for Distribution to Holders who elect Option A shall be paid from the Customer Deposit Escrow and

shall be deemed to constitute full and final satisfaction of such Holder's Claim in the Case, including under the applicable Preconstruction Agreement. On the Effective Date, the Prepetition Agent will receive the balance of the funds in escrow from the deposit made by such Holder, plus all interest accrued on such Holder's deposit, which funds may be applied by the Prepetition Agent toward the Prepetition Lender Contribution. Any litigation or other action against the Debtor, the Prepetition Agent, the Prepetition Lenders, the Escrow Agent, or the Collateral, wherever pending, that has been commenced by such Holder, shall be dismissed with prejudice. Each Holder of an Allowed Secured Customer Deposit Claim shall have the right to apply the amount received under this Section 4.6 of the Plan toward the purchase of a new Condominium Unit at a price mutually acceptable to such Holder and the Transferee.

Option B: A Holder of a Customer Deposit Claim who elects in writing to reject Option A and to proceed with Option B shall not receive any Distribution on the Effective Date, but shall retain all rights to contest the Debtor's objection to such Holder's proof of claim, whether pursuant to an adversary proceeding or a claim objection. The Debtor and/or the Prepetition Agent intend to object to the Customer Deposit Claims of Holders who elect Option B. The Customer Deposits of the Holders who elect Option B will remain in escrow until such Holders' Claims are resolved by settlement or Final Order, unless otherwise ordered by the Bankruptcy Court. Upon settlement or Final Order of a Customer Deposit Claim, the Holder of such Customer Deposit Claim will receive a Distribution of the secured portion of such Customer Deposit Claim to the extent funds remain in escrow on account of such claim, but will not receive a Distribution on account of the applicable Customer Deposit General Unsecured Claim (as defined herein), if any, until the conclusion of all litigation instituted by any Holder of a Customer Deposit Claim if the outcome of such litigation may affect the amount of the Distribution.

To the extent that any Customer Deposit Claim is Allowed in an amount that exceeds the amount held in escrow in respect of such Customer Deposit Claim, such excess Allowed amount shall be treated as an Allowed Customer Deposit General Unsecured Claim for all purposes under the Plan.

If the Holder of an Allowed Secured Customer Deposit Claim fails to cast a ballot for or against the Plan or fails to reject Option A and fails to make a written election to proceed with Option B, such Holder shall be deemed to have elected Option A.

4.7    *General Unsecured Claims (Class 6a)*.

Within 21 days of the Effective Date, unless such date is otherwise extended with the consent of the persons who served as members of the Committee on the Effective Date, each Holder of an Allowed General Unsecured Claim shall receive its Ratable Proportion of the General Unsecured Claim Cash Distribution. For the avoidance of doubt, Holders of Allowed Intercompany Claims shall not receive a Distribution pursuant to the Plan. Each General Unsecured Claim listed on Schedule A hereto shall be deemed Allowed on the Effective Date in the amount indicated on

Schedule A, under the column entitled, "Allowed Amount of Claim as of Effective Date," unless an objection is filed to any such claim on or prior to the Claims Objection Deadline.  Only the Holders of Claims listed on Schedule A shall be entitled to receive a ratable Distribution from the General Unsecured Claim Cash Distribution.

       4.8     ***Customer Deposit General Unsecured Claims (Class 6b).***

       As soon as reasonably practicable after such claim is Allowed pursuant to settlement or Final Order, each Holder of an Allowed Customer Deposit General Unsecured Claim shall receive in Cash the lesser of (a) 25% of the Holder's Allowed Customer Deposit General Unsecured Claim and (b) its Ratable Proportion of the Class 6b Claims Reserve.  Claims in Class 6b will not exist until the Holder of a Customer Deposit Claim has (i) elected Option B on a timely filed Class 5b ballot submitted pursuant to the Plan, (ii) litigated or resolved such Holder's Customer Deposit Claim pursuant to Option B, and (iii) been granted an unsecured claim against the Estate by settlement or Final Order.  As a result, it is not anticipated that any creditor will hold a Class 6b Claim prior to the Confirmation Date.  Consequently, no creditor will be entitled to cast a ballot in Class 6b.

       Holders of Class 6b Claims will not receive a Distribution on account of any Customer Deposit General Unsecured Claim until the conclusion of all litigation instituted by any Holder of a Customer Deposit Claim if the outcome of such litigation may affect the amount of the Distribution.

       4.9     ***Equity Interests (Class 7).***

       On the Effective Date, the Holders of the Equity Interests will not be entitled to, and will not receive or retain, any property or interest in property on account of such Equity Interests.  On the Effective Date, all obligations of the Debtor to Holders of Equity Interests shall be completely discharged.  Notwithstanding the foregoing, the then-current members of the Debtor shall cause the Liquidating Debtor to perform its obligations under the Plan.

       4.10     ***Nonconsensual Confirmation***.

       If any impaired class of Claims entitled to vote shall not accept this Plan by the requisite majority provided in section 1126(c) of the Bankruptcy Code, the Debtor reserves the right to amend this Plan, undertake to have the Bankruptcy Court confirm this Plan under section 1129(b) of the Bankruptcy Code, or both.  With respect to Equity Interests (Class 7) deemed to reject this Plan, the Debtor shall request that the Bankruptcy Court confirm this Plan pursuant to section 1129(b) of the Bankruptcy Code; provided, however, that the Debtor will not seek confirmation pursuant to section 1129(b) if the Bankruptcy Court does not approve the Yates Settlement Agreement.

# ARTICLE V

## MEANS OF IMPLEMENTATION

5.1    *The Sale Transaction.*

On the Effective Date of the Plan, pursuant to the Plan and the Confirmation Order, the Debtor will effectuate the Sale Transaction and execute and deliver to the Transferee all documents and instruments relating to the Sale Transaction, including, but not limited to, the Transfer Documents.

The Debtor, Developers, the Prepetition Lenders and the Prepetition Agent will use commercially reasonable efforts to cause the Sale Transaction to occur as soon as possible. The Debtor will move for confirmation of the Plan premised upon the consummation of the Sale Transaction.

On the Effective Date, Debtor will also deliver to Transferee the following documents, without warranty or representation of any kind:

1.    A Partial Assignment of Condominium Developer Rights granted or reserved to the Debtor under the following Declarations of Condominium (including all exhibits thereto, in form prepared by Prepetition Agent, assigning and transferring to Transferee those Condominium Developer Rights of Debtor under the Condominium Declarations as are selected by Prepetition Agent for transfer  (said reserved rights being the "Developer Rights"):

- the Declaration of Everglades on the Bay North, a Condominium, recorded on October 30, 2008 in Official Records Book 26632, Page 2644 of the Miami-Dade County Public Records, as amended from time to time (the "North Declaration");

- the Declaration of Everglades on the Bay South, a Condominium, recorded on October 30, 2008 in Official Records Book 26632, Page 2809 of the Miami-Dade County, Public Records, as amended from time to time (the "South Declaration") (The North Declaration and South Declaration are referred to as the "Condominium Declarations".);

2.    A Partial Assignment of Declarant Rights granted or reserved to the Debtor under the Declaration of Covenants, Restrictions and Easements for Everglades on the Bay, recorded on October 30, 2008 in Official Records Book 26632, Page 2559 (the "Master Declaration"), in form prepared by Prepetition Agent, assigning and transferring to Transferee those Declarant Rights of Debtor under the Master Declaration as are selected by Prepetition Agent for transfer (said reserved rights being the "Declarant Rights");

3.        Resignations of all Debtor appointed directors currently serving on the Board of Directors of the condominium association under the North Declaration ("North Condominium Association"), and an appointment by the resigning directors of replacement directors for the Board of the North Association to be designated by Prepetition Agent prior to the Effective Date, who shall serve for the remaining term of the resigning Directors in office;

4.        Resignations of all Debtor appointed directors currently serving on the Board of Directors of the condominium association under the South Declaration ("South Condominium Association"), and an appointment by the resigning directors of replacement directors for the Board of the South Association to be designated by Prepetition Agent prior to the Effective Date, who shall serve for the remaining term of the resigning Directors in office;

5.        Resignations of all Debtor appointed directors currently serving on the Board of Directors for the homeowners association under the Master Declaration ("Master Association"), and an appointment by the resigning directors of replacement directors for the Board of the Master Association to be designated by Prepetition Agent prior to the Effective Date, who shall serve for the remaining term of the resigning Directors in office;

6.        All other documents reasonably required by Prepetition Agent to permit the Transferee to avail itself of the benefits and status of a "bulk assignee" under the provisions of Part VII of the Florida Condominium Act (2010).

In compliance with Florida law, the Debtor shall cooperate with Transferee in using reasonable efforts to permit Transferee to exercise and retain voting control of the North Condominium Association, South Condominium Association, and Master Association.

As of the Confirmation Date, Prepetition Agent or the Transferee shall have the right to file with the Division of Condominiums, Timeshares and Mobile Homes of the Department of Business and Professional Regulation of the State of Florida the following:  (a) reservation program documents whereby prospective Condominium Unit purchasers may enter into non-binding reservations agreements with respect to Units, and/or (b) a prospectus and other disclosure documents required by the Florida Condominium Act for the commencement of a program of selling Units to the public.

5.2      *[Intentionally Omitted].*

5.3      *Vesting of Property of the Estate*.

Upon the occurrence of the Effective Date pursuant to sections 1141(b) and (c) of the Bankruptcy Code, the Transferred Property shall be transferred to the Transferee.  The Prepetition Agent or the Plan Administrator, as applicable, shall receive all other Collateral, except for Abandoned Assets.  The Transferred Causes of Action shall be transferred to the Plan Administrator to administer for the benefit of

the Holders of Secured Construction Loan Claims, in each case, free and clear of all liens, claims, encumbrances, and other interests. The General Unsecured Claims Cash Distribution shall be held, maintained, and administered solely by the Liquidating Debtor for the benefit of Holders of Allowed Class 6a Claims.

5.4     *Abandonment of Estate Causes of Action*.

On the Effective Date, all Estate Causes of Action shall be deemed abandoned without further action or order of the Court on the Effective Date. In consideration for the agreement of Siegfried Rivera (as defined in Section 10.11 of this Plan) to reduce the amount of its general unsecured claim from $652,707.70 to $400,000, the cause of action against Siegfried Rivera to recover any preferential payment pursuant to 11 U.S.C. § 547 shall be included among the Estate Causes of Action, which are being abandoned.

5.5     *Dissolution of Liquidating Debtor*.

In connection with the closing of the Case and subject to the written consent of the Prepetition Agent, the Liquidating Debtor shall be authorized (but not directed) to dissolve in accordance with applicable state law, and the then-current members of the Debtor shall be authorized to dissolve the Liquidating Debtor in accordance with applicable state law.

5.6     **The Prepetition Lender Contribution.**

On the Effective Date, the Prepetition Agent shall cause the Prepetition Lender Contribution to be paid to the Plan Administrator to fund Distributions pursuant to this Plan in respect of Allowed Administrative Expense Claims (other than the DIP Loan, which shall be paid as set forth in section 2.4 hereof), Allowed Professional Fee Claims, fees due to the U.S. Trustee, Allowed Priority Tax Claims, Allowed Claims in each of Classes 1, 2, 3, and 6b, and for the Plan Administrator to pay expenses incurred in carrying out his duties as provided in the Plan. The Prepetition Agent or Plan Administrator shall also deliver to the Liquidating Debtor the portion of the Prepetition Lender Contribution in the amount of the General Unsecured Claim Cash Distribution for Distribution to Holders of Allowed Class 6a Claims as of the Effective Date and, to the extent not previously funded prior to the Effective Date, the Distribution payable to Yates pursuant to Section 4.5 of this Plan. Any amount that remains in the Class 6b Claims Reserve following resolution and payment of all Disputed Customer Deposit General Unsecured Claims that, pursuant to settlement or Court order have been deemed Allowed, shall be distributed to the Prepetition Agent.

5.7     *Exemption from Transfer Taxes*.

Pursuant to section 1146(a) of the Bankruptcy Code, the execution, delivery or recording of an instrument of transfer under the Plan, or the transfer or sale of any real, personal or other property of the Estate by the Liquidating Debtor or the Plan Administrator, including but not limited to all transactions contemplated by or

effected in connection with the Sale Transaction, shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee; provided, however, section 1146(a) of the Bankruptcy Code will not exempt the Transferee from paying any stamp, real estate transfer, mortgage recording, or other similar tax for any Condominium Unit sales made in the ordinary course of business.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, mortgage recording tax, intangible tax or similar tax.

    5.8    ***Expedited Tax Determination.***

        The Debtor and the Plan Administrator are authorized to request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for any or all returns filed for, or on behalf of, the Debtor for any and all taxable periods (or portions thereof) ending before or after the Petition Date through, and including, the Effective Date.

    5.9    ***Cabi Developers LLC as Post-Effective Date Manager of the Property.***

        Following the Effective Date and until the Management Period Termination Date, Developers shall serve as the manager of the Property during the Management Period, subject to the terms of the Management Services Agreement and subject to renewal upon the mutual consent of the Transferee and Developers.  During the term of the Management Period, the only management fee or other consideration due to Developers for such management services shall be as provided in the Management Services Agreement.

        Developers at all times will be subject to the supervision of the Transferee and will have only such functions as are set forth in the Management Services Agreement.  Developers will, as may be requested by the Transferee or the property manager from time to time: (1) provide management services as provided in the Management Services Agreement, (2) consult with the Transferee, the property manager and/or any advisers to the Transferee concerning services and activities relating to the Property, the condominiums, the units and operations of the HOAs, and (3) provide information and documents to the Transferee and/or the property manager as to services and activities relating to the Property, the condominiums, the units and the operations of the HOAs occurring prior to the Effective Date.

        The Debtor, Developers, and the Transferee shall cooperate in the smooth and orderly transition of the management of the Property as of the Management Period Termination Date.

The Debtor and the Liquidating Debtor shall use best efforts to transfer to the Transferee all available books, records, items and information pertaining to the operation and management of the Property.

## ARTICLE VI

## PROVISIONS GOVERNING DISTRIBUTIONS

6.1    *Date of Distributions*.

Unless otherwise provided herein, any Distributions and deliveries to be made hereunder (other than Distributions to Yates pursuant to the Yates Settlement Agreement) shall be made on the Effective Date or as soon as practicable thereafter and deemed made on the Effective Date.  In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

6.2    *Distributions Concerning Disputed Unsecured Claims.*

(a)    Class 6b Claims Reserve.  From and after the Effective Date, all Cash to be distributed on account of any Disputed Customer Deposit General Unsecured Claim, when and if such Disputed Customer Deposit General Unsecured Claim becomes Allowed, will be transferred to the Plan Administrator, free and clear of all liens, claims, and interests, except as expressly provided in this Plan, and shall be held, maintained and administered solely by the Plan Administrator, in a reserve account (the "Class 6b Claims Reserve"), and will be held in trust pending Distribution by the Plan Administrator to the Holders of such Allowed Claims.  The Plan Administrator will invest any Cash in an interest-bearing account pending Distributions or will reserve sufficient Cash to pay for any accrued interest in respect of any Disputed Unsecured Customer Deposit Claim or Disputed General Unsecured Claim if such Claim is subsequently Allowed.  The preceding sentence is not agreed to by the Prepetition Agent and the United States Trustee.  The Prepetition Agent wishes to strike in its entirety the requirement that such Cash be invested in an interest bearing account, while the United States Trustee wishes to require the Prepetition Agent to maintain such Cash in an interest bearing account.  Therefore, if the United States Trustee agrees with the Prepetition Agent's position on or prior to confirmation, the preceding sentence shall be void in its entirety.  If the United States Trustee does not agree with the Prepetition Agent, the Bankruptcy Court shall decide the issue.

(b)    Reserved Amounts.  The Class 6b Claims Reserve will be the lesser of $175,000 or 25% of the total sum of all Customer Deposit General Unsecured Claims.

(c)    Recourse.  Each Holder of a Customer Deposit General

Unsecured Claim will have recourse only to the Cash held in the Class 6b Claim Reserve for satisfaction of the Distributions to which Holders of Customer Deposit General Unsecured Claims are entitled under this Plan, and not to the Prepetition Agent, the Prepetition Lenders, the Plan Administrator, the Transferee, the Collateral, the Transferred Property, or to the Liquidating Debtor, its property, or any assets previously distributed on account of any Allowed Claim.

6.3     ***Distributions Made Under Plan.***

All Distributions to Holders of Allowed Class 6a Claims under this Plan, which are to be made within 21 days of the Effective Date unless such date is otherwise extended with the consent of the persons who served as members of the Committee on the Effective Date, shall be made by the Liquidating Debtor, who shall administer and distribute the General Unsecured Claim Cash Distribution, but who shall not administer any returned or undeliverable Distributions from the General Unsecured Claim Cash Distribution, as provided in Section 6.4.    The Plan Administrator shall administer the Class 6b Claim Reserve, make all Distributions to Holders of Allowed Customer Deposit General Unsecured Claims, and shall administer any returned or undeliverable Distributions, as provided in Section 6.4.  All Distributions to Holders of any other Allowed Claims shall be made by the Plan Administrator (or the Transferee, solely in the case of a DP Program Agreement Security Deposit) pursuant to the Plan.  The Liquidating Debtor shall not be required to give any bond or surety or other security for the performance of its limited duties.

6.4     ***Delivery of Distributions.***

(a)     Last Known Address.  All Distributions to any Holder of an Allowed Claim other that an Allowed Administrative Expense Claim shall be made at the address of such Holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtor or its agents, as applicable, unless the Debtor, Liquidating Debtor, or Plan Administrator has been notified in writing of a change of address, including, without limitation, by the filing of a proof of Claim or interest by such Holder that contains an address for such Holder different from the address reflected for such Holder on the Schedules.  In the event that any Distribution to any Holder of an Allowed Class 6a Claim is returned as undeliverable to the Liquidating Debtor, the Liquidating Debtor shall forward any such returned checks and corresponding funds to the Plan Administrator.  When the Plan Administrator receives such returned checks and corresponding funds from the Liquidating Debtor, the Plan Administrator shall use commercially reasonable efforts to determine the current address of any Holder of an Allowed Claim whose check is returned as undeliverable, regardless of the class of such Claim, but no Distribution to such Holder shall be made unless and until the Plan Administrator has determined the then-current address of such Holder, at which time such Distribution shall be made to such Holder without interest; provided that such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of the later of six months from the Effective Date or 6 months after such Distribution is first issued. After such date, all unclaimed property or interest in property except for undeliverable

Distributions for Class 6a Claims (the "Undeliverable Class 6a Distributions") shall be deposited with the Clerk of the Bankruptcy Court and shall remain available for the affected claimant to seek withdrawal of the funds from the Clerk of the Bankruptcy Court for a period of five years, after which the unclaimed funds shall escheat to the U.S. Treasury.  Upon deposit of unclaimed funds with the Clerk of the Bankruptcy Court, the Estate shall be discharged and the Holder of the Claim to such funds shall be forever barred from seeking payment of such funds from the Estate.  If the aggregate sum of all Undeliverable Class 6a Distributions is in excess of $5,000, then the Undeliverable Class 6a Distributions shall be redistributed pro rata to the remaining members of Class 6a.  If the aggregate sum of all Undeliverable Class 6a Distributions is equal to or less than $5,000, then such sum shall be donated in its entirety by the Plan Administrator to Miami Children's Hospital.

The preceding requirement requiring the Plan Administrator to deposit unclaimed funds with the Clerk of the Bankruptcy Court is not agreed to by the Prepetition Agent and the United States Trustee.  The Prepetition Agent wishes to strike such requirement in its entirety, and to have such unclaimed funds (other than Undeliverable Class 6a Distributions) paid to the Plan Administrator, while the United States Trustee wishes to have such unclaimed funds deposited with the Clerk of the Bankruptcy Court and escheat to the U.S. Treasury after five years.  Therefore, if the United States Trustee agrees with the Prepetition Agent's position on or prior to confirmation, the unclaimed funds shall not be deposited with the Clerk of the U.S. Bankruptcy Court, but shall instead be paid to the Plan Administrator after the six month period referenced in the preceding paragraph.  If the United States Trustee does not agree with the Prepetition Agent, the Bankruptcy Court shall decide the issue.

(b)    Distributions for Allowed Secured Construction Loan Claims.  Distributions under this Plan that are paid to the Prepetition Agent shall be for the benefit of Holders of Allowed Secured Construction Loan Claims in accordance with the Prepetition Credit Agreement.

(c)    Distributions for Allowed Administrative Expense Claims.  All Distributions to any Holder of any Allowed Administrative Expense Claim shall be made at the address of such Holder as set forth on the books and records of the Debtor, the Liquidating Debtor, the Plan Administrator, or the Transferee, as applicable, unless the Debtor, the Transferee, or Plan Administrator has been notified in writing of a change of address, including, without limitation, by the filing of a proof of Claim, Request for Payment of Administrative Expense Claim, or similar motion that contains an address for such Holder different from the address reflected for such Holder on the books and records of the Debtor, the Liquidating Debtor, the Transferee, or the Plan Administrator, as applicable.  In the event that any Distribution to any Holder of an Allowed Administrative Expense Claim is returned as undeliverable, the Plan Administrator shall use commercially reasonable efforts to determine the current address of such Holder, but no Distribution to such Holder shall be made unless and until the Plan Administrator has determined the then-current address of such Holder, at which time such Distribution shall be made to such Holder without interest; provided that such Distributions shall be deemed unclaimed property under section 347(b) of

the Bankruptcy Code at the expiration of the later of six months from the Effective Date or six months after the payment in respect of such Administrative Expense Claim is first issued. After such date, all unclaimed Distributions or interests in such Distributions in respect of such Allowed Administrative Expense Claims shall be paid over to the Prepetition Agent, and the Claim of any other Holder to such property or interest in property shall be discharged and forever barred.

6.5     *Manner of Payment.*

At the option of the Plan Administrator or the Liquidating Debtor, as applicable, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements. Cash payments made pursuant to this Plan in the form of checks issued by the Plan Administrator or Liquidating Debtor shall be null and void if not cashed within 60 days of the date of the issuance thereof. Requests for reissuance of any check shall be made directly to the Plan Administrator subject to Section 6.4 hereof (Delivery of Distributions).

6.6     *Setoffs and Recoupment.*

The Plan Administrator may but shall not be required to, set off against or recoup from any Claim (or the payment to be made pursuant to this Plan in respect of such Claim), any claims of any nature whatsoever that the Estate may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Estate, or the Plan Administrator of any such claim it may have against such claimant; provided, however, that the Plan Administrator shall not set off or recoup against any Distribution provided to Yates on account of the Yates Settlement Order or the Yates Settlement Agreement.

6.7     *Allocation of Plan Distributions Between Principal and Interest.*

Except as otherwise provided herein, to the extent that any Allowed Claim entitled to a Distribution under this Plan consists of indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest (but solely to the extent that interest is an allowable portion of such Allowed Claim pursuant to this Plan or otherwise).

6.8     *De Minimis Distributions and Donation of Remaining General Unsecured Claim Cash Distribution Less Than $25.00.*

No Distribution of less than Twenty-Five Dollars ($25.00) shall be made to any Holder of an Allowed Claim other than an Allowed Administrative Expense Claim. If the undisbursed amount of Cash for a Class 6a Claim as of the Effective Date is less than Twenty-Five Dollars ($25.00) or is of an amount such that the pro-rata Distribution would result in a payment to a Holder of an Allowed Class 6a

Claim of less than Twenty-Five Dollars ($25.00), the Liquidating Debtor shall be authorized to donate such amount in the name of the applicable Holder without further Bankruptcy Court approval to the Bankruptcy Bar Foundation for the Southern District of Florida.

## ARTICLE VII

## PROCEDURES FOR TREATING DISPUTED
## CLAIMS UNDER PLAN OF LIQUIDATION

### 7.1    *Objections.*

Except as otherwise provided herein, as of the Effective Date, objections to, and requests for estimation of, Administrative Expense Claims and Class 6b Claims may be interposed and prosecuted only by the Plan Administrator. The Plan Administrator shall also have the exclusive right to object to, litigate, settle, or otherwise resolve Administrative Expense Claims and Customer Deposit Claims. All pending objections or requests for estimation filed by the Debtor or the Prepetition Agent prior to the Effective Date may also be prosecuted, settled, or otherwise resolved by the Plan Administrator.  The Liquidating Debtor and the Plan Administrator shall cooperate with respect to the prosecution of objections to Administrative Expense Claims and Customer Deposit Claims.  Such objections and requests for estimation shall be served on the respective claimant and filed with the Bankruptcy Court on or before the latest of (a) December 31, 2010, (b) sixty (60) days after a proof of Claim has been filed with the Bankruptcy Court, (c) sixty (60) days after an application for allowance of an Administrative Expense has been filed with the Bankruptcy Court in the Case, or (d) with respect to certain Claims identified prior to the Confirmation Date by the Debtor, such other date as may be fixed by the Bankruptcy Court.

### 7.2    *No Distributions Pending Allowance.*

Notwithstanding any other provision hereof, if any portion of a Claim is Disputed, no payment or Distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes Allowed.  The Class 6b Claims Reserve will be established on the Effective Date for the benefit of the Holders of Customer Deposit General Unsecured Claims.

### 7.3    *Distributions After Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Plan Administrator shall provide to the Holder of such Claim the Distribution (if any) to which such Holder is entitled under this Plan.

### 7.4    *Withholding and Reporting Requirements.*

In connection with the Plan and all Distributions hereunder, the Liquidating Debtor or the Plan Administrator, as applicable, shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements.  The Liquidating Debtor or Plan Administrator, as applicable shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.  Notwithstanding any other provision of the Plan, (a) each Holder of an Allowed Claim that is to receive a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution, and (b) no Distribution shall be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements satisfactory to the Liquidating Debtor or Plan Administrator, as applicable for the payment and satisfaction of such withholding tax obligations.  Any property to be distributed pursuant to the Plan shall, pending the implementation of such arrangements, be treated as an undeliverable Distribution pursuant to Section 6.4 of this Plan.

## ARTICLE VIII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1     *Treatment.*

Except as otherwise provided herein, including in Section 8.2 (Preconstruction Agreements, Prepetition DP Program Agreements, and FD Agreement) and Section 12.3 (Indemnification Obligations), in the Confirmation Order or in any contract, instrument, release, indenture, or other agreement, or document entered into in connection with this Plan, as of the Effective Date, the Debtor shall be deemed to have rejected each prepetition executory contract and unexpired lease to which it is a party, unless such contract or lease (a) was previously assumed or rejected by the Debtor, (b) previously expired or terminated pursuant to its own terms, (c) is the subject of a motion to assume filed on or before the Confirmation Date, or (d) is set forth in the Plan Supplement as an executory contract or unexpired lease to be assumed and/or assumed and assigned.  The Confirmation Order shall constitute an order of the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving the contract and lease assumptions, assumptions and assignments or rejections described above as of the Effective Date.

Each prepetition executory contract and unexpired lease that is assumed and relates to the use, ability to acquire, or occupancy of real property shall include (a) all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease and (b) all executory contracts or unexpired leases appurtenant to the premises, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers,

uses, usufructs, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other interests in real estate or rights *in rem* related to such premises, unless any of the foregoing agreements has been rejected pursuant to an order of the Bankruptcy Court.

Attached to the Disclosure Statement as Exhibit 5 is a list of executory contracts that the Debtor presently intends to assume and assign to the Transferee. The Debtor reserves the right, at any time prior to the entry of the Confirmation Order, to amend or supplement the list of executory contracts that the Debtor will assume subject to the written consent of the Prepetition Agent. The Prepetition Agent has the right to object to the assumption or rejection of any executory contract or unexpired lease and to refuse any assignments proposed by the Debtor in Exhibit 5.

### 8.2 *Preconstruction Agreements, Prepetition DP Program Agreements, and FD Agreement.*

Except to the extent previously assumed pursuant to an order of the Bankruptcy Court entered on or before the Confirmation Date, any Preconstruction Agreement deemed to be an executory contract shall be deemed rejected. The Debtor, the Transferee, and the Plan Administrator reserve the right to assert that any Preconstruction Agreement expired, terminated, or was breached prior to the Confirmation Date and therefore is not deemed to be an executory contract.

Except to the extent previously assumed pursuant to an order of the Bankruptcy Court entered on or before the Confirmation Date or previously expired, terminated, or breached pursuant to its terms, all DP Program Agreements deemed executory contracts assumable by the Debtor pursuant to section 365(a) of the Bankruptcy Code shall be deemed assumed and assigned to Transferee pursuant to the Confirmation Order. Attached to the Disclosure Statement as Exhibit 6 is a list of DP Program Agreements that the Debtor will assume and assign to the Transferee.

The Debtor reserves the right, at any time prior to the entry of the Confirmation Order, to amend or supplement Exhibit 6, so long as the Prepetition Agent has given its consent.   The Prepetition Agent has the right to object to the assumption or rejection of any executory contract or unexpired lease and to refuse any assignments proposed by the Debtor in Exhibit 6.

Subject to the Prepetition Agent receiving and being satisfied with the terms of the FD Agreement, on the Effective Date, pursuant to section 365 of the Bankruptcy Code, the Debtor shall assume the FD Agreement, as modified hereby (the "Modified FD Agreement"), and assign the Modified FD Agreement to the Transferee. The Modified FD Agreement shall provide: (1) that Fullerton Diaz releases any claim to or interest in Unit 1-2103, which constituted a portion of Fullerton Diaz's compensation under the FD Agreement; (2) the Cure under the FD Agreement is limited to the aggregate amount of $210,000, of which (i) $160,000 shall be paid by the Plan Administrator on the Effective Date and (ii) $50,000 shall become due and payable by the Plan Administrator only upon the date of issuance of a final certificate

of occupancy for the Property (the "Final CO Date"); and (3) the monthly compensation of Fullerton Diaz during the period from the Effective Date to the Final CO Date shall be limited to $7,000 a month.  In consideration of Fullerton Diaz agreeing to the Modified FD Agreement, Fullerton Diaz shall have an Allowed General Unsecured Claim in the amount of $326,000 and shall waive any other Claim against the Debtor, the Liquidating Debtor, the Estate, the Prepetition Agent, the Prepetition Lenders, the Plan Administrator, the Transferee, and their respective properties and interests, including, without limitation, the Collateral and the Property.

      8.3    ***Cure Payments***.

Any monetary amounts by which any executory contract or unexpired lease to be assumed hereunder is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Debtor or the Plan Administrator.  If there is a dispute regarding (i) the nature or amount of any Cure, (ii) the ability of the Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (iii) any other matter pertaining to assumption, Cure shall occur following the entry of a Final Order resolving the dispute and approving the assumption or assumption and assignment, as the case may be.  The Transferee reserves the right to reject any proposed assumption if the Prepetition Agent determines that the cure amount is in excess of the amount that the Prepetition Agent deems appropriate.

      8.4    ***Rejection Damages Claims***.

**Proofs of all Claims arising out of the rejection of executory contracts and unexpired leases pursuant to this Plan shall be filed with the Bankruptcy Court, with proper supporting documentation detailing the calculation of such claim, and served upon the Prepetition Agent and its counsel, with a copy to the Liquidating Debtor and its counsel, not later than thirty (30) days after the earlier of (a) the date on which notice of the occurrence of the Effective Date has been served and (b) the date of entry of an order of the Bankruptcy Court approving such rejection.  Any Claims not filed within such time shall be forever barred from assertion against the Liquidating Debtor, its Estate, the Prepetition Agent, the Prepetition Lenders, the Plan Administrator, the Transferee, and their respective properties and interests, including, without limitation, the Collateral and the Property.**

## ARTICLE IX

## LIQUIDATING DEBTOR

      9.1    ***Limited Authority of the Liquidating Debtor.***

The Liquidating Debtor shall administer the General Unsecured Claim Cash Distribution and shall be responsible for payment of Class 6a Claims that are Allowed as of the Effective Date, without any charge or compensation.  The

Liquidating Debtor shall also administer the Distribution to the Holder of the Yates Secured Claim provided in the Yates Settlement Agreement.

9.2     *Limitation of Liability*.

No recourse shall ever be had, directly or indirectly, against the Liquidating Debtor, its employees, agents, or professionals, by legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge, note, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Liquidating Debtor under this Plan.

The Liquidating Debtor, its employees and professionals shall not be liable for any act they may do, or omit to do hereunder or acting in good faith and in the exercise of his, her or its best judgment, and the fact that such act or omission was advised, directed or approved by an attorney acting as attorney for the Liquidating Debtor shall be conclusive evidence of such good faith and best judgment. However, this Section shall not apply to any gross negligence or willful misconduct by the Liquidating Debtor, or its professionals or employees.  This section shall not apply as between the Liquidating Debtor and Yates if the Liquidating Debtor fails to make the Distributions to Yates provided for in this Plan, and to the extent this limitation conflicts with any provision in the Yates Settlement Agreement.

# ARTICLE X

# PLAN ADMINISTRATOR

10.1   *Purpose of the Plan Administrator.*

The Prepetition Agent shall appoint a "Plan Administrator" to perform the functions set forth in this Article.  Except as provided in Section 9.1 and excluding any obligations under Section 12.3 hereof, the Plan Administrator will perform the responsibilities of the Liquidating Debtor, including, without limitation, the preparation and filing of quarterly reports and federal and state tax returns, the resolution of Disputed Administrative Expense Claims and Disputed Customer Deposit General Unsecured Claims, the payment of Allowed Administrative Expense Claims, Allowed Professional Fee Claims, Allowed Class 1 Claims, Allowed Class 2 Claims, Allowed Class 3 Claims (other than Claims arising out of DP Program Agreements), Allowed Priority Tax Claims, and Allowed Class 6b Claims, if any, hereunder.  The Plan Administrator shall also prosecute the Transferred Causes of Action for the benefit of the Holders of Allowed Secured Construction Loan Claims. The Plan Administrator will be selected by the Prepetition Agent, will not be supervised by the United States Trustee, and will not be bonded in favor of the United States.  However, the Plan Administrator will be bonded in favor of the Estate in an amount ordered by the Bankruptcy Court.  The preceding requirement requiring the Plan Administrator to be bonded in favor of the estate is not agreed to by the Prepetition Agent and the United States Trustee.  The Prepetition Agent wishes to

strike such requirement in its entirety, while the United States Trustee wishes to require the Prepetition Agent to be bonded in favor of the estate.  Therefore, if the United States Trustee agrees with the Prepetition Agent's position on or prior to confirmation, the bonding requirement shall be void in its entirety.  If the United States Trustee does not agree with the Prepetition Agent, the Bankruptcy Court shall decide the issue.

> 10.2  ***Resignation, Removal or Replacement of the Plan Administrator.***

Resignation of Plan Administrator.  The Plan Administrator may resign at any time upon thirty (30) days' prior written notice to the Transferee, the Office of the United States Trustee, the Prepetition Agent, and the Liquidating Debtor, which notice shall also be filed with the Bankruptcy Court.

Removal of Plan Administrator.  The Office of the U.S. Trustee or the Prepetition Agent, by motion filed with the Bankruptcy Court, or the Bankruptcy Court, on its own Order to Show Cause, may seek to remove the Plan Administrator for cause, at any time including, without limitation, the violation of any provision of the Plan, or in the event that the Plan Administrator becomes incapable of acting as Plan Administrator as a result of physical or mental disability and such physical or mental disability continues for a period in excess of thirty (30) days (except in the case of death, in which instance procedures for replacement will begin immediately).

Replacement of Plan Administrator.  The resignation or removal of the Plan Administrator will not be effective, unless otherwise ordered by the Bankruptcy Court, until a successor Plan Administrator has been selected by the Transferee, and the successor accepts such appointment.  The Office of the United States Trustee or the Liquidating Debtor shall have the right to object to the designated successor Plan Administrator and such objection shall be determined by the Bankruptcy Court.

> 10.3  ***Authority***.

The Plan Administrator shall have the power and authority to perform the following acts, in addition to any powers granted by law or conferred to him by any other provision of this Plan:

> a. make or cause Distributions to the Holders of Allowed Administrative Claims, Allowed Priority Non-Tax Claims, the Allowed Secured Claim of the Miami-Dade Tax Collector, Allowed Secured Security Deposit Claims, Allowed Secured Construction Loan Claims, Allowed Secured Customer Deposit Claims, and any Allowed Customer Deposit General Unsecured Claims;
>
> b. prosecute the Transferred Causes of Action and to cause the proceeds (if any) of such Transferred Causes of Action to be paid to the Prepetition Agent;

   c.   litigate, prosecute, settle, compromise or adjust any disputes or controversies relating to the (i) Transferred Causes of Action and (ii) Customer Deposit Claims;

   d.   undertake all actions necessary to perform his responsibilities under this Plan including, but not limited to, those set forth in section 10.1 hereof;

   e.   enforce the Estate's rights with respect to this Plan;

   f.   request the issuance of a Final Decree;

   g.   employ and retain, and discharge and dismiss, and compensate attorneys, accountants, and such other agents as the Plan Administrator may deem necessary or appropriate to assist in fulfilling the purposes of this Plan;

   h.   execute releases, waivers, settlements and any other documents on behalf of the Debtor in connection with consummation of this Plan;

   i.   perform the obligations of the Debtor on the Effective Date of this Plan pursuant to any postpetition settlement agreement to which the Debtor was a party, and which has been approved by Final Order;

   j.   exercise any and all powers granted to the Plan Administrator by any agreements, including, without limitation, by common law or any statute which serves to increase the extent of the powers granted to the Plan Administrator hereunder;

   k.   take such other action as the Plan Administrator may determine to be necessary or desirable to carry out the purpose of this Plan, including, without limitation, addressing tax issues, filing amended and initial tax returns, completing or performing any necessary valuation process, and enforcing all provisions of this Plan;

   l.   in general, without in any manner limiting any of the foregoing, deal with the Estate's property and any part or parts thereof (other than the General Unsecured Claim Cash Distribution and the Transferred Property) in all other ways as would be lawful for any person owning the same to deal therewith, whether similar to, or different from, the ways above specified at any time or times hereafter; and

   m.   except as otherwise provided in Sections 9.1 and 12.3, manage the affairs of and exercise all authority on behalf of the Liquidating Debtor until such time as the Case is closed.

10.4    *Expenses of Plan Administrator.*

All costs, expenses and obligations incurred by the Plan Administrator in prosecuting the Transferred Causes of Action or discharging his other duties under this Plan, or otherwise incurred in any manner connected, incidental or related to such duties including, but not limited to, the fees and expenses of the Plan Administrator and professionals and agents retained by the Plan Administrator to assist in carrying out his duties pursuant to this Plan, and Post-Confirmation United States Trustee's fees, shall be paid from the Post-Confirmation Administrative Reserve.

No more frequently than once every 30 days, the Plan Administrator's counsel and any other professional retained by the Plan Administrator shall submit his, her or its statement(s) for services rendered and costs incurred to the Plan Administrator for review and approval. The statements do not need to conform to the U.S. Trustee's guidelines for fee applications, but must contain adequate information to review the reasonableness of the statements. The Plan Administrator shall have 20 days to object to any such statement. If no objections are provided to the professional in respect of any such statement, then the Plan Administrator shall promptly pay 80 % of all fees and 100% of all costs listed on such statement from the Post-Confirmation Administrative Reserve or in such other manner as the payee may agree. Every 120 days, the Plan Administrator shall file a fee application with the Court on notice to the U.S. Trustee. Upon approval of such fee application, the Plan Administrator shall be authorized to pay the accumulated 20% holdback for the four prior 30-day periods covered by such fee application. The Bankruptcy Court shall retain jurisdiction to adjudicate any dispute with respect to such statements.

The preceding paragraph is not agreed to by the Prepetition Agent and the United States Trustee. The Prepetition Agent wishes to strike the paragraph in its entirety, while the United States Trustee wishes to reserve the right to agree with the Prepetition Agent after voting has been tabulated. Therefore, if the United States Trustee agrees with the Prepetition Agent's position on or prior to confirmation, the preceding paragraph shall be void in its entirety. If the United States Trustee does not agree with the Prepetition Agent, the Bankruptcy Court shall decide the issue.

10.5    *Distributions*.

The Plan Administrator shall be responsible for making or causing Distributions from the Prepetition Lender Contribution, the Customer Deposit Escrow, or such other funds as are made available to the Plan Administrator, to Holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Class 1 Claims, Allowed Class 2 Claims, Allowed Class 3 Claims (other than Claims arising out of DP Program Agreements), Allowed Class 4 Claims, Allowed Class 5a Claims, Allowed Class 5b Claims, and Allowed Class 6b Claims, if any, pursuant to this Plan. Under no circumstances shall the Plan Administrator have any power to engage in any trade or business or any other similar activity on behalf of the Liquidating Debtor. The Debtor or Liquidating Debtor, as appropriate, shall be responsible for making the Distribution to Yates on account of the Allowed Yates

Secured Claim, as described in Section 4.5, on the Closing Date as defined in the Yates Settlement Agreement.

### 10.6    *Accounting and Reporting.*

The Plan Administrator shall maintain the books and records of the operation of the Estate by the Plan Administrator, and shall provide an accounting of receipts and disbursements, which shall be open to inspection and review by the Bankruptcy Court, the Office of the United States Trustee, and Holders of Allowed Claims (upon reasonable notice). The Plan Administrator shall maintain such records until authorized to dispose of same by order of the Court.  The Plan Administrator shall provide quarterly reports and shall file all quarterly reports with the Bankruptcy Court, as well as a final report prior to the Case being closed by the Bankruptcy Court by the Final Decree.

### 10.7    *Limitation of Liability.*

No recourse shall ever be had, directly or indirectly, against the Plan Administrator, his employees, agents, or professionals, by legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge, note, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Plan Administrator under this Plan.

The Plan Administrator, his employees and professionals shall not be liable for any act they may do, or omit to do hereunder or acting in good faith and in the exercise of his, her or its best judgment, and the fact that such act or omission was advised, directed or approved by an attorney acting as attorney for the Plan Administrator shall be conclusive evidence of such good faith and best judgment. However, this Section 10.7 shall not apply to any gross negligence or willful misconduct by the Plan Administrator, or his, her, or its professionals or employees.

### 10.8    *Requirement of Undertaking.*

The Plan Administrator or Liquidating Debtor may request any court to require, and any court may in its discretion require, in any suit for the enforcement of any right or remedy under this Plan, or in any suit against the Plan Administrator or the Liquidating Debtor for any action taken or omitted by the Plan Administrator or the Liquidating Debtor, that the filing party litigant in such suit undertake to pay the costs of such suit, and such court may in its discretion assess reasonable costs, including reasonable attorneys' fees, against any party litigant in such suit, having due regard to the merits and good faith of the claims or defenses made by such party litigant.

### 10.9    *Reliance on Documents.*

The Plan Administrator may rely upon, and shall be protected in acting, or refraining from acting, upon any certificates, opinions, statements, instruments or

reports believed by him/her to be genuine and to have been signed or presented by the proper Person or Persons.

### 10.10   *Management of Affairs.*

Post-Confirmation, and until the Case is closed by a Final Decree, the affairs of the Liquidating Debtor shall be managed by the Plan Administrator, who shall have the sole right to act on behalf of the Liquidating Debtor, except as otherwise provided in Sections 9.1 and 12.3.  The Plan Administrator shall prepare and file any customary tax forms for the Estate and/or the Liquidating Debtor, based upon information provided by the Debtor and the Liquidating Debtor.

### 10.11   *Retention of Siegfried Rivera as Special Counsel.*

On the Effective Date or as soon thereafter as practicable, the Plan Administrator and Transferee shall each retain Shutts & Bowen, LLP as counsel to the Plan Administrator and the Transferee, and Shutts & Bowen LLP shall retain Siegfried, Rivera, Lerner, De La Torre, & Sobel, P.A. ("Siegfried Rivera") as special counsel to the Plan Administrator and Transferee,  to (a) prosecute litigation involving Holders of Customer Deposit Claims who elect Option B under Section 4.6 of this Plan and (b) provide legal services for post-Effective Date closings.  The retention of all legal counsel shall be subject to customary terms of engagement and applicable bar rules.

## ARTICLE XI

## CONDITIONS PRECEDENT TO CONSUMMATION DATE

### 11.1   *Conditions Precedent to Confirmation.*

The Plan shall not be confirmed unless and until the following conditions have been satisfied or waived in accordance with this Article:  (a) the Confirmation Order, in form and substance satisfactory to the Debtor and the Prepetition Agent, has been entered on the docket maintained by the Clerk of the Bankruptcy Court; (b) the Plan, the Plan Supplement, all exhibits thereto, and the Confirmation Order are acceptable in form and substance to the Debtor and the Prepetition Agent; and (c) the Court has entered an order approving the Yates Settlement Agreement pursuant to Bankruptcy Rule 9019.

### 11.2   *Conditions Precedent to Effectiveness.*

The Effective Date shall not occur unless and until the following conditions are satisfied in full or waived in accordance with this Article of this Plan:

(a)      The Confirmation Order is a Final Order;

(b)      All actions and all agreements, instruments, or other documents necessary to implement the terms and provisions of this Plan are effected or executed

and delivered, as applicable, in form and substance satisfactory to the Debtor and the Prepetition Agent;

(c)    All authorizations, consents, and regulatory approvals, if any, required by the Debtor in connection with the consummation of this Plan are obtained and not revoked;

(d)    The Required Lenders (as defined in the Prepetition Credit Agreement) shall have directed the Prepetition Agent to forbear permanently from enforcing any obligations of the Guarantors under the Guarantees, subject to the occurrence of the Effective Date;

(e)    The aggregate amount of Administrative Expense Claims outstanding against the Debtor, exclusive of the DIP Financing Claim and actual and necessary costs and expenses of operating the Debtor's business pursuant to the then-effective cash collateral budget as agreed to by the Prepetition Agent, total less than $2,000,000; and

(f)    Entry of the order approving the Yates Settlement Agreement is a condition precedent to entry of the Confirmation Order and a condition precedent to the Effective Date of the Plan.

11.3    ***Waiver or Failure of Conditions Precedent.***

Each of the conditions precedent in Section 11.2 hereof may be waived in writing, in whole or in part, by agreement of the Debtor and the Prepetition Agent; provided, however, that the condition precedent with respect to entry of an order approving the Yates Settlement Agreement may only be waived with the consent of Yates.  Any such waivers may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action.

In the event that one or more of the conditions precedent specified in 11.2 hereof have not occurred or been waived as permitted by the preceding paragraph on or before December 31, 2010 (the "Effective Date Deadline"), (i) the Confirmation Order shall be vacated, (ii) no Distributions under the Plan shall be made (other than the payments required under the Yates Settlement Agreement, if approved by the Bankruptcy Court), (iii) the Debtor and all Holders of Claims and Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (iv) the Debtor's obligations with respect to Claims and Equity Interests shall remain unchanged and nothing contained herein shall constitute or be deemed to be a waiver or release of any Claims or Equity Interests by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor.  Notwithstanding the foregoing, if the Prepetition Agent refuses to waive one or more of the conditions precedent in Section 11.2 at the request of the Debtor, the Debtor shall have the right to file a motion on an emergency basis prior to December 31, 2010 seeking to extend the Effective Date Deadline for good cause shown.

11.4    *Satisfaction of Conditions*.

Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action. If the Debtor determines that one of the conditions precedent set forth in Section 11.2 hereof cannot be satisfied and the occurrence of such condition is not waived or cannot be waived, then the Debtor shall file a notice of the failure of the Effective Date with the Bankruptcy Court and the Confirmation Order may be vacated by the Bankruptcy Court, after notice and a hearing. If the Confirmation Order is vacated pursuant to this Section, (i) no Distributions under the Plan shall be made (other than the payments required under the Yates Settlement Agreement, if approved by the Bankruptcy Court), (ii) the Debtor and all Holders of Claims and Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (iii) the Debtor's obligations with respect to Claims and Equity Interests shall remain unchanged and nothing contained herein shall constitute or be deemed to be a waiver or release of any Claims or Equity Interests by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor.

# ARTICLE XII

# EFFECT OF CONFIRMATION

12.1    *Binding Effect*.

Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of this Plan and the Yates Settlement, as approved by the Bankruptcy Court, shall bind any Holder of a Claim against, or Equity Interest in, the Debtor and such Holder's respective successors and assigns, whether or not the Claim or Equity Interest of such Holder is impaired under this Plan, whether or not such Holder has accepted this Plan, and whether or not such Holder is entitled to a Distribution under this Plan.

12.2    *Term of Injunctions or Stays*.

**Except as otherwise expressly provided herein or in the Confirmation Order, all Persons who have held, hold or may hold Claims against the Debtor, the Property, the Prepetition Agent, the Prepetition Lenders, the Collateral, the Transferee, or who have held, hold or may hold Equity Interests, will be permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on or arising out of any such Claim or Equity Interest against the Debtor, the Liquidating Debtor, the Prepetition Agent, the Prepetition Lenders, the Collateral, the Transferee, and each of their respective Affiliates or Representatives (ii) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtor, the Liquidating Debtor, the Prepetition**

*Agent, the Prepetition Lenders, the Collateral, the Transferee, and each of their respective Affiliates or Representatives,  with respect to such Claim or Equity Interest, (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor, the Liquidating Debtor the Prepetition Agent, the Prepetition Lenders, the Collateral, the Transferee, and each of  their respective Affiliates or Representatives, or against the property or interests in property, including the Property, other property of the Debtor, property of the Liquidating Debtor, property of the Prepetition Agent, property of the Prepetition Lenders, the Collateral, property of the Transferee, and property of each of their respective Affiliates or Representatives, with respect to such Claim or Equity Interest,  (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due to the Debtor, the Liquidating Debtor,  the Prepetition Agent, the Prepetition Lenders, the Collateral, the Transferee, and each of their respective Affiliates or Representatives, or against the property or interests in property of the Debtor, the Liquidating Debtor,  the Prepetition Agent, the Prepetition Lenders, the Collateral, the Transferee, and each of their respective Affiliates or Representatives,  with respect to such Claim or Equity Interest, and (v) taking any actions to interfere with the implementation or consummation of the Plan, including, but not limited to, the Sale Transaction.*

*Moreover, to the extent there are obligations arising under the Guarantees remaining on the Effective Date of the Plan, enforcement of such obligations shall be enjoined.*

Unless otherwise provided in the Confirmation Order, all injunctions or stays arising under or entered during the Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until and after the Effective Date, provided, however, that no stay or injunction shall remain in full force after the Effective Date for post-Effective Date acts.

*In furtherance of the foregoing, on and after Effective Date, any "fifty percent shareholder" (within the meaning of section 382(g)(4)(D) of the Tax Code) shall be enjoined from claiming a worthless stock deduction with respect to any Equity Interests held by such Person for any taxable year of such shareholder ending prior to the Effective Date.*

12.3    *Indemnification Obligations*.

The Debtor's obligations under the Corporate Indemnities to indemnify any Indemnified Person with respect to Claims arising prior to the Effective Date will be deemed and treated as executory contracts that are assumed by the Liquidating Debtor pursuant to this Plan and sections 365 and 1123(b) of the Bankruptcy Code as of the Effective Date and the occurrence of the Effective Date shall be the only condition necessary to such assumption and all requirements for Cure and/or adequate assurance of future performance under section 365 for such assumption shall be deemed satisfied.  The obligations for the Corporate Indemnities shall be solely the

obligations of the Liquidating Debtor only and shall not be paid from the Collateral, by the Prepetition Agent, the Prepetition Lenders, the Transferee, the Plan Administrator, or any funds or assets controlled or administered by the Plan Administrator.

      12.4   *Exculpation*.

      As of the Effective Date, the Debtor, and its Affiliates and Representatives shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules. ***The Debtor, the Liquidating Debtor, the Prepetition Agent, the Prepetition Lenders, the Plan Administrator, the Committee (solely in its capacity as such), the members of the Committee (solely in their capacity as such), and each of their respective Affiliates and Representatives, shall have no liability to any Holder of any Claim or Equity Interest or any other Person for any act or omission taken or not taken in good faith in connection with, or arising out of, the Case, the Disclosure Statement, the Plan, the DIP Loan, the Postpetition Cash Collateral and Financing Order, the solicitation of votes for and the pursuit of confirmation of the Plan, the Sale Transaction, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, or any contract instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan, except for willful misconduct, gross negligence, or ordinary malpractice with respect to any professionals retained, in each case determined by a Final Order and, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.*** This section shall not apply as between the Liquidating Debtor and Yates if the Liquidating Debtor fails to make the Distributions to Yates provided for in this Plan, and to the extent this exculpation conflicts with any provision in the Yates Settlement Agreement, which shall control the terms of any releases or exculpation as between Yates and the Debtor.

      12.5   *Releases*.

      **FOR GOOD AND VALUABLE CONSIDERATION, INCLUDING, BUT NOT LIMITED TO, THE DISTRIBUTIONS TO BE MADE UNDER THE PLAN, EFFECTIVE AS OF THE EFFECTIVE DATE, EACH OF THE RELEASEES, THE PREPETITION AGENT, AND THE PREPETITION LENDERS AND EACH OF THEIR RESPECTIVE AFFILIATES AND REPRESENTATIVES ARE HEREBY RELEASED TO THE FULLEST EXTENT UNDER PERMISSIBLE APPLICABLE LAW BY THE DEBTOR, HOLDINGS, THE ESTATE, THE LIQUIDATING DEBTOR, EACH HOLDER OF A CLAIM, AND EACH PERSON WHO RECEIVES A DISTRIBUTION UNDER THE PLAN, FROM ANY AND ALL CLAIMS, DEBTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, ACTIONS, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, DIRECTLY OR INDIRECTLY ARISING FROM OR RELATED TO THE DEBTOR,**

EXISTING ON OR BEFORE THE EFFECTIVE DATE OR THEREAFTER
ARISING IN LAW, AT EQUITY, OR OTHERWISE, THAT ANY OF THE
DEBTOR, HOLDINGS, THE ESTATE, THE LIQUIDATING DEBTOR, OR
ANY PERSON WHO VOTES TO ACCEPT THE PLAN OR WHO RECEIVES
A DISTRIBUTION UNDER THE PLAN WOULD HAVE BEEN LEGALLY
ENTITLED TO ASSERT IN ITS OWN RIGHT (WHETHER INDIVIDUALLY
OR COLLECTIVELY), OR A CREDITOR OR EQUITY HOLDERS WOULD
HAVE BEEN LEGALLY ENTITLED TO ASSERT ON BEHALF OF THE
DEBTOR, HOLDINGS, THE ESTATE OR THE LIQUIDATING DEBTOR,
BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION,
TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE
TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE, INCLUDING
WITHOUT LIMITATION, CLAIMS, ACTIONS, AND CAUSES OF ACTION
ARISING FROM ACTIONS TAKEN OR NOT TAKEN IN GOOD FAITH,
TAKING PLACE BEFORE OR AFTER THE PETITION DATE IN
CONNECTION WITH OR RELATING TO THE DEBTOR OR IN
CONNECTION WITH, RELATED TO, OR ARISING OUT OF THE
OBLIGATIONS, THE CASE, THE PURSUIT OF CONFIRMATION OF THE
PLAN, THE CONSUMMATION OF THE PLAN OR THE SALE
TRANSACTION, THE ADMINISTRATION THEREOF OR THE PROPERTY
TO BE DISTRIBUTED UNDER THE PLAN, THE PREPETITION CREDIT
AGREEMENT, THE GUARANTEES, ALL AGREEMENTS, DOCUMENTS
AND INSTRUMENTS RELATING TO THE EQUITY INTERESTS, ALL
EQUITY INTERESTS, THE CASH COLLATERAL AND POSTPETITION
FINANCING ORDER, AND ANY OTHER TRANSACTION
CONTEMPLATED BY THE PLAN; *PROVIDED, HOWEVER*, THAT
NOTHING HEREIN SHALL BE DEEMED TO RELEASE ANY RIGHTS,
CLAIMS, OR INTERESTS THAT ANY SUCH PARTY MAY BE RECEIVING
OR RETAINING PURSUANT TO THE PLAN ON OR AFTER THE
EFFECTIVE DATE.  ALL PERSONS SHALL BE PRECLUDED AND
PERMANENTLY ENJOINED FROM ASSERTING AGAINST THE
RELEASEES, THE PREPETITION AGENT, AND THE PREPETITION
LENDERS, AND EACH OF THEIR RESPECTIVE AFFILIATES,
REPRESENTATIVES, ASSETS AND PROPERTIES, ANY AND ALL
CLAIMS, DEBTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, ACTIONS,
CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER
WHICH ARE RELEASED UNDER SECTION 12.5 OF THIS PLAN;
*PROVIDED FURTHER, HOWEVER*, THAT ANY PERSON OR ENTITY WHO
VOTES ON THE PLAN MAY OPT OUT OF THE FOREGOING RELEASES
SOLELY AS TO RELEASEES OTHER THAN HOLDINGS ON THE BALLOT
FORM.  ANY SUCH OPT-OUT WILL NOT AFFECT IN ANY WAY
WHATSOEVER THE RELEASE OF THE PREPETITION AGENT AND THE
PREPETITION LENDERS UNDER THE PLAN.  ANY PERSON INJURED BY
ANY WILLFUL VIOLATION OF SUCH INJUNCTION SHALL RECOVER
ACTUAL DAMAGES, INCLUDING COSTS AND ATTORNEYS' FEES, AND,

**IN APPROPRIATE CIRCUMSTANCES, MAY RECOVER PUNITIVE DAMAGES, FROM THE WILLFUL VIOLATOR.**

**EACH OF THE PREPETITION AGENT AND PREPETITION LENDERS SHALL BE DEEMED TO HAVE RELEASED THE DEBTOR AND HOLDINGS FROM ALL CLAIMS AND LIABILITIES BASED IN WHOLE OR IN PART ON ANY ACT, OMISSION, TRANSACTION, EVENT OR OTHER OCCURRENCE (I) TAKING PLACE BEFORE THE PETITION DATE IN CONNECTION WITH OR RELATING TO THE DEBTOR OR (II) IN CONNECTION WITH, RELATED TO, OR ARISING OUT OF THE OBLIGATIONS, THE DEBTOR'S CHAPTER 11 CASE, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE CONSUMMATION THEREOF, THE ADMINISTRATION THEREOF OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN.**

**IN ADDITION, SUBJECT TO THE OCCURRENCE OF THE EFFECTIVE DATE, EACH PREPETITION LENDER THAT VOTED TO ACCEPT THE PLAN (I) SHALL BE DEEMED TO TURN OVER TO THE GUARANTORS ANY AMOUNTS SUCH PREPETITION LENDER RECEIVES PURSUANT TO SECTION 6.8 OF THE PREPETITION CREDIT AGREEMENT, AND (II) SHALL RECEIVE A RELEASE FROM EACH OF THE GUARANTORS.**

**SUBJECT TO THE OCCURRENCE OF THE EFFECTIVE DATE, THE REQUIRED LENDERS (AS SUCH TERM IS DEFINED IN THE PREPETITION CREDIT AGREEMENT) SHALL BE DEEMED TO HAVE DIRECTED THE PREPETITION AGENT TO FORBEAR PERMANENTLY FROM ENFORCING ANY OBLIGATIONS OF THE GUARANTORS UNDER THE GUARANTEES. THE CONFIRMATION ORDER SHALL INCLUDE A SPECIFIC INJUNCTION AGAINST ANY SUIT BY ANY OF THE PREPETITION LENDERS TO ENFORCE THE GUARANTEES.**

12.6    *Causes of Action.*

Effective as of the Effective Date, except to the extent otherwise provided herein, the Plan Administrator shall be substituted for the Debtor in the Transferred Causes of Action, to the extent not settled or resolved prior to the Effective Date or in accordance with this Plan, and shall be retained by the Plan Administrator, as applicable, provided, however, that any Transferred Causes of Action against Holdings, the Prepetition Agent and those Prepetition Lenders who provide a mutual release, or the Debtor, or any of the Debtor's current officers or directors or any of its respective Representatives or Affiliates, are released and extinguished. Attached as Exhibit "3" to the Disclosure Statement is a non-exhaustive list of currently known causes of action that the Plan Administrator has retained.

As part of the construction of the Property, the Debtor entered into a construction agreement with Yates. Yates subsequently subcontracted with multiple

subcontractors (each, a "Subcontractor") as part of the construction process. The various Subcontractors have issued, should issue, or are anticipated to issue, upon completion of each Subcontractor's services related to the Property and/or upon provision of materials to Yates or the Debtor for the construction of the Property, various warranties with respect to the labor and materials employed in the construction of the Property. The Debtor retains all rights and remedies relating to, arising from, or accruing pursuant to all available theories of warranty for such labor and/or materials supplied in the construction of the Property by any Subcontractor, whether such warranties are express or implied, and regardless of whether such warranties arise by contract or by statute (each, a "Warranty Claim"). Other facts relating to the construction of the Property and/or potential Warranty Claims arising from such construction are described in various pleadings filed in the Debtor's main chapter 11 case (Case No. 09-27168), each of the various adversary proceedings filled in the Debtor's chapter 11 case by the Debtor (Case Nos. 09-02184, 09-02522, 09-02545), or any of the various adversary proceedings filed by purchasers of Condominium Units (Case Nos. 09-021000, 09-02183, 09-02195, 09-02383, 10-02713, 10-02772, 10-02823) and are incorporated herein by reference.

# ARTICLE XIII

## RETENTION OF JURISDICTION

The Bankruptcy Court shall have exclusive jurisdiction of all matters, except as expressly noted herein, arising out of, or related to, the Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)     To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and the allowance of Claims, including any Administrative Expense Claims resulting therefrom;

(b)     To determine any and all adversary proceedings, applications, and contested matters that are pending on the Effective Date;

(c)     To ensure that Distributions to Holders of Allowed Administrative Expense Claims and Allowed Claims are accomplished as provided herein;

(d)     To hear and determine any timely objections to, or requests for estimation of, Administrative Expense Claims or Claims, including, without limitation, any objections to the classification of any Administrative Expense Claim, Claim or Equity Interest, and to allow or disallow any Disputed Administrative Expense Claim, or Disputed Claim, in whole or in part;

(e)     To resolve disputes as to the ownership of any Administrative Expense Claim, Claim, or Equity Interest;

(f)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(g)     To issue orders in aid of execution of this Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(h)     To consider any amendments to or modifications of this Plan, or to cure any defect or omission, or reconcile any inconsistency, in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(i)     To hear and determine all applications of retained professionals under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date;

(j)     To hear and determine disputes or issues arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order, any transactions or payments contemplated hereby, any agreement, instrument, or other document governing or relating to any of the foregoing, or any settlement approved by the Bankruptcy Court;

(k)     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including, without limitation, any request by the Debtor prior to the Effective Date, or request by the Plan Administrator after the Effective Date, for an expedited determination of tax under section 505(b) of the Bankruptcy Code);

(l)     To hear any other matter not inconsistent with the Bankruptcy Code;

(m)     To hear and determine all disputes involving the existence, scope, and nature of the discharges, releases and injunctions granted under this Plan, the Confirmation Order, or the Bankruptcy Code;

(n)     To issue injunctions and effect any other actions that may be necessary or desirable to restrain interference by any Person with the consummation or implementation of this Plan;

(o)     To enter a Final Decree closing the Case; and

(p)     To hear any claim, matter or chose in action, whether or not it has been commenced prior to the Effective Date, that the Plan Administrator may prosecute, including any Transferred Causes of Action which have not been liquidated prior to the Effective Date, including, without limitation, any matter for which the United States District Court for the Southern District of Florida may also have concurrent jurisdiction, in which case the claim, matter, or chose in action may also be heard by the District Court.

**ARTICLE XIV**

**MISCELLANEOUS PROVISIONS**

14.1    *Payment of Statutory Fees*.

All fees payable under section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date.  All such fees that arise after the Effective Date but before the closing of the Reorganization Case shall be paid by the Plan Administrator.  The Plan Administrator will pay fees under section 1930 of title 28 of the United States Code after the Effective Date until a final decree is entered, the Case is Closed, dismissed or converted, and shall file quarterly operating reports, until a final decree is entered, the Case is Closed, dismissed or converted.

14.2    *Investments of Cash*

Except as otherwise provided in the Plan, all Cash, shall be invested by the Plan Administrator, with sole and absolute discretion in only (a) direct obligations of, or obligations guaranteed by, the United States of America; (b) obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof; (c) AAA rated tax-free securities issued by municipalities or state governments or agencies; or (d) such other obligations or instruments as may from time to time be approved for such investments by the Bankruptcy Court; provided, however, that the Plan Administrator, may, to the extent deemed necessary by the Plan Administrator, with sole and absolute discretion to implement the provisions of this Plan, deposit moneys in demand deposits (including money market funds) at any bank, trust company or other financial institution which has, at the time of such deposit a capital stock and surplus aggregating at least $100,000,000. The investment powers of the Plan Administrator, other than those reasonably necessary to maintain the value of the property of the Estate, shall be limited to powers to invest in demand and time deposits, such as money market funds, short-term certificates of deposit, in banks or other savings or financial institutions, or other temporary, liquid investments, such as U.S. Treasury Bills. Such investments shall mature in such amounts and at such times as may be deemed necessary by the Plan Administrator, with sole and absolute discretion, to provide funds when needed to make Distributions and payments from the property of the Estate, as the case may be.

14.3    *Modification of Plan*.

The Plan may be modified by the Debtor, the Liquidating Debtor, or the Plan Administrator with the consent of the Prepetition Agent, in accordance with section 1127 of the Bankruptcy Code; provided, however, that no such modification shall affect the Yates Settlement Agreement.

14.4    *Revocation of Plan*.

The Debtor reserves the right at any time prior to the entry of the Confirmation Order to revoke and withdraw this Plan.

14.5    *Intercompany Claims*.

On the Effective Date, Intercompany Claims will be discharged and extinguished by this Plan.

14.6    *Dissolution of the Committee*.

On the Effective Date, the Committee shall be dissolved and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from and in connection with the Case, and the retention or employment of the Committee's attorneys, accountants, and other agents, if any, shall terminate other than for purposes of filing and prosecuting applications for final allowance of compensation for professional services rendered and reimbursement of expenses incurred in connection therewith.

14.7    *Severability of Plan Provisions*.

In the event that, prior to the Confirmation Date, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor and with the consent of the Prepetition Agent, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable in accordance with its terms.

14.8    *Governing Law*.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to this Plan or Plan Supplement provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties, and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida without giving effect to the principles of conflict of laws.

14.9    *Compliance with Tax Requirements*.

In connection with the consummation of this Plan, any party issuing

any instrument or making any Distribution under this Plan, shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions under this Plan shall be subject to any such withholding or reporting requirements.  Notwithstanding the above, each Holder of an Allowed Claim that is to receive a Distribution under this Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution.  Any party issuing any instrument or making any Distribution under this Plan has the right, but not the obligation, to not make a Distribution until such Holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

     14.10  *Computation of Time*

     In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

     14.11  *Notices*.

     All notices, requests, and demands to or upon the Debtor or Liquidating Debtor to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

               Cabi Downtown, LLC
               19950 West Country Club Drive
               Suite 900
               Aventura, FL 33180

               – and –

               Kasowitz, Benson, Torres &
                Friedman, LLP
               1633 Broadway
               New York, New York  10019
               Attn:  Andrew K. Glenn, Esq.
                   Jeffrey R. Gleit, Esq.
               Facsimile:  (212) 506-1800

               - and -

               Bilzin Sumberg Baena Price & Axelrod LLP
               200 South Biscayne Boulevard
               Suite 2500
               Miami, FL 33131
               Attn:  Mindy Mora, Esq.

Tara V. Trevorrow, Esq.
Facsimile:  (305) 351-2242

With a copy to the Prepetition Agent's counsel:

Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
Attn:  Margot B. Schonholtz, Esq.
        Ana Alfonso, Esq.

– and –

Shutts & Bowen LLP
201 S. Biscayne Blvd.
Suite 1500
Miami, FL 33131
Attn:  Larry I. Glick, Esq.

14.12   *Filing or Execution of Additional Documents*.

On or before the Effective Date, and without the need for any further order or authority, the Debtor shall file with the Bankruptcy Court or execute, as appropriate, such agreements and other documents that are in form and substance satisfactory to the Debtor and the Prepetition Agent as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

Dated:  August 27, 2010

                            Respectfully submitted,

                            Cabi Downtown, LLC


                            By: /s/___Elias Amkie_____
                                Manager

## SCHEDULE "A"

**CABI DOWNTOWN, LLC**
Case No. 09-27168  Bar Date: 12/16/2009 and Gov't Bar Date: 2/16/2010
Schedule A – Unsecured Non-Priority Claims

| CREDITORS | Address, 1 | Address, 2 | City | State | Zip Code | Claim No. | Scheduled Amount | Filed Proof of Claim Amount | Anticipated Amount Subject to Dispute | Comments | Objection to Claim to be Filed | Allowed Amount of Claims as of Effective Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A T & T | PO Box 105262 | | Atlanta | GA | 30348 | | $ 170.30 | | | | | $170.30 |
| Americ Best Home Inc. | 1861 NE 146th Street | | North Miami | FL | 33181 | | $ 1,670.00 | | | | | $1,670.00 |
| Andres Leal | 8 SE 2nd Ave | Apt. #501 | Miami | FL | 33131 | | $ 1,360.00 | | | Paid in full, no claim against the estate | *** | $0.00 |
| Antonio & Associates Realty Investments, LLC | 100 South Pine Island Road | | Plantation | FL | 33324 | | $ 8,583.33 | | | | | $8,583.33 |
| AON Risk Service | AON Risk Service 75 Remittance Drive | | Chicago | IL | 60675 | 416 | $ 938,856.75 | $ 178,992.54 | | Note: Filed POC (less than scheduled amount because other insurers filed claims e.g. Arch, Chartis, RLI) | | $178,992.54 |
| Arch Specialty Ins. Group | c/o Melissa Gilligan, Esq. 300 First Stamford Place | 5th Floor | Stamford | CT | 6902 | 64 | | $ 23,025.00 | | Not scheduled part of AON scheduled claim. Filed POC allegedly "scheduled amounts" and was filed as both secured and unsecured. Amended POC to be filed solely in the amount of $23,025 (general unsecured claim). | | $23,025.00 |
| ATC International, Inc. | 1270 N.W. 165th St. | Suite 100 | Miami | FL | 33169 | 1 | $ 19,857.59 | $ 35,004.31 | $ 15,146.72 | Motion to assume contract granted; cure amount to be paid | | $0.00 |
| Attwood Phillips, Inc. | 2870 Scherer Drive | Suite 100 | St. Petersburg | FL | 33716 | | $ 297.00 | | | | | $297.00 |
| B J & S Blinds,Inc | 5201 NW 50TH AVENUE | | Fl Lauderdale | FL | 33319 | | $ 276.20 | | | | | $276.20 |
| Berman Rennert Vogel & Mandler, P.A. | c/o Thomas S. Ward 100 SE 2nd St. | Suite 2900 | Miami | FL | 33131 | 29 | $ 42,417.45 | $ 42,417.45 | | | | $42,417.45 |
| Bravo, Alma Yolanda | 111 NE 2nd Avenue | #603 | Miami | FL | 33132 | | $ 230.00 | | | Paid in full, no claim against the estate | *** | $0.00 |
| Brightway Properties | 2375 NE 191st Street | P12 | Aventura | FL | 33180 | | $ 2,000.00 | | | | | $2,000.00 |
| Calis Mechanical Corp. | 12349 SW 53rd Street | | Cooper City | FL | 33330 | | $ 960.00 | | | | | $960.00 |
| Century 21 Oceanfront Realty | 850 East Hallandale Beach Blvd | | Hallandale Beach | FL | 33009 | | $ 9,483.33 | | | | | $9,483.33 |
| Century 21 United Properties | 2625 Executive Park Drive | #5 | Weston | FL | 33331 | | $ 5,383.33 | | | | | $5,383.33 |
| Century 21 United TRG | 2895 B. Collins Ave | | Miami | FL | 33140 | | $ 7,200.00 | | | | | $7,200.00 |
| Cervera Realty Estate | 1492 South Miami Avenue | | Miami | FL | 33130 | | $ 5,516.67 | | | | | $5,516.67 |

*** The Debtor reserves the right to amend or supplement this Schedule ***

**CABI DOWNTOWN, LLC**
Case No. 09-27168   Bar Date: 12/16/2009 and Gov't Bar Date: 2/16/2010
Schedule A – Unsecured Non-Priority Claims

| CREDITORS | Address 1 | Address 2 | City | State | Zip Code | Claim No. | Scheduled Amount | Filed Proof of Claim Amount | Anticipated Amount Subject To Dispute | Comments | Objection to Claim to be Filed | Allowed Amount of Claim as of Effective Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Chafts US | 175 Water Street | 19th Floor | New York | NY | 10038 | 95 | | $ 278,366.00 | 278,366.00 | Not scheduled; claimant has cash collateral security from which claim should be paid; no documentation for severing entity; no claim against the estate. Claim objection to be filed. | | $0.00 |
| CIT Technology Financing Services, Inc. | 800 E. Sonterr Blvd. | Suite 240 | San Antonio | TX | 78258 | 42 | $ 9,743.50 | $ 62,269.09 | 52,525.59 | Filed POC in excess of scheduled amount and claimant with claim against Cabi; withdrawn. | *** | $0.00 |
| Crime Prevention Protective Services, Inc. | c/o Millbrook & Levy, PA 3230 Stirling Road | Suite #1 | Hollywood | FL | 33021 | 391 | $ 97,828.00 | $ 103,000.00 | 5,172.00 | Filed POC in excess of scheduled amount; settled with claimant with claim against Cabi; withdrawn. | *** | $0.00 |
| Cuba, Roberto | 3537 SW 22nd Street | | Miami | FL | 33145 | | $ 960.00 | | | | | $0.00 |
| D H L | PO Box #27790 | | Atlanta | GA | 30384 | | $ 3,659.16 | | | | | $3,659.16 |
| D'Calesa Design Group | 2640 a W. 28th Lane | | Miami | FL | 33133 | | $49,946.10 | | | | | $49,946.10 |
| DeltaOmni Bus Solutions | 2870 Harper Road | | Melbourne | FL | 32904 | | 751.10 | | | Paid in full; no claim against the estate | *** | $751.10 |
| Denopt, Giorgio | | | | | | | 716.82 | | | Paid in full; no claim against the estate | *** | $0.00 |
| Estevez, Esther | 571 East 34th Street | | Hialeah | FL | 33013 | | 800.00 | | | Paid in full; no claim against the estate | --- | $0.00 |
| Everglades On The Bay North | 244 Biscayne Blvd | | Miami | FL | 33132 | | 72,014.57 | | 72,014.57 | Claim to be withdrawn by claimant. | | $0.00 |
| Everglades On The Bay South | 253 NE 2nd Street | | Miami | FL | 33132 | | 498.00 | | 498.00 | Claim to be withdrawn by claimant. | | $0.00 |
| Fedex (Customer Info Services) | c/o Revenue Recovery 3965 Airways Blvd | Module G 3rd Floor | Memphis | TN | 38116 | | 65.67 | | | | | $66.67 |
| EXM Weston Branch | 3910 Keswick Road | | Baltimore | MD | 21212 | 58 | 701.06 | $ 563.03 | | | | $563.03 |
| Florida Engineering Services | 34 NW 168th Street | | North Miami | FL | 33169 | #1 | $ 11,245.00 | $ 11,245.00 | | | | $11,245.00 |
| | | | | | | | | | | | | $11,245.00 |

CABI DOWNTOWN, LLC
Case No. 09-27168  Bar Date: 12/16/2009 and Gov't Bar Date: 2/16/2010
Schedule A – Unsecured Non-Priority Claims

| CREDITORS | Address 1 | Address 2 | City | State | Zip Code | Claim No. | Scheduled Amount | Filed Proof of Claims Amount | Adjudicated Amount Subject To Dispute | Comments | Objection to be Filed | Allowed Amount of Claims as of Effective Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Florida Power & Light | FPL, General Mail Facility | | Miami | FL | 33188 | 428 | $ 20,000.00 | $ 24,337.46 | $ 24,337.46 | Filed POC in excess of scheduled amount; excess amount not significant | | $24,337.46 |
| Florida Real Estate of Miami | 8777 Collins Avenue | Ask #1203 | Surfside | FL | 33154 | | $ 14,416.67 | $ 14,416.00 | | | | $14,416.00 |
| Fullerton-Diaz Architects | 366 Altara Avenue | | Coral Gables | FL | 33146 | 412 | $ 254,554.90 | $ 611,237.89 | $ 611,237.89 | To be adjusted to $336,000.00 per July 20, 2010 hearing Transcript, Page 18 | | $336,000.00 |
| Greenberg Traurig P.A. | 1221 Brickell Avenue | | Miami | FL | 33131 | | $ 19,515.81 | | | | | $19,515.81 |
| Gryphon Construction LLC | Alex Bartlet, Esq. 200 S. Biscayne Blvd. | Suite 1800 | Miami | FL | 33131 | 254 | | $ 917,210.13 | $ 917,210.12 | Filed POC in excess of scheduled amount and claim was marked as disputed on schedule; POC is being amended to correct amount of claim | | $910,907.28 |
| Hernandez, Hector M | 3320 SW 79th Avenue | | Miami | FL | 33155 | | $ 186.72 | | | Paid in full, no claim against the estate | *** | $0.00 |
| Holland & Knight | PO Box #82092 | | Lakeland | FL | 32092 | | $ 87,903.74 | | | | | $87,903.74 |
| Holly Sime Realty of Miami, Inc. | Ronald G. Newirth, Esq. 1395 Brickell Ave. | 14th Floor | Miami | FL | 33131 | 373 | $ 193,750.00 | $ 193,750.00 | | | | $193,750.00 |
| Inspection & Valuation Int'l | 106 Corporate Park Drive | Suite #417 | White Plains | NY | 10604 | | $ 3,263.87 | | | | | $3,263.87 |
| Interinvestments Realty | 750 NW 107th Avenue | #720 | Miami | FL | 33172 | | $ 7,833.33 | | | | | $7,833.33 |
| Kadosnark Company | 9565 N.W. 140 Street Road | | Miami | FL | 33192 | | $ 725.00 | | | | | $725.00 |
| Landstar Realty | 1110 Anibey Avenue S/W | | Vero Beach | FL | 32968 | | $ 7,165.67 | | | | | $7,165.67 |
| Lending Bankers Mortgage LLC | 1 Oakwood Blvd | Suite #170 | Hollywood | FL | 33020 | | $ 1,042.50 | | | | | $1,042.50 |
| Lily, Nataya, Tiffany | UNKNOWN. | | | | | | $ 750.00 | | | Paid in full, no claim against the estate | *** | $0.00 |
| Linares, Miguel Luis | UNKNOWN | | | | | | $ 750.00 | | | Paid in full, no claim against the estate | *** | $0.00 |
| Lopez, Olga J. | 9302 NW 114th Terrace | | Hialeah | FL | 33018 | | $ 1,175.38 | | | Paid in full, no claim against the estate | *** | $0.00 |
| Lorenzo, Ariadne Caridad | 891 East 17th Street | | Hialeah | FL | 33010 | | $ 789.00 | | | Paid in full, no claim against the estate | *** | $0.00 |
| Meca Solutions, Inc. | 999 Brickell Avenue | #1000 | Miami | FL | 33131 | | $ 1,000.00 | | | | | $1,000.00 |

*** The Debtor reserves the right to amend or supplement this Schedule ***

**CABI DOWNTOWN, LLC**
Case No. 09-27168    Bar Dates: 12/15/2009 and Gov't Bar Date: 2/16/2010
Schedule A – Unsecured Non-Priority Claims

| CREDITORS | Address 1 | Address 2 | City | State | Zip Code | Claim No. | Scheduled Amount | Filed Proof of Claims Amount | Anticipated Amount Subject to Dispute | Comments | Objection to Claim to be Filed | Claim Allowed Amount of Claim as of Effective Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Molina, Marco | 571 East 24th Street | | Hialeah | FL | 33013 | | $620.00 | | | Paid in full, no claim against the estate | *** | $0.00 |
| Objective Group Corp. | 225 NE 23rd Street | Suite #1301 | Miami | FL | 33137 | | $214.00 | | | | | $214.00 |
| O'Keen Lighting | 2601 S. Bayshore Drive | Suite 245 | Coconut Grove | FL | 33133 | | $55,949.45 | | | | | $95,949.45 |
| Osorio, Hilda M. | 670 NW 6th Street | #1102 | Miami | FL | 33136 | | $460.00 | | | Paid in full, no claim against the estate | *** | $0.00 |
| PAETEC | 600 Willow Brook Office Park | | Fairport | NY | 14450 | | $15,747.55 | | | Paid in full, no claim | | $15,747.55 |
| Pinky Power Global Financial | 1 Elmcroft Road | | Stamford | CT | 6926 | | $2,900.30 | | | | | $2,900.30 |
| Pitney Bowes Purchase Power | 1245 East Brickyard Road | Suite #250 | Salt Lake City | UT | 84106 | | $5,276.82 | | | | | $5,276.82 |
| Pitney Bowes, Inc. | 27 Waterview Dr | | Shelton | CT | 6484 | 54 | | $1,476.48 | $1,476.48 | Not scheduled; amount insignificant | | $1,476.48 |
| Pitney Bowes, Inc. | 27 Waterview Dr | | Shelton | CT | 6484 | 425 | | | | Late filed claim; objection to be filed | *** | $0.00 |
| Print of South Florida | 1351 Shotgun Road | | Weston | FL | 33326 | | $3,162.38 | | | | | $3,162.38 |
| R.C. Aluminum Industries Inc. | 2805 NW 79th Avenue | | Miami | FL | 33195 | | $3,191.81 | | | | | $3,191.81 |
| R & J Painters | 775 NE 46th Street | | Oakland Park | FL | 33334 | 423 | $1,615.00 | $14,334.00 | | | | $14,334.00 |
| RUI Insurance | c/o James Jorgenbson 9025 N. Lindbergh Drive | | Peoria | IL | 61615 | 97 | | $20,467.00 | $20,467.00 | Not scheduled; amount insignificant | | $20,467.00 |
| Rodriguez, Andres A. | 20000 NE 21st Avenue | | Miami | FL | 33179 | | $630.00 | | | Paid in full, no claim against the estate | *** | $0.00 |
| Rodriguez, Eduardo | 955 SW 29th Avenue | Apt. #3 | Miami | FL | 33135 | | $750.00 | | | Paid in full, no claim against the estate | *** | $0.00 |
| Royce Parking Control | 2411 SW 58th Street | | Hollywood | FL | 33023 | 40 | | $1,120.34 | $1,120.34 | Claim paid in full by HOA; object to claim | *** | $0.00 |
| Royce Parking Control | 2411 SW 58th Street | | Hollywood | FL | 33023 | 41 | | $790.63 | 790.63 | Claim paid in full by HOA; object to claim | | $0.00 |
| Siegfried Rivera Lerner De La Torre | Altamira Circle 201 | | | | | | | | | To be adjusted to $400,000.00 per July 20, 2010 hearing Transcript, Page 17 | | $400,000.00 |
| Sign-A-Rama | 2650 NE 2nd Avenue | | Miami | FL | 33137 | 69 | $3,000.00 | | | | | $0.00 |

CABI DOWNTOWN, LLC
Case No. 09-27168    Bar Date: 12/16/2009 and Gov't Bar Date: 2/16/2010
Schedule A -- Unsecured Non-Priority Claims

| CREDITORS | Contact and Mailing Address | | | | | Claim No. | Scheduled Amount | Filed Proof of Claim Amount | Anticipated Amount Subject to Dispute | Comments | Objection to Claim to be Filed | Allowed Amount of Claim as of Effective Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Address 1 | Address 2 | City | State | Zip Code | | | | | | | |
| Signs for You, Inc. | 2401 NW 34th Ave | | Miami | FL | 33142 | 65 | $ 18,492.15 | $ 19,992.15 | $ 1,500.00 | Filed POC in excess of scheduled amount, excess amount not significant; | | $19,992.15 |
| SimplexGrinnell | SimplexGrinnell ATTN: Bankruptcy 50 Technology Dr | | Westminster | MA | 1441 | 395 | | $ 1,581.00 | 1,581.00 | Not scheduled; amount insignificant | | $1,581.00 |
| Southern Painting, Inc | 10172 NW 47th Street | | Sunrise | FL | 33351 | | $ 2,850.00 | | | | | $2,850.00 |
| Tinsley Advertising | 2850 Brickell Avenue | | Miami | FL | 33129 | 6 | $ 9,579.67 | $ 9,579.67 | 9,579.67 | | | $9,579.67 |
| T-Square Express | 998 West Flagler Street | | Miami | FL | 33101 | 79 | $ 517.86 | $ 25,132.98 | 24,615.12 | Filed POC in excess of scheduled amount applicable amount only to debtor per POC is $5,661.32; Object to balance of claim. | *** | $5,661.32 |
| Turnkey Designs of Miami, Inc. | 2119 Coral Way | | Miami | FL | 33145 | | $ 2,418.75 | | | | | $2,418.75 |
| UIC, Inc. | PO Box #651 | | Mahwah | NJ | 7430 | | $ 41,200.00 | | | | | $41,200.00 |
| Virdex, Jardci Cabrera | 12395 SW 18th Street | B-108 | Miami | FL | 33175 | | $ 780.00 | | | Paid in full, no claim against the estate | | $0.00 |
| W.G Yates & Sons Construction Company | Gary L. Blum, Esq. [Backer & Poliakoff] 3111 Stirling Rd | | Ft. Lauderdale | FL | 33312 | 406 | | $ 1,424,715.70 | 1,424,715.70 | To be waived pursuant to settlement | | $0.00 |
| Water Studio, Inc | 5981 Sichihatina Drive | | Culver City | CA | 90230 | | $ 31,490.00 | $ 31,490.00 | | | | $31,490.00 |
| Wood Business Systems, Inc. | 5350 N.W. 35th Terrace | Suite 101 | Ft. Lauderdale | FL | 33309 | | $ 460.50 | | | | | $460.50 |
| Zephyrmile Water | PO Box# 856680 | | Louisville | KY | 40285 | | $ 63.32 | $ 63.32 | | | | $63.32 |
| TOTALS | | | | | | | $2,657,817.80 | $ 4,704,244.69 | $ 4,055,457.32 | | | $2,657,710.32 |

*** The Debtor reserves the right to amend or supplement this Schedule ***