UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

CABI DOWNTOWN LLC,

Debtor.
_____/

Case No. 09-27168-BKC-LMI

Chapter 11

## DECLARATION OF ELIAS CABABIE IN SUPPORT OF FIFTH AMENDED PLAN OF LIQUIDATION

I, Elias Cababie, under penalties of perjury, states the following:

1. I am an adult citizen of Mexico and make this declaration based on my own personal knowledge.

2. I am the managing member of CABI Downtown, LLC ("Cabi" or the "Debtor"), debtor and debtor in possession, in the above-captioned proceeding.

3. On March 3, 2010, the Debtor began earnest negotiations with Bank of America, N.A., for itself and as administrative agent, together with the rest of the lenders that hold the first priority mortgage loans against the Debtor's real property (the "Bank Group") in an attempt to resolve the remaining issues in structuring a consensual bankruptcy plan. After many hours of negotiations, we reached agreement with the Bank Group on a term sheet that provided for the Property to be sold to the Bank Group in exchange for a credit

bid and the Bank Group to retain the Debtor's affiliate, Cabi Developers LLC, to provide property management services under a management services agreement (the "MSA").

4. In the weeks following that March 2010 term sheet, the Bank Group sought to change the agreed terms and dilute the terms of the MSA. After several weeks of further negotiations (in which the Bank Group repeatedly back-tracked from their previous agreement), in May of 2010 a revised settlement was reached between the Debtor and the Bank Group.

5. Alex Haw at Bank of America was our primary point of contact with the Bank Group. In May of 2010 I contacted Mr. Haw and asked him if the Bank Group would entertain an offer to purchase the bank debt. At that time, it was the view of the Debtor's board of directors that it could be possible for the Debtor to structure a transaction with a third party to jointly buy-out the Bank Group debt. It was my understanding from my discussion with Mr. Haw that the Bank Group would gladly consider an offer to buy their debt.

6. Based on my discussions with Mr. Haw, I met with various investor groups in an effort to obtain an investor to purchase the bank debt. From prior conversations with Mr. Haw, I believed that the Bank Group would not entertain an offer for its debt below $130 million. We provided each of the various investors that we met with a range of amounts which we thought we needed in order to be seriously considered by the Bank Group.

7. It is my understanding that both The Lynd Company ("Lynd") and Rockwood Capital ("Rockwood") initially contacted Mr. Haw directly about purchasing the Bank Group debt. Mr. Haw immediately referred both potential buyers to the Debtor to discuss a

potential transaction for those entities to acquire the Debtor's property through a consensual plan with the Debtor. The Debtor ultimately engaged in due diligence and negotiations with both of those potential investors.

8. Arne Arnesen from Rockwood contacted the Debtor in May 2010. The Debtor provided Rockwood with a standard confidentiality and non-circumvention agreement to execute, which was signed by Rockwood and accepted by the Debtor on May 13, 2010. Immediately after that, the Debtor began providing Rockwood with extensive due diligence materials, and continued providing information and access to the Property on a almost-daily basis for several months.

9. Similarly, Gary Plichta from Lynd also contacted the Debtor. The Debtor provided Lynd with the same standard confidentiality and non-circumvention agreement to execute. That agreement was signed by Lynd and accepted by the Debtor. Immediately after that, the Debtor began providing Lynd with extensive due diligence, on a periodic basis as requested.

10. During the same time period, the Debtor was approached by at least five other investor groups to obtain information about a potential transaction involving the Property. Any party who demonstrated that they were serious about a transaction was asked to execute a confidentiality and non-circumvention agreement. In total, four such agreements were signed in addition to the ones signed by Rockwood and Lynd. In all cases, the purpose of the confidentiality and non-circumvention agreement was to protect the value of the estate's assets.

11. By June 2010, it was clear that only Rockwood and Lynd (of the potential investors who had contacted the Debtor) were serious about consummating a transaction with the Debtor and the Bank Group involving the Property.  The Debtor presented each of Rockwood and Lynd with a term sheet outlining a potential transaction.  Lynd engaged in good faith negotiations and ultimately agreed to a term sheet with the Debtor on the structure its bid would take.  By contrast, Rockwood continued requesting extensive information from the Debtor and access to the Property, but without providing a response to the Debtor's proposed term sheet.  In July and August of 2010, Rockwood was specifically advised by the Debtor of the existence of an offer from Lynd, and Debtor specifically requested that Rockwood make a counteroffer.  In response to this request, Rockwood requested an opportunity to obtain further due diligence.  On July 27, 2010, Rockwood (through Arne Arnesen) sent Debtor the following message:

> "As I stated on our telephone conversation last wed, Rockwood needs to complete its due diligence in order to be able to respond to your counter proposal. Anything you can do to assist the due diligence effort will only help us to reach a conclusion quickly to further the proposed transaction. I trust that you are doing all you can to assist us as we discussed wed."

A complete copy of this email is attached as Exhibit "1".

12. Debtor agreed to Rockwood's July 27, 2010 request for further due diligence, and the requested additional information was provided.  The Debtor never received a counteroffer from Rockwood, or any explanation as to the reasons that they terminated communications with us.  Instead, Rockwood unilaterally terminated discussions with the Debtor and apparently proceeded almost immediately to make a bid directly to the Bank Group in violation of the non-circumvention agreement.  The description of the

termination of the discussions between Rockwood and the Debtor contained in Paragraph 11 of the Declaration of Dwight "Arne" Arnesen are inaccurate. The Debtor never advised Rockwood that the Debtor was unwilling to continue discussions regarding a recapitalization of the Debtor's Property. Moreover, the Debtor never understood from its discussions with Rockwood that Rockwood would pay more than Lynd for Debtor's assets.

13. After Debtor found out that Rockwood was dealing directly with the Bank Group in an attempt to acquire Debtor's assets, on August 24, 2010, general counsel for the Debtor sent a letter to Rockwood advising that a direct deal with the Bank Group would constitute a violation of the non-circumvention agreement.

14. During the period that the Debtor was working with Lynd and Rockwood, Debtor kept the Bank Group (through Alex Haw) fully apprised of the status and schedule of those efforts. Debtor also kept the Bank Group fully advised on all material aspects of the status of the Property and the finances of the Debtor. The banks were also advised of Debtor's concerns regarding Rockwood's breach of the non-circumvention agreement, insofar as Debtor's counsel provided copies of their August 24, 2010 demand letter (including the specific language of the agreement) to Mr. Haw.

15. We are concerned that the process through which the Bank Group selected the Rockwood bid was not sufficiently transparent nor fair. It was my understanding that during September 2010 Lynd submitted the highest offer to the Bank Group for the Debtor's Property, but the process was then converted to a modified auction process supervised by a broker. It is also my understanding that in the modified auction process, the broker who

conducted that process told Lynd that their initial bid would be allowed to be amended/increased, but that this option was inexplicably denied to Lynd. Immediately thereafter, I learned that Rockwood had been selected as the note purchaser and transferee of the Property. It is my understanding that the Bank Group and Rockwood are asking this Court to affirmatively approve their sale process and find that it was conducted in good faith. Given the issues described above, as well as the higher offer that I understand Lynd made and is continuing to press, I believe that it is the Debtor's fiduciary duty to bring this issue to the attention of this Court for consideration.

16. At all times during the events described above, the Debtor was attempting to maximize the return to the estate's creditors (including the Bank Group), while at the same time recognizing its responsibilities to the other constituencies in the case.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed this 27th day of October, 2010.

_____
Elias Cababie

**EXHIBIT "1"**

**From:** Arne Arnesen [mailto:aarnesen@rockwoodcap.com]
**Sent:** Mon 7/26/2010 6:33 PM
**To:** Elias Amkie
**Cc:** Peter Falco; Tyson Skillings; Chris Fraley; Moody, Joel; tom@duncanhillsley.com; Mo Beler; Elias Cababie
**Subject:** Re: Cabi Downtown LLC - Term sheet for profit sharing arrangement.doc Version 4 (Cabi's Revisions 6.25.10)

Elias,
Per our conversation last wed, senior members of rockwood capital will be in miami this thursday for the everglades transaction. We would like to meet w/you and your associates late thursday afternoon at around 4/4:30pm.

I will be accompanied by peter falco (coo of rockwood), tyson skillings (md, head of fund 8), chris fraley (md of acquisitions), and joel moody (head of residential).
The purpose of the mtg will be to discuss our proposal to you and your response.

As I stated on our telephone conversation last wed, rockwood needs to complete its due diligence in order to be able to respond to your counter proposal. Anything you can do to assist the due diligence effort will only help us to reach a conclusion quickly to further the proposed transaction. I trust that you are doing all you can to assist us as we discussed wed.

Let me know the best venue for us to meet this thursday.

Thanks,
Arne

---

**From**: Elias Amkie <eamkie@cabicorp.com>
**To**: Arne Arnesen
**Sent**: Wed Jul 21 20:59:34 2010
**Subject**: Re: Cabi Downtown LLC - Term sheet for profit sharing arrangement.doc Version 4 (Cabi's Revisions 6.25.10)

Arne,
I spoke to Elias. At what time are you available to speak ?
Regards,


----- Original Message -----
From: Arne Arnesen <aarnesen@rockwoodcap.com>
To: Elias Amkie; Maysa Vahidi <mvahidi@rockwoodcap.com>; Cara-Jenna Yablon, Esq.; Mo Beler <mbeler@rockwoodcap.com>; Chris Fraley <cfraley@rockwoodcap.com>
Cc: Elias Cababie
Sent: Tue Jun 29 18:31:09 2010
Subject: RE: Cabi Downtown LLC - Term sheet for profit sharing arrangement.doc Version 4 (Cabi's Revisions 6.25.10)

Elias,

I am available as late as 3:30PM, then have to leave the office for meetings. Let me know if 3PM works.

Arne

From: Elias Amkie [mailto:eamkie@cabicorp.com]
Sent: Tuesday, June 29, 2010 6:30 PM
To: Arne Arnesen; Maysa Vahidi; Cara-Jenna Yablon, Esq.; Mo Beler; Chris Fraley
Cc: Elias Cababie
Subject: RE: Cabi Downtown LLC - Term sheet for profit sharing arrangement.doc Version 4 (Cabi's Revisions 6.25.10)


Arne,

Elias Cababie is travelling and is available after 3pm est. Do you have any open space after such time ?

Thank you.

Regards,


From: Arne Arnesen [mailto:aarnesen@rockwoodcap.com]
Sent: Tuesday, June 29, 2010 5:39 PM
To: Elias Amkie; Maysa Vahidi; Cara-Jenna Yablon, Esq.; Mo Beler; Chris Fraley
Cc: Elias Cababie
Subject: Re: Cabi Downtown LLC - Term sheet for profit sharing arrangement.doc Version 4 (Cabi's Revisions 6.25.10)


Elias,
We are available to talk tomorrow at 11am est. Please confirm.
Thanks,
Arne
If ok we will send out a call in tel #.


_____

From: Elias Amkie <eamkie@cabicorp.com>
To: Maysa Vahidi; Cara-Jenna Yablon, Esq. <cyablon@cabicorp.com>; Arne Arnesen; Mo Beler; Chris Fraley
Cc: Elias Cababie <ecd@cabicorp.com>
Sent: Tue Jun 29 17:36:21 2010
Subject: Re: Cabi Downtown LLC - Term sheet for profit sharing arrangement.doc Version 4 (Cabi's Revisions 6.25.10)

Arne,
We feel we are getting close, and we believe it is important to have a conference call. At what time are you available tomorrow to try to finalize it ?
Regards,


----- Original Message -----
From: Maysa Vahidi <mvahidi@rockwoodcap.com>

To: Cara-Jenna Yablon, Esq.; Arne Arnesen <aarnesen@rockwoodcap.com>; Mo Beler <mbeler@rockwoodcap.com>; Chris Fraley <cfraley@rockwoodcap.com>
Cc: Elias Amkie; Elias Cababie
Sent: Mon Jun 28 19:20:34 2010
Subject: RE: Cabi Downtown LLC - Term sheet for profit sharing arrangement.doc Version 4 (Cabi's Revisions 6.25.10)

All,

Attached please find a blackline copy of our revisions to the LOI you circulated on Friday. Please let us know if you have any questions or comments.

Best,

Maysa

From: Cara-Jenna Yablon, Esq. [mailto:cyablon@cabicorp.com]
Sent: Friday, June 25, 2010 4:58 PM
To: Arne Arnesen; Mo Beler; Chris Fraley; Maysa Vahidi
Cc: Elias Amkie; Elias Cababie
Subject: Cabi Downtown LLC - Term sheet for profit sharing arrangement.doc Version 4 (Cabi's Revisions 6.25.10)

Please see the attached "clean" copy of our proposed revisions to the LOI. A redline will be sent under separate cover.

Cara
Cara-Jenna Yablon P.A.
  General Counsel to
  Cabi Developers, LLC
  email  cyablon@cabicorp.com
   phone    305.466.1810
   cell      954.658.8101
   fax      305.466.1877


----- Original Message -----
From: Cara-Jenna Yablon, Esq.
To: Cara-Jenna Yablon, Esq.
Sent: Fri Jun 25 15:27:53 2010
Subject: Cabi Downtown LLC - Term sheet for profit sharing arrangement.doc Version 4 (Cabi's Revisions 6.25.10)

<<Cabi Downtown LLC - Term sheet for profit sharing arrangement.doc Version 4 (Cabi's Revisions 6.25.10).doc>>

DISCLAIMER:
This e-mail, and any attachments thereto, are intended only for use by the addressee(s) named herein and may

contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail and any attachments thereto, is strictly prohibited. If you have received this e-mail in error, please notify me by replying to this message and permanently deleting the original and any copy of this e-mail and any printout thereof.

DISCLAIMER:

This e-mail, and any attachments thereto, are intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail and any attachments thereto, is strictly prohibited. If you have received this e-mail in error, please notify me by replying to this message and permanently deleting the original and any copy of this e-mail and any printout thereof.

DISCLAIMER:

This e-mail, and any attachments thereto, are intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail and any attachments thereto, is strictly prohibited. If you have received this e-mail in error, please notify me by replying to this message and permanently deleting the original and any copy of this e-mail and any printout thereof.

DISCLAIMER:

This e-mail, and any attachments thereto, are intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail and any attachments thereto, is strictly prohibited. If you have received this e-mail in error, please notify me by replying to this message and permanently deleting the original and any copy of this e-mail and any printout thereof.

DISCLAIMER:

This e-mail, and any attachments thereto, are intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail and any attachments thereto, is strictly prohibited. If you have received this e-mail in error, please notify me by replying to this message and permanently deleting the original and any copy of this e-mail and any printout thereof.