**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

CABI DOWNTOWN LLC,[1]

                                 Case No. 09-27168-BKC-LMI

                                 Chapter 11

      Debtor.

_____/

**MODIFICATION OF FIFTH AMENDED PLAN OF LIQUIDATION**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

       CABI Downtown, LLC (the "Debtor"), debtor and debtor in possession, by and through undersigned counsel, hereby modifies its *Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [ECF No. 856] as follows (the "Plan Modification"):

       All sections of the Plan that refer to "Class 3" claims shall now refer to "Class 3a" claims, unless otherwise provided in the Confirmation Order or in this Plan Modification Supplement.

       A.      **Article I**

       Article I is modified to include the following definitions for "Chartis Companies," "Chartis Insurance Program," "Note Sale Closing,," "Chartis Insurance Program Collateral," "Westchester," and "Westchester Insurance Program" and to modify the definition of "Transferred Property":

                                      \* \* \*

       1.122  ***Chartis Companies*** means American Home Assurance Company, Granite State Insurance Company, Lexington Insurance Company, Chartis, and each of their respective affiliates and predecessors-in-interest which provided insurance and insurance services to the Debtor, its affiliates, and/or its predecessors-in-interest.

---

[1]      The Debtor's current mailing address is 19950 W. Country Club Dr., Suite 900, Aventura, FL 33180.  The last four digits of the Debtor's tax identification number are [0838].

1.123 ***Chartis Insurance Program*** means the insurance policies numbered 1945580, 3679386, 3678983, 1758557, 3678649, 7180532, and 7073568 and all agreements, documents, or instruments relating thereto including, without limitation, claims servicing agreements, that have been issued or entered into by one or more of the Chartis Companies with the Debtor and its respective predecessors and/or affiliates.

1.124 ***Chartis Insurance Program Collateral*** means collateral in the form of cash that is maintained by the Chartis Companies to, *inter alia*, fund or reimburse the Chartis Companies for funding existing and prospective claims under the Chartis Insurance Program.

1.671 ***Note Sale Closing Date*** means the date on which RW 244 Biscayne LLC purchases and closes on the Secured Construction Loan Claims and related rights and obligations under the Plan.

1.98 ***Transferred Property*** means the Debtor's right, title and interest in the Property, all Warranty Claims, the Chartis Insurance Program Collateral, and the Collateral, other than Abandoned Assets.

1.1001 ***Westchester*** means Westchester Fire Insurance Company.

1.1002 ***Westchester Insurance Program*** means the insurance policy number MLW787571 001 and all agreements, documents, or instruments relating thereto including, without limitation, claims servicing agreements, that have been issued or entered into by Westchester with the Debtor and its respective predecessors and/or affiliates.

\* \* \*

**B.** **Article II**

Article II is modified to describe repayment of advances made in respect of the DIP Financing Claim.

\* \* \*

Section 2.4 ***Repayment of DIP Loan.***

The Transferee, or another entity designated by the Transferee with Holdings' consent, shall be obligated to pay to Holdings in full and final satisfaction of the DIP Financing Claim an amount sufficient to pay the DIP Financing Claim plus all advances made in respect of the DIP Financing Claim, on or before December 31, 2010, which obligation shall be evidenced by the Holdings Note, which note shall be delivered to Holdings on the Effective Date.

\* \* \*

**C.** **Article III**

2

Article III is modified to include the addition of Class 3b (Other Secured Claims) and the designation of Secured Security Deposit Claims as Class 3a:

* * *

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Priority Non-Tax Claims | Unimpaired | No |
| Class 2 | Secured Tax Claim of Miami-Dade County Tax Collector | Unimpaired | No |
| Class 3a | Secured Security Deposit Claims | Unimpaired | No |
| Class 3b | Other Secured Claims | Unimpaired | No |
| Class 4 | Secured Construction Loan Claims | Impaired | Yes |
| Class 5a | Yates Secured Claim | Impaired | Yes |
| Class 5b | Customer Deposit Claims | Impaired | Yes |
| Class 6a | General Unsecured Claims | Impaired | Yes |
| Class 6b | Customer Deposit General Unsecured Claims | Impaired | N/A (no such claim will be allowed prior to the Confirmation Date)[2] |
| Class 7 | Equity Interests | Impaired | No (Deemed to Reject) |

* * *

**D.       Article IV**

Article IV, Section 4.3 is modified to reflect the renaming of Class 3 (Secured Security Deposit Claims) as Class 3a, and to add the treatment for Class 3b (Other Secured Claims), as follows:

* * *

***4.3(a)   Secured Security Deposit Claims (Class 3a).***

Except to the extent that a Holder of an Allowed Secured Security Deposit Claim agrees to less favorable treatment, each Holder of an Allowed Secured Security Deposit Claim

---

[2]        *See* Section 4.6 herein.

shall receive a Distribution in Cash from the Transferee in the Allowed Amount of such Secured Security Deposit Claim in the ordinary course of business, subject to the terms of the applicable DP Program Agreement.

### 4.3(b)  Other Secured Claims (Class 3b).

As soon as reasonably practicable on or after the Effective Date, except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, each Holder of an Allowed Other Secured Claim shall receive, at the sole option of the Debtor, (a) payment in full in Cash in the amount of the Allowed Other Secured Claim, (b) retention of cash collateral by the Holder of the Allowed Other Secured Claim in an amount sufficient to satisfy the applicable Allowed Other Secured Claim, or (c) a treatment that otherwise renders the Allowed Other Secured Claim unimpaired pursuant to section 1124 of the Bankruptcy Code.

The Chartis Companies are a Holder of one of the Other Secured Claims, and that Secured Claim shall be treated as set forth in Section 8.5 of the Plan.

* * *

### E.    Article VI

Article VI, Sections 6.3 and 6.4 are deleted in their entirety and the following is inserted in the place of such sections:

* * *

Section 6.3        *Distributions Made Under the Plan*

All Distributions to Holders of Allowed Class 6a Claims under this Plan, which are to be made within 7 days of the Effective Date unless such date is otherwise extended with the consent of the persons who served as members of the Committee on the Effective Date, shall be made by the Liquidating Debtor, who shall administer and distribute the General Unsecured Claim Cash Distribution, but who shall not administer any returned or undeliverable Distributions from the General Unsecured Claim Cash Distribution, as provided in Section 6.4. The Plan Administrator shall administer the Class 6b Claim Reserve, make all Distributions to Holders of Allowed Customer Deposit General Unsecured Clanims, and shall administer any returned or undeliverable Distributions, as provided in Section 6.4.  All Distributions to Holders of any other Allowed Claims, except for Class 3b Claims, shall be made by the Plan Administrator (or the Transferee, solely in the case of a DP Program Agreement Security Deposit) pursuant to the Plan.  Class 3b Claims shall be satisfied in full as provided in Section 8.5 of the Plan.  The Liquidating Debtor shall not be required to give any bond or surety or other security for the performance of its limited duties.

Section 6.4        *Delivery of Distributions.*

4

(a)    Last Known Address.  All Distributions to any Holder of an Allowed Claim other that an Allowed Administrative Expense Claim shall be made at the address of such Holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtor or its agents, as applicable, unless the Debtor, Liquidating Debtor, or Plan Administrator has been notified in writing of a change of address, including, without limitation, by the filing of a proof of Claim or interest by such Holder that contains an address for such Holder different from the address reflected for such Holder on the Schedules.

(b)    Undeliverable Class 6a Distributions.  If any Distribution to any Holder of an Allowed Class 6a Claim is returned as undeliverable to the Liquidating Debtor (the "Undeliverable Class 6a Distributions"), then the Liquidating Debtor shall forward any such returned checks and corresponding funds to the Plan Administrator.  When the Plan Administrator receives such returned checks and corresponding funds from the Liquidating Debtor, the Plan Administrator shall use commercially reasonable efforts to determine the current address of the Holder of an Allowed Class 6a Claim whose check is returned as undeliverable.  No Distribution to such Holder shall be made unless and until the Plan Administrator has determined the then-current address of such Holder, at which time such Distribution shall be made to such Holder without interest; provided, however, that such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of the later of six months from the Effective Date or 6 months after such Distribution is first issued.  After such date, if the aggregate sum of all Undeliverable Class 6a Distributions is in excess of $5,000, then the Undeliverable Class 6a Distributions shall be redistributed pro rata to the remaining members of Class 6a.  If the aggregate sum of all Undeliverable Class 6a Distributions is equal to or less than $5,000, then such sum shall be donated in its entirety by the Plan Administrator to Miami Children's Hospital.

(c)    Undeliverable Class 6b Distributions.  If any Distribution to any Holder of an Allowed Class 6b Claim is returned as undeliverable to the Plan Administrator (the "Undeliverable Class 6b Distributions"), then the Plan Administrator shall use commercially reasonable efforts to determine the current address of any Holder of an Allowed Class 6b Claim whose check is returned as undeliverable.  No Distribution to such Holder shall be made unless and until the Plan Administrator has determined the then-current address of such Holder, at which time such Distribution shall be made to such Holder without interest; provided, however, that such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of the later of six months from the Effective Date or 6 months after such Distribution is first issued.  After such date, all remaining Undeliverable Class 6b Distributions will be paid to the Prepetition Agent.

(d)    Undeliverable Class 1, Class 3a, and Class 5b Distributions.  At the expiration of the later of six months from the Effective Date or 6 months after an undeliverable Distribution is first issued to the applicable Holder of an Allowed Class 1, Class 3a, or Class 5b Claim, all unclaimed property or interest in such property shall be deposited with the Clerk of the Bankruptcy Court and shall remain available for the affected claimant to seek withdrawal of the funds from the Clerk of the Bankruptcy Court for a period of five years, after which the unclaimed funds shall escheat to the U.S. Treasury.  Upon deposit of unclaimed funds with the Clerk of the Bankruptcy Court, the Estate shall be discharged and the Holder of the Claim to such funds shall be forever barred from seeking payment of such funds from the Estate.

(e)     Distributions for Allowed Secured Construction Loan Claims. Distributions under this Plan that are paid to the Prepetition Agent shall be for the benefit of Holders of Allowed Secured Construction Loan Claims in accordance with the Prepetition Credit Agreement.

(f)     Distributions for Allowed Administrative Expense Claims.  All Distributions to any Holder of any Allowed Administrative Expense Claim shall be made at the address of such Holder as set forth on the books and records of the Debtor, the Liquidating Debtor, the Plan Administrator, or the Transferee, as applicable, unless the Debtor, the Transferee, or Plan Administrator has been notified in writing of a change of address, including, without limitation, by the filing of a proof of Claim, Request for Payment of Administrative Expense Claim, or similar motion that contains an address for such Holder different from the address reflected for such Holder on the books and records of the Debtor, the Liquidating Debtor, the Transferee, or the Plan Administrator, as applicable.  In the event that any Distribution to any Holder of an Allowed Administrative Expense Claim is returned as undeliverable, the Plan Administrator shall use commercially reasonable efforts to determine the current address of such Holder, but no Distribution to such Holder shall be made unless and until the Plan Administrator has determined the then-current address of such Holder, at which time such Distribution shall be made to such Holder without interest; provided that such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of the later of six months from the Effective Date or six months after the payment in respect of such Administrative Expense Claim is first issued.  After such date, all unclaimed Distributions or interests in such Distributions in respect of such Allowed Administrative Expense Claims shall be paid over to the Prepetition Agent, and the Claim of any other Holder to such property or interest in property shall be discharged and forever barred.

* * *

F.     **Article VIII**

Article VIII is modified by adding an additional sections 8.5 and 8.6 to provide for the assumption of the Chartis Insurance Program and the Westchester Insurance Program by the Debtor and the assignment of the rights thereunder to the Transferee, as follows.

* * *

8.5   *Chartis Insurance Program.*

Notwithstanding anything to the contrary in this Plan, the Disclosure Statement, the Confirmation Order or any other Order of the Bankruptcy Court (including, without limitation, any other provision that (i) purports to be preemptory or supervening or grants an injunction or release or (ii) provides for a bar date for Administrative Expense Claims or requires a creditor to file an objection or assert a Cure claim), on the Effective Date:

6

(a)     Subject to the satisfaction of all of the conditions set forth in Section 8.5(b) below, (i) the Debtor is hereby authorized to assume, pursuant to 11 U.S.C. §§ 105, 363, 365 and 1123(b)(2), the Chartis Insurance Program; (ii) the Debtor is hereby authorized to assign the Chartis Insurance Program to the Transferee and to enter into the Assumption Agreement (as defined in Section 8.5(b) below); and (iii) effective upon the assignment of the Chartis Insurance Program, the Debtor's rights and interests, if any, in any and all collateral and security provided to the Chartis Companies with respect to the Chartis Insurance Program (including, without limitation, cash collateral, letters of credit and the proceeds thereof) shall, subject to the terms and conditions of the Chartis Insurance Program and the Assumption Agreement, be transferred and assigned to the Transferee, and such collateral and security shall continue to secure, exclusive of any other Person's Lien, the Transferee's obligations and liabilities under the Chartis Insurance Program.

(b)     The assignment of the Chartis Insurance Program shall not be effective unless and until the Debtor and the Transferee have satisfied all of the following conditions precedent to such assignment:  (i) the Chartis Companies shall have consented in writing to the assignment of the Chartis Insurance Program to the Transferee; (ii) the Transferee, the Debtor and the Chartis Companies shall have executed an assumption agreement, in form and substance satisfactory to the Chartis Companies, including, to the extent necessary, the agreement, consent or affirmation of other Persons (the "Assumption Agreement"); (iii) the Transferee shall have provided the Chartis Companies with financial, underwriting and other information, satisfactory to the Chartis Companies; and (iv) the Transferee shall have satisfied the Chartis Companies' credit and underwriting requirements, as the Chartis Companies shall determine in their sole discretion.

(c)     Upon satisfaction of the conditions set forth in Section 8.5(b) above: (i) the Chartis Insurance Program shall be deemed to be included as part of the Transferred Property; (ii) the Transferee shall assume and perform all liabilities of the Debtor under the Chartis Insurance Program arising at any time (whether arising before or after the Effective Date), including any obligation to provide additional collateral and/or security pursuant to the Chartis Insurance Program, and shall have all of the rights and benefits under the Chartis Insurance Program, including the right to seek the return of any excess collateral and/or security remaining after payment and satisfaction of all of the Debtor's and the Transferee's obligations to the Chartis Companies under the Chartis Insurance Program; (iii) upon the assumption and assignment of the Chartis Insurance Program to the Transferee, the Liquidating Debtor will cooperate with the Chartis Companies in providing information reasonably necessary for premium audits or claims handling under the Chartis Insurance Program and all right, title and interest of the Debtor and the Liquidating Debtor in the Chartis Insurance Program, the collateral thereunder and the proceeds thereof shall terminate; (iv) the Chartis Companies' claims under the Chartis Insurance Program and the claims arising thereunder whether arising before or after the Effective Date (other than the unsecured claim filed by Chartis in the amount of $278,366, which has been allowed as a Class 6a General Unsecured Claim) (A) shall continue to be secured by any and all collateral and/or security provided to the Chartis Companies pursuant to the terms and conditions of the Chartis Insurance Program and the Assumption Agreement, (B) shall be paid by and enforceable against the Transferee in the ordinary course of business after the Effective Date pursuant to and in accordance with the terms and conditions of the Chartis Insurance Program, (C) shall not be discharged, impaired or released by this Plan, the

7

Confirmation Order, or any other Order of the Bankruptcy Court, and (D) shall be subject to all of the Debtor's, the Transferee's and the Chartis Companies' rights, claims, defenses and remedies (including rights to arbitration) under the Chartis Insurance Program and applicable non-bankruptcy law; (v) nothing in this Plan or the Confirmation Order shall be construed as, or is, a determination as to coverage under the Chartis Insurance Program and all rights of the Debtor, the Transferee, and the Chartis Companies shall be preserved to seek or contest such coverage, as applicable; and (vi) except to the extent (if any) provided in the Assumption Agreement, nothing in this Plan or the Confirmation Order in any way (A) precludes or limits the rights of the Chartis Companies, the Liquidating Debtor, or the Transferee to contest and/or litigate with any Person, including, without limitation, the Liquidating Debtor, the Transferee, or the Chartis Companies, as applicable, the existence, primacy and/or scope of available coverage under any alleged applicable policy under the Chartis Insurance Program; (B) alters the Debtor's, the Transferee's, and the Chartis Companies' rights and obligations under the Chartis Insurance Program or modifies the coverage provided thereunder; or (C) alters the rights and obligations of the Debtor and the Transferee under the Chartis Insurance Program, including, without limitation, any duty to defend, at their own expense, against claims asserted under the Chartis Insurance Program.

8.6    *Westchester Insurance Program.*

Notwithstanding anything to the contrary in this Plan, the Disclosure Statement, the Confirmation Order or any other Order of the Bankruptcy Court (including, without limitation, any other provision that (i) purports to be preemptory or supervening or grants an injunction or release or (ii) provides for a bar date for Administrative Expense Claims or requires a creditor to file an objection or assert a Cure claim), on the Effective Date:

(a)    Subject to the satisfaction of all of the conditions set forth in Section 8.6(b) below, (i) the Debtor is hereby authorized to assume, pursuant to 11 U.S.C. §§ 105, 363, 365 and 1123(b)(2), the Westchester Insurance Program; and (ii) the Debtor is hereby authorized to assign the Westchester Insurance Program to the Transferee and to enter into the Westchester Assumption Agreement (as defined in Section 8.6(b) below).

(b)    The assignment of the Westchester Insurance Program shall not be effective unless and until the Debtor and the Transferee have satisfied all of the following conditions precedent to such assignment:  (i) Westchester shall have consented in writing to the assignment of the Westchester Insurance Program to the Transferee; (ii) the Transferee, the Debtor and Westchester shall have executed an assumption agreement, in form and substance satisfactory to Westchester, including, to the extent necessary, the agreement, consent or affirmation of other Persons (the "Westchester Assumption Agreement"); (iii) the Transferee shall have provided Westchester with financial, underwriting and other information, satisfactory to Westchester; and (iv) the Transferee shall have satisfied Westchester's credit and underwriting requirements, as Westchester shall determine in its sole discretion.

(c)    Upon satisfaction of the conditions set forth in Section 8.6(b) above: (i) the Westchester Insurance Program shall be deemed to be included as part of the Transferred Property; (ii) the Transferee shall assume and perform all liabilities of the Debtor under the Westchester Insurance Program arising at any time (whether arising before or after the Effective

Date), (iii) upon the assumption and assignment of the Westchester Insurance Program to the Transferee, the Liquidating Debtor will cooperate with Westchester in providing information reasonably necessary for premium audits or claims handling under the Westchester Insurance Program and all right, title and interest of the Debtor and the Liquidating Debtor in the Westchester Insurance Program shall terminate; (iv) Westchester 's claims under the Westchester Insurance Program and the claims arising thereunder whether arising before or after the Effective Date (A) shall be paid by and enforceable against the Transferee in the ordinary course of business after the Effective Date pursuant to and in accordance with the terms and conditions of the Westchester Insurance Program, (B) shall not be discharged, impaired or released by this Plan, the Confirmation Order, or any other Order of the Bankruptcy Court, and (C) shall be subject to all of the Debtor's, the Transferee's and Westchester's rights, claims, defenses and remedies (including rights to arbitration) under the Westchester Insurance Program and applicable non-bankruptcy law; (v) nothing in this Plan or the Confirmation Order shall be construed as, or is, a determination as to coverage under the Westchester Insurance Program and all rights of the Debtor, the Transferee, and Westchester shall be preserved to seek or contest such coverage, as applicable; and (vi) except to the extent (if any) provided in the Westchester Assumption Agreement, nothing in this Plan or the Confirmation Order in any way (A) precludes or limits the rights of Westchester, the Liquidating Debtor, or the Transferee to contest and/or litigate with any Person, including, without limitation, the Liquidating Debtor, the Transferee, or Westchester, as applicable, the existence, primacy and/or scope of available coverage under any alleged applicable policy under the Westchester Insurance Program; (B) alters the Debtor's, the Transferee's, and Westchester 's rights and obligations under the Westchester Insurance Program or modifies the coverage provided thereunder; or (C) alters the rights and obligations of the Debtor and the Transferee under the Westchester Insurance Program, including, without limitation, any duty to defend, at their own expense, against claims asserted under the Westchester Insurance Program.

* * *

G.    **Amended Schedule A to Plan**.

Attached to this Plan Modification as Amended Schedule A is a replacement schedule of the Allowed General Unsecured Claims referenced in Section 4.7 of the Plan, which replaces in its entirety the Schedule A originally attached to the Plan.

H.    **Amended Exhibit 3 to Disclosure Statement**.

Attached to this Plan Modification as Amended Exhibit 3 is an updated list of Transferred Causes of Action which the Debtor is transferring to the Plan Administrator and the Transferee on the Effective Date.

Dated: October 27, 2010

**I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualification to practice in this Court set forth in Local Rule 2090-1(A).**

BILZIN    SUMBERG    BAENA    PRICE    &
AXELROD LLP
*Local Counsel for the Debtor*
1450 Brickell Avenue, Suite 2300
Miami, FL 33131
Telephone:    (305) 374-7580
Facsimile:    (305) 375-7593


By:    /s/ Mindy A. Mora
       Mindy A. Mora
       Florida Bar No. 678910
       mmora@bilzin.com
       Tara V. Trevorrow
       Florida Bar No. 30959
       ttrevorrow@bilzin.com
and

KASOWITZ, BENSON, TORRES & FRIEDMAN
LLP
*Counsel for the Debtor*
1633 Broadway
New York, New York 10019
Telephone:    (212) 506-1700
Facsimile:    (212) 506-1800
Andrew K. Glenn *(pro hac vice)*
New York Bar No. 2767374
Jeffrey R. Gleit *(pro hac vice)*
New York Bar No. 3928371

## AMENDED SCHEDULE A

**CABI DOWNTOWN, LLC**
Case No. 09-27168  Bar Date: 12/16/2009 and  Gov't Bar Date: 2/16/2010

Schedule A -- Unsecured Non-Priority Claims

| CREDITORS | Address 1 | Address 2 | City | State | Zip Code | Claim No. | Scheduled Amount | Filed Proof of Claims Amount | Anticipated Amount Subject To Dispute | Comments | Objection to Claim to be Filed | Status of Objection | Allowed Amount of Claim as of Effective Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A T & T | PO Box 105262 | | Atlanta | GA | 30348 | | $ 170.30 | | | | | | $170.30 |
| Ameris Best Home Inc. | 1861 NE 146th Street | | North Miami | FL | 33181 | | $ 1,670.00 | | | | | | $1,670.00 |
| Andres Leal | 8 SE 2nd Ave | Apt. #801 | Miami | FL | 33131 | | $ 1,360.00 | | | Paid in full, no claim against the estate | *** | Amended schedule filed September 3, 2010 | $0.00 |
| Antonio & Associates Realty Investments, LLC | 100 South Pine Island Road | | Plantation | FL | 33324 | | $ 8,583.33 | | | | | | $8,583.33 |
| AON Risk Service | AON Risk Service 75 Remittance Drive | Suite #1943 | Chicago | IL | 60675 | 416 | $ 936,859.75 | $ 178,892.54 | | Note: Filed POC **less than** scheduled amount because other insurers filed claims e.g. Arch, Chartis, RLI | | | $178,892.54 |
| Arch Specialty Ins. Group | c/o Melissa Gilligan, Esq. 300 First Stamford Place | 5th Floor | Stanford | CT | 6902 | 64 | | $ 23,025.00 | | Not scheduled; part of AON scheduled claim. First POC alleged "additional amounts" and was filed as both secured and unsecured. Amended POC to be filed solely in the amount of $23,025 (general unsecured claim). | | | $23,025.00 |
| ATC International, Inc. | 1270 N.W. 165th St. | Suite 100 | Miami | FL | 33169 | 1 | $ 19,857.59 | $ 35,004.31 | $ 15,146.72 | Motion to assume contract granted; cure amount to be paid | | | $0.00 |
| Attwood Phillips, Inc | 2870 Scherer Drive | Suite 100 | St. Petersburg | FL | 33716 | | $ 297.00 | | | | | | $297.00 |
| B J & S Blinds,Inc | 5201 NW 50TH AVENUE | | Ft. Lauderdale | FL | 33319 | | $ 278.20 | | | | | | $278.20 |
| Berman Rennert Vogel & Mandler, P.A. | c/o Thomas S. Ward 100 SE 2nd St | Suite 2900 | Miami | FL | 33131 | 29 | $ 42,417.45 | $ 42,417.45 | | | | | $42,417.45 |
| Bravo, Alma Yolanda | 111 NE 2nd Avenue | #903 | Miami | FL | 33132 | | $ 230.00 | | | Paid in full, no claim against the estate | *** | Amended schedule filed September 3, 2010 | $0.00 |
| Brightway Properties | 2875 NE 191st Street | PH2 | Aventura | FL | 33180 | | $ 2,000.00 | | | | | | $2,000.00 |
| Cailis Mechanical Corp. | 12349 SW 53rd Street | | Cooper City | FL | 33330 | | $ 960.00 | | | | | | $960.00 |
| Century 21 Oceanfront Realty | 800 East Hallandale Beach Blvd | | Hallandale Beach | FL | 33009 | | $ 5,383.33 | | | | | | $5,383.33 |
| Century 21 United Properties | 2625 Executive Park Drive | #5 | Weston | FL | 33331 | | $ 9,483.33 | | | | | | $9,483.33 |
| Century 21 United TRG | 2895 B. Collins Ave. | | Miami | FL | 33140 | | $ 7,200.00 | | | | | | $7,200.00 |
| Cervera Realty Estate | 1492 South Miami Avenue | | Miami | FL | 33130 | | $ 5,516.67 | | | | | | $5,516.67 |
| Chartis Companies | c/o Michelle Levitt 175 Water Street | 18th Floor | New York | NY | 10038 | 96 | | $ 278,366.00 | $ - | | | | $278,366.00 |

*** The Debtor reserves the right to amend or supplement this Schedule ***

**CABI DOWNTOWN, LLC**
Case No. 09-27168  Bar Date: 12/16/2009 and  Gov't Bar Date: 2/16/2010

Schedule A -- Unsecured Non-Priority Claims

| CREDITORS | Address 1 | Address 2 | City | State | Zip Code | Claim No. | Scheduled Amount | Filed Proof of Claims Amount | Anticipated Amount Subject To Dispute | Comments | Objection to Claim to be Filed | Status of Objection | Allowed Amount of Claim as of Effective Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CIT Technology Financing Services, Inc. | 800 E. Sonterr Blvd. | Suite 240 | San Antonio | TX | 78258 | 42 | $ 9,743.50 | $ 62,269.09 | $ 52,525.59 | POC filed in excess of scheduled amount and attaches documentation for wrong entity; no claim against the estate.  Claim objection to be filed. | *** | Amended order sustaining objection entered October 25, 2010 | $0.00 |
| Crime Prevention Protective Services, Inc. | c/o Militzok & Levy, PA 3230 Stirling Road | Suite #1 | Hollywood | FL | 33021 | 391 | $ 97,828.00 | $ 103,000.00 | $ 5,172.00 | Filed POC in excess of scheduled amount; settled with claimant with claim against Cabi withdrawn | | | $0.00 |
| Cuba, Roberto | 3637 SW 23rd Street | | Miami | FL | 33145 | | $ 960.00 | | | Paid in full, no claim against the estate | *** | Amended schedule filed September 3, 2010 | $0.00 |
| D H L | PO Box #27790 | | Atlanta | GA | 30384 | | $ 3,659.16 | | | | | | $3,659.16 |
| D'Caires Design Group | 2640 s.W. 28th Lane | | Miami | FL | 33133 | | $49,946.10 | | | | | | $49,946.10 |
| Delta/Omni Bus Solutions | 2870 Harper Road | | Melbourne | FL | 32904 | | $ 751.10 | | | | | | $751.10 |
| Denegri, Giorgio | | | | | | | $ 716.62 | | | Paid in full, no claim against the estate | *** | Amended schedule filed September 3, 2010 | $0.00 |
| Estevez, Esther | 571 East 34th Street | | Hialeah | FL | 33013 | | $ 800.00 | | | Paid in full, no claim against the estate | *** | Amended schedule filed September 3, 2010 | $0.00 |
| Everglades On The Bay North | 244 Biscayne Blvd. | | Miami | FL | 33132 | | $ 72,014.57 | | $ 72,014.57 | Claim to be withdrawn by claimant. | | | $0.00 |
| Everglades On The Bay South | 253 NE 2nd Street | | Miami | FL | 33132 | | $ 498.00 | | $ 498.00 | Claim to be withdrawn by claimant. | | | $0.00 |
| EWM Weston Branch | c/o Revenue Recovery 3965 Airways blvd | Module G 3rd Floor | Memphis | TN | 38116 | | $ 66.67 | | | | | | $66.67 |
| Fedex (Customer Info Service) | 3910 Keswick Road | | Baltimore | MD | 21212 | 58 | $ 701.06 | $ 503.03 | | | | | $503.03 |
| Florida Engineering Services | 34 NW 168th Street | | North Miami | FL | 33169 | 91 | $ 11,245.00 | $ 11,245.00 | | | | | $11,245.00 |
| Florida Power & Light | FPL General Mail Facility | | Miami | FL | 33188 | 428 | $ 20,000.00 | $24,337.46 | $4,337.46 | Filed POC in excess of scheduled amount; excess amount not significant | | | $24,337.46 |

*** The Debtor reserves the right to amend or supplement this Schedule ***

**CABI DOWNTOWN, LLC**
Case No. 09-27168  Bar Date: 12/16/2009 and  Gov't Bar Date: 2/16/2010

Schedule A -- Unsecured Non-Priority Claims

| CREDITORS | Address 1 | Address 2 | City | State | Zip Code | Claim No. | Scheduled Amount | Filed Proof of Claims Amount | Anticipated Amount Subject To Dispute | Comments | Objection to Claim to be Filed | Status of Objection | Allowed Amount of Claim as of Effective Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Contact and Mailing Address | | | | | | | | | | | |
| Florida Real Estate of Miami | 8777 Collins Avenue | Apt #1203 | Surfside | FL | 33154 | | $ 14,416.67 | $ 14,416.00 | | | | | $14,416.00 |
| Fullerton-Diaz Architects | 366 Altara Avenue | | Coral Gables | FL | 33146 | 412 | $ 254,554.90 | $ 611,237.89 | $ 611,237.89 | To be adjusted to $326,000.00 per July 20, 2010 hearing Transcript, Page 18 | | | $326,000.00 |
| Greenberg Traurig P.A | 1221 Brickell Avenue | | Miami | FL | 33131 | | $ 19,519.81 | | | | | | $19,519.81 |
| Gryphon Construction LLC | Alex Barthet, Esq. 200 S. Biscayne Blvd. | Suite 1800 | Miami | FL | 33131 | 254 | | $ 917,210.13 | $ 917,210.12 | Filed POC in excess of scheduled amount and claim was marked as disputed on schedule;  POC is being amended to correct amount of claim | | | $910,907.26 |
| Hernandez, Hector M | 3320 SW 79th Avenue | | Miami | FL | 33155 | | $ 186.72 | | | Paid in full, no claim against the estate | *** | Amended schedule filed September 3, 2010 | $0.00 |
| Holland & Knight | PO Box #32092 | | Lakeland | FL | 32092 | | $ 87,903.74 | | | | | | $87,903.74 |
| Holly Sime Realty of Miami,Inc | Ronald G. Neiwirth, Esq. 1395 Brickell Ave | 14th Floor | Miami | FL | 33131 | 373 | $ 193,750.00 | $ 193,750.00 | | | | | $193,750.00 |
| Inspection & Valuation Int | 106 Corporate Park Drive | Suite #417 | White Plains | NY | 10604 | | $ 3,263.87 | | | | | | $3,263.87 |
| Interinvestments Realty | 730 NW 107th Avenue | #120 | Miami | FL | 33172 | | $ 7,833.33 | | | | | | $7,833.33 |
| Kaderaek Company | 9565 N.W. 140 Street Road | | Miami | FL | 33132 | | $ 725.00 | | | | | | $725.00 |
| Landstar Realty | 1110 Ansley Avenue SW | | Vero Beach | FL | 32968 | | $ 7,166.67 | | | | | | $7,166.67 |
| Lending Bankers Mortgage LLC | 1 Oakwood Blvd | Suite #170 | Hollywood | FL | 33020 | | $ 1,042.50 | | | | | | $1,042.50 |
| Lily, Natoya, Tiffany | UNKNOWN | | | | | | $ 750.00 | | | Paid in full, no claim against the estate | *** | Amended schedule filed September 3, 2010 | $0.00 |
| Linares, Miguel Luis | UNKNOWN | | | | | | $ 780.00 | | | Paid in full, no claim against the estate | *** | Amended schedule filed September 3, 2010 | $0.00 |
| Lopez, Olga J. | 9302 NW 114th Terrace | | Hialeah | FL | 33018 | | $ 1,175.39 | | | Paid in full, no claim against the estate | *** | Amended schedule filed September 3, 2010 | $0.00 |
| Lorenzo, Ariadna Caridad | 991 East 17th Street | | Hialeah | FL | 33010 | | $ 780.00 | | | Paid in full, no claim against the estate | *** | Amended schedule filed September 3, 2010 | $0.00 |
| Media Solutions, Inc. | 999 Brickell Avenue | #1000 | Miami | FL | 33131 | | $ 1,000.00 | | | | | | $1,000.00 |

*** The Debtor reserves the right to amend or supplement this Schedule ***

**CABI DOWNTOWN, LLC**
Case No. 09-27168   Bar Date: 12/16/2009 and  Gov't Bar Date: 2/16/2010

Schedule A -- Unsecured Non-Priority Claims

| CREDITORS | Address 1 | Address 2 | City | State | Zip Code | Claim No. | Scheduled Amount | Filed Proof of Claims Amount | Anticipated Amount Subject To Dispute | Comments | Objection to Claim to be Filed | Status of Objection | Allowed Amount of Claim as of Effective Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mojena, Niurca | 571 East 34th Street | | Hialeah | FL | 33013 | | $ 820.00 | | | Paid in full, no claim against the estate | *** | Amended schedule filed September 3, 2010 | $0.00 |
| Objective Group Corp. | 225 NE 23rd Street | Suite #1301 | Miami | FL | 33137 | | $ 214.00 | | | | | | $214.00 |
| O'Brien Lighting | 2601 S. Bayshore Drive | Suite 245 | Coconut Grove | FL | 33133 | | $ 95,649.45 | | | | | | $95,649.45 |
| Osorio, Hilda M. | 670 NW 6th Street | #1102 | Miami | FL | 33136 | | $ 460.00 | | | Paid in full, no claim against the estate | *** | Amended schedule filed September 3, 2010 | $0.00 |
| PAETEC | 600 Willow Brook Office Park | | Fairport | NY | 14450 | | $ 15,747.55 | | | | | | $15,747.55 |
| Pitney Bowes Global Financial | 1 Elmcroft Road | | Stamford | CT | 6926 | | $ 2,960.30 | | | | | | $2,960.30 |
| Pitney Bowes Purchase Power | 1245 East Brickyard Road | Suite #250 | Salt Lake City | UT | 84106 | | $ 5,276.82 | | | | | | $5,276.82 |
| Pitney Bowes, Inc. | 27 Waterview Dr | | Shelton | CT | 6484 | 54 | | $ 1,476.48 | $ 1,476.48 | Not scheduled; amount insignificant | | | $1,476.48 |
| Pitney Bowes, Inc. | 27 Waterview Dr | | Shelton | CT | 6484 | 426 | | $ 5,150.02 | | Late filed claim; objection to be filed | *** | Objection filed October 5, 2010 | $0.00 |
| Print it of South Florida | 1351 Shotgun Road | | Weston | FL | 33326 | | $ 3,162.38 | | | | | | $3,162.38 |
| R.C. Aluminum Industries,Inc, | 2805 NW 75th Avenue | | Miami | FL | 33156 | | $ 3,191.81 | | | | | | $3,191.81 |
| R & J Painters | 775 NE 40th Street | | Oakland Park | Fl | 33334 | 423 | $ 1,615.00 | $ 14,334.00 | | | | | $14,334.00 |
| RLI Insurance | c/o James Jorgernsen 9025 N. Lindbergh Drive | | Peoria | IL | 61615 | 97 | | $ 20,467.00 | $ 20,467.00 | Not scheduled; amount insignificant | | | $20,467.00 |
| Rodriguez, Andres A. | 20000 NE 21st Avenue | | Miami | FL | 33179 | | $ 630.00 | | | Paid in full, no claim against the estate | *** | Amended schedule filed September 3, 2010 | $0.00 |
| Rodriguez, Eduardo | 955 SW 29th  Avenue | Apt. #3 | Miami | FL | 33135 | | $ 780.00 | | | Paid in full, no claim against the estate | *** | Amended schedule filed September 3, 2010 | $0.00 |
| Royce Parking Control | 2411 SW 58th Street | | Hollywood | FL | 33023 | 40 | | $ 1,120.34 | $ 1,120.34 | Claim paid in full by HOA; object to claim | *** | Objection filed October 5, 2010 | $0.00 |
| Royce Parking Control | 2411 SW 58th Street | | Hollywood | FL | 33023 | 41 | | $ 760.63 | $ 760.63 | Claim paid in full by HOA; object to claim | *** | Objection filed October 5, 2010 | $0.00 |
| Siegfried Rivera Lerner, De La Torre | Siegfried Rivera 201 Alhambra Circle | Suite 1102 | Coral Gables | FL | 33134 | 69 | $ 510,572.91 | $ 652,707.70 | $ 652,707.70 | To be adjusted to $400,000.00 per July 20, 2010 hearing Transcript, Page 17 | | | $400,000.00 |

*** The Debtor reserves the right to amend or supplement this Schedule ***

**CABI DOWNTOWN, LLC**
Case No. 09-27168  Bar Date: 12/16/2009 and  Gov't Bar Date: 2/16/2010

Schedule A -- Unsecured Non-Priority Claims

| CREDITORS | Address 1 | Address 2 | City | State | Zip Code | Claim No. | Scheduled Amount | Filed Proof of Claims Amount | Anticipated Amount Subject To Dispute | Comments | Objection to Claim to be Filed | Status of Objection | Allowed Amount of Claim as of Effective Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | **Contact and Mailing Address** | | | | | | | | | | |
| Sign-A-Rama | 2650 NE 2nd Avenue | | Miami | FL | 33137 | | $ 3,000.00 | | | Service was cancelled and Creditor did not complete balance of service contracted for | *** | Objection filed October 5, 2010 | $0.00 |
| Signs for You Inc. | 2401 NW 34th Ave | | Miami | FL | 33142 | 65 | $ 18,492.15 | $ 19,992.15 | $ 1,500.00 | Filed POC in excess of scheduled amount; excess amount not significant | | | $19,992.15 |
| SimplexGrinnell | SimplexGrinnell ATTN: Bankrupcy 50 Technology Dr. | | Westminster | MA | 1441 | 395 | | $ 1,581.00 | $ 1,581.00 | Not scheduled; amount insignificant | | | $1,581.00 |
| Southern Painting, Inc | 10172 NW 47th Street | | Sunrise | FL | 33351 | | $ 2,850.00 | | | | | | $2,850.00 |
| Tinsley Advertising | 2660 Brickell Avenue | | Miami | FL | 33129 | 6 | $ 9,579.67 | $ 9,579.67 | | | | | $9,579.67 |
| T-Square Express | 998 West Flagler Street | | Miami | FL | 33101 | 79 | $ 517.86 | $ 25,132.98 | $ 24,615.12 | Filed POC in excess of scheduled amount; only amount applicable to debtor per POC is $5,681.32. Object to balance of claim. | *** | Order sustaining objection entered October 13, 2010 | $5,681.32 |
| Turnkey Designs of Miami, Inc. | 2119 Coral Way | | Miami | FL | 33145 | | $ 2,418.75 | | | | | | $2,418.75 |
| UIC, Inc | PO Box #491 | | Mahwah | NJ | 7430 | | $ 41,200.00 | | | | | | $41,200.00 |
| Valdes, Jaciel Cabrera | 12365 SW 18th Street | B-108 | Miami | FL | 33175 | | $ 780.00 | | | Paid in full, no claim against the estate | *** | Amended schedule filed September 3, 2010 | $0.00 |
| W.G Yates & Sons Construction Company | Gary L. Blum, Esq.  [Becker & Poliakoff] 3111 Stirling Rd | | Ft. Lauderdale | FL | 33312 | 406 | | $ 1,424,715.70 | $ 1,424,715.70 | To be waived pursuant to settlement | | | $0.00 |
| Water Studio, Inc | 5681 Selmaraine Drive | | Culver City | CA | 90230 | | $ 31,490.00 | $ 31,490.00 | | | | | $31,490.00 |
| Wood Business Systems, Inc. | 5350 N.W. 35th Terrace | Suite 101 | Ft. Lauderdale | FL | 33309 | | $ 460.50 | | | | | | $460.50 |
| Zephyrhills Water | PO Box# 856680 | | Louisville | KY | 40285 | | $ 63.32 | $ 63.32 | | | | | $63.32 |
| TOTALS | | | | | | | $2,657,977.80 | $ 4,704,244.89 | $ 3,807,086.32 | | | | $2,906,076.35 |

## <u>AMENDED EXHIBIT 3</u>

The Debtor shall retain all of the Debtor's claims, rights, defenses, counterclaims, and causes of action against third parties, including, but not limited to, all litigation relating to the Customer Deposit Claims, and any other litigation initiated or to be initiated by or on behalf of the Debtor.  Pursuant to the Plan, all of these claims, rights, defenses, counterclaims, and causes of action, are assigned as follows:

   I.   <u>Transferred Claims and Causes of Action to Be Transferred to Plan Administrator</u>

The term "Transferred Causes of Action" described in Article I of the Plan includes, but is not limited to, the claims, rights, defenses, counterclaims, and causes of action arising from or related to Customer Deposit Claims, claims arising from executory contracts and unexpired leases, and claims and causes of action arising from or related to objections to claims, but does not include (i) warranty claims and other claims, as described in the Plan and Section II of this Exhibit, and (ii) any Abandoned Causes of Action, as described in the Plan and Section III of this Exhibit.

For the avoidance of doubt, all litigation involving Holders of Customer Deposit Claims, including, but not limited to, all pending objections and Adversary Proceeding Numbers 09-02100, 09-02183, 09-02195, 09-02383, 10-02713, 10-02772, 10-02823, and 10-02963, shall be retained by the Debtor and prosecuted or defended, as applicable, by the Plan Administrator.

All litigation involving unresolved or potential claims objections shall also be transferred to the Plan Administrator.

  II.   <u>Transferred Claims and Causes of Action to Be Transferred to the Transferee</u>

Warranty Claims, all claims and causes of action arising under or related to any pending insurance policy held by the Debtor as of the Confirmation Date, and all claims and causes of action arising from or relating to DP Program Agreements (as defined in the Plan) shall be transferred to the Transferee.

Claims and causes of action arising under or related to the Chartis Insurance Program include, but are not limited to, claims against the Chartis Companies (as defined in the Plan Modification), and Westchester Fire Insurance Company.

The term "Warranty Claims" as described in the Plan, includes, but is not limited to, any and all claims, rights, defenses, counterclaims, and causes of action relating to or arising from the construction of Everglades, whether such warranties are express or implied, and regardless of whether such warranties arise by contract or by statute.

As part of the construction of Everglades, the Debtor entered into a construction agreement with Yates.  Yates subsequently subcontracted with multiple subcontractors (each, a "Subcontractor") as part of the construction process.  The various Subcontractors have issued,

should issue, or are anticipated to issue, upon completion of each Subcontractor's services related to Everglades and/or upon provision of materials to Yates or the Debtor for the construction of Everglades, various warranties with respect to the labor and materials employed in the construction of Everglades. The Debtor retains all rights and remedies relating to, arising from, or accruing pursuant to all available theories of warranty for such labor and/or materials supplied in the construction of Everglades by any Subcontractor, whether such warranties are express or implied, and regardless of whether such warranties arise by contract or by statute. A partial list of the Subcontractors is as follows:

> Nagelbush Mechanical, Inc.
> Edwards Electric
> Wilkinson Hi-Rise
> Innovative Stone (a.k.a Innovative Marble & Tile)
> Bostic Steel, Inc.
> G.C. Zarnas and Co.
> Deck-Tight
> M.Ecker
> Art Pavers and Stone
> Opler Carpet
> Vila & Son Landscaping
> Sun Deck
> Atlanta Commercial Flooring
> Atlass Hardware
> Krama Construction, Inc.
> Snaidero
> RC Aluminum
> Yates Masonry
> ThyssenKrupp Elevator
> Pro-Tech Caulking & Waterproofing
> Dillon Pools
> Pro-Bel USA Safety Systems
> HD Emergency Services, Inc.
> Wilbur Enterprises, Inc.
> Nachon Enterprises, Inc.
> Tremron Miami Inc.
> Executive Drywall, Inc.
> Designer's Specialty Cabinet Co.
> Coastal Construction Products, Inc.
> Applegate USA, Inc. d/b/a/ United Sheet Metal Company
> YB Construction, Inc.
> Paradise Awnings Corp.
> Technical Systems & Equipment Corp.
> American Overhead Doors
> Caylex Architectural Fabrication Corp.
> CP Services, Inc.
> Giber, Inc.

Gryphon Construction, LLC.
Roberts Traffic Corp.
Simplex Grinnell
Spray Works
Tip Top Constructors, Inc.
Whirlpool Corporation
WHR Holdings, LLC
Coastal Construction Products
Munters Corporation
Florida Blacktop
Mora & Ortiz
Tip Top Construction

III.  Causes of Action to be Abandoned

The Debtor's Estate shall abandon all claims and causes of action of the Debtor against third parties arising under Chapter 5 of the Bankruptcy Code, or arising under related federal or state statutes or common law, including fraudulent conveyance laws (the "Abandoned Causes of Action").  For the avoidance of doubt, the term "Abandoned Causes of Action" includes only those causes of action generally referred to as "preference" or "avoidance" actions and does not include all other pending or prospective litigation involving Cabi or the Debtor, and does not include any Transferred Causes of Action.

As of August 27, 2010, the only known Abandoned Cause of Action is a preference action against Siegfried, Rivera, Lerner, De La Torre, & Sobel, P.A., in its capacity as prepetition counsel to the Debtor.