

**ORDERED in the Southern District of Florida on November 05, 2010.**

Laurel M. Isicoff, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

CABI DOWNTOWN LLC,[1]

       Debtor.

_____/

Case No. 09-27168-BKC-LMI

Chapter 11

**ORDER CONFIRMING FIFTH AMENDED PLAN OF LIQUIDATION, AS MODIFIED,**
**ESTABLISHING BAR DATE FOR FILING REJECTION DAMAGE CLAIMS, AND**
**SETTING POST-CONFIRMATION STATUS HEARING**

THIS MATTER came before the Court on October 27, 2010 at 2:45 p.m. (the

"Confirmation Hearing") to consider confirmation of the Fifth Amended Plan of Liquidation

[ECF No. 856] (the "Plan"),[2] proposed by the above-captioned debtor and debtor-in-possession

---

[1]     The Debtor's current mailing address is 19950 W. Country Club Dr., Suite 900, Aventura, FL 33180. The last four digits of the Debtor's tax identification number are [0838].

[2]     Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Plan.

MIAMI 2299829

(the "<u>Debtor</u>" or the "<u>Plan Proponent</u>"), as supplemented, amended, revised, and clarified by this order (the "<u>Confirmation Order</u>"), the Modification to the Plan (the "<u>Plan Modification</u>") [ECF No. 1148], and the Agreed Order Adjourning Confirmation Hearing to October 27, 2010 at 2:45 p.m. (the "<u>Adjournment Order</u>") [ECF No. 1096].

Prior to the Confirmation Hearing, the Court entered an Order [ECF No. 776] (the "<u>Order Approving Disclosure Statement</u>") approving the *Disclosure Statement Relating to the Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [ECF No. 857] (together with all exhibits and schedules thereto, the "<u>Disclosure Statement</u>") and scheduling the Confirmation Hearing on September 2, 2010. At the hearing on the Disclosure Statement, held on July 20, 2010 (the "<u>Disclosure Statement Hearing</u>"), the Court found, *inter alia*, that the Disclosure Statement, as described to the Court by counsel to the Debtor and subsequently amended pursuant to such description, contained adequate information under 11 U.S.C. § 1125(a). The terms and provisions of the Order Approving Disclosure Statement are incorporated herein by reference as if fully stated in this Confirmation Order.

In connection with the Disclosure Statement and the Plan, the Court subsequently entered an amended order approving the Disclosure Statement [ECF No. 826] (the "<u>Amended Disclosure Statement Order</u>"), which rescheduled the Confirmation Hearing to October 7, 2010 and also rescheduled other associated deadlines. The Confirmation Hearing was adjourned to October 27, 2010, pursuant to the terms of the Adjournment Order.

In connection with the confirmation of the Plan, the Court reviewed (i) the *Certificate of Proponent of Plan on Acceptance of Plan, Report on Amount to be Deposited, Certificate of Amount Deposited and Payment of Fees* [ECF Nos. 1078, 1080, and 1137] (as subsequently revised or amended, the "<u>Plan Proponent's Report</u>"), and (ii) the Confirmation

Affidavit [ECF No. 1079].  The Court also (i) reviewed the entire record in this proceeding, including the Plan, (ii) considered the proffer of evidence from Debtor's counsel, and (iii) heard argument of counsel.

The Court also reviewed and considered (i) the *Limited Objection of Holiday CVS, LLC to Confirmation of Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [ECF No. 907] (the "CVS Limited Objection"), (ii) *KMH Rockstars, LLC's Limited Objection to Confirmation of the Debtor's Fifth Amended Plan of Liquidation* [ECF No. 1025] (the "KMH Limited Objection"), (iii) the *United States Trustee's Limited Objections to Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [ECF No. 1053 & 1058] (the "UST Limited Objection"), and (iv) the *Limited Objection of Chartis to Confirmation of Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [ECF No. 1126] (the "Chartis Limited Objection", and together with the CVS Limited Objection, the KMH Limited Objection, and the UST Limited Objection, the "Objections").  No other objections to confirmation of the Plan were filed with the Court or made at the Confirmation Hearing.

Based upon the Plan, the Plan Modification, the Disclosure Statement, the Order Approving Disclosure Statement, the Amended Disclosure Statement Order, the Plan Proponent's Report, the Confirmation Affidavit, the Adjournment Order, the arguments and representations of counsel at the Confirmation Hearing, the record of this Case, and the record of the Confirmation Hearing, all of which is incorporated herein by reference as if fully stated in this Confirmation Order, this Court determines that the Plan satisfies the applicable provisions of the Bankruptcy Code and should be confirmed.  Based upon the above, the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court makes these findings of fact and conclusions of law (the "Findings of Fact and Conclusions of Law") under Bankruptcy Rules 7052 and 9014. Any finding of fact constitutes a finding of fact even if it is stated as a conclusion of law, and any conclusion of law constitutes a conclusion of law even if it is stated as a finding of fact.

A.      Defined Terms. Unless otherwise defined in this Confirmation Order, each capitalized term used in this Confirmation Order shall have the definition ascribed to such term in the Plan. If a capitalized term is not defined in either this Confirmation Order or the Plan, then it has the meaning ascribed to such term in the Bankruptcy Code or Bankruptcy Rules. If there is any direct conflict between the terms of the Plan and the terms of this Confirmation Order, then the terms of this Confirmation Order shall govern.

B.      Notice. Adequate and sufficient notice of the Confirmation Hearing for the Plan and the deadline to file objections to confirmation of the Plan was provided to all creditors, equity interest holders, and other parties in interest in this Case, pursuant to and in accordance with the Order Approving Disclosure Statement, the Amended Disclosure Statement Order, and the Adjournment Order.

C.      Jurisdiction and Venue. This Court has jurisdiction pursuant to 11 U.S.C. §§ 105, 1123, 1128, and 1129, and 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      Commencement of the Debtor's Chapter 11 Case. On August 18, 2009, the above-captioned Debtor commenced the Case under Chapter 11 of the Bankruptcy Code. The Debtor has operated its business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee has been appointed.

E.    <u>Official Committee of Unsecured Creditors</u>.  On September 2, 2009, the United States Trustee appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "<u>Committee</u>").

F.    <u>Judicial Notice</u>. The Court takes judicial notice of the docket, including all pleadings and filed documents, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court.

G.    <u>Burden of Proof</u>.  The Debtor has met its burden of proving the elements of section 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

H.    <u>Resolution of Objections</u>.  As presented at the Confirmation Hearing and as provided herein, the consensual resolutions of certain Objections satisfy all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules and are in the best interests of the Debtor and are hereby approved. All Objections that were not resolved by agreement at the Confirmation Hearing are hereby overruled, except for the KMH Limited Objection, which is preserved by agreement for resolution at a later evidentiary hearing.

I.    <u>Solicitation and Voting</u>.  Each of the Order Approving Disclosure Statement and the Amended Disclosure Statement Order approved the Disclosure Statement and found that it contained "adequate information" within the meaning of section 1125 of the Bankruptcy Code. The procedures by which ballots for voting upon the Plan were received and tabulated were fair, properly conducted, and in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules for the United States Bankruptcy Court for the Southern District of Florida (the "<u>Local Rules</u>"), and any applicable Orders entered by this Court in this Case.  Based upon the record before the Court, solicitation of acceptances of the Plan by the Debtor was in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and the Debtor is

entitled to the protections afforded by 11 U.S.C. 1125(e).

J.    <u>Modification of Plan</u>.  The Plan is hereby modified as described in the Plan Modification.   Pursuant to section 1127(a) of the Bankruptcy Code, the Plan Modification is hereby made a part of the Plan.  The filing of and the description of the Plan Modification on the record at the Confirmation Hearing constitutes due and sufficient notice thereof.  The Plan, as modified by the Plan Modification, constitutes the "Plan" as confirmed and reference to the Plan shall include reference to the Plan Modification.  The modifications to the Plan reflected in the Plan Modification are either (i) immaterial and do not adversely affect the treatment of any Claim against or Equity Interest in the Debtor under the Plan, or (ii) the adversely affected parties have consented to the applicable modifications.  Therefore, in accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims who voted to accept the Plan, or who are conclusively presumed to have accepted the Plan, are deemed to have accepted the Plan, as modified by the Plan Modification.  No holder of a Claim or Equity Interest that has voted to accept the Plan shall be permitted to change its acceptance to a rejection as a consequence of the Plan Modification.  The Plan Modification does not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes on the Plan under section 1126 of the Bankruptcy Code.  The Plan Modification incorporated into the Plan complies with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

K.    <u>Satisfaction of Confirmation Requirements</u>.   The Plan satisfies 11 U.S.C. § 1129(a)(1) and all applicable provisions of the Bankruptcy Code, including, without limitation, 11 U.S.C. §§ 1122, 1123, and 1125.

(1)  <u>Proper Classification of Claims and Interests</u>.  The Plan satisfies 11 U.S.C. 1122(a) and § 1123(a)(1) because the Plan properly designates separate Classes of

Claims and Equity Interests, each of which contains only Claims or Equity Interests that are substantially similar to the other Claims or Equity Interests within that Class.

(2) <u>Specification of Unimpaired Classes</u>.   The Plan satisfies 11 U.S.C. § 1123(a)(2) because the Plan properly specifies Classes of Claims and Equity Interests that are not impaired under the Plan.

(3) <u>Specification of Treatment of Impaired Classes</u>.  The Plan satisfies 11 U.S.C. § 1123(a)(3) because the Plan specifies the treatment of each Class of Claims and Equity Interests that is impaired under the Plan, to the extent such Claims or Equity Interests are Allowed.

(4) <u>Equal Treatment Within Classes</u>.  The Plan satisfies 11 U.S.C. § 1123(a)(4) because the Plan provides the same treatment for each Claim or Equity Interest within a particular Class unless the claimant has agreed to a less favorable treatment of such Claim or Equity Interest.

(5) <u>Implementation of Plan</u>.  The Plan satisfies 11 U.S.C. § 1123(a)(5) because the Plan provides adequate means for its implementation.

(6) <u>Plan Proposed in Good Faith</u>.   The Plan satisfies 11 U.S.C. § 1129(a)(3) because the Plan was proposed in good faith and not by any means forbidden by law.  In determining that the Plan has been proposed in good faith, the Court has examined the totality of circumstances surrounding the filing of this Case and the formulation of the Plan.   The Case was filed with the legitimate and honest purpose of reorganizing the Debtor.   The Plan was filed with the legitimate and honest purpose of expeditiously resolving all Allowed Claims and Equity

Interests.  Further, the Plan is the product of arms' length negotiations between the Debtor, the major constituencies, and other parties in interest.

(7) <u>Payment for Services and Expenses</u>.    The Plan satisfies 11 U.S.C. § 1129(a)(4) because any payment made or to be made by the Debtor or the Plan Administrator has been approved by, or is subject to the approval of, this Court as reasonable.

(8) <u>Directors, Officers, and Insiders</u>.  The Plan satisfies 11 U.S.C. § 1129(a)(5) because the Debtor has proposed a liquidating Plan under which all of the Debtor's assets are being sold, the Debtor will be dissolving, there is no successor to the Debtor, and accordingly there is no need to provide the identity and affiliations of any individuals serving as a director or officer of the Debtor after confirmation of the Plan.

(9) <u>No Rate Changes</u>.  Bankruptcy Code § 1129(a)(6) is inapplicable because there is no governmental regulatory commission with jurisdiction over rates of the Debtor after the date of confirmation of the Plan (the "<u>Confirmation Date</u>").

(10) <u>Best Interests of Creditors Test</u>.  The Plan satisfies 11 U.S.C. § 1129(a)(7). The Court finds that the liquidation analysis attached as Exhibit 4 to the Disclosure Statement and other evidence proffered at the Confirmation Hearing, including the Confirmation Affidavit, (a) are persuasive and credible, (b) have not been controverted by other evidence, and (c) establish that each Holder of an impaired Claim or Equity Interest either (i) has accepted the Plan, or (ii) will receive, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive if

the Debtor were liquidated under Chapter 7 of the Bankruptcy Code. Specifically, the Court finds that if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code, Holders of General Unsecured Claims would not receive any distribution on account of such Claims.

(11) <u>Acceptance by Class</u>. Classes 1, 2, 3a and 3b are unimpaired and are deemed to accept the Plan. A majority in number and two-thirds of the amount in claims of Class 4 has accepted the Plan. Class 5a has voted to accept the Plan. A majority in number and two-thirds of the amount in claims of Class 5b has voted to accept the Plan. A majority in number and two-thirds of the amount in claims of Class 6a has voted to accept the Plan.

(12) <u>Best Interests of Non-Accepting and Non-Voting Classes</u>. Class 6b cannot vote as no such Claim exists as of the Confirmation Date. Class 7 is deemed to reject the Plan as Holders of Equity Interests will not receive a Distribution on account of such interest. No Holder of a Claim or Equity Interest that is junior to Classes 6b or 7 will receive any property under the Plan on account of such interest. Holders of Claims in Classes senior to these Classes are not receiving more than 100% of the Allowed amount of their respective Claims under the Plan on account of such interest.

(13) <u>Administrative Expense Claims</u>. The Plan satisfies the requirements of 11 U.S.C. § 1129(a)(9) because the Plan provides for the payment of all Allowed Administrative Expense Claims.

(14) <u>Priority Customer Deposit Claims</u>. The Plan satisfies the requirements of 11 U.S.C. § 1129(a)(9)(B) since non-tax priority claims of the type described in

§ 507(a)(7) are separately classified in Class 1 and shall be paid in full if such claims are deemed allowed, or have otherwise been waived by the Holders of such Claims pursuant to Option A or prior settlement of such Claims.  No claims of the types described in § 507(a)(1), (3), (4), (5), and (6) exist.

(15)  <u>Priority Tax Claims</u>.  The provisions of 11 U.S.C. U.S.C. § 1129(a)(9)(C) are deemed satisfied since any Claim of such type shall be paid in full pursuant to Section 2.5 of the Plan.

(16)  <u>Acceptance of at Least One Impaired Class</u>.  The Plan satisfies § 1129(a)(10) because Classes 4, 5a, 5b, and 6a, which are all impaired under the Plan, have all voted to accept the Plan.

(17)  <u>Liquidation</u>.  The Plan satisfies 11 U.S.C. § 1129(a)(11) because all of the Estate's assets are being liquidated pursuant to the Plan.

(18)  <u>Payment of U.S. Trustee Fees</u>.  The Plan satisfies 11 U.S.C. § 1129(a)(12) because the Plan provides for the payment of all fees pursuant to 28 U.S.C. § 1930.

(19)  <u>Inapplicable Requirements</u>.  Bankruptcy Code Sections 1129(a)(13), (14), (15), and (16) are inapplicable and need not be satisfied by the Plan.

L.  <u>Feasibility</u>.  The Court finds that the Plan is feasible.

M.  <u>Satisfaction of § 1129(b)(1) and (2)</u>.  Notwithstanding the satisfaction of the applicable requirements of 11 U.S.C. § 1129(a), other than § 1129(a)(8), the Court finds that, with respect to any impaired Class, regardless of acceptance by such Class, the Plan does not discriminate unfairly against such Class and is fair and equitable with respect to such Class.

N.  <u>Satisfaction of § 1129(c)</u>.  The Plan satisfies 11 U.S.C. § 1129(c) because only

one Plan has been solicited for approval.

O.    Inapplicability of § 1129(d) and (e).  Bankruptcy Code § 1129(d) is inapplicable because no governmental unit has requested consideration of § 1129(d).  Further, neither the avoidance of taxes nor the avoidance of the application of section 5 of the Securities Act of 1993 is the primary purpose of the Plan.  Bankruptcy Code § 1129(e) is inapplicable because this is not a small business case.

P.    Best Interests of Estate and Creditors.  Confirmation of the Plan is in the best interests of the Estate, all Holders of Claims, all Holders of Equity Interests, and all other parties in interest.

Q.    Good-Faith Solicitation (11 U.S.C. § 1125(e)).  Based on the record before the Court in this Chapter 11 Case, the Debtor has solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with such solicitation.

R.    Satisfaction of Confirmation Requirements.  Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

S.    Good Faith of the Debtor.  The Debtor, and all of its respective members, officers, directors, agents, financial advisers, attorneys, employees, partners, affiliates, and representatives (i) have acted in good faith in negotiating, formulating, and proposing the Plan and agreements, compromises, settlements, transactions and transfers contemplated thereby, and (ii) will be acting in good faith in proceeding to (a) consummate the Plan and the agreements, compromises, settlements, transactions, and transfers contemplated thereby and (b) take the actions authorized and directed or contemplated by this Confirmation Order.  .

T.    <u>Sale of Construction Loan Claims</u>.    The Prepetition Agent and Prepetition Lenders have the right to sell the promissory notes, agreements and other documents evidencing the Construction Loan Claims, and other assets and rights related thereto (the "<u>Note Sale</u>"), and in their discretion to select the purchaser of the Construction Loan Claims.  The Debtor agreed to the right of the Prepetition Agent and the Prepetition Lenders to conduct a note sale as set forth in the Adjournment Order.

U.    <u>Good Faith of Bank of America, N.A. and the Prepetition Lenders</u>.    Bank of America, N.A., as agent, and the Prepetition Lenders that hold Construction Loan Claims as of the date of the entry of this Confirmation Order, and all of their respective members, officers, directors, agents, financial advisers, attorneys, employees, partners, affiliates, and representatives (i) have acted in good faith in negotiating the Plan and agreements, compromises, settlements, transactions and transfers contemplated thereby, and (ii) will be acting in good faith in proceeding to (a) consummate the Plan and the agreements, compromises, settlements, transactions, and transfers contemplated thereby (other than the Note Sale, as to which the Court makes no findings except as set forth in Paragraph "T" above) and (b) take the actions authorized and directed or contemplated by this Confirmation Order.

V.    <u>Designation of Transferee</u>.  If the consummation of the Note Sale (the "<u>Note Sale Closing</u>") occurs prior to the Effective Date, the Transferee shall be RW RES and RW RET. Before the Note Sale Closing, the RW Entities shall direct the Prepetition Agent as to the manner in which RW RES and RW RET shall acquire the Construction Loan Claims and related "acquired assets" to be conveyed in connection with the Note Sale.  If the Note Sale Closing does not occur prior to the Effective Date, the Transferee shall be Miami (FL) 2nd Street Syndicated Holdings, LLC.

W.    <u>No Inference from Absence of Findings</u>.  The Note Sale was conducted by means of a private sale process without supervision of the Bankruptcy Court, and the Court makes no findings in connection with the Note Sale except as set forth in Paragraph "T" above.  The absence of any findings in this Confirmation Order pursuant to Section 363(m) of the Bankruptcy Code should not, is not intended to, and does not suggest or imply that Bank of America, N.A., as agent, the Prepetition Lenders that hold Construction Loan Claims as of the date of the entry of this Confirmation Order, or any of the RW Entities engaged in any conduct that was not in good faith.

X.    <u>Rights and Obligations of Transferee Upon Note Sale Closing</u>.  If the Note Sale Closing occurs prior to the Effective Date, RW RES will be substituted for the Prepetition Agent in all respects pursuant to the Plan; <u>provided</u>, <u>however,</u> that neither the Note Sale Closing nor the substitution of the Prepetition Agent shall modify any of the injunctions, stays, exculpations, and releases provided under the Plan to and in favor of Bank of America, N.A., as agent, and the Prepetition Lenders that hold Construction Loan Claims as of the date of the entry of this Confirmation Order and their respective Affiliates and Representatives.

Y.    <u>Good Faith of the Transferee</u>.   The Transferee and all of their respective members, officers, directors, agents, financial advisers, attorneys, employees, partners, Affiliates, and Representatives have acted in good faith and will be acting in good faith in proceeding to (a) consummate the Plan and the agreements, compromises, settlements, transactions, and transfers contemplated thereby (other than the Note Sale, as to which the Court makes no findings except as set forth in Paragraph "T" above) and (b) take the actions authorized and directed or contemplated by this Confirmation Order.

Z.    <u>Executory Contracts and Unexpired Leases</u>. The Debtor has satisfied the

provisions of section 365 of the Bankruptcy Code with respect to the assumption, assignment and rejection of executory contracts and unexpired leases pursuant to the terms of the Plan; provided, however, that consideration of the assumption of the lease between KMH Rockstars, LLC and the Debtor is deferred until a later evidentiary hearing, as provided in this Confirmation Order.

AA.    <u>Injunction, Exculpation, and Releases</u>.  The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the injunction, exculpation, and releases set forth in Article XII of the Plan, because, *inter alia*, these provisions are an integral part of the Plan.  Section 105(a) of the Bankruptcy Code permits issuance of the injunction and approval of the releases set forth in Article XII of the Plan if, as has been established here based upon the record in the Chapter 11 Case, the Plan Proponent's Report, the Confirmation Affidavit, and the evidence presented at the Confirmation Hearing, such provisions (i) were integral to the agreement among the various parties in interest and are important and necessary to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (ii) confer substantial benefits on the Debtor's estate and creditors, (iii) are fair and reasonable and (iv) are in the best interests of the Debtor, its estate, and parties in interest.  Based upon the record of this Case and the evidence proffered or adduced at the Confirmation Hearing, this Court finds that the injunction, exculpation, and releases set forth in Article XII of the Plan are consistent with the Bankruptcy Code and applicable law.  Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the releases, exculpations, and injunctions set forth in Article XII of the Plan and  implemented by this Confirmation Order are fair, equitable, reasonable, and in the best interests of the Debtor, the Liquidating Debtor, and their estates, creditors and equity holders. The failure to include such provisions would impair the

Debtor's ability to confirm a consensual Plan in this Case.  Accordingly, this Court finds that the releases, exculpations, and injunctions set forth in Article XII of the Plan are consistent with the Bankruptcy Code and applicable law.

BB.    <u>Compromise and Settlement</u>.    In consideration of the distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan.  All Plan distributions made to creditors holding Allowed Claims in any Class are intended to be and shall be final.

**THEREFORE,** based upon the foregoing, the Court **ORDERS** as follows:

1.    The Plan, as modified by the Plan Modification, is CONFIRMED.

2.    The Chartis Limited Objection and the UST Limited Objection, to the extent not withdrawn or otherwise resolved, are OVERRULED.   The KMH Limited Objection is CONTINUED to a subsequent evidentiary hearing, to be held on a date to be determined pursuant to a subsequent order of the Court.  The CVS Limited Objection is resolved as provided in paragraph 3 below.

3.    <u>Resolution of CVS Limited Objection</u>.  In full and final satisfaction of any claim against the Debtor's estate and as agreed by the Debtor and CVS on or about October 27, 2010 and represented to the Court at the Confirmation Hearing, Holiday CVS, LLC ("<u>CVS</u>") shall receive (i) $12,500 in satisfaction of its attorneys' fees and costs and (ii) any remaining tenant improvement allowance, both of which shall be recouped from rent due from CVS to the Debtor for November 2010.  As provided in the Plan and described in Exhibit 5 to the Disclosure Statement, the lease by and between CVS and the Debtor shall be assumed and assigned to the Transferee.  Further, CVS shall promptly pay to the Debtor the sum of $38,282.08 for 2009

taxes, the tax escrow for January 2010 to October 2010, and the construction area management escrow from January 2010 to October 2010 to the extent not already remitted to the Debtor by CVS.

    4.    <u>Further Modifications to the Plan</u>.

    a.    The Plan is hereby modified as provided in the Plan Modification.

    b.    If the Note Sale Closing occurs on or before the Effective Date, the Plan is further amended by the addition of the following definition:

    **1.11  Additional Class 6b Reserve** means Cash in the amount of $47,300.

    c.    If the Note Sale Closing occurs on or before the Effective Date, the Plan is further modified by deleting the definition of General Unsecured Claim Cash Distribution set forth in the Plan and inserting the following in its place:

    **1.52  General Unsecured Claim Cash Distribution** means (i) if the Note Sale Closing occurs on or before the Effective Date, Cash in the amount of $952,700, plus the undistributed balance, if any, of the Additional Class 6b Reserve after each of the potential Class 6b Claims have been either Allowed or a Final Order sustaining an objection to each such Claim has been entered, and distributions have been made under the Plan to the holders of all Allowed Class 6b Claims (the "**Undistributed Balance**"), or (ii) if the Note Sale Closing does not occur on or before the Effective Date, Cash in the amount of $750,000.

    d.    If the Note Sale Closing occurs on or before the Effective Date, the first sentence of Section 4.8 of the Plan is deleted in its entirety and the following is inserted in its place:

    As soon as reasonably practicable after such claim is Allowed pursuant to

settlement or Final Order, each Holder of an Allowed Customer Deposit General Unsecured Claim shall receive in Cash the lesser of (a) 33% of the Holder's Allowed Customer Deposit General Unsecured Claim and (b) its Ratable Proportion of each of the Class 6b Claims Reserve and the Additional Class 6b Claims Reserve.

e.    Schedule A to the Plan is further modified by the deletion of a General Unsecured Claim in favor of Water Studio, Inc., the transfer of the claim of R&J Painters to Lynd Residential Properties, and the reallocation of the General Unsecured Claim Cash Distribution, as set forth on Schedule A attached to this Confirmation Order.

f.    Exhibit 5 to the Disclosure Statement is further modified by inserting policy no. 7073568 as one of the policies under the Chartis Insurance Program, as set forth on the attached Exhibit 5 to this Confirmation Order.

g.    The modification of the first sentence of Section 6.3 of the Plan, as set forth in paragraph E of the Plan Modification, is deleted, and the provision provided in Section 6.3 of the Plan as originally drafted is reinstated, such that the first sentence of Section 6.3 of the Plan now provides:

> All Distributions to Holders of Allowed Class 6a Claims under this Plan, which are to be made within twenty-one days of the Effective Date unless such date is otherwise extended with the consent of the persons who served as members of the Committee on the Effective Date, shall be made by the Liquidating Debtor, who shall administer and distribute the General Unsecured Claim Cash Distribution, but who shall not administer any returned or undeliverable Distributions from the General Unsecured Claim Cash Distribution, as provided in Section 6.4.

5.      <u>General Unsecured Claim Cash Distribution</u>.  Notwithstanding anything to the contrary set forth in the Plan: (a) the Liquidating Debtor shall make the pro rata Distribution of the General Unsecured Claim Cash Distribution to the holders of Allowed Class 6a Claims within twenty-one days of the Effective Date; (b) the Plan Administrator shall make a pro rata Distribution of the Undistributed Balance, if any, to the holders of Allowed Class 6a Claims after each of the potential Class 6b Claims have been either Allowed or a Final Order sustaining an objection to each such Claim has been entered, and distributions have been made under the Plan to the holders of all Allowed Class 6b Claims; and (c) the total sum allocated to the General Unsecured Claim Cash Distribution shall not exceed $1,000,000 in the aggregate.

6.      <u>Solicitation and Notice</u>.  Notice of the Confirmation Hearing, the Plan Modification, and all related documents (i) complied with the terms of the Order Approving Disclosure Statement, the Amended Disclosure Statement Order, and the Adjournment Order, (ii) was appropriate and satisfactory based on the circumstances of this Case, and (iii) was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.  The solicitation of votes on the Plan and the solicitation materials (i) complied with the solicitation procedures in the Order Approving Disclosure Statement and the Amended Disclosure Statement Order, (ii) was appropriate and satisfactory based upon the circumstances of this Case, and (iii) was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.

7.      <u>Omission of Reference to Particular Plan Provisions</u>.  The failure to specifically describe or include any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Plan, as modified, be approved and confirmed.

8.    <u>Plan Classification Controlling</u>.    The classifications of Claims and Equity Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.    The classification set forth on the ballots tendered or returned by the Debtor's creditors in connection with voting on the Plan: (a) were set forth on the ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Equity Interests under the Plan for distribution purposes; and (c) shall not be binding on the Debtor, the Liquidating Debtor, the Plan Administrator, creditors, or interest holders for purposes other than voting on the Plan.

9.    <u>Binding Effect</u>.    Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, upon entry of this Confirmation Order and subject to the occurrence of the Effective Date, the provisions of the Plan shall bind (i) any holder of a Claim against or Equity Interest in the Debtor and its respective successors and assigns, whether or not such Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan, (ii) any and all non-debtor parties to assumed executory contracts and unexpired leases with the Debtor, (iii) those parties who filed Objections to the Plan, (iv) every other party in interest in this Chapter 11 Case, and (v) all parties receiving property under the Plan, and their respective heirs, executors, administrators, successors, or assigns.

10.    <u>Dismissal or Settlement of Certain Pending Unit Purchaser Litigation</u>.    Pursuant to Option A of Section 4.6 of the Plan ("<u>Option A</u>"), each Holder of a Customer Deposit Claim that is a plaintiff in an adversary proceeding, litigation, or other action relating to such Claim, who elected Option A (collectively, the "<u>Option A Plaintiffs</u>"), either by casting a ballot affirmatively electing Option A or failing to cast a ballot selecting Option B, has consented to the

dismissal with prejudice of any and all claims asserted by such plaintiff in the applicable adversary proceeding, litigation, or other action. Accordingly, the Debtor and/or Liquidating Debtor are hereby directed to file notices of settlement with respect to the claims and causes of action asserted by each of the Option A Plaintiffs in the applicable adversary proceeding, litigation, or other action in which each such Option A Plaintiff is a party.[3]

11.    Option A Proofs of Claim.  Any proof of claim filed by a claimant who has elected Option A in Class 5b pursuant to the Plan is deemed allowed solely to the amount provided pursuant to such settlement under Option A (each such allowed amount, an "Option A Settlement Amount") and is disallowed to the extent such proof of claim exceeds the applicable Option A Settlement Amount.

12.    Appointment of Plan Administrator.  Prior to the Effective Date, the Prepetition Agent shall appoint the Plan Administrator, pursuant to Section 10.1 of the Plan.  The duties of the Plan Administrator shall be as described in an agreement executed between the Prepetition Agent and the Plan Administrator (the "Plan Administrator Agreement") and the Plan, including, but not limited to, Section 10.3 (Authority), Section 10.5 (Distributions), Section 10.6 (Accounting and Reporting), Section 10.10 (Management of Affairs), and Section 10.11 (Retention of Siegfried Rivera as Special Counsel).  CRG Partners Group, LLC is hereby appointed as the Plan Administrator.

13.    Bonding of Plan Administrator.  On the Effective Date, the Plan Administrator shall be bonded in favor of the Estate in the amount of $7,500,000.  The Plan Administrator shall be bonded for the duration of the Case in an amount equal to or in excess of 150% of the amount of cash on deposit with the Plan Administrator, from time to time.

---

[3]    A list of Option A Plaintiffs for each applicable adversary proceeding, litigation, or other action  is attached hereto as composite Exhibit A.

14.    <u>Prepetition Lender Contribution</u>.    On the Effective Date and as provided in Section 5.6 of the Plan, the Prepetition Agent shall cause the Prepetition Lender Contribution to be paid to the Plan Administrator to fund Distributions pursuant to the Plan in respect of Allowed Administrative Expense Claims (other than the DIP Loan, which shall be paid as set forth in section 2.4 of the Plan as same has been modified by this Confirmation Order), Allowed Professional Fee Claims, fees due to the U.S. Trustee, Allowed Priority Tax Claims, Allowed Claims in each of Classes 1, 2, 3a, 3b, and 6b, and for use by the Plan Administrator to pay expenses incurred in carrying out his duties as provided in the Plan.    The Prepetition Agent or Plan Administrator shall also deliver to the Liquidating Debtor, for Distribution to Holders of Allowed Class 6a Claims as of the Effective Date, either the sum of $952,700 if the Note Sale Closing occurs on or before the Effective Date, or the sum of $750,000 if the Note Sale Closing does not occur on or before the Effective Date.    Any amount that remains in the Class 6b Claims Reserve following (i) resolution and payment of all Disputed Customer Deposit General Unsecured Claims that, pursuant to settlement or Court order have been deemed Allowed, and (ii) distribution of the Undistributed Balance, if any, to the holders of the Allowed Class 6a Claims, shall be distributed to the Prepetition Agent.

15.    <u>Repayment of DIP Financing Claim</u>.    Notwithstanding Section 2.4 of the Plan, if the Note Sale Closing occurs on or before the Effective Date, on the Effective Date, the Plan Administrator shall escrow (a) a portion of the Prepetition Lender Contribution in the amount of $2,336,000, and (b) an amount sufficient to pay all advances under the DIP Loan after October 7, 2010 and prior to the Effective Date, if any, as authorized by the Adjournment Order and as agreed to by the Prepetition Agent in each instance prior to such advance being made.    All such amounts shall be paid to CABI Holdings, Inc. ("<u>Holdings</u>") on or before December 31, 2010,

provided that the Plan Administrator may pay such amounts in full to Holdings on or about the Effective Date.  If the Note Sale Closing does not occur on or before the Effective Date, then Section 2.4 of the Plan shall govern with respect to repayment of the DIP Financing Claim.

16.    <u>Payment of U.S. Trustee Fees</u>.  The Debtor shall pay all fees that become due and payable under section 1930 of title 28 of the United States Code prior to the Effective Date. The Plan Administrator shall pay all fees that become due and payable under section 1930 of title 28 of the United States Code on or after the Effective Date until a final decree is entered, or the Case is closed, dismissed or converted.

17.    <u>Operating Reports</u>.  From and after the Effective Date, the Plan Administrator shall file quarterly post-confirmation operating reports until a final decree is entered, or the Case is closed, dismissed or converted.  The Liquidating Debtor shall file a monthly operating report for October 2010 and all delinquent reports, if any.

18.    <u>Post-Confirmation Administrative Reserve</u>.  On the Effective Date or as promptly thereafter as is practicable, the Plan Administrator shall create a reserve or reserves to pay any Disputed Administrative Expense Claims and estimated post-Effective Date expenses of the Plan Administrator (collectively, the "<u>Post-Confirmation Administrative Reserve</u>").  The Post-Confirmation Administrative Reserve shall be funded from the Prepetition Lender Contribution. The Post-Confirmation Administrative Reserve shall contain funds sufficient to pay Holders of Disputed Administrative Expense Claims the maximum Distribution to which they may be entitled under the Plan.  The Post-Confirmation Administrative Reserve shall be maintained by the Plan Administrator in an interest-bearing account pending Distributions.  Any funds remaining in the Post-Confirmation Administrative Reserve after payment in full of all Allowed Administrative Expense Claims, Disputed Allowed Administrative Expense Claims that are

subsequently Allowed, and Post-Effective Date expenses of the Plan Administrator shall be distributed to the Prepetition Agent.

19.     <u>Payment of Administrative Expense Claims</u>.   On the Effective Date or as promptly thereafter as is practicable and without the need for further Court approval, the Plan Administrator shall pay from the Post-Confirmation Administrative Reserve all Allowed Administrative Expense Claims.  Except to the extent that a Holder of an Allowed Administrative Expense Claim agrees to a less favorable treatment, the Plan Administrator shall pay Cash in an amount equal to such Allowed Administrative Expense Claim to each Holder of an Allowed Administrative Expense Claim; provided, however, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtor prior to the Effective Date shall be assumed and paid by the Plan Administrator or the Transferee, as appropriate, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

20.     <u>Prepetition Agent</u>.   Prior to the Note Sale Closing, all references in this Confirmation Order to the "Prepetition Agent" shall mean and refer to Bank of America, N.A., as agent.  If the Note Sale Closing occurs on or prior to the Effective Date, RW RES will be substituted for the Prepetition Agent in all respects pursuant to the Plan; <u>provided</u>, <u>however,</u> that notwithstanding the Note Sale Closing and/or the substitution of RW RES as the Prepetition Agent, the injunctions, stays, exculpations, and releases provided under the Plan shall continue in full force and effect in favor of Bank of America, N.A, as agent, and the Prepetition Lenders and their respective Affiliates and Representatives, without any modification or impairment other than the modification set forth in the paragraph of this Confirmation Order entitled "<u>Note Sale</u>

Closing & Article XII of the Plan"; and provided further, that all such injunctions, stays, exculpations and releases shall also apply and inure to the benefit of the RW Entities.

21.    Designation of Transferee.  If the Note Sale Closing does not occur on or before the Effective Date, Miami (FL) 2nd Street Syndicated Holdings, LLC is designated as the Transferee, and is hereby authorized and directed to act as the Transferee pursuant to the Plan.  If the Note Sale Closing occurs on or before the Effective Date, RW RES and RW RET are designated jointly and severally as the Transferee by RW RES, as the substituted Prepetition Agent, with particular assets being allocated between RW RES and RW RET as the RW Entities shall direct, and RW RES and RW RET are hereby authorized and directed to act as the Transferee pursuant to the Plan.  Promptly following the Effective Date, the Liquidating Debtor shall file a notice identifying the Prepetition Agent and the Transferee each of which shall be deemed to have acknowledged and accepted its (or their) respective duties, responsibilities, and obligations under the Plan.

22.    Sale Transaction.  On the Effective Date and as provided in Section 5.1 of the Plan, the Debtor will effectuate the Sale Transaction and will execute and deliver the Transfer Documents to the Transferee.  If the Note Sale Closing occurs on or before the Effective Date, the Debtor will allocate the Transferred Property between RW RES and RW RET as they shall direct.  The Debtor, and all of its respective members, officers, directors, agents, financial advisers, attorneys, employees, partners, affiliates, and representatives shall, at all times, act in good faith and provide reasonable further assurances in expediting the consummation of the Plan and the agreements, compromises, settlements, transactions, and transfers contemplated thereby, including timely execution and delivery of the Transfer Documents to the Transferee, and the actions authorized and directed or contemplated by this Confirmation Order.

23.    <u>Transferred Property and Transferred Causes of Action</u>.  On the Effective Date and as provided in Section 5.3 of the Plan, (i) the Transferred Property shall be transferred to the Transferee (allocated as directed by Transferee), and (ii) the Transferred Causes of Action shall be transferred to the Plan Administrator.

24.    <u>Management Services</u>.    Commencing on the Effective Date and until the Management Period Termination Date, Developers shall serve as the manager of the Property during the Management Period, subject to the terms and conditions of the Management Services Agreement, and further subject to renewal of such agreement upon the mutual written consent of the Transferee and Developers.

25.    <u>Management Services Agreement</u>.  If the Note Sale occurs on or before the Effective Date:

a.    The Management Services Agreement is hereby modified to (i) require a monthly report to Cabi Developers of the net proceeds of each sale of a Condominium Unit by the Transferee after the Effective Date, which report shall be sworn to by the Transferee's Chief Financial Officer or such other person at the Transferee holding a comparable position, together with a copy of each HUD-1 statement relating to the sales which closed during the preceding month, and (ii) include a venue provision for any disputes arising under the Agreement being litigated in any federal or state court in Miami-Dade County, Florida, including this Court.

b.    RW RES and RW RET, jointly and severally, shall be subject to the terms of the Management Services Agreement, including the obligation to pay the compensation to Manager provided thereunder, notwithstanding Owner's

election not to request the performance of any management services by Manager, and notwithstanding any transfer of the Property to any Affiliate or Affiliates of the RW Entities as Transferee, unless otherwise agreed to by the Debtor and the Prepetition Agent.

c.      Notwithstanding anything to the contrary in this Confirmation Order or the Management Services Agreement itself, including any provision stating that management services are at the election of the Owner (as defined in the Management Services Agreement) or Transferee, (i) the Management Services Agreement is valid and enforceable when executed by the parties thereto, (ii) the Manager (as defined in the Management Services Agreement) is hereby authorized and directed to provide the services contemplated by and to the extent provided for in the Management Services Agreement, and (iii) RW RES and RW RET, jointly and severally, and any affiliate of the Transferees to whom the Transferees' interest in the Property is transferred, are hereby directed to perform the obligations of the Owner set forth in the Management Services Agreement.

d.      Any disputes arising under the Management Services Agreement shall be heard by a state or federal court of competent jurisdiction in Miami-Dade County, Florida, which includes the Bankruptcy Court.

e.      In connection with the execution of the Management Services Agreement, the Debtor shall provide to the Transferee and attach to the execution copy of the Management Services Agreement a schedule of the net proceeds received by the Prepetition Agent from the sale of Units (as such term is defined in the Management Services Agreement) from and after March 3, 2010 to the

Effective Date, and the Owner Escrow Funds received by Bank of America, N.A., as agent, and remitted to Owner (as such terms are defined in the Management Services Agreement) on or about the Effective Date, which schedule shall be subject to review and verification by the Transferee prior to execution of the Management Services Agreement..

26.    <u>Tax Claim of Miami-Dade County Tax Collector</u>.  Notwithstanding anything to the contrary in this Confirmation Order or in any documents relating to the Note Sale Closing, the Transferee shall take ownership of the Property subject to any existing tax liens, including the lien claim asserted by the Miami-Dade County Tax Collector pursuant to proof of claim number 9.

27.    <u>Class 6b Claims Reserve</u>.  If the Note Sale occurs on or before the Effective Date, the Plan Administrator will cause the Class 6b Claims Reserve to be established in the amount of $222,300.  If the Note Sale does not occur on or before the Effective Date, the Plan Administrator will cause the Class 6b Claims Reserve to be established in the amount of $175,000.  The Class 6b Claims Reserve shall be held by the Plan Administrator free and clear of all liens, claims, and interests, except as expressly provided in the Plan, and shall be held, maintained and administered solely by the Plan Administrator, in the Class 6b Claims Reserve, and will be held in trust pending Distribution by the Plan Administrator to the Holders of such Allowed Class 6b Claims, subject to paragraph 4 herein.

28.    <u>Consummation of Plan</u>.  The Debtor, the Liquidating Debtor, and the Plan Administrator are authorized, directed, and empowered to execute and deliver all documents and take all actions necessary to consummate the Plan and the Sale Transaction.

29.    <u>Disbursements by Liquidating Debtor</u>.  The Liquidating Debtor is directed and

authorized to make all disbursements pursuant to section 9.1 of the Plan.

30.    <u>Assumption of Executory Contracts</u>.  To the extent not previously addressed by separate court order, the Debtor shall assume and assign to the Transferee each of the executory contracts or leases listed on Exhibit 5 to the Disclosure Statement for which the Debtor indicated its intent to assume (collectively, the "<u>Executory Contracts</u>"), including the contracts or leases with the following parties:

     a.   Fullerton Diaz Architects, as modified in Section 8.2 of the Plan

     b.   Holiday CVS, LLC / CVS Realty Company

     c.   Chartis, Inc. and any of its affiliates or subsidiaries

     d.   Westchester Fire Insurance Company

     e.   W.G. Yates & Sons Construction Company, subject to the terms of the Yates Settlement Agreement

     f.   Fidelity and Deposit Company of Maryland

     g.   Travelers Casualty & Surety Company of America

     h.   Zurich American Insurance Company

     i.   Hotwire Communications LLC

     j.   ATC International Inc.

     k.   Water Studio

On the Effective Date, assumption and assignment of each such Executory Contract shall be effected pursuant and subject to the terms and conditions specified in Article VIII of the Plan and Exhibit 5 to the Disclosure Statement.

31.    <u>Rejection of Preconstruction Agreements</u>.  Except to the extent previously assumed pursuant to an order of the Bankruptcy Court entered on or before the Confirmation

Date, any Preconstruction Agreement deemed to be an executory contract is hereby deemed rejected. The Debtor, the Transferee, and the Plan Administrator reserve the right to assert that any Preconstruction Agreement expired, terminated, or was breached prior to the Confirmation Date and therefore is not deemed to be an executory contract.

32.    <u>Rejection of Other Executory Contracts and Unexpired Leases</u>.  Pursuant to Section 8.1 of the Plan, each of the Debtor's prepetition executory contracts and unexpired leases to which it is a party are deemed rejected, unless such contract or lease (a) was previously assumed or rejected by the Debtor, (b) previously expired or terminated pursuant to its own terms, (c) is the subject of a motion to assume filed on or before the Confirmation Date, or (d) is set forth on either Exhibit 5 or 6 to the Disclosure Statement, as such exhibits may have been modified or amended from time to time, as an executory contract or unexpired lease to be assumed and/or assumed and assigned.

33.    <u>Bar Date to Assert Rejection Damage Claims</u>.  Notwithstanding anything to the contrary in the Plan, including but not limited to Section 8.4 of the Plan, and in compliance with Local Rule 6006-1:

> **ANY PROOF OF CLAIM FOR DAMAGES ARISING FROM THE REJECTION OF ANY EXECUTORY CONTRACT OR LEASE OF THE DEBTOR MUST BE FILED WITH THE COURT WITHIN 30 DAYS AFTER ENTRY OF THIS ORDER.**

34.    <u>Assumption of DP Program Agreements</u>.   Except to the extent previously assumed pursuant to an order of the Bankruptcy Court entered on or before the Confirmation Date or previously expired, terminated, or breached pursuant to its terms, all DP Program

Agreements deemed executory contracts assumable by the Debtor pursuant to section 365(a) of the Bankruptcy Code shall be deemed assumed and assigned to Transferee pursuant to the Confirmation Order.

35.    <u>Assumption of FD Agreement</u>.  The Debtor shall assume the FD Agreement, as modified in Section 8.2 of the Plan, which is incorporated herein by reference (the "<u>Modified FD Agreement</u>"), and assign the Modified FD Agreement to the Transferee.  Fullerton Diaz shall have an Allowed General Unsecured Claim in the amount of $326,000 and shall waive any other Claim against the Debtor, the Liquidating Debtor, the Estate, Bank of America, N.A., as agent, the Prepetition Lenders that hold Construction Loan Claims as of the date of the entry of this Confirmation Order, the Plan Administrator, the RW Entities, and their respective properties and interests, including, without limitation, the Collateral and the Property.

36.    <u>Approval of Settlement With Siegfried Rivera</u>.  The settlement agreement by and between the Debtor, the Prepetition Agent, and Siegfried Rivera, is hereby approved, as described on the record at the Disclosure Statement Hearing and in Section 10.11 of the Plan, and as further clarified below:

a.    Siegfried Rivera's unsecured claim reflected its filed proof of claim amount of $652,707.70 is reduced to the amount of $400,000; and

b.    If the Note Sale Closing does not occur on or before the Effective Date, the Debtor and the Prepetition Agent agree that the Plan Administrator and Transferee shall each retain Shutts & Bowen, LLP as counsel to the Plan Administrator and the Transferee, and further agree that Shutts & Bowen LLP shall retain Siegfried Rivera as special counsel to the Plan Administrator and Transferee.  If the Note Sale Closing occurs on or before the Effective Date, then the Transferee shall retain Siegfried Rivera directly

as special counsel to the Transferee to handle the matters identified in Section 10.11 of the Plan.

      c.    The retention of all legal counsel in accordance with the settlement agreement with Siegfried Rivera is subject to customary terms of engagement and applicable rules of The Florida Bar.

37.    <u>Payment of Plan Administrator</u>.  All costs, expenses and obligations incurred by the Plan Administrator in prosecuting the Transferred Causes of Action or discharging his other duties under this Plan, or otherwise incurred in any manner connected, incidental, or related to such duties including, but not limited to, the fees and expenses of the Plan Administrator and professionals and agents retained by the Plan Administrator to assist in carrying out his duties pursuant to this Plan, and Post-Confirmation United States Trustee's fees, shall be paid from the Post-Confirmation Administrative Reserve.

38.    <u>Payment of Professional Fees by Plan Administrator</u>.  Court approval of fee applications shall not be required since the sole beneficiaries of such fee review process are parties whose interests shall be represented by the Plan Administrator and to whom no financial benefit would accrue as a result of the additional expense incurred by judicial review.  No more frequently than once every 30 days, the Plan Administrator's counsel and any other professional retained by the Plan Administrator shall submit his, her or its statement(s) for services rendered and costs incurred to the Plan Administrator and the Prepetition Agent for review and approval. The statements do not need to conform to the U.S. Trustee's guidelines for fee applications, but must contain adequate information to review the reasonableness of the statements.  The Plan Administrator and the Prepetition Agent shall have 20 days to object to any such statement.  If no objections are provided to the professional in respect of any such statement, then the Plan

Administrator shall promptly pay 100 % of all fees and costs listed on such statement from the Post-Confirmation Administrative Reserve or in such other manner as the payee may agree.  In the event of a dispute as to payment of any statement which cannot be resolved by the Plan Administrator and the applicable professional, the Plan Administrator shall submit such dispute to the Bankruptcy Court for review and approval or denial of such fees.  The Bankruptcy Court retains jurisdiction to adjudicate any dispute with respect to such statements.

39.    <u>Retention of Warranty Claims</u>.  All rights and remedies relating to, arising from, or accruing pursuant to all available theories of warranty for such labor and/or materials supplied in the construction of the Property by any Subcontractor, whether such warranties are express or implied, and regardless of whether such warranties arise by contract or by statute, are hereby retained by the Debtor and shall be transferred to the Transferee as of the Effective Date.

40.    <u>Injunctions</u>.  The term of injunctions or stays described in Section 12.4 of the Plan are hereby approved.

41.    <u>Releases</u>.    The Releases described in Section 12.5 of the Plan are hereby approved.

42.    <u>Limitation of Liability</u>.    Notwithstanding anything to the contrary in this Confirmation Order, no recourse shall ever be had, directly or indirectly, against the Liquidating Debtor, the Plan Administrator, or against their employees, agents, and professionals, by legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge, note, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Liquidating Debtor or the Plan Administrator under the Plan.    The Liquidating Debtor, the Plan Administrator, and their employees, agents, and professionals shall not be liable for any act they may do, or omit to do hereunder, or acting in

good faith and in the exercise of his, her, its, or their best judgment, and the fact that such act or omission was advised, directed or approved by an attorney acting as attorney for the Liquidating Debtor or the Plan Administrator shall be conclusive evidence of such good faith and best judgment. This paragraph, however, does not provide indemnification for any act of gross negligence or willful misconduct or ordinary malpractice by the Liquidating Debtor, the Plan Administrator, or their professionals, agents, and employees.

43.    <u>Treatment in Full Satisfaction</u>. All distributions under the Plan shall be made in accordance with the Plan. The treatment set forth in the Plan is in full satisfaction of the legal, contractual, and equitable rights (including any liens) that each entity holding a Claim or Equity Interest may have in or against the Debtor, the Estate, or their respective property. This treatment supersedes and replaces any agreements or rights those entities may have in or against the Debtor, the Estate, or their respective property.

44.    <u>Vesting of Property of the Estate</u>. Pursuant to Section 5.3 of the Plan, upon the occurrence of the Effective Date pursuant to sections 1141(b) and (c) of the Bankruptcy Code, the Transferred Property shall be transferred to the Transferee. The Prepetition Agent or the Plan Administrator, as applicable, shall receive all other Collateral, except for Abandoned Assets. The Transferred Causes of Action shall be transferred to the Plan Administrator to administer for the benefit of the Holders of Secured Construction Loan Claims, in each case, free and clear of all liens, claims, encumbrances, and other interests.

45.    <u>Abandonment of Estate Causes of Action</u>. On the Effective Date, all Estate Causes of Action shall be deemed abandoned without further action or order of the Court.

46.    <u>Note Sale Closing & Transfer of Segregated Funds</u>. If the Note Sale Closing occurs on or before the Effective Date, Bank of America shall transfer to RW RES all funds held

in the segregated cash collateral account referenced in the *Amended Order: (I) Authorizing And Approving Certain Proposed Settlements With Unit Purchasers; (II) Establishing An Omnibus Procedure For Settling Certain Deposit Claims; (III) Authorizing Disbursement Of Settlement Funds Held In Escrow; And (IV) Authority To Reissue Lost Check*, dated September 18, 2010 [ECF No. 916].

47. <u>Note Sale Closing & Article XII of the Plan</u>. If the Note Sale Closing occurs on or before the Effective Date: (i) any and all references to "Prepetition Agent" in Sections 12.2, 12.3, 12.4, 12.5, and 12.6 of the Plan shall be amended so that "Prepetition Agent" shall be changed to "Bank of America, N.A., as agent"; (ii) any and all references to "the Prepetition Lenders" in Sections 12.2, 12.3, 12.4, 12.5, and 12.6 of the Plan shall be amended so that "the Prepetition Lenders" shall be changed to "the Prepetition Lenders that hold Construction Loan Claims as of the date of entry of the Confirmation Order"; and (iii) consistent with the Adjournment Order, any and all injunctions, stays, exculpations, and releases in the Plan applying to and inuring to the benefit of Bank of America, N.A., as agent, and the Prepetition Lenders that hold Construction Loan Claims as of the date of entry of the Confirmation Order, shall also apply to and inure to the benefit of each of the RW Entities.

48. <u>Exemption from Transfer Taxes</u>. Pursuant to Section 5.7 of the Plan and section 1146(a) of the Bankruptcy Code, the execution, delivery, or recording of an instrument of transfer under the Plan, or the transfer or sale of any real, personal, or other property of the Estate by the Liquidating Debtor or the Plan Administrator, including but not limited to all transactions contemplated by or effected in connection with the Sale Transaction, shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee; provided, however, section 1146(a) of the Bankruptcy Code will not exempt the Transferee from

paying any stamp, real estate transfer, mortgage recording, or other similar tax for any Condominium Unit (as defined in the Plan) sales made in the ordinary course of business. Consistent with the foregoing, each recorder of deeds or similar official for any county, city, or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to this Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, mortgage recording tax, intangible tax or similar tax.

49.    Conditions to Effective Date. The Plan shall not become effective unless and until the conditions set forth in Section 11.2 of the Plan have been satisfied or waived pursuant to Section 11.3 of the Plan.

50.    Retention of Jurisdiction.  The Court shall retain jurisdiction as set forth in 28 U.S.C. § 1334, including for the purposes set forth in Article XIII of the Plan.

51.    Dissolution of Committee.  On the first Business Day after both the Effective Date and substantial consummation of the Plan, the Committee shall be dissolved and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from and in connection with the Chapter 11 Case, and the retention or employment of the Committee's attorneys, accountants, and other agents, if any, shall terminate other than for purposes of filing and prosecuting applications for final allowance of compensation for professional services rendered and reimbursement of expenses incurred in connection therewith.

52.    Notice of Entry of Confirmation Order.  Pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c), the Liquidating Debtor or the Plan Administrator, as the case may be, shall file and serve notice of entry of this Confirmation Order in substantially the form annexed hereto

as "Exhibit B" (the "Notice of Confirmation Order") on all creditors and interest holders, the United States Trustee, the attorneys for the Creditors' Committee, the attorneys for Bank of America, N.A., as agent, and other parties in interest, by causing the Notice of Confirmation Order to be delivered to such parties by first-Class mail, postage prepaid, within 10 business days after entry of this Confirmation Order.

53.    <u>Notice of Effective Date</u>. As soon as practicable after the occurrence of the Effective Date, the Plan Administrator shall file notice of the occurrence of the Effective Date and shall serve a copy of same on all parties entitled to receive notice in this Case.

54.    <u>Effectiveness of Plan</u>.  All of the provisions of the Plan, to the extent that they are not otherwise incorporated in this Confirmation Order, are valid and in full force and effect upon entry of this Confirmation Order.

55.    <u>Severability</u>.  The provisions of this Confirmation Order are fully independent and severable such that in the event that a court of competent jurisdiction, applicable law, or agreement of parties-in-interest makes any single provision null and void or without effect, the remaining provisions of this Confirmation Order shall continue in full force and effect.

56.    <u>Reversal</u>.   If any of the provisions of this Confirmation Order are hereafter reversed, modified, or vacated by a subsequent order of the Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under, or in connection with, the Plan prior to receipt of written notice of such order by the Debtor.  Notwithstanding any such reversal, modification or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order, the Plan,

the Plan Modification, all documents relating to the Plan, and any amendments or modifications

to any of the foregoing.

57.    <u>Post-Confirmation Status Conference</u>.    The Court will conduct a post-

confirmation status conference on February 28, 2011  at 2:30 p.m., in Courtroom 1409, U.S.

Courthouse, 51 S.W. 1st Avenue, Miami, Florida, to determine whether the Liquidating Debtor

and Plan Administrator have complied with the provisions of this Confirmation Order.

###

Submitted by:
Mindy A. Mora, Esq
Bilzin Sumberg Baena Price & Axelrod, LLP
200 S. Biscayne Blvd., Suite 2500
Miami, FL 33131

Copy furnished to:
Mindy A. Mora, Esq., who shall serve a copy of this order on all interested parties and file a
certificate of service